ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: 408-641-9966
Fax: 408-866-7334
Emails: farsadlaw1@gmail.com;
nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re:

MORDECHAI KOKA,

Debtor / debtor-in-possession.

Case No.: 20-50469 SLJ
Chapter 11

**OBJECTION TO CLAIM NUMBER 7; DECLARATION OF DEBTOR IN SUPPORT**

Date: October 21, 2020
Time: 2:00 p.m.
Place: 280 South 1st St., Courtroom 9
San Jose, CA 95113

**Before: Hon. Stephen L. Johnson**

TO THE HONORABLE JUDGE STEPHEN L. JOHNSON, THE UNITED STATES TRUSTEE'S OFFICE FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL CREDITORS / PARTIES IN INTEREST, AND THEIR RESPECTIVE COUNSEL(S) OF RECORD:

<u>**PLEASE TAKE NOTICE THAT**</u> the Debtor / debtor-in-possession herein has filed an Objection to Proof of Claim (Claim # 7) filed in the above referenced case.

The Objection to Claim seeks to alter the rights of the Claim Number 7 holder by disallowing, reducing and/or modifying the claim based upon the grounds set forth in the objection as follows:

Objection to Claim Number 7; Declaration of Debtor in Support - 1
Case: 20-50469    Doc# 71    Filed: 07/30/20    Entered: 07/30/20 15:57:28    Page 1 of 10

Mordechai Koka, the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this Objection to the General Unsecured Claim of Dale Gardener and Melissa Gardner (Claim Number 7) (the "Objection"), pursuant to section 502 of Title 11 of the United States Code Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of California.

This Objection is based on the arguments set forth below and the declaration and exhibit hereto, and any and all subsequent pleadings filed by the Debtor relating to the Objection, any oral or documentary evidence presented at or prior to the time of the hearing, and the record in this case. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Objection is filed pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, which governs objections to claims. The Debtor submits that Claim No. 7 (the "Claim") filed by Dale Gardener and Melissa Gardner (the "Claimants") should not exceed $80,000.00 as listed in Schedule F because the Claimants have failed to submit sufficient evidence to support the Claim at the requested amount(s).

### 1. Background

On March 10, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate and manage his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

### 2. The Claim of Dale Gardener and Melissa Gardner Subject to Objection

On July 5, 2020, the Claimants filed the Claim in the sum of $1,335,810.91 that was designated as Claim No. 7 in the claims register maintained by the Court.

As the basis for the Claim, Claimants assert that the Debtor is liable for breach of contract, embezzlement and/or conversion, intentional infliction of emotional distress, as well as elder abuse, with a request for punitive damages and attorney's fees and costs regarding a

construction contract dispute. The Claimants filed an Adversary Complaint (Case No. 20-5030-SLJ) and the Debtor has filed an Answer (on July 20, 2020 at AP Case Docket No. 9) generally denying all of the allegations.

The Claim is supported solely by the *unverified* Adversary Complaint and no discovery has taken place. A true and correct copy of the Claim is attached hereto and incorporated herein by reference as **Exhibit "A."**

### 3. Objections to the Claim

The Claimants have failed to provide sufficient evidence to substantiate the Claim at this stage of the case. No judgment has been entered and the Claimants at this point only have unproven / unverified <u>allegations</u> as stated in their complaint(s). A claimant bears the ultimate burden of proving its claim(s). The allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof of claim constitutes prima facie evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f) (emphasis added).

However, where the proof of claim omits an essential element of the substantive claim, the objector "need only note the absence of any such showing" and need not offer evidence in support. <u>Atwood v. Chase Manhattan Mortgage Co.</u>, (<u>In re Atwood</u>), 293 B.R. 227, 233 (B.A.P. 9th Cir. 2003).

The claimant must then prove the validity of the claim by a preponderance of the evidence, and the ultimate burden of persuasion remains at all times on the claimant. <u>Lundell v. Anchor Constr. Specialists, Inc.</u>, 223 F.3d 1035, 1039 (9th Cir. 2000) (citing <u>Wright v. Holm</u> (<u>In re Holm</u>), 931 F.2d 620, 623 (9th Cir. 1991)).

Here, the Claim should be reduced to the $80,000.00 listed as being owed on the Debtor's Schedule F to the Claimants until the Claimants provide competent proof of the validity of their substantive allegations and/or obtain a judgment.

The Claim is only supported by an unverified Complaint and it would not be proper to allow the Claim to constitute a finalized judgment for $1,335,810.91 as it is not one. **(The current Claim is accordingly based on an alleged debt that is not yet owed / may never be owed in the stated amount.)**

Objection to Claim Number 7; Declaration of Debtor in Support - 3
Case: 20-50469   Doc# 71   Filed: 07/30/20   Entered: 07/30/20 15:57:28   Page 3 of 10

Absent the adversary case proceeding to a stage where a judgment / settlement is reached, the Claim should be reduced to the Debtor's $80,000.00 owed as listed.

Furthermore, the Claimants have failed to attach to their Complaint or First Amended Complaint the underlying contract that is the alleged basis of their Claim, and the Declaration of Debtor attached herewith provides some insight as to the amount of work actually done on the subject project and the issue(s). (Refuting the claims with exception to a standard breach of contract.)

### 4. Reservation of Rights

The Debtor reserves the right to further amend, supplement, revise, object or otherwise respond to the Claim on any and all additional factual or legal grounds relevant to such claim, either in advance of the hearing on the Objection or at a later date on any ground, and, without limiting the foregoing, to (i) amend the Objection, (ii) adjourn any hearing scheduled on the Claim; (iii) file additional papers in support of the Objection, and (iv) take all other appropriate actions to (a)respond to any allegation or defense that may be raised in a response; (b) further object to the Claim if the Claimant provides (or attempts to provide) additional documentation to substantiate its Claim; and/or (c) further object to the Claim based on additional information that may be discovered upon further review by the Debtor or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

### 5. Notice

Notice of this Objection is being served on the Claimants (via USPS First Class Mail) and their counsel of record as required by Local Bankruptcy Rule 3007-1(c) / Bankruptcy Rule 3007(a)(2) and all parties requiring notice in these cases.

### Conclusion

WHEREFORE, the Debtor respectfully requests that the Court to enter an order:

1. Sustaining this Objection in its entirety;

2. Reducing Claim No. 7 to $80,000.00 unless and until the Claimants have obtained a judgment / award of more than $80,000.00 (i.e., proven their case); and

3. Providing that any ruling by the Court on the Objection shall have no preclusive effect on, and is without prejudice to, the Debtor's (including any successor thereof) (a) right to

object to or seek disallowance or reclassification of the Claim on any other grounds as the Debtor or its successors may later assert, (b) right to assert any claims or demands for relief requiring an adversary proceeding consistent with Rule 3007(b) and Rule 7001 of the Bankruptcy Rules, counterclaims, rights of offset or recoupment, preference actions, fraudulent transfer actions, or any other bankruptcy or non-bankruptcy claims and causes of action against the Claimant, and (c) right to withdraw without prejudice the Objection prior to the hearing thereon and, in case of any such withdrawal, to assert the same (or other) objections to such claim in a later objection (or later objections) to such claim; and 4. Granting such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

Executed on **July 30, 2020,** at San Jose, California.

FARSAD LAW OFFICE, P.C.

By: */s/ Nancy Weng*
Nancy Weng, Esq.
Attorneys for Debtor-in-possession

# DECLARATION OF DEBTOR IN SUPPORT

I, Mordechai Koka, am the Debtor in the instant case ("Debtor"). I have personal knowledge of the information contained herein and, if called upon to testify, could and would do so competently. I hereby declare as follows:

1. I filed this Chapter 11 in the Northern District of California, United States Bankruptcy Court, on March 10, 2020.

2. I remain in possession of my assets, and continue to manage my assets, as a debtor-in-possession pursuant to 11 U.S.C. 1101 (1), 1107, and 1108.

3. My Chapter 11 plan (as discussed previously with the Honorable Court) is to sell two of my real properties to pay off my debts.

4. Most of these debts arise from my prior construction business, Green Bay Builders, Inc. for work to have been done on the Claimants' property located at 442 Fulton Court, Santa Clara, CA 95051 ("Property")

5. I disagree with Claim Number 7 as filed in my case for the requested amount of $1,335,810.91.

6. I believe that all that is owed to the Claimants (Mr. and Mrs. Gardner) is $80,000.00 as listed on my filed Schedule F.

7. The Claimants fail to advise the Court of relevant facts regarding this claim for breach of contract. Mrs. Gardner was extremely indecisive and changed her mind constantly throughout the remodeling project-often after an area's remodeling had been completed. She worked with two different designers, and each time, after finalizing a plan, she would request a change at the last minute that would result in us needing to go back to our engineers-as well as the City for permits. The following timeline establishes a chronology of frustrating indecision, failed attempts to accommodate, and needless incurring of expenses:

### THE KITCHEN / LIVING ROOM

a. 4/24/2019--Mrs. Gardner signed the first contract with my former company, Green Bay Builders, Inc. for $5,000.00. A $500.00 deposit was received for the job on the condition that it was to be refunded if Mrs. Gardner did not approve the initial design.

b. 5/19/2019--Mrs. Gardner rejected the initial, proposed design (and was at first given a refund of her $500.00 payment) that was submitted by D.A. Design to her on 4/24/2019 as she wanted a wall between the kitchen and living room demolished.

c. 6/10/2019—A second design was submitted by Tai Nguyen that would remove the wall that she requested be taken out. This necessitated installing a weight-bearing post to support the ceiling.

d. 8/26/2019—The second design was approved and signed off by Mrs. Gardner. My company then began work recessing the lights throughout the first floor, living room, dining room, bathroom and kitchen. Additionally, the exterior of the house was painted; the rough electrical and plumbing was installed through the house.

e. Mrs. Gardner then decided she wanted the post removed; she didn't like where it was. The city engineers required that it be in that location to support the weight of the ceiling to replace the wall that Mrs. Gardner wanted removed. This did not dissuade her. Every ounce of patience was required at this point.

f. 10-23-2019—I hired 4x Engineering, Inc. ("4x") to provide an option to the "unwanted" post. 4x proposed a "Shear Wall Plan" that would eliminate the post. Mrs. Gardner didn't want "Shear Walls". Mrs. Gardner was not moved by my explaining that for safety measures, 4x was not submitting anything different than what the city engineer had said. Her decision-rather, "indecision"-required removal of all the rough electrical and plumbing that had been installed.

g. 11-20-2019—Out of the blue, I received a call from Marcus Dalton Design, Interior Design ("Dalton"). I was requested to pay Dalton $1,000.00 as Mrs. Gardner had contacted and signed a contract with them without informing us first.

h. 12/2/2019—Mrs. Gardner, apparently still unhappy with the proposed designs (even from her own designer, Dalton), went to another engineering firm, Oakley and Oakley.

i. 1/9/2020—In order to be sure that all the proposed designs were structurally sound, I took the drawings of D.A. Design, Tai Nguyen, 4x, Dalton and Oakley and Oakley to the Santa Clara City Engineer. I spoke with Mr. Shafi Refai, the Plans Examiner for the City of Santa Clara. Mr. Refai recommended the 4x submission because, in his opinion, it was more secure for the structure of the house. I contacted Mrs.

Gardner about my conversation with Mr. Refai and his recommendation. I provided his contact information to Mrs. Gardner as she wanted to talk with him.

## THE BATHROOM

j.  The bathroom remodel was contracted to be "like-to-like". The bathroom was demolished; the walls re-framed; and rough electrical and plumbing installed. In spite of the contract, Mrs. Gardner wanted to move a wall to make a bigger walk-in shower. My company acceded. We re-framed and moved all plumbing and electrical to the new location.

k.  Though my company showed Mrs. Gardner many possible tile selections, she didn't like any of the choices. I had no problem with that. However, now that I was painfully familiar with Ms. Gardner's vacillation, I asked her roommate to go with Mrs. Gardner to her chose tiles. (In fact, my level of exasperation was so great with Mrs. Gardner, that I hired her roommate to assist in making decisions for Mrs. Gardner. I paid her roommate a total of $10,000.00 to assist Ms. Gardner in making decisions for the project. Even that didn't work. Ms. Gardner continued to stall progress on the project.)

l.  Ms. Gardner chose 2 different types of tiles for the 3 walls of the shower. We bought and installed the tiles. Immediately upon completion, Mrs. Gardner complained that the tiles didn't match / line up. (They didn't match because she had chosen 2 different sizes of tiles. In spite of being warned three times about this in advance, she said it would be okay.) Regardless, I then spoke to the supplier. New tiles were bought; the old tiles removed and we re-tiled the shower. Mrs. Gardner then wanted the walls of the bathroom (including behind the toilet and sink) redone. This was NOT in the contract. However, in order to please Mrs. Gardner, we did as Mrs. Gardner requested at no extra cost for materials or labor. We were simply wanting to accommodate Mrs. Gardner.

## WINDOWS

m.  On 4/24/2019, Ms. Gardner signed a contract specifying installation of "Vinyl Windows".

Objection to Claim Number 7; Declaration of Debtor in Support - 8

n. On 8/10/2019, the "Vinyl Windows" were to be installed. However, Mrs. Gardner rejected them. I paid the laborer who was to install them and told him to return home. The installation was not going to happen.

o. On 11/1/2019, Mrs. Gardner chose a $42,254.00 set of "Renewal by Anderson" wood and aluminum covered exterior windows to be installed. These cost approximately $34,000.00 more than the vinyl windows. Mrs. Gardner demanded the windows from Renewal by Anderson at no extra cost. The vinyl windows that were ordered-according to the signed contract-are now in storage. They cannot be returned because they are custom-made windows. We ate the cost.

## AIR-CONDITIONING AND HEATING UNITS

p. As an example of my willingness to deliver a quality remodeling of the Property and accommodate Mrs. Gardner, I recommended that she install not one A/C unit (as the contract specified), but two units because of the size of the house. I was willing to do this at no extra cost.

## LANDSCAPING

q. Landscaping was completed for both the front and back yards. I took what was previously just dirt and transformed it into attractive grounds for the property. Shortly, after completion, Mrs. Gardner's 4 dogs soon urinated and trashed our work. It was a never-ending pattern of being stymied at every attempt to accommodate the client. My level of frustration had never reached such heights.

8. I absolutely dispute Mrs. Gardner's contention that I (or any of my former workers) "intimidated" her as alleged in her Adversary Complaint for any payment(s) owed under the contract. The payment schedule in the contract that she signed was clear in terms of when payment was to be made.

9. Green Bay Builders, Inc. ended up going under during the Gardner project and we could not continue with working on the subject project.

10. I also DID NOT use any money from this project to buy a property in Santa Clara as further alleged in the adversary complaint. It's a baseless allegation.

Objection to Claim Number 7; Declaration of Debtor in Support - 9

Case: 20-50469    Doc# 71    Filed: 07/30/20    Entered: 07/30/20 15:57:28    Page 9 of 10

11. I accordingly disagree and object to Claim Number 7 in any amount above $80,000.00.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2020, at San Jose, California.

*/s/ Mordechai Koka*
Mordechai Koka
Debtor in possession