SELWYN D. WHITEHEAD, ESQ. (CSB No. 236391)
**LAW OFFICES OF SELWYN D. WHITEHEAD**
4650 Scotia Avenue
Oakland, CA 94605
Tel: (888) 599-0504
Email: selwyn@selwynwhitehead.com

Attorney for Creditors
JEFF and AMALIA HANNA

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>MORDECHAI KOKA,<br><br>Debtor/Debtor-in-Possession | Bk. No. 20-50469-SLJ<br><br>Chapter 11<br><br>**CREDITORS JEFF AND AMALIA HANNA'S RESPONSE IN OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 9**<br><br>Date: October 21, 2020<br>Time: 2:00 p.m.<br>Place: Hearing to be conducted by video conference<br>Judge: The Hon. Stephen L. Johnson |

Creditors Jeff Hanna and Amalia Hanna ("Creditors" or "the Hannas") hereby oppose the Objection to Proof of Claim No. 9 ("Objection") [Dkt. No. 73] filed by Debtor-in-Possession Mordechai Koka ("Debtor").

## I. INTRODUCTION

Debtor objects to Proof of Claim No. 9 on the grounds that (1) it was filed 24 days after the bar date; (2) even if deemed timely filed, the amount claimed is excessive and unjustifiable; and (3) the Hannas are not creditors of Debtor because the contract that forms the basis of the parties' dispute is with the corporation of which Debtor is president, principal officer, and shareholder.


Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 1 of 11

For the reasons set forth below, including the gamesmanship, lack of candor and overall bad faith exhibited by Debtor's counsel towards Creditors and Creditors' counsel in response to Creditors' good faith attempts to work with Debtor overcome the harm to Creditors caused by Debtor's intentionally delayed notice to Creditors that Debtor had filed for bankruptcy, which said harm was further exacerbated by the Debtor's intentionally misleading the Creditors concerning the need to timely file a proof of claim; Creditors respectfully request that the Court deem Proof of Claim No. 9 timely filed and allowed in the full amount of $147,611.24.

## II. STATEMENT OF PERTINENT FACTS

### A. The Underlying Basis of Creditors' Claim

In or about July 2019, Creditors and Debtor's company, Green Bay Builders, Inc. ("GBB"), which he affirms as his alter ego on line 4 of his Voluntary Petition (see Dkt. No. 1), entered into an agreement and two addenda (collectively "Agreement") that called for GBB to remodel their residence ("Project") located in Campbell, California ("Property").[1] Of the total $300,000.00 contract price, Creditors remitted to GBB $80,000.00 as a down payment. (Exh. 1, agreement and addenda; Hanna Decl. ¶ 2[2]). Work on the Project commenced after signing of the agreement and addenda, but ceased on or about October 4, 2019 when an inspector with the City of Campbell's Building Inspection Division issued a stop work order after finding that GBB's unpermitted demolition of the Property's front walls and roof had changed what had been classified as a remodel to new construction. In a letter from dated October 8, 2019 the building inspector informed Creditors that a new permit based upon new plans had to be submitted to the City and Creditors' tenant then residing on the Property had to vacate the premises as it was now unsafe for habitation. (Exh. 3, 10/08 letter). Additionally, Creditors hired a structural engineer to evaluate the Property and GBB's work in September 2019; the inspector found numerous instances of GBB's work that exceeded the parameters of the Agreement, was not in compliance with current building codes, and/or was otherwise substandard such that much of it would have to be removed and redone. (Exh. 2, engineer site visit field notes).

---

[1] All exhibits referenced herein are attached to the Index and Appendix of Exhibits Offered in Support of Creditors' Response in Opposition.

[2] Declaration of Jeff Hanna in Support of Creditors' Response in Opposition, hereinafter referred to as "Hanna Decl."



Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 2 of 11

**B. Creditors' Settlement Negotiations With GBB**

In November 2019 and continuing into February 2020, Creditors and GBB (represented at various times by Debtor and/or GBB's purported 20 percent shareholder Ryan George), engaged in discussions on how to go about obtaining new permits and GBB's continued work on the Project. (Hanna Decl. ¶ 5). These discussions eventually gave way to Mr. George offering on Debtor's behalf as guarantor[3] and GBB's behalf to refund Creditors the amount of the down payment. On January 23, 2020, Mr. George sent Creditors a proposed settlement agreement calling for, among other things, return of the $80,000.00 in exchange for a release and withdrawal of Creditors' complaint against GBB with the California Contractors State License Board ("CSLB"). (Exh. 4, 01/23 email and attached proposed agreement). Creditors and Mr. George exchanged several revised versions of the settlement agreement, with Mr. George claiming in several communications that Debtor was determined to repay Creditors. (Exh. 4; Exh. 5, 01/25 text from Jeff Hanna; Exh. 6, 02/20 email from Mr. George; Exh. 7, 02/17 email from Mr. Hanna; Exh. 8, 02/21 email from Mr. George). Following the parties' February 21 email exchange, in which Mr. George promised to respond to Creditors regarding acceptance of final revisions, neither Mr. George nor Debtor contacted Creditors again. (Hanna Decl. ¶ 12).

**C. Discussions Between Counsel for Creditors and Debtor Regarding the Necessity of Filing a Proof of Claim**

Because Creditors where not listed on the Debtor's Creditor's Matrix filed with the court on March 10, 2020, they did not receive notice of the case from the Bankruptcy Noticing Center. As such, Creditors did not receive actual notice of Debtor's bankruptcy case filing until April 16, 2020 in s letter from Farsad Law Office, P.C., even though the letter was actually dated April 4, 2020 and misstated the date of the case filing as March 5, 2020. (Exh. 10, 04/04 letter; Park Decl. ¶¶ 3-4). In the April 4, 2020 letter, Debtor's counsel advised Creditors that they were "more than welcome to email or call our office to discuss." (Exh. 10, ¶ 2).

Creditors' counsel Julyn Park of Lockhart Park, LLC contacted Farsad Law Office on April 17, 2020, introducing herself and requesting a conference call to discuss the bankruptcy

[3] See Debtor's Amended Schedule F, wherein he specifies that the Creditors' claim is the result of a "Construction Business Related Debt for Debtor's Former Corporation/Personal Guarantee." See Dkt. No. 27, page 22 of 37.



Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 3 of 11

proceeding and Debtor's plans for paying Creditors through the bankruptcy. (Exh. 11, 04/17 email exchange; Park Decl. ¶ 4). During a conference call that included Ms. Park, another Lockhart Park attorney, Deirdre Digrande, and Farsad Law Office associate Nancy Weng, Ms. Park stated that bankruptcy law was not one of Lockhart Park's practice areas and none of Lockhart Park's attorneys was familiar with bankruptcy procedure, then posed some basic questions to Ms. Weng, which the latter answered. (Park Decl. ¶ 5).

When the discussion turned to GBB's debt to Creditors, Ms. Weng made the following statements:

- GBB had not filed for bankruptcy;
- Debtor was committed to paying off GBB's creditors separately and apart from his personal debts and, further, that Creditors could expect a "100 percent payout";
- Debtor intended to pay GBB's creditors from the sale of three residential properties that would net him approximately $1.5 million;
- Debtor would put the three properties on the market as soon as the shelter-in-place mandate was lifted or modified and the properties could be shown to potential buyers;
- **Creditors did not need to file a proof of claim**. Instead, they could send the Farsad Law Office a demand detailing their alleged damages. (Park Decl. ¶ 7; Digrande Decl. ¶ 2[4]).

When Ms. Digrande asked Ms. Weng to confirm her assertion about the proof of claim, Ms. Weng reiterated that a proof of claim would not be necessary for Creditors to receive a payout so long as her office received the requested demand before the three properties were sold. (Digrande Decl. ¶ 2; Park Decl. ¶ 8). As the conference call was wrapping up, Ms. Weng offered to send Mses. Park and Digrande a blank proof of claim form to use as an exemplar for the content of the demand. (Exh. Id.).

Ms. Park sent the requested demand ("Demand Letter") to Ms. Weng and the name

[4] Decl. of Deirdre M, Digrande in Support of Creditors' Response in Opposition, hereinafter referred to as "Digrande Decl."



Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 4 of 11

partner, Arasto Farsad, on June 17, 2020. The Demand Letter set forth Creditors' position and itemized their claimed damages in the total amount of $147,611.45. In her accompanying email, Ms. Park specifically requested that Farsad Law Office provide "an update regarding the sales of [Debtor's] properties, which you represented would supply the necessary funds to settle this matter with the Hannas." (Exh. 12, 06-17 email and letter).

Between June 19 and 29, Lockhart Park associate Leslie Hanks left several messages on Ms. Weng's voicemail inquiring whether the Demand Letter had been received and the three properties put on the market. (Park Decl. ¶ 10). Having received no response to her voicemails, Ms. Hanks emailed her questions to Ms. Weng on June 29, 2020. Ms. Weng replied the same day, stating that she had not responded because the Demand Letter was "in violation of 11 U.S.C. 362." She further advised Ms. Hanks to "check the docket for updates" and that she did not have "any new information to add at the moment." (Exh. 13, 06/29 email exchange).

On July 13, 2020, Ms. Park sent Mr. Farsad and Ms. Weng a letter summarizing the topics discussed during the April 17 conference call, the Demand Letter's contents, and Lockhart Park's June 18-29 communications, and again asked for an update on Debtor's plans for selling the properties. (Exh. 14, 06/13 letter).

Having received no response from Farsad Law Office and after consulting with an attorney specializing in bankruptcy law, Lockhart Park filed Creditors' proof of claim on August 30, 2020. (Park Decl. ¶ 12).

## III. THE COURT SHOULD DEEM THE PROOF OF CLAIM TIMELY FILED AND ALLOW THE FULL AMOUNT CLAIMED BY CREDITORS

### A. The Demand Letter Qualifies As an Informal Proof of Claim

The informal proof of claim doctrine is an equitable remedy that permits a bankruptcy court to treat a creditor's late-filed formal proof of claim as an amendment to an informal claim that evidences the creditor's intent to hold the bankruptcy estate liable for the alleged debts. To qualify as an informal proof of claim in the Ninth Circuit, the document in question must (1) "state an explicit demand showing the nature and amount of the claim against the estate" and (2) "evidence an intent to hold the debtor liable." *Spokane Law Enf't Fed. Credit Union v. Barker (In*


Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 5 of 11

*re Barker*), 839 F.3d 1189, 1196 (9th Cir. 2016), citing *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Rests., Inc*.), 754 F.2d 811, 815 (9th Cir. 1985). A document does not have to be filed with the bankruptcy court to be considered an informal proof of claim: instead, an informal proof of claim may be in the form of "demands against the estate" or correspondence between a creditor and the debtor or trustee that "demonstrate[s] an intent on the part of the creditor to assert a claim against the bankruptcy estate." *In re Town & Country Home Nursing Servs., Inc*., 963 F.2d 1146, 1153 (9th Cir. 1992); *Wright v. Holm (In re Holm*), 931 F.2d 620, 622 (9th Cir. 1991); see also *In re Anderson-Walker Industries, Inc*., 798 F.2d 1285, 1288 (9th Cir. 1986) (creditor's letter to the trustee's attorney asserting that the debtor owed it over $200,000 deemed informal proof of claim because letter unambiguously stated the existence of the debt, the amount, and the fact that it was unpaid); *In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 183 (9th Cir. 1979), *cert. denied*, 445 U.S. 915, 100 S. Ct. 1274, 63 L. Ed. 2d 598 (1980) (county's letter to trustee enclosing two tax bills and stating the assessments were against debtor was an informal proof of claim because the letter showed a demand against the estate and county's intention to hold the estate liable.)

The Demand Letter meets all the criteria articulated by the Ninth Circuit decisions to be deemed an informal proof of claim: it was transmitted to Debtor's counsel before the bar date and the amount of claimed is unambiguously stated, as is Creditors' intent to hold Debtor liable for GBB's debts. Moreover, in Chapter 11 cases, the debtor-in-possession takes on the role and function of a trustee. Thus, the Demand Letter can also be construed as a communication from Creditors to Farsad Law Office in its capacity as the "trustee's" attorney. This fact coupled with Debtor's judicial admission in Amended Schedule F that there is a disputed debt[5] to Creditors in the amount of $80,000.00 likewise satisfies the informal proof of claim requirements.

**B. Alternatively, the Late Filing of Proof of Claim No. 9 Was the Result of Excusable Neglect**

If the Demand Letter cannot be considered an informal proof of claim, it may still be deemed timely upon a showing of excusable neglect.

[5] Creditors must bring to this court's attention that in his *List of Creditors Who Have the 20 Largest Unsecured Claims Against Your and Are Not Insiders*, the Debtor did not list the debt as "Disputed."


Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 6 of 11

1. The Court Has Discretion to Allow Late-Filed Claims in Cases of Excusable Neglect

Bankruptcy Rule 3003 governs the filing of a proof of claim in chapter 9 and chapter 11 cases. Rule 3003(c) authorizes the court "for cause shown … [to] extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3). The "for cause" language of Rule 3003(c)(3) is interpreted in accordance with the provisions of Bankruptcy Rule 9006(b)(2), which in relevant part provides:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion … (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order … permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b).

*In Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), a case that involved a late-filed proof of claim, the Court held that the concept of excusable neglect can include, where appropriate, late filings caused by inadvertence, mistake, carelessness, or intervening circumstances beyond the creditor's control. Whether neglect is excusable is determined by weighing all relevant circumstances, including the following factors:

(1) the danger of prejudice to the debtor;

(2) the length of delay and its potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the creditor; and

(4) whether the creditor acted in good faith. *Id*. at 395; see also *Zilog, Inc. v. Corning (In re Zilog, Inc.*), 450 F.3d 996, 1003 (9th Cir. 2006); *Forward Progress Mgmt. Real Estate, Inc. v. The Yucca Group, LLC (In re The Yucca Group LLC*), 2012 Bankr. LEXIS 2624, 2012 WL 2086485 (B.A.P. 9th Cir., June 8, 2012).

No single circumstance in isolation compels a particular result regardless of the other factors. *Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 382 n. 2 (9th Cir. 1997); *ZiLOG,* 450 F.3d at p.


Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 7 of 11

1003.

2. All Four of the *Pioneer* Factors Favor Creditors

a. *The Late-Filed Proof of Claim Will Not Result in Prejudice to Debtor*

Debtor asserts that Creditors' untimely proof of claim has negatively impacted his plan of reorganization despite the fact that he had informal notice of the claimed amount on June 17, 2020, three weeks before the bar date. However, as the case is still in its infancy, the Debtor has yet to file a chapter 11 plan and, as such, there have been no distributions to recoup, nor any other such prejudice to the Debtor that would prohibit this court from allowing the Creditors' late filed claim.

b. *Creditors' Delay in Filing the Proof of Claim Is Negligible*

The elapsed time between the bar date and July 30, the date Proof of Claim No. 9 was filed, is a scant 24 days, which is sufficiently prompt when compared to cases with similar facts. See, *e.g., Bateman v. United States Postal Service,* 231 F.3d 1220,1225 (attorney's filing of a FRCP Rule 60(b) motion one month after the order in question was issued was "not long enough to justify denying relief").

c. *The Delay Was the Result of Lockhart Park's Mistake in Relying Upon Ms. Weng's Representations*

Lockhart Park was admittedly unversed in bankruptcy procedure, hence the reason Ms. Park took Mr. Farsad up on his offer to explain bankruptcy procedure. (See Exh. 10, 04 letter from Debtor's counsel). Unfortunately for Creditors, Ms. Weng's proffered explanations were both incomplete and misleading.[6] Although Debtor may argue that as a law firm, Lockhart Park should have been wary of relying upon the work of opposing counsel and had an obligation to do its own research, it is plain that Debtor's counsel engaged in the kind of attorney gamesmanship that is frowned upon the courts.

[6] Creditors note the conspicuous absence of a declaration by Ms. Weng or production of the numerous documents constituting communications between Farsad Law Office and Lockhart Park, in particular the Demand Letter. Debtor obviously lacks personal knowledge of the parties' communications and to the extent that he has knowledge, it is second and inadmissible hearsay.



Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 8 of 11

d. *Lockhart Park Acted in Good Faith*

There is no evidence that Lockhart Park acted in anything but good faith by providing the extensive and detailed Demand Letter, then promptly filing the proof of claim when counsel realized the misleading nature of statements made by Debtor's counsel. The same cannot be said of Debtor's counsel who took active and demonstrable steps to obfuscate, conceal, and mislead, starting with the omission of Creditors from the creditor matrix and choosing to dispute Creditors' claim when Debtor previously openly admitted that Creditors were entitled to a refund. (See Exhs. 4-8, settlement discussions between the parties).

**C. Debtor's Laches Argument Fails Because He Has Unclean Hands**

Under the present facts, Debtor cannot avail himself to a laches – or any other equitable defense – because he has "unclean hands." "The doctrine of unclean hands bars relief to a plaintiff who has violated conscience, good faith, or other equitable principles in his prior conduct, as well one who has dirtied his hands in acquiring the right presently asserted." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.,* 621 F.3d 981, 986 (9th Cir. 2010) (internal quotation and citation omitted). With respect to laches, the complained of delay in filing the proof of claim can be attributed to the misleading statements of Debtor's counsel were the actual cause of Creditors' delay in filing the proof of claim. See *Austin v. Hallmark Oil Co.* 21 Cal. 2d 718, 735, 134 P.2d 777 (1943) ("A defendant may be estopped from urging the defense of laches where his conduct contributed to the delay.").

**D. The Court Should Approve the Creditors' Claimed Amount**

Given GBB's numerous breaches of the Agreement, negligent acts and omissions, and misleading acts and statements that have caused Creditors to expend tens of thousands of dollars, the amount of $147,611.24 is not excessive. This amount is, moreover, supported by the opinion of an expert, Creditors' structural engineer, who evaluated GBB's work and recommended that most of it be removed and replaced. (See Exh. 2, engineer's site visit field notes). At the very least, Creditors are entitled to return of their $80,000.00 down payment, an amount that Debtor has admitted in writing is legitimately owed (see Exhs. 4-8, evidence of settlement negotiations) despite his assertions to the contrary in Schedule F and elsewhere in his bankruptcy petition


Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 9 of 11

papers.

## IV. CONCLUSION

For the reasons set forth above, including the gamesmanship, lack of candor, and overall bad faith exhibited by Debtor's counsel in response to Creditors' good faith attempts to ameliorate the harm caused by Debtor's intentionally delayed notice to of bankruptcy filing, which was further exacerbated by counsel for Debtor's intentionally misleading of Creditors concerning the need to timely file a proof of claim; Creditors respectfully request that the Court deem Proof of Claim No. 9 timely filed and allowed in the full amount of $147,611.24. If the court is disinclined to allow Creditors their full amount, then Creditors respectfully request that at a minimum, Debtor be ordered to refund them the sum of $80,000.00 that they paid to GBB.

Dated: October 7, 2020

LAW OFFICES OF SELWYN D. WHITEHEAD

/s/ Selwyn D. Whitehead
Selwyn D. Whitehead
Attorneys for Creditors
JEFF and AMALIA HANNA



Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 10 of 11

**CERTIFICATION**

I, Deirdre M. Digrande, am the ECF user whose identification and password are being used to file the above-titled document. In compliance with Local Rule 5005-2(c), I hereby attest that Selwyn D. Whitehead has concurred in this filing.

October 7, 2020

LOCKHART PARK, LLP

/s/ *Deirdre M. Digrande*
Deirdre M. Digrande, Esq.



Case: 20-50469 Doc# 82 Filed: 10/07/20 Entered: 10/07/20 23:44:43 Page 11 of 11