**United States Bankruptcy Court**
**Northern District of California**

In re:                                      Case No. 20-50469-SLJ

                                            Chapter 11
                                            [Subchapter V]

        MORDECHAI KOKA

_____/

**PLAN OF REORGANIZATION FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V**
**DATED May 12, 2021**

**INTRODUCTION**

        This is Debtor's Subchapter V Plan of Reorganization (the
Plan).  The Plan identifies each known creditor by name and
describes how each claim will be treated if the Plan is
confirmed.

Part 1 is a description of why debtor sought reorganization and a
description of debtor's business.

Part 2 is an identification of all claims and how those claims
will be treated under the proposed Plan.

Part 3 describes executory contracts.

Part 4 is a liquidation analysis.  It demonstrates that under the
proposed plan, creditors will receive more than they would
receive if the assets were liquidated in a Chapter 7.

Part 5 describes the means of implementation, the disbursements
and the feasibility of the Plan.

Part 6 explains the discharge and the other effects of
confirmation.

Part 7 describes the remedies in the event of default.

Part 8 are general provisions.

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 1 of
33

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots are to be received by Debtor's counsel, and objections to confirmation, if any must be filed and served, no later than _____ __, 2021. The court will hold a hearing on confirmation of the Plan on _____ ___, 2021 at __:__ AM by Zoom. Information on how to access the hearing will be available at www.canb.uscourts.gov/judge/johnson/calendar.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed, converted to a case under Chapter 7, or enforce its non-bankruptcy rights. If the Plan is consensual, Debtor will be discharged from all pre-confirmation debts (with certain exceptions) at the time of confirmation. If the Plan is non-consensual, the Debtor will receive a discharge on completion of payments under the Plan.

**PART 1: DESCRIPTION AND HISTORY OF DEBTOR**

Pre-petition, debtor was the owner of Green Bay Builders, Inc., a general contractor. Green Bay Builders, Inc. designated, as is common and permitted in the construction business, a Responsible Managing Officer (RMO) with a contractor's license to oversee jobs. Green Bay Builders, Inc. contracted with Home Advisors for paid leads. It also had internal sales people to sign up projects. Green Bay Builders, Inc. grew too fast, the RMO was not sufficiently involved and ran into performance problems with subcontractors. A multitude of change orders resulted in further disruptions. Some jobs were not completed.

The business failed. Green Bay Builders, Inc.'s license expired on June 30, 2020. Reactivation of the license will require a new qualifying individual and posting of a contractor's bond.

Debtor, distraught that Green Bay Builder's Inc.'s customer's projects were not completed, wanted to make the customers whole. Hence he was willing to sell his rental properties, one of which has almost $1,000,000 in gross equity before costs of sale and tax consequences of sale. It was acquired long before Green Bay Builders, Inc. was incorporated. From the proceeds of sale, Debtor contemplated to pay the owners for their unfinished projects to make them whole.

In the interim, two complaints were filed against Green Bay Builder's Inc. with the California Contractor State Licensing Board for violation of California Business and Professionals Code 7159, 7159.5 and 6161(b) [ relating to the issuance and form of home improvement contracts]. Further, on April 1, 2021, Debtor individually was charged with violation of California Insurance Code §11880(a) relating to representations to obtain state compensation insurance, Penal Code §484(b) for diversion of funds, California Business and Professional Code §7159.5 for accepting payment exceeding work performed and California Business and Professions Code §7159.3(a)(3) for receiving excessive down payment. Debtor denies these allegations and in particular denies any diversion of funds. Arasto Farsad, his former bankruptcy counsel, has four years of experience as a public defender and will represent Debtor in the criminal proceedings. He opines that in all likelihood, some of these charges will be dropped and none will result in any actual time served.

At the time of the filing of the petition, Debtor was and remains in the business of operating rental properties. At the time of the filing of the petition, Debtor was the owner of the following properties:

<u>1702 Paru St., Alameda, CA ("Alameda Property")</u>

| | | |
|---|---|---|
| Value | | $1,752,013 |
| 1st Deutsche Bank | 824,544 | |
| 2nd-Citibank | <u>150,000</u> | |
| Gross Equity | | $974,544 |

858 Acalanes Rd., Lafayette, CA ("Lafayette Property")

| | | |
|---|---|---|
| Value | | 1,475,332 |
| 1st – Mr. Cooper | 965,096 | |
| Gross Equity | | $510,236 |


3190 Vicky Lane, Napa, CA ("Napa Property)

| | | |
|---|---|---|
| Value | | $790,000 |
| 1st– FCI Lender Services, Inc. | $528,000 | |
| Gross Equity | | $262,000 |

The Lafayette Property consists of a house and two accessory dwelling units (ADU's). The two ADUs are occupied by Debtor's adult children. They do not pay rent. Debtor occupied the main house at the Lafayette property. However, concerned about imminent foreclosure[1], he vacated the Lafayette Property to stay with a friend, but intending to return to the Lafayette property if foreclosure could be avoided. He again resides in the Lafayette Property. Debtor, represented by Farsad Law Office, P.C. filed the herein case on March 10, 2020 to stay the non-judicial foreclosure sale of the Lafayette Property.

After the petition was filed, Debtor and his most aggressive creditor, Dale and Melissa Gardner (hereinafter "the Gardners") proceeded to mediation through the BDRP program to resolve the Gardeners' claims, including claims pending in an adversary proceeding. In the BDRP, the parties agreed that the Gardners' claim would be allowed in the amount of 1,335,810.91, but that upon payment of the sum of $450,000 by April 15, 2020 (*sic*)[2] the Gardners' proof of claim would be reduced to $450,000.[3]

Debtor sold one of his properties for $790,000 resulting in net sale proceeds of $198,502.31 which were remitted to Farsad Law Office, P.C. to be held in trust. A copy of the closing statement is attached as Exhibit 1. From said funds, pursuant to an order on Farsad Law Offices, P.C. Interim Application for Compensation, $18,670 in fees and $100.00 in expenses were withdrawn.[4] Further, per the settlement agreement with the Gardners, $50,000 was paid to them on or about Dec. 1, 2020 leaving a balance of $129,832.31.

---

[1] The Lafayette Property was $428,325 in arrears as of the petition date.
[2] The parties clearly intended that the date be April 15, 2021.
[3] The Gardners received a $50,000 payment so their current claim is $1,285,810.91.
[4] The total approved fees were $26,670 and approved costs were $100 but the Farsad law Office, P.C. was holding $8,000 in trust as a pre-petition retainer.

Debtor listed but was unable to timely sell another Property. Hence, he was in default on the terms of the settlement agreement, resulting in their $1,335,810.91 claim being allowed. Debtor disagrees that this represents actual damages sustained by the Gardners. But a deal is a deal and the Gardners claim stands. With such claim allowance, Debtor can no longer propose a 100% plan.

On April 16, 2021, one day after the deadline to pay the $450,000, the Gardners filed a creditor plan.

On April 20, 2021, The Fuller Law Firm, PC's substituted into this case and re-designated it as a Subchapter V case.

**Part 2. IDENTIFICATION AND TREATMENT OF CLAIMS**

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Estimated Arrears | Interest Rate on Arrears | Monthly Payment on Arrears |
|---|---|---|---|---|---|---|
| 1 | Mr. Cooper | 858 Acalanes Rd. Lafayette, CA ("Lafayette Property") | 5,238.29 (PITI) | 428,325.78 | 0% | Single lump sum payment within 90 days of Effective Date from new private money loan or sale of property |

Debtor will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorney's fees and late charges) without interest in a single payment due 90 days after the Effective Date from the re-finance of the Lafayette Property. In the event Debtor is unable to obtain a loan commitment within 30 days of the Effective Date and/or has not been able to secure employment earnings and family assistance that together total at least $12,000/month gross within 30 days of the Effective Date, Debtor shall list the Lafayette Property

for sale and pay the Class 1 creditor in full from the proceeds of sale. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the amount of the arrears payoff payment. The Class 1 Creditor shall retain its interest in the collateral until paid in full.

If the Lafayette Property is not sooner sold, unless Debtor is able to again refinance the Lafayette Property within 32 months after the Effective Date with sufficient cash out to pay general unsecured creditors the amounts set forth in the Plan, the Lafayette Property shall be listed for sale and sold with escrow to close within 36 months after the Effective Date of the Plan.

The Class 1 Creditor may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **The Class 1 Creditor's secured claim is impaired and entitled to vote on confirmation of the Plan.**

**Property to be Sold.**

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|-------|------------------|------------|---------------------|-----------------|
| 2 | Deutsche Bank National Trust Company, as Indenture trustee for the Impac CMB Trust Series 2007-A (Select Portfolio Servicing, Inc.) | Rental Property at 1702 Paru St., Alameda, CA | 1,752,013 | 4,662.02 (3,004.74 PI + 1,212.48 taxes + 246.08 oms + 198.62 escrow shortage |
| 3 | Citibank | Rental Property at 1702 Paru St., Alameda, CA | 1,752,013 | 625.00[5] |

Debtor will close escrow on the sale of the above collateral within 30 days after the Effective Date of the Plan, paying secured creditors from the proceeds of the sale. If the sale is pre-confirmation, Debtor will file a motion for approval of any such sale on 28 day notice to lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale.

---

[5] Estimated payment. No claim has been filed nor are statements being mailed.

Though no deficiency claim is expected, any deficiency claim is a general unsecured claim treated in Part 2.

Debtor will make the monthly payments set forth in the table above to Class 2 Creditor Deutsche Bank National Trust Company, as Indenture trustee for the Impac CMB Trust Series 2007-A (Select Portfolio Servicing, Inc.) and Class 3 Creditor Citibank pending the closing of the sale, due the 1st day of the month following the month of the Effective Date of the sale.

These creditors shall be paid in full, together with pre-petition arrears, as well as post-petition arrears, if any.

As to the Class 2 creditor, Deutsche Bank National Trust Company, as Indenture trustee for the Impac CMB Trust Series 2007-A (Select Portfolio Servicing, Inc.) and Debtor entered into a stipulation, a copy of which is attached hereto as Exhibit 2 and is incorporated herein by reference.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**Class 4 General Unsecured Creditors**

Allowed claims of general unsecured creditors shall be paid as follows:

**Pot Plan. Class 4** General unsecured Creditors will receive a pro-rata share of a fund totaling $548,653 ($512,653 if the plan is non-consensual).

Pro-rata means the entire amount of the claim divided by the entire amount owed *to Class 4 creditors* with allowed claims in this class.

Disbursements commence on the 1st day of the month after the Effective Date of the Plan and continue on the first day of the month for 36 months.

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 7 of 33

The total amount to be received by each Class 2 claimant is estimated as follows:

| Name of Creditor | Amount of Claim | Disputed Y/N | Consensual Plan Total Paid | Non-Consensual Plan Total Paid |
|---|---|---|---|---|
| State of California FTB | 399.51 | N | 139.82 | 130.65 |
| Daniel Morgan | 100,682.36 | N | 35,236.75 | 32,924.68 |
| Mai T. Hoang | 18,125 | N | 6,343.38 | 5,927.15 |
| Dale Gardner and Melissa Gardner | 1,285,810.91 | N | 450,007.33 | 420,479.99 |
| Allan Hulgan and Nicole Hulgan | 54,500 | N | 19,073.88 | 17,822.34 |
| Jeff and Amalia Hanna | 84,941.5 | N | 29,727.77 | 27,777.18 |
| CBA Collection Bureau | 2,530 | N | 885.45 | 827.35 |
| Citi Visa | 4,490 | Y | 1,571.41 | 1,468.30 |
| Credit Collection (Nationwide Ins.) | 193 | N | 67.55 | 63.11 |
| **Houzz** | **2,000** | **N** | **699.96** | **654.03** |
| **Sales Force** | **7,000** | **N** | **2,449.86** | **2,289.11** |
| **United Site Services** | **7,000** | **N** | **2,449.86** | **2,289.11** |
| **Shimon Bouganim** | **0.00** | **Y** | **0** | **0** |
| **EDD** | **0.00** | **N** | **0** | **0** |
| **Contractor's State Licensing Board** | **0.00** | **N** | **0** | **0** |
| **Steve Frankel** | **0.00** | **M** | **0** | **0** |
| **Internal Revenue Service** | | | | |
| | | | | |
| **TOTAL** | **1,567,672.28** | | **548,653.00** | **512,653.00** |

Case: 20-50469    Doc# 138    Filed: 05/13/21    Entered: 05/13/21 17:07:47    Page 8 of 33

The monthly disbursements are not the same each and every month. The monthly disbursements, depending on whether the plan is consensual or non-consensual, are set forth in Exhibit 3. In the event that any monthly disbursement is less than $10.00, Debtor (or the Subchapter V Trustee if the plan is non-consensual) may accumulate payments and make a disbursement once the accumulated payments exceed $10.00.

Creditors in Class 4 may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.


**TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a)  <u>Professional Fees</u>.


Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later. Unless this Court grant's The Fuller Law Firm, P.C.'s motion for a retainer from estate funds, The Fuller Law Firm, P.C. is to be paid from funds currently held in the Farsad Law Office, P.C. attorney client trust account representing the proceeds of sale from the Napa property. Mr. Hayes's fees are to be paid from funds currently held in the Farsad Law Office, P.C. attorney client trust account representing the proceeds of sale from the Napa property

| Name and Role of Professional | Estimated Amount |
|---|---|
| The Fuller Law Firm, P.C. | 30,000 |
| Chris Hayes, Subchapter V Trustee (for pre-confirmation services) | 20,000 |
| TOTAL | 50,000 |

The following professionals have agreed to accept payment over time as follows.  Payments will be made monthly, due on the 1st day of the month, starting the month after the Effective Date. The estimated duration of payments is set forth in the table below

| Name and Role of Professional | Estimated Amount | Monthly Payment Amount | Duration |
|---|---|---|---|
| Subchapter V Trustee (for estimated post-confirmation work if plan is non-consensual) | $36,000 | $1,000 | 36 months |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| None | |
| | |

(c)  Tax Claims.  Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full with interest (at the non-bankruptcy statutory interest rate) in a single payment due on the first day of the month after the Effective Date in accordance with section 511 of the Bankruptcy Code.  To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the single payment.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

Case: 20-50469    Doc# 138    Filed: 05/13/21    Entered: 05/13/21 17:07:47    Page 10 of 33

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | 1,670.00 | 4.00 | 1,770.20 | 1 |
| State of California FTB | 1,598.05 | 4.00 | 1,693.93 | 1 |
| TOTAL | 3,268.05 | | 3,464.13 | |

(d) <u>Security Deposits</u>

     The following creditors have security deposits:

| Tenant | Property | Amount Depo. |
|---|---|---|
| Alexander & Scott Beuscher | Alameda Property | $1,895.00 |
| Julia and Lauren Mackenzie | Alameda Property | $2,750.00 |
| Manolo & Erlina Penaranda | Alameda Property | $3,000 |

All these tenants have month to month tenancies.

     Debtor (or the Subchapter V Trustee if the Plan is non-consensual) shall pay the allowed claims entitled to priority under 11 U.S.C. §507(a)(7) at the termination of the tenancy consistent with California law.

     On the sale of the Alameda Property, the tenants shall receive notice of the sale by Debtor at least 30 days before closing. Should the buyer wish to retain any tenant(s) that wish to stay in possession, the security deposit shall be transferred to the buyer in escrow in full satisfaction of the allowed claim of the tenant(s). Should a tenant(s) wish to relocate, the allowed claim of the relocating tenant(s) for the security deposit shall be transferred to the tenant in escrow in full satisfaction of the tenant's allowed claim.

     These Section 507(a)(7) priority security deposit creditors may not take any collection action against the Debtor so long as the Debtor is not in material default under the Plan (defined in Part 7(c)). **These Priority claimants are not entitled to vote on confirmation of the Plan.**

**PART 3:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
(a) <u>Executory Contracts/Unexpired Leases Assumed</u>.  There are no executory contracts or unexpired leases to be assumed.

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 11 of 33

.

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>. There are no executory contracts or unexpired leases to be rejected.

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed rejected.

Debtor's tenants in the Alameda Property and the Lafayette Property are month to month tenants.

## PART 4. LIQUIDATION ANALYSIS

See liquidation analysis attached as Exhibit "4"

| Estimated Amount of Unsecured Claims | 1,567,672.28 |
|---|---|
| Percent Distribution to Unsecured Creditors Under Proposed Plan (if consensual) | 35.0 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan (if non-consensual) | 32.7 |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 31.4% |

## PART 5: MEANS OF IMPLEMENTATION, FEASIBILITY AND DISBURSEMENT

The plan will be funded from the following sources:

a. The funds held in the Farsad Law Offices, P.C. attorney client trust account, reduced by administrative costs as set forth in this plan;
b. The sale of the Alameda Property;
c. Rental income (though possibly only for one month) from the Alameda Property
d. Rental income from the Lafayette Property;
e. Projected salary for Debtor from prospective job;
f. Family support in case job income is less than $12,000/mo. Sam Koka, Debtor's brother, has agreed to provide Debtor up to $4,000/mo. in gifts funds to the extent necessary to allow debtor to perform under the plan and retain the Lafayette Property. Sam Koka is the owner of a retail auto repay shop in

Alameda and asserts he has sufficient income to support such a contribution.

    g.   The sale or refinance of the Lafayette Property no later than 36 months from the Effective Date;

    h.   A junior lien refinance on the Lafayette Property to cure arrears.

The details of Plan feasibility appear in Exhibit "5" attached.

Effective Date Feasibility.

As set forth in this plan, Farsad law Office, P.C. is holding $129,832.31. Debtor projects that on the Effective Date, this amount will be reduced by the following:

| | |
|---|---|
| Present balance | $129,832.31 |
| Prof. Fees- Fuller Law Firm, P.C. | 30,000 |
| Prof. Fees –Farsad Law Ofc, P.C. | 35,000 |
| Prof. Fees – Chris Hayes, Trustee | 20,000 |
| Priority tax claims | 3,464 |
| | $88,464 |
| Balance | $41,368 |

**PART 6: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a)  Discharge.

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i)  imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 13 of 33

discharged from any debt:

> (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure

(b) <u>Vesting of Property</u>. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to re-vesting upon conversion to Chapter 7 as provided in Part 7(f) below.

(c) <u>Plan Creates New Obligations</u>. The obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 7: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 7(e) below.

(b) <u>Obligations to Each Class Separate</u>. Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 7, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 14 of 33

(c) <u>Material Default Defined</u>. If Debtor fails to make any
payment, or to perform any other obligation required under the
Plan, for more than 15 days after the time specified in the Plan
for such payment or other performance, any member of a class
affected by the default may serve upon Debtor and Debtor's
attorney (if any) a written notice of Debtor's default. If
Debtor fails within 30 days after the date of service of the
notice of default either: (i) to cure the default; (ii) to obtain
from the court an extension of time to cure the default; or (iii)
to obtain from the court a determination that no default
occurred, then Debtor is in Material Default under the Plan to
all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any
member of a class affected by the default: (i) may file and serve
a motion to dismiss the case or to convert the case to Chapter 7;
or (ii) without further order of the court has relief from stay
to the extent necessary, and may pursue its lawful remedies to
enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan,
any creditor whose claims are left unimpaired under the Plan may,
notwithstanding paragraphs (a), (b), (c), and (d) above,
immediately exercise all of its contractual, legal, and equitable
rights, except rights based on default of the type that need not
be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any
time converted to one under Chapter 7, property of the Debtor
shall vest in the Chapter 7 bankruptcy estate to the same extent
provided for in section 348(f) of the Bankruptcy Code upon the
conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may
exercise jurisdiction over proceedings concerning: (i) whether
Debtor is in Material Default of any Plan obligation; (ii)
whether the time for performing any Plan obligation should be
extended; (iii) adversary proceedings and contested matters
pending as of the Effective Date or specifically contemplated in
this Plan to be filed in this court (see Part 8(f)); (iv) whether
the case should be dismissed or converted to one under Chapter 7;
(v) any objections to claims; (vi) compromises of controversies
under Fed. R. Bankr. Pro. 9019; (vii) compensation of
professionals; and (viii) other questions regarding the
interpretation and enforcement of the Plan.

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 15 of
33

**PART 8: GENERAL PROVISIONS**

(a)  <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b)  <u>Disputed Claim Reserve</u>.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be distributed pro-rata among allowed claims in this class.

(c)  <u>Consensual versus Cramdown</u>.

<u>Consensual Confirmation</u>. Section 1191(a) provides that the court may confirm a plan only if all requirements of section 1129(a) other than 1129(a)(15) are met. Effectively, this requires that all impaired classes accept the plan. If the plan is a consensual plan, the debtor will make payments under the plan directly. The confirmation order in a consensual plan discharges the debtor under section 1141(d). The trustee's services are terminated upon the substantial consummation of a consensual plan. 11 U.S.C. § 1183(c)(1).

<u>Non-consensual or Cramdown Plan.</u>

A plan that is not confirmed consensually under section 1191(a) can be confirmed non-consensually under section 1191(b). Specifically, Section 1191(b) provides that a non-consensual plan may be confirmed if it does not discriminate unfairly, and the plan is fair and equitable, with respect to each class of claims or interests that is impaired and has not accepted the plan. Cramdown confirmation is possible in Subchapter V cases even if

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 16 of 33

no impaired class of creditors accept the plan. Section 1191(c) defines "fair and equitable" under a non-consensual plan. For general unsecured creditors, a plan is "fair and equitable" if, as of the effective date of the plan, it provides that (a) all of the debtor's projected disposable income for the three to five-year period (as fixed by the court) will be applied to make payments under the plan, or (b) the value of the property to be distributed under the plan during the three to five-year period is not less than the projected disposable income of the debtor. 11 U.S.C. § 1191(c)(2). The debtor is not required to satisfy the "absolute priority rule" applicable in other chapter 11 cases. Also, the plan must provide that the debtor will be able to make all plan payments or that there is a reasonable likelihood that the debtor will be able to make the payments. 11 U.S.C. § 1191(c)(3)(A). When a plan is confirmed non-consensually, under section 1192 the debtor will not receive a discharge until after the debtor has made all plan payments due within three to five years, as set by the court.


(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| None | | | | |


(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent

by first-class mail, postage prepaid and addressed as follows:

Mordechai Koka
858 Acalanes Rd.
Lafayette, CA 94549

  (h)  <u>Deadline for § 1111(b) Election</u>.  Since no claims are being crammed down to the value of collateral, there appears to be no reason for any claimant to make an election under 11 U.S.C. 1111(b).  However, creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(i) <u>Definitions and rules of construction</u>.
The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

(j) Debtor shall be permitted to pay off the plan early as long as debtor is able to pay the projected disposable income as set forth in this plan in full.


Dated: May 12, 2021      THE FULLER LAW FIRM, P.C.



                          /s/ Lars T. Fuller_____
                          Attorney for Debtor

I declare that the foregoing is true and correct.  Executed this 12th day of May. 2021



                          /s/ Mordechai Koka

Case: 20-50469   Doc# 138   Filed: 05/13/21   Entered: 05/13/21 17:07:47   Page 18 of 33

# EXHIBIT 1

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

File No.: 7028
Printed: 08/26/2020, 2:34 PM
Officer/Escrow Officer: Lynn Serchia/LS
Settlement Location:
189 Sir Francis Drake Blvd, Suite B, Greenbrae,
CA 94904

**First American Title Company**

**189 Sir Francis Drake Blvd, Suite B • Greenbrae, CA 94904**
**Phone: (415)461-7570  Fax: (866)875-4903**
**Final Settlement Statement**



Property Address: 3190 Vichy Avenue, Napa, CA 94558
Buyer: James Nead, Isabelle C. Straka
Seller: Moti Koka
Lender: CrossCountry Mortgage, LLC ISAOA as their respective interests may appear
Settlement Date: 08/24/2020
Disbursement Date: 08/24/2020

| | Seller | |
|---|---|---|
| **Description** | **Debit** | **Credit** |
| **Financial** | | |
| Sale Price | | 790,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes  07/01/20 to 08/24/20  @$6,004.80/semi | 1,768.08 | |
| Credit  buyer for 50% of rate lock extension | 2,100.00 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Notary Fee S | 100.00 | |
| Notary Fee S  to First American Title Company | | |
| | | |
| **Commission** | | |
| Real Estate Commission  to Castlemont Realty | 11,850.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| County Documentary Transfer Tax  to Napa County Recorder | 869.00 | |
| | | |
| **Payoff(s) and Payment(s)** | | |
| FCI Lender Services, Inc. | | |
| Principal Balance  to FCI Lender Services, Inc. | 528,000.00 | |
| Interest on Payoff Loan  08/14/20 to 08/26/20  @$146.670000/day  to FCI Lender Services, Inc. | 1,906.71 | |
| Interest 2/1/20 to 8/14/2020  to FCI Lender Services, Inc. | 28,600.00 | |
| Late Charges  to FCI Lender Services, Inc. | 2,669.34 | |
| Unpaid Interest Due  to FCI Lender Services, Inc. | 6,160.00 | |
| Recording Fee  to FCI Lender Services, Inc. | 258.00 | |
| | | |
| **Miscellaneous** | | |
| Seller's Proceeds  to Farsad Law Office, P.C. | 198,502.31 | |
| Tax Installment:  to Napa County Tax Collector | 6,392.06 | |
| Tax Installment - Supplemental  to Napa County Tax Collector | 824.50 | |

This is a summary of the closing transaction prepared by First American Title Company. This document is not intended to replace the Closing Disclosure form.

Copyright 2015 American Land Title Association.
All rights reserved

File # 7028
Printed on 08/26/2020 at 2:34 PM

Case: 20-50469    Doc# 138    Filed: 05/13/21    Entered: 05/13/21 17:07:47    Page 20 of 33

| Description | Seller | |
| --- | --- | --- |
| | Debit | Credit |
| | | |
| **Subtotals** | 790,000.00 | 790,000.00 |
| Due From/To Seller | | |
| Totals | 790,000.00 | 790,000.00 |

This is a summary of the closing transaction prepared by First American Title Company. This document is not intended to replace the Closing Disclosure form.

Copyright 2015 American Land Title Association.
All rights reserved

File #          7028
Printed on 08/26/2020 at 2:34 PM

# EXHIBIT 2

1    JaVonne M. Phillips, Esq. SBN 187474
     Kelly Kaufmann, Esq. SBN 249195
2    **McCarthy & Holthus, LLP**
3    411 Ivy Street
     San Diego, CA 92101
4    Phone (877) 369-6122
     Fax (619) 685-4811
5

6    Attorneys for Secured Creditor, Deutsche Bank National Trust Company, as Indenture Trustee
     for the Impac CMB Trust Series 2007-A, its assignees and/or successors, by and through its
7    servicing agent Select Portfolio Servicing, Inc.

8

9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13
     In re:                          ) Case No. 20-50469 SLJ
14                                    )
15   Mordechai Koka,                  )
     aka Moti Koka,                   ) Chapter 11
16   dba Green Bay Builders, Inc.,    )
                                      )
17         Debtor.                    ) **STIPULATION FOR PLAN TREATMENT**
18                                    ) **ON FIRST LIEN SECURED BY REAL**
                                      ) **PROPERTY LOCATED AT 1702 PARU**
19                                    ) **STREET, ALAMEDA, CA 94501**
                                      )
20                                    ) [no hearing]
21                                    )
                                      )
22                                    )
                                      )
23                                    )
                                      ) Judge: Stephen  L. Johnson
24                                    )
                                      )
25                                    )
                                      )
26                                    )
                                      )
27                                    )

28

                                 1

Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A, its assignees and/or successors, by and through its servicing agent Select Portfolio Servicing, Inc ("Secured Creditor") and Debtor, Mordechai Koka ("Debtor"), by and through their attorneys of record, now enter into the below stipulation agreeing to plan treatment for the real property commonly known as 1702 Paru Street, Alameda, CA 94501.

## RECITALS

A. On or about 11/21/2003, Debtor, for valuable consideration, made, executed and delivered a Note secured by a First Deed of Trust both in the amount of $672,000.00 on the property commonly known as 1702 Paru Street, Alameda, CA 94501 ("Subject Property").

B. On 3/10/2020, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Northern District of California.

C. The parties have conferred and agreed upon treatment of Secured Creditor's first lien secured by the Subject Property for purposes of Debtor's Chapter 11 Plan and those terms are reflected below.

## THE PARTIES HERETO STIPULATE AND AGREE AS FOLLOWS:

1. Secured Creditor holds a fully secured first lien on the Subject Property.

2. **Beginning 4/1/2020, Debtor agrees to make contractual payments to Secured Creditor, including the escrow payment, currently in the amount of $4,662.02** (principal and interest $3,004.74 + taxes $1,212.58 + insurance $246.08 + escrow shortage $198.62). These payments will be applied contractually to the loan as they are received. Debtors is aware this payment may fluctuate and are responsible for confirming that payment with Secured Creditor as needed.

3. In addition to the current contractual payment due, within thirty (30) days of the effective date, Debtor agrees to cure any and all contractual loan arrears.

///

2

Stipulation for Plan Treatment, Case No. 20-50469 SLJ
File No. CA-20-161454

Case: 20-50469   Doc# 38   Filed: 04/27/20   Entered: 04/27/20 11:45:30   Page 2 of 4

1      4.  Payments shall be made directly to Secured Creditor, Select Portfolio Servicing, Inc.,

2           Attn: Remittance Processing, P.O. Box 65450, Salt Lake City, UT 84165-0450, with

3           reference to the last four digits of the Loan Number 1159, or as otherwise directed.

4      5.  Secured Creditor will continue to impound this loan for taxes and insurance related to the

5           Subject Property and charge a monthly escrow payment in addition to Debtor's monthly

6           principal and interest payment.  Debtor is obligated to make the monthly escrow payment

7           in addition to principal and interest payments.  The current escrow payment is $1,212.58

8           for taxes and $246.08 for insurance.  Debtor understands that these amounts may

9           fluctuate.

10     6.  All escrow advances will remain due and owing on the loan and will be repaid through

11          the escrow account on this loan.

12     7.  All other terms of the Deed of Trust and Note not directly altered by this agreement will

13          remain in full force and effect.

14     8.  Secured Creditor has relief from the automatic stay as to the Subject Property upon

15          confirmation of Debtor's Chapter 11 Plan.

16     9.  In the event of a default on payments to Secured Creditor under the terms of this

17          stipulation *prior to the entry of the confirmation order*, Secured Creditor shall notify

18          Debtor and Debtor's counsel of the default in writing.  Debtor shall have ten (10)

19          calendar days from the date of the written notification to cure the default, and Debtor

20          agrees to pay an additional $100.00 for attorneys' fees for each occurrence.  If Debtor

21          fails to cure the default, Secured Creditor may lodge a declaration of default and order

22          terminating the automatic stay and include that the 14-day stay as provided in FRBP

23          4001(a)(3) is waived.  Upon entry of the order the automatic stay shall be terminated and

24          extinguished for purposes of allowing Secured Creditor to notice, proceed with, and hold

25          a trustee's sale of the Subject Property, pursuant to applicable state law and without

26          further Court Order or proceeding being necessary, including any action necessary to

27          obtain complete possession of the Subject Property, including unlawful detainer.

28     ///

3

Stipulation for Plan Treatment, Case No. 20-50469 SLJ
File No. CA-20-161454

1  10. In the event of a default on payments to Secured Creditor under the terms of this
2      stipulation *after the entry of the confirmation order*, Secured Creditor shall may proceed
3      pursuant to the terms of the underlying Note and Deed of Trust, and state and federal law,
4      to obtain complete possession of the Subject Property, including unlawful detainer,
5      without further Court Order or proceeding being necessary. Any and all default
6      provisions included in Debtor's Chapter 11 Plan are not applicable to Secured Creditor
7      with regard to the Subject Property, and Secured Creditor is only bound by the terms
8      included in this stipulation.

9  11. Debtor agrees to incorporate the above agreed terms of lien treatment into any and all
10     existing and future proposed Chapter 11 Plans and, if any terms in Debtor's Chapter 11
11     Plan conflict with the terms of this stipulation the terms of this stipulation will control. In
12     the event that Debtor's Chapter 11 Plan does not reflect the language of this stipulation it
13     will be incorporated into the confirmation order through exact language, attachment of a
14     copy of the stipulation, or by reference of the filed stipulation with docket number.

15 12. Secured Creditor agrees to vote for Debtor's Chapter 11 Plan provided it reflects the
16     agreed plan treatment contained in this stipulation, or the terms of the stipulation are
17     incorporated into the confirmation order through exact language, attachment of a copy of
18     the stipulation, or by reference of the filed stipulation with docket number.

19 13. If this Chapter 11 bankruptcy is dismissed or converted to another chapter under title 11,
20     Secured Creditor's lien shall remain a valid secured lien for the full amount due under the
21     original Promissory Note and all payments received under this agreement will be applied
22     contractually under the original terms of the Deed of Trust and original Promissory Note.

23 IT IS SO STIPULATED:
24 Dated: _4 - 14 - 2 0_
25                                          Arasto Farsad, Esq.
26                                          Attorney for Debtor
26 Dated: _4/14/2020_                      /s/ Kelly Kaufmann
27                                          Kelly Kaufmann, Esq.
28                                          McCarthy & Holthus, LLP,
                                            Attorneys for Secured Creditor

4

# EXHIBIT 3

MORDECHAI KOKA
(Distribution to General Unsecured Creditors)

If Consensual

| | Total Disb. | Mo 1 | Mo. 2 | Mo. 3-5 | Mo. 6-35 | Mo. 36 |
|---|---|---|---|---|---|---|
| State of CA (POC 1) | 399.51 | 139.82 | 9.17 | 58.61 | 0.25 | 0.25 | 63.62 |
| IRS (POC 2) All priority | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Morgan (POC 3) | 100,682.36 | 35,236.75 | 2,312.07 | 14,771.55 | 64.22 | 64.22 | 16,033.74 |
| Hoang (POC 6) | 18,125.00 | 6,343.38 | 416.22 | 2,659.20 | 11.56 | 11.56 | 2,886.42 |
| Gardner (POC 7) | 1,285,810.91 | 450,007.33 | 29,527.34 | 188,646.90 | 820.20 | 820.20 | 204,766.36 |
| Hulgan (POC 8) | 54,500.00 | 19,073.88 | 1,251.54 | 7,995.93 | 34.76 | 34.76 | 8,679.17 |
| Hanna (POC 9) | 84,941.50 | 29,727.77 | 1,950.60 | 12,462.14 | 54.18 | 54.18 | 13,527.00 |
| CBA Collection Bureau | 2,530.00 | 885.45 | 58.10 | 371.19 | 1.61 | 1.61 | 402.90 |
| Citi Visa | 4,490.00 | 1,571.41 | 103.11 | 658.75 | 2.86 | 2.86 | 715.04 |
| Credit Collection (Nationwide Ins) | 193.00 | 67.55 | 4.43 | 28.32 | 0.12 | 0.12 | 30.74 |
| Houzz | 2,000.00 | 699.96 | 45.93 | 293.43 | 1.28 | 1.28 | 318.50 |
| Sales Force | 7,000.00 | 2,449.86 | 160.75 | 1,027.00 | 4.47 | 4.47 | 1,114.76 |
| United Site Services | 7,000.00 | 2,449.86 | 160.75 | 1,027.00 | 4.47 | 4.47 | 1,114.76 |
| Subtotal | 1,567,672.28 | 548,653.00 | 36,000.00 | 230,000.00 | 1,000.00 | 1,000.00 | 249,653.00 |
| | | | | | | | |
| Total Disbursement for period | | $548,653.00 | $36,000.00 | $230,000.00 | $1,000.00 | $1,000.00 | $249,653.00 |

If Non-consensual

| | Tot Disb. | Mo 1 | Mo. 2 | Mo. 3-5 | Mo. 6-35 | Mo. 36 |
|---|---|---|---|---|---|---|
| State of CA (POC 1) | 399.51 | 130.65 | 8.92 | 58.36 | 0.00 | 0.00 | 63.37 |
| IRS (POC 2) All priority | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Morgan (POC 3) | 100,682.36 | 32,924.68 | 2,247.84 | 14,707.32 | 0.00 | 0.00 | 15,969.52 |
| Hoang (POC 6) | 18,125.00 | 5,927.15 | 404.66 | 2,647.64 | 0.00 | 0.00 | 2,874.86 |
| Gardner (POC 7) | 1,285,810.91 | 420,479.99 | 28,707.14 | 187,826.69 | 0.00 | 0.00 | 203,946.16 |
| Hulgan (POC 8) | 54,500.00 | 17,822.34 | 1,216.77 | 7,961.17 | 0.00 | 0.00 | 8,644.40 |
| Hanna (POC 9) | 84,941.50 | 27,777.18 | 1,896.41 | 12,407.95 | 0.00 | 0.00 | 13,472.82 |
| CBA Collection Bureau | 2,530.00 | 827.35 | 56.49 | 369.57 | 0.00 | 0.00 | 401.29 |
| Citi Visa | 4,490.00 | 1,468.30 | 100.24 | 655.88 | 0.00 | 0.00 | 712.17 |
| Credit Collection (Nationwide Ins) | 193.00 | 63.11 | 4.31 | 28.19 | 0.00 | 0.00 | 30.61 |
| Houzz | 2,000.00 | 654.03 | 44.65 | 292.15 | 0.00 | 0.00 | 317.23 |
| Sales Force | 7,000.00 | 2,289.11 | 156.28 | 1,022.54 | 0.00 | 0.00 | 1,110.29 |
| United Site Services | 7,000.00 | 2,289.11 | 156.28 | 1,022.54 | 0.00 | 0.00 | 1,110.29 |
| Subtotal | 1,567,672.28 | 512,653.00 | 35,000.00 | 229,000.00 | 0.00 | 0.00 | 248,653.00 |
| | | | | | | | |
| Total Disbursement for period | | $512,653.00 | $35,000.00 | $229,000.00 | $0.00 | $0.00 | $248,653.00 |

# EXHIBIT 4

| Asset | | | Equity | Exemption | Net Equity |
|---|---|---|---|---|---|
| **1702 Paru St. Alameda, CA (Paid 405K in 2000;** | | 1752013 | | | |
| Cost of sale at 6% | 105120.8 | | | | |
| | | 1646892 | | | |
| 1st -Deutsche Bank (SPS) {Arrears $4662] | 824544 | | | | |
| 2nd - Citi | 150,000 | | | | |
| | | 974544 | | | |
| Equity before tax conseq | | 672348.2 | | | |
| Tax consequences | | 417060 | | | |
| Equity after Tax Consequences | | | 255,288 | 0 | 255288 |
| | | | | | |
| **858 Acalanes Rd Lafayette ; Paid 850K 2008-9** | | 1475332 | | | |
| Cost of sale @ 6% | 88519.92 | | | | |
| | | 1386812 | | | |
| 1st-Mr. Cooper (nationstar) [Arrears $428,325.78] | 965095.6 | | | | |
| Equity before tax conseq | | 421716.4 | | | |
|  Tax consequences | | 98371 | | | |
| Equity after tax consequences | | | 323345.44 | 75000 | 248345.4 |
| | | | | | |
| | | | | | |
| Proceeds from close of escrow on 3190 Vicky Ave., Napa | | | | 0 | 179832.3 |
| (reduced by  approved fees of $18,670; not reduced | | | | | |
| by $50,000 paid to Gardners in settlement) | | | | | |
| **REAL PROPERTY TOTAL** | | | | | **683465.7** |
| | | | | | |
| 2013 Mercedes Benz | | | 17000 | 3325 | 13675 |
| 2004 Mercedes Benz S430 | | | 3000 | 0 | 3000 |
| 2006 Ford F150 | | | 3000 | 0 | 3000 |
| Personal Property | | | 3500 | 3500 | 0 |
| Electronics | | | 1500 | 1500 | 0 |
| Antique Clock | | | 300 | 300 | 0 |
| Used Clothing | | | 1500 | 1500 | 0 |
| Garden tools | | | 600 | 600 | 0 |
| Cash | | | 150 | 0 | 150 |
| WFB pers accts (x6036; x9361; x7357 | | | 7254 | 0 | 7254 |
| WFB Bus checking x005; x9886) | | | 3794 | 0 | 3794 |
| GreenBay Builders | | | 1 | 0 | 1 |
| Office equipment | | | 450 | 0 | 450 |
| Constructin tools | | | 1500 | 0 | 1500 |
| construction supplies | | | 300 | 0 | 300 |
| **PERSONAL PROPERTY TOTAL** | | | | | **33124** |
| | | | | | |
| **TOTAL** | | | | | **716589.7** |
| Priority claims: | | | | | |
|  IRS | | | | 1670 | |
|  FTB | | | | 1598.05 | |
| Chapter 7 Trustee Fees | | | | 126459.04 | |
|  (Gross Est. $1,752,013 + 1,475,332 + 179,832 + 33,124 = 3,432,201) | | | | | |

Chapter 7 Trustee professional fees                                                    10000
Professional fees- Farsad Law Ofc (fees since prior order for comp                      35000
for main case, AP and representation in criminal proceeding)
Professional Fees est. - The Fuller Law Firm, P.C.                                      30000
Subchapter V Trustee Fees est (pre-confirmation)                                        20000

                                                                                     224727.1
**TOTAL NET PROCEEDS**                                                                **491862.7**

**Calculation of Tax Consequences of Sale**
**1702 Paru St. Alameda, CA (Paid 405K in 2000;**

Value                                                    1752013
Cost of sale at 6%                              105120.8
                                                        1646892
Purchase Price                                          405,000
Gain                                                  1,241,892
 Depreciation recapture                                  26,389
Total taxable gain and depreciation                   1,268,281
 California Capital gain (13.3%)                        168681.4
 Federal Capital Gain (20%)                            248378.4
Total taxable gain and depreciation                                417059.85

**858 Acalanes Rd Lafayette ; Paid 850K 2008-9**            1475332
Cost of sale @ 6%                              88519.92
                                                        1386812
Purchase Price                                           850000
Net Proceeds                                           536812.1
Improvements                                                  0
Net gain                                               536812.1
Exclusion                                                250000
Gain                                                   286812.1
Depreciation Recapture                                     8598
Total amount subject to tax                            295410.1
 California Capital gain (13.3%)                        39289.54
 Federal Capital Gain (20%)                            59082.02
Total tax                                              98371.56

**3190 Vichy Ave. Napa, CA (Paid 700K)**

Sales Price                                     790000
Costs of sale                                    11850
Net Proceeds                                    778150
Purchase Price                                  700000
Gain                                             78150
 California Capital gain (13.3%)               10393.95
 Federal Capital Gain (20%)                      15630
Total tax consequences                                  26023.95

# EXHIBIT 5

| | Mo. 1 | Month 2 | Mo. 3-5 | Month 6-35 | Month 36 | |
|---|---|---|---|---|---|---|
| Rental income - Alameda Property | $7,645.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Projected rental inc. from children occupying 2 ADU's on Lafayette | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | |
| Family assistance | $0.00 | | $0.00 | $2,000.00 | $2,000.00 | |
| Projected earned income | $0.00 | $0.00 | | $10,000.00 | $10,000.00 | |
| Estimated taxes (20%) | $0.00 | $0.00 | $0.00 | -$2,000.00 | -$2,000.00 | |
| Income before sales proceeds | $11,145.00 | $3,500.00 | $3,500.00 | $13,500.00 | $13,500.00 | |
| | | | | | | |
| Living Expenses before mortgage | | | | | | |
| Utilities | $704.00 | $704.00 | $704.00 | $704.00 | $704.00 | |
| Food and Supplies | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | |
| Auto Ins. | $324.00 | $324.00 | $324.00 | $324.00 | $324.00 | |
| Transportaion | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | |
| Clothing, Personal care and Entertainment | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | |
| Sub-total Living Expense Before Mortgages | $2,828.00 | $2,828.00 | $2,828.00 | $2,828.00 | $2,828.00 | |
| Projected Disposable Inc. before mortgage | $8,317.00 | $672.00 | $672.00 | $10,672.00 | $10,672.00 | |
| 1st Note- Mr. Cooper See Class 1 below | | | | | | |
| 2nd New note est. pmt | $0.00 | $0.00 | $0.00 | $4,125.00 | $4,125.00 | |
| Disposable Income | $8,317.00 | $672.00 | $672.00 | $6,547.00 | $6,547.00 | |
| | | | | | | |
| Vichy Ave. (Present bal $129,832.21 - $30K to Debtor's atty if appr | $41,368.00 | | | | | |
| by Court less 35K to Farsad Law if approved by Court, less | | | | | | |
| 20K to Subchp V Ttee if approved by the Court - $3,464 Priority) | | | | | | |
| Sale of Alameda Property (net of $417,060 Inc tax) | | $255,288.00 | | | | |
| Sale of Lafayette Prop (net of $98,371 Inc tax but before homestead) | | | | | $323,345.00 | |
| **TOTAL DISPOSABLE INCOME** | **$49,685.00** | **$255,960.00** | **$672.00** | **$6,547.00** | **$329,892.00** | |
| | | | | | | |
| Class 1 - Mr. Cooper (Lafayette) | $5,238.20 | $5,238.20 | $5,238.20 | $5,238.20 | $5,238.20 | |
| Class 2 Deutsche Bank | $4,662.02 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Class 3 -Citibank | $625.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| **REMAINING DISPOSABLE INCOME** | **$39,159.78** | **$250,721.80** | **-$4,566.20** | **$1,308.80** | **$324,653.80** | |
| If Consensual | | | | | | |
| Class 4 - General unsecured | $36,000.00 | $230,000.00 | $1,000.00 | $1,000.00 | $249,653.00 | 548653 |
| Feasibility | $3,159.78 | $20,721.80 | -$5,566.20 | $308.80 | $75,000.80 | |
| | | | | | | |
| If non-consensual | | | | | | |
| Class 4 General Unsecured | $35,000.00 | $229,000.00 | $0.00 | $0.00 | $248,653.00 | 512653 |
| Subchapter V Trustee | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | |
| Feasibility | $3,159.78 | $20,721.80 | -$5,566.20 | $308.80 | $75,000.80 | |

Note: refi of Lafayette will pre-pay 1st mtg for months 3-5 unless debtor employed or debtor can pay from Effective Day Cash

Exhibit 5