**LAW OFFICES OF CRAIG V. WINSLOW**
CRAIG V. WINSLOW, Cal. Bar No. 73196
630 N. San Mateo Drive
San Mateo, California 94401
Telephone: (650) 347-5445
Facsimile: (650) 347-4411
Email: craig@cvwlaw.com

**MEYER LAW GROUP LLP**
  A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone: (415) 765-1588
Facsimile: (415) 762-5277
Email: brent@meyerllp.com

Attorneys for Creditors
DALE GARDNER and
MELISSA GARDNER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MORDECHAI KOKA,<br><br>Debtor. | BK Case No.: 20-50469-SLJ<br><br>Chapter 11<br><br>**OBJECTION TO *EX-PARTE* APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF FARSAD LAW OFFICE, P.C. AS SPECIAL COUNSEL**<br><br>Date: [NONE SCHEDULED]<br>Time:<br>Location: Telephonic / Videoconference<br>Judge: Honorable Stephen L. Johnson |

BK CASE NO. 20-50469-SLJ
- 1 -
OBJECTION TO *EX-PARTE* APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF FARSAD LAW OFFICE, P.C. AS SPECIAL COUNSEL

Case: 20-50469    Doc# 154    Filed: 06/01/21    Entered: 06/01/21 23:04:04    Page 1 of 8

Creditors Dale Gardener and Melissa Gardner ("Creditors") hereby object (the "Objection") to the *Ex-Parte Application for Order Authorizing Employment of Farsad Law Office, P.C. as Special Counsel* (the "Application") [Dkt. No. 153] filed by debtor Mordechai Koka ("Debtor") in the above-captioned matter.

This Objection is based on the supporting Memorandum of Points and Authorities set forth below, all other pleadings on file herein, and such other and further arguments and authority as may be presented at the hearing on the Application (if any).

## I. LEGAL ARGUMENT

### A. The Application for Employment of Farsad Law Office P.C. is Premature

On May 25, 2021, Creditors filed two companion Objections and Motions, which are both set for hearing on June 22, 2021 at 2:00 p.m. before this Court, and resolution of both matters could have a legitimate impact on this Bankruptcy Case and determine whether Debtor will remain in possession of the estate.

*First*, Creditors filed an *Objection to Designation Under Sub-Chapter V Pursuant to Federal Rule of Bankruptcy Procedure 1020(b), and in the Alternative, Motion to: (1) Remove Debtor in Possession Pursuant to 11 U.S.C. § 1185; (2) Convert Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b)* (the "Objection to Sub-Chapter V") [Dkt. No. 143].

In the Objection to Sub-Chapter V, Creditors assert that Debtor is ineligible to proceed under Sub-Chapter V, and in the alternative, request that Debtor should be removed for cause pursuant to section 1185 of the Bankruptcy Code or the Bankruptcy Case should be converted pursuant to section 1112(b) of the Bankruptcy Code. In support of the relief requested therein, Creditors present substantial evidence regarding the fraud, dishonesty, incompetence, or gross mismanagement of the affairs of Debtor. See Dkt. No. 143.

*Second*, Creditors filed an *Objection to Debtor's Claim of Homestead Exemption, and in the Alternative, Motion to Transfer Venue to Oakland Division* (the "Objection to Homestead Exemption") [Dkt. No. 145].

In the Objection to Homestead Objection, Creditors provide circumstantial evidence strongly suggesting that Debtor, perhaps on the advice of counsel, strategically elected to

"temporarily" reside in the Sunnyvale Property for slightly more than 90 days to artificially manufacturer venue for this Bankruptcy Case in the San Jose Division. See Dkt. No. 145. If true, this persuasive evidence is demonstrative of the bad-faith conduct of Debtor, and could impact his ability to remain in possession of the estate.

As such, until this Court resolves the Objection to Sub-Chapter V and the Objection to Homestead Exemption, the Court should decline to adjudicate the propriety of the Application, as temporary employment of Applicant will unnecessarily increase administrative claims of the estate to the detriment of creditors.

**B.     Debtor Cannot Demonstrate that Employment is Reasonably Necessary**

In the Application, Debtor asserts that he seeks to employ Applicant under section 327 of the Bankruptcy Code, but does not specify the particular sub-section. See Dkt. No. 153, ¶ 2. However, given that Section III of the Application devotes four paragraphs to the purported disinterestedness of Applicant (see Dkt. No. 153, ¶ 4(a)-(d)), it appears that Debtor seeks to employ Applicant under section 327(a) of the Bankruptcy Code, and as such, Creditors will limit their objections to the Application accordingly.

Pursuant to section 327(a), "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

"When ruling on an employment application under [section] 327(a), the Court must decide 'whether it is reasonably necessary during the administration of the estate' to employ the proposed professional person." 3 COLLIER ON BANKRUPTCY ¶ 327.02[1] (16th ed.) (*citing* In re Computer Learning Ctrs., Inc., 272 B.R. 897 (Bankr. E.D. Va. 2001); In re Kingsway Purchasing, 69 B.R. 713 (Bankr. E.D. Mich. 1987); In re The Bible Speaks, 67 B.R. 426 (Bankr. D. Mass. 1986); see also In re Jarvis, 53 F.3d 416 (1st Cir. 1995) (when dealing with a *nunc pro tunc* application for employment, court should in the first instance determine whether the services were reasonably necessary).

Further, employment cannot be "reasonably necessary" unless it would benefit the estate.

See COLLIER ON BANKRUPTCY ¶ 327.02[1] (16th ed.) ("[t]he determinative question in approving the employment of a professional person is whether it is reasonably necessary during the administration of the estate to have professional persons, such as attorneys or accountants, employed. *An attorney for a trustee should not be employed unless the attorney's special professional skills are necessary for the protection and benefit of the estate* or will further the aims of the case") (emphasis added).

Here, there are significant questions whether retention of Applicant to represent Debtor *personally* in the Criminal Proceedings will produce any legitimate or material benefit to estate.

First, in the Application, "Debtor contends that his defense [in the Criminal Proceeding] is beneficial to the estate [because] Debtor has secured employment commencing in June 2021 earning $15,000 / month [and] [s]uch income is necessary to fund any non-liquidating plan and to the benefit of creditors of the estate." See Dkt. No. 153, ¶ 7.

Unfortunately, however, this statement is incorrect. Pursuant to any plan of reorganization, the amount that Debtor is required to pay creditors is based on the best interests of creditors (11 U.S.C. § 1129(a)(7)), in which conservates estimates of non-exempt estate assets exceed $993,362, and as such, will not be based on Debtor's disposable income that is received during the next 3 years (11 U.S.C. § 1191(c)(2)(A)). See Dkt. No. 114, Exh. 3. The possibility of receiving disposable income (or any employment income) will not be the baseline or standard to determine what amount Debtor is required be pay creditors of the estate.

Second, in the Application, Debtor failed to disclose the actual source of his alleged employment income. However, during the Section 341(a) First Meeting of Creditors held earlier today (on June 1, 2021), Debtor identified that his employment income will be based on management and supervision of an owner-build construction project in San Francisco, which remarkably, is the same line of business that Debtor was engaged in that brought about charges in the Criminal Proceedings. As such, there are serious concerns that the State Contractors Licensing Board (CSLB) or other governmental agencies may seek to enjoin Debtor from engaging in construction-related services for some period of time (or permanently), especially considering the seriousness of the criminal charges brought by the Office of the District Attorney

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

for Santa Clara County, and remarkably, in the Application, Debtor *never* addressed how this may affect his employment or thought it was material to disclose to the Court.

<u>Finally</u>, in the Application, Debtor has not cited *any* authority that retention of special litigation counsel to represent a debtor in pending criminal proceedings is appropriate. See Dkt. No. 153.  However, "[a]lmost all courts that have addressed the issue have held that criminal defense counsel does not benefit the estate."  See <u>In re Kearney</u>, 609 B.R. 383, 387-88 (Bankr. D.N.M. 2019) (*citing* <u>In re Engel</u>, 124 F.3d 567, 574-76 (3d Cir. 1997); <u>In re Miell</u>, 2009 WL 2590515 at *4 (N.D. Iowa 2009); <u>In re French</u>, 139 B.R. 485, 490 (Bankr. D.S.D. 1992); <u>In re Gherman</u>, 101 B.R. 367, 368 (Bankr. S.D. Fla. 1989) ("a bankruptcy debtor-in-possession cannot employ and use estate funds to pay criminal counsel in connection with the defense of criminal charges arising out of prebankruptcy activities"); <u>In re Spurgeon</u>, 2008 WL 4372762, at *3 (Bankr. E.D. Tenn. 2008) (no choice but to deny the application to employ criminal defense counsel); <u>In re Stoecker</u>, 114 B.R. 965, 970 (Bankr. N.D. Ill. 1990) ("[a]s a general rule, a debtor has no right to use estate assets to fund [a] criminal defense."); <u>In re Duque</u>, 48 B.R. 965, 974-75 (S.D. Fla. 1984) (criminal prosecutions for pre-petition activity concern only the debtor personally and not the estate); <u>Wootton v. Ravkind (In re Dixon)</u>, 143 B.R. 671, 678 (Bankr. N.D. Tex. 1992) (courts in the Fifth Circuit and elsewhere have generally refused to authorize the use of estate funds for payment of criminal counsel because the expense did not benefit the estate); <u>Official Committee of Disputed Litigation Creditors v. McDonald Investments, Inc.</u>, 42 B.R. 981, 986 (N.D. Tex. 1984); <u>In re Tashof</u>, 33 B.R. 225, 227 (Bankr. D. Md. 1983); <u>In re United Church of the Ministers of God</u>, 84 B.R. 50, 55-56 (Bankr. E.D. Pa. 1988); *cf.* <u>In re Warner</u>, 141 B.R. 762, 764 (M.D. Fla. 1992) (benefit to the estate shown because criminal defense counsel challenged a $22,250,000 fine for which the estate was liable)).

Based on the foregoing, Debtor has not demonstrated that employment of Applicant to represent his *personal interests* in the Criminal Proceedings is reasonably necessary and will provide any legitimate or material benefit to the estate.  As such, the Court should decline to employ Applicant in the Criminal Proceedings to the extent that estate funds will be used to compensate Applicant for such representation.

### C. Applicant Has Not Demonstrated Disinterestedness

As set forth in Section I.B. above, Debtor seeks to employ Applicant under section 327, and given the discussion of the purported disinterestedness of Applicant, it appears that Debtor seeks to employ Applicant under section 327(a) of the Bankruptcy Code.

Pursuant to section 101(14)(C), the term "disinterested person" means a person that "does not have an interest materially adverse to the interest of the estate." 11 U.S.C. § 101(14)(C).

Further, pursuant to section 328(c), "the court may <u>deny allowance of compensation</u> for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, <u>such professional person is not a disinterested person</u>, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c) (emphasis added).

Section "328(c) is intended to cover professionals whose employment is approved by the court and whose disqualifying interest is either not initially perceived or comes into existence after the employment is approved." <u>In re Weibel, Inc.</u>, 161 B.R. 479, 482 (Bankr. N.D. Cal. 1993), *aff'd*, 176 B.R. 209 (B.A.P. 9th Cir. 1994).

However, there are unanswered questions regarding the disinterestedness of Applicant. Specifically, as set forth in the Objection to Homestead Exemption, there are legitimate questions whether Debtor artificially manufactured venue for the Bankruptcy Case in the San Jose Division, to enable Applicant to be employed as general bankruptcy counsel in the Bankruptcy Case, such that Debtor waived his homestead exemption. <u>See</u> Dkt. No. 145. Although these questions were properly raised in the Objection to Homestead Exemption, which was filed 7 days *before* the Application, Applicant strategically elected not to discuss any of these issues in the Application or the supporting declaration and failed to provide *any* relevant disclosures related to this aspect of its disinterestedness. <u>See</u> Dkt. Nos. 151, 151-1.

To the extent that Debtor is denied a lawful homestead exemption in the Lafayette Property, or the Court determines that there was a bad-faith filing with the artificial manufacturing of venue in the San Jose Division causing liability to the estate, then an actual

(and unwaivable) conflict of interest would likely exist between Debtor and Applicant, such that Applicant cannot satisfy the standard for disinterestedness under section 327(a), and the estate may have a claim against Applicant for professional negligence.

Further, there are additional questions related to the exact reason why Debtor unexpectedly terminated Applicant from representing the estate in the Bankruptcy Case, in which Applicant previously represented Debtor for more than 14 months without any prior issue. Specifically, in the supporting declaration, Applicant merely asserts that it "represented the Debtor in the herein bankruptcy case from March 10, 2020 until we determined that The Fuller Law Firm, P.C. is better positioned to substitute into this case and re-designate it as a Subchapter V case." See Dkt. No. 153-1, ¶ 5.

Unfortunately, however, there was no discussion (or disclosure) whatsoever regarding whether Debtor terminated Applicant from representing Debtor in the Bankruptcy Case for cause or other conduct, whether Applicant was strategically substituted out of the Bankruptcy Case to thwart confirmation of Creditors Chapter 11 Plan, or whether other relevant issues prevented Applicant from continuing to represent the estate in the Bankruptcy Case.

It is curious, to say the least, that Debtor believes Applicant is well-qualified to represent Debtor in the pending Adversary Proceeding and the Criminal Proceeding, but somehow is not qualified to represent Debtor in the Bankruptcy Case, although Applicant previously represented Debtor in the Bankruptcy Case for the prior 14 months. At a minimum, additional disclosure is required for the Court to properly evaluate whether Applicant is truly disinterested under the standards set forth under section 327(a), which is apparently the sub-section that Debtor seeks to employ Applicant for the Criminal Proceedings.

///
///
///
///
///
///

## II. CONCLUSION

Based on the foregoing, Creditors respectfully request that the Court enter an order sustaining the Objection in its entirety, declining to employ Applicant in the Bankruptcy Case to represent Debtor in the Criminal Proceedings and use estate funds to pay for such representation, and for such other and further relief that is just and proper under the circumstances.

Dated: June 1, 2021

**MEYER LAW GROUP LLP**

By: /s/ BRENT D. MEYER
Brent D. Meyer
Attorneys for Creditors
DALE GARDNER and
MELISSA GARDNER