**LAW OFFICES OF CRAIG V. WINSLOW**
CRAIG V. WINSLOW, Cal. Bar No. 73196
630 N. San Mateo Drive
San Mateo, California 94401
Telephone:   (650) 347-5445
Facsimile:    (650) 347-4411
Email:         craig@cvwlaw.com

**MEYER LAW GROUP LLP**
  A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone:   (415) 765-1588
Facsimile:    (415) 762-5277
Email:         brent@meyerllp.com

Attorneys for Creditors
DALE GARDNER and
MELISSA GARDNER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MORDECHAI KOKA,<br><br>Debtor. | BK Case No.: 20-50469-SLJ<br><br>Chapter 11<br><br>**REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)**<br><br>Date:         June 22, 2021<br>Time:        2:00 p.m.<br>Location:   Telephonic / Videoconference<br>Judge:       Honorable Stephen L. Johnson |

BK CASE NO. 20-50469-SLJ

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 1 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 1 of 16

Creditors Dale Gardener and Melissa Gardner ("Creditors") hereby submit this reply (the "Reply") in support of the *Objection to Designation Under Sub-Chapter V Pursuant to Federal Rule of Bankruptcy Procedure 1020(B), and in the Alternative, Motion to: (1) Remove Debtor in Possession Pursuant to 11 U.S.C. § 1185; (2) Convert Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(B)* (the "Objection") [Dkt. No. 143] filed in the above-captioned matter.

This Reply is based upon the supporting Memorandum of Points and Authorities set forth below, the supporting supplemental declaration of counsel Brent D. Meyer ("Counsel Supp. Decl.") and all exhibits attached thereto, the supporting declaration of Melissa Gardner ("Gardner Decl."), all other pleadings on file herein, and such other and further arguments and authority as may be presented at the hearing.

## I. SUPPLEMENTAL FACTUAL BACKGROUND

On June 1, 2021, at the First Meeting of Creditors required by 11 U.S.C. § 341(a), debtor Mordechai Koka ("Debtor") provided the following testimony (under penalty of perjury), which provides additional cause to grant the relief requested by Creditors in the Objection:

- Debtor has been receiving unemployment benefits since the Petition Date, but has failed to report this income on his Monthly Operating Reports (10:24 – 11:2)

- Debtor has a bank account at Bank of America, N.A. where his unemployment benefits are deposited, but has failed to report this bank account and the corresponding expenses on his Monthly Operating Reports (10:24 – 11:2)

- Debtor admitted that funds ($135,000) from Green Bay Builders Inc. were utilized as the source of the down payment to purchase the Napa Property (43:9)

- Debtor did not "move out" of the Lafayette Property and begin residing in the Sunnyvale Property until "early 2020" which is significantly later that previously disclosed in his schedules (28:2-4; 46:18-19)

- Debtor has no anticipation of selling the Lafayette Property (51:11 – 51:13)

- Debtor has not received any offers to purchase the Alameda Property although it has been listed for sale for over 3 months in an extremely competitive housing market (38:13-14)

- Debtor's two adult children have lived in ADUs on the Lafayette Property since prior to the Petition Date, are both gainfully employed, and neither of the children have paid any rent or other expenses for use of the Lafayette Property, although the estimated rental value is $3,500 / month (22:20 – 23:12; 45:17-19)

See Counsel Supp. Decl. ¶ 3, Exh. A.



BK CASE NO. 20-50469-SLJ - 1 -
REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 2 of 16

## II. LEGAL ARGUMENT

### A. Debtor is Not Eligible to Proceed Under Sub-Chapter V

In the Opposition, Debtor provides various legal arguments in an effort to demonstrate eligibility for this Bankruptcy Case to proceed under Sub-Chapter V. However, as set forth in detail in Section II.A of the Objection, and for the reasons set forth below, at this time, Debtor is not eligible to proceed under Sub-Chapter V.

#### i. Debtor's Noncontingent Liquidated Debt Exceeds $2,725,625

In the Opposition, Debtor admits that the statutory debt limit for Sub-Chapter V applicable to this Bankruptcy Case is $2,725,625 and acknowledges that the increased debt limit ($7,500,000) set forth in the CARES Act is not applicable. See Dkt. No. 164, 9:20 – 9:24. Despite this admission, Debtor engages in an extremely convoluted and improper legal analysis in an attempt to demonstrate and justify eligibility.

First, in the original schedules filed in this case, Debtor admits that he is ineligible for Sub-Chapter V because the scheduled noncontingent liquidated secured and unsecured debts are listed in the aggregate amount of $2,740,860.50. See Dkt. No. 27 (*Schedule D*: Total Secured Debt: $2,463,061.00; *Schedule E/F*: Total Priority Debt: $7,645.00); Dkt. No. 98 (*Schedule E/F*: Total Unsecured Debt: $270,154.50).

In a convenient and bad-faith attempt to justify eligibility, in conjunction with filing the Opposition, Debtor filed *Amended Schedule E/F* which merely asserted that certain claims (such as the Gardners' claim) were contingent and/or unliquidated. See Dkt. No. 162. However, since these amended schedules were filed without support under applicable law for re-classification of these claims, the Court should summarily reject these bad-faith amendments in determining eligibility for Sub-Chapter V and look beyond the schedules at the actual claims against the estate based on the standard set forth in In re Scovis, 249 F.3d 975 (9th Cir. 2001).

Second, to the extent that this Court authorizes Debtor to file improper amendments to *Schedule E/F* solely for the purpose of improperly manufacturing eligibility, Debtor is still ineligible to proceed under Sub-Chapter V based on the following:

In the Opposition, Debtor admits that the following are non-contingent and liquidated



BK CASE NO. 20-50469-SLJ - 2 -

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 1 U.S.C. §1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT 11 U.S.C. §1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 3 of 16

claims that should be included in the calculation of eligibility for Sub-Chapter V:

| Creditor | Scheduled Amount |
|---|---|
| Deutsche Bank | $ 822,770.00 |
| CitiBank (West), FSB | $ 150,000.00 |
| HSBC Bank USA, N.A. | $ 962,291.00 |
| FCI Lending Services | $ 528,000.00 |
| Citi Visa | $ 4,490.00 |
| Credit Collection | $ 193.00 |
| **TOTAL** | **$ 2,467,674.00** |

Second, in Response to the *Objection to Request for Transfer of Post-Petition Retainer to the Fuller Law Firm, P.C.*, and for the very first time, Debtor also admits that he personally received two loans immediately prior to the Petition Date, which have never been disclosed in any schedules filed in the Bankruptcy Case, including *Amended Schedule E/F* [Dkt. No. 162], and was filed six days *after* the Response. See Dkt. No. 155. Specifically, Debtor admits the existence of the following claims, which should be included in the eligibility calculation:

| Creditor | Scheduled Amount |
|---|---|
| Miguel Trujillo | $ 121,018.74 |
| Rahe Haviv | $ 124,974.00 |
| **TOTAL** | **$ 245,992.74** |

Third, on July 3, 2020, Debtor's former counsel (Arasto Farsad) actually filed a *Proof of Claim* on behalf of Mai T. Hoang in the unsecured amount of $18,125. See Claim No. 6-1. Remarkably, however, Debtor failed and refused to include this undisputed claim of Mai T. Hoang on *Amended Schedule E/F* filed in opposition to the Objection. See Dkt. No. 162. However, for eligibility purposes, given that Debtor actually filed the claim on behalf of Mai T. Hoang, it is axiomatic that this claim is not disputed and should be included for eligibility:

| Creditor | Scheduled Amount |
|---|---|
| Mai T. Hoang | $ 18,125.00 |
| **TOTAL** | **$ 18,125.00** |


MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

BK CASE NO. 20-50469-SLJ

- 3 -

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 1 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT 11 U.S.C. § 1127(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 4 of 16

Based on the foregoing, and based on the claims that Debtor now (after amendments) actually admits and acknowledges are non-contingent and liquidated, Debtor is ineligible to proceed under Sub-Chapter V, as the aggregate amount of these claims are $2,731,791.74 ($2,467,674.00 + $245,992.74 + $18,125.00) are greater than $2,725,625.

Nevertheless, when taking into account the claims of the victims, in which Debtor has personally liability irrespective (and not derivative) of the liability of Green Bay Builders Inc., Debtor has aggregate non-contingent liquidated debt well in excess of $2,725,625.

Fourth, it is extremely important to identify the correct legal standard for non-contingent debt and liquidated debt, as in the Opposition, Debtor does not correctly identify the applicable standards in the Ninth Circuit.

**Contingent.** "A debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." In re Fostvedt, 823 F.2d 305, 306 (9th Cir. 1987).

**Personal Liability of Debtor.** Under California law, "directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct" [and] "*[d]irectors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable*." Frances T. v. Vill. Green Owners Assn., 42 Cal. 3d 490, 503-05 (1986) (emphasis added). Further, "[t]his liability does not depend on the same grounds as "piercing the corporate veil," on account of inadequate capitalization for instance, but rather on the officer or director's personal participation or specific authorization of the tortious act." Id.

Here, all acts that gave rise to liability occurred well *before* the petition date (March 10, 2020), and Debtor is personally liable for all tortious conduct that he personally participated in, including violation of California Business & Professions Code § 7161(b), which the Contractor's State Licensing Board (CSLB) specifically found was violated after an investigation, and California Penal Code § 484b, which the Office of the District Attorney for Santa Clara County specifically charged Debtor with violating. See Counsel Decl. ¶¶ 3-4, Exhs. A-B. As such, Debtor's liability to the victims (including the Gardners, the Hannas, and the Morgans) is non-contingent, because all events giving rise to liability occurred *before* the Petition Date, and

BK CASE NO. 20-50469-SLJ  - 4 -

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT 11 U.S.C. 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 5 of 16

because Debtor *personally engaged* in the actual tortious conduct in obtaining funds through misrepresentation, coercion, concealment, fraud, and financial elder abuse.

**Liquidated.** "[A] debt is liquidated if the amount of the debt is readily ascertainable." In re Slack, 187 F.3d 1070, 1074 (9th Cir. 1999). Further, "[s]o long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under § 109(e), regardless of any dispute." Id. at 1075.

A stipulation with a debtor "established the precise amount of [creditor's] claim under the 'readily determinable' standard." In re Slack, 187 F.3d at 1075. Further, "[w]hen both parties stipulate that a debt exceeds the statutory limit, it is simply immaterial for purposes of § 109(e) that they disagree on the precise amount." In re Geary, 55 F. App'x 806, 808 (9th Cir. 2003); see also In re Fostvedt, 823 F.2d 305, 306 (9th Cir. 1987) ("regardless of the possibility that [debtor's] co-obligors would eventually pay some or all of the debt … [w]e therefore conclude that [the] debt was liquidated for purposes of section 109(e)").

Here, Debtor entered into stipulations with both the Gardners and the Hannas regarding the allowed amount of their claims for purposes of the Bankruptcy Case, and as such, these claims are liquidated under applicable Ninth Circuit precedent as follows:

| Creditor | Stipulated Amount |
|---|---|
| Dale Gardner and Melissa Gardner | $ 1,335,810.91 |
| Jeff Hanna and Amalia Hanna | $ 84,941.50 |
| **TOTAL** | **$ 1,420,752.41** |

See Dkt. Nos. 82, 90.

As set forth in Geary and Fostvedt, the fact that Debtor may disagree on the precise claim amount is immaterial, as a stipulation between a debtor and a creditor renders the claim liquidated for purposes of eligibility. See Geary, 55 F. App'x at 808; Fostvedt, 823 F.2d at 306.

As such, at a minimum, the claims of the Gardners and Hannas are non-contingent and liquidated, and both claims must be included in the eligibility calculation for Sub-Chapter V in the aggregate amount of $1,420,752.41.

BK CASE NO. 20-50469-SLJ - 5 -
REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT 11 U.S.C. § 1112(B)

Case: 20-50469  Doc# 167  Filed: 06/15/21  Entered: 06/15/21 20:15:27  Page 6 of 16

Based on the forgoing, at a minimum, the aggregate non-contingent liquidated debt for which Debtor is personally liable as of the Petition Date (March 10, 2020) was as follows:

| Creditor | Eligibility Amount |
|---|---|
| Deutsche Bank | $ 822,770.00 |
| CitiBank (West), FSB | $ 150,000.00 |
| HSBC Bank USA, N.A. | $ 962,291.00 |
| FCI Lending Services | $ 528,000.00 |
| Citi Visa | $ 4,490.00 |
| Credit Collection | $ 193.00 |
| Miguel Trujillo | $ 121,018.74 |
| Rahe Haviv | $ 124,974.00 |
| Mai T. Hoang | $ 18,125.00 |
| Dale Gardner and Melissa Gardner | $ 1,335,810.91 |
| Jeff Hanna and Amalia Hanna | $ 84,941.50 |
| TOTAL | $ 4,152,544.15 |

As such, Debtor is not eligible to proceed under Sub-Chapter V in this Bankruptcy Case because the aggregate amount of the above-referenced non-contingent liquidated claims is $4,152,544.15, which is significantly greater than the statutory maximum amount of $2,725,625 applicable to this case pursuant to section 1182(1)(A).

Finally, although applicable Ninth Circuit precedent mandates that the claims of the Gardners and the Hannas must be calculated in the full stipulated amount for purposes of eligibility, at an absolute minimum, these two claims are non-contingent and liquidated in the actual amount of money that Debtor personally and improperly obtained through misrepresentation, coercion, concealment, fraud, and financial elder abuse, as follows:

| Creditor | Stipulated Amount |
|---|---|
| Dale Gardner and Melissa Gardner | $ 256,978.15 |
| Jeff Hanna and Amalia Hanna | $ 80,000.00 |
| TOTAL | $ 336,978.15 |

See Dkt. Nos. 83-2 ¶ 2; Gardner Decl. (filed concurrently herewith).

As such, under any circumstance, including allowance of the claims of the Gardners and Hannas at the bad-faith scheduled amount of $80,000, Debtor is not eligible for Sub-Chapter V.

- 6 -

BK CASE NO. 20-50469-SLJ

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT 11 U.S.C. § 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 7 of 16

### ii. Less than 50% of the Debts Did Not Arise from Business Activity

As set forth in the Objection, it is not entirely clear regarding the actual "commercial or business activity" of Debtor, as Debtor's actual answer consistently changes, but in the Proposed Sub-Chapter V Plan, for the first time, Debtor provides the following explanation of his purported "commercial or business activity":

> At the time of the filing of the petition, Debtor was and remains in the business of operating rental properties. At the time of the filing of the petition, Debtor was the owner of the following properties:

See Dkt. No. 138, p. 3.

In the Opposition, Debtor takes the position that the Napa Property is "business debt," although Debtor never rented out this property given its inhabitable condition, and that the Layfette Property is "undetermined," although Debtor asserts this property is his domicile and claimed a homestead exemption in this property. See Dkt. No. 164, p. 15-16.

Given that Debtor does not even know what "business" he actually personally operates, as Green Bay Builders Inc. is a separate and distinct entity and business from Debtor, the Court should summarily reject all efforts by Debtor to conveniently re-classify personal obligations as "business" debts that are unrelated to Debtor's stated business "of operating rental properties." Specifically, only the Alameda Property has generated any rental income since the Petition Date, or from the period of 2012 until the Petition Date (March 10, 2020), and debts related solely to the Alameda Property should be considered "business" debts for purposes of eligibility.

As such, when the claim ($822,770) of Deutsche Bank secured by the Alameda Property is removed from the calculation, the following claims are considered in the calculation of debts that did not arise from "commercial or business activity":

| Creditor | Eligibility Amount |
|---|---|
| CitiBank (West), FSB | $ 150,000.00 |
| HSBC Bank USA, N.A. | $ 962,291.00 |
| FCI Lending Services | $ 528,000.00 |
| Citi Visa | $ 4,490.00 |

- 7 -

BK CASE NO. 20-50469-SLJ

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT 11 U.S.C. § 1112(B)

Case: 20-50469  Doc# 167  Filed: 06/15/21  Entered: 06/15/21 20:15:27  Page 8 of 16

| Credit Collection | $ 193.00 |
|---|---|
| Miguel Trujillo | $ 121,018.74 |
| Rahe Haviv | $ 124,974.00 |
| Mai T. Hoang | $ 18,125.00 |
| Dale Gardner and Melissa Gardner | $ 1,335,810.91 |
| Jeff Hanna and Amalia Hanna | $ 84,941.50 |
| **TOTAL** | **$ 3,329,774.15** |

Based on the foregoing, since only 19.81% ($822,770 / $4,152,544.15) of the debt in this Bankruptcy Case arose from Debtor's "commercial or business activity" of operating rental properties, Debtor is not eligible to proceed under Sub-Chapter V.

### iii. Debtor Cannot Extend the Deadline to File Creditors Chapter 11 Plan

As set forth in detail in the Objection, section 1189(b), provides that "[t]he debtor shall file a plan *not later than 90 days after the order for relief under this chapter*, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b) (emphasis added).

As recognized by courts that have addressed the issue, the "justly accountable" standard in section 1189(b) is "clearly a higher standard than the mere 'for cause' standard set forth in ... Rule 9006(b) (governing extensions of time generally) and ... section 1121(d)(1) (governing extensions of a non-subchapter V debtor's exclusive period to file a Chapter 11 plan)." In re Seven Stars on the Hudson Corp., 618 B.R. 333, 344 (Bankr. S.D. Fla. 2020).

In the Opposition, Debtor does not provide any explanation or justification regarding his failure to timely redesignate the Bankruptcy Case under Sub-Chapter V, but instead, proceed in regular Chapter 11 for over 14 months, could ever satisfy the heightened "justly accountable" standard set forth in section 1189(b). See Dkt. No. 164, p. 16-17.

Rather, Debtor relies on a single case (In re Wetter, 2020 Bankr. LEXIS 2860) for the proposition that "Debtor cannot miss a deadline on a deadline that is not yet set. See Dkt. No. 164, 17:3-4. As set forth in the detail in the Objection, Creditor is only aware of two instances when courts have excused compliance from the strict deadlines set for in section 1189(b) on belated designation of a pending case to Sub-Chapter V. See In re Ventura, 615 B.R. 1, 15 (Bankr. E.D.N.Y. 2020) (SBRA enacted after the petition date); In re Twin Pines, LLC, 2020

- 8 -

BK CASE NO. 20-50469-SLJ

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)

Case: 20-50469   Doc# 167   Filed: 06/15/21   Entered: 06/15/21 20:15:27   Page 9 of 16

WL 5576957, at *3 (Bankr. D.N.M. 30, 2020) (SBRA enacted after the petition date); In re Trepetin, 617 B.R. 841 (Bankr. D. Md. 2020) (originally filed as Chapter 7). Similarly, Wetter was originally filed under Chapter 7 and subsequently converted to Sub-Chapter V.

"Where a debtor elects into Subchapter V *after* expiration of the statutory deadlines, however, the debtor should justly be held accountable for those circumstances, because the debtor created them. It was the debtor that made the decision to elect into Subchapter V *after* expiration of these deadlines. No circumstances beyond the debtor's control caused the debtor to make that decision." See Seven Stars, 618 B.R. at 346 (emphasis added).

Here, Debtor should be held accountable for his inaction, and the concerns raised in Ventura and Twin Peaks are distinguishable and not present here.

First, Debtor filed the Bankruptcy Case on March 10, 2020, *after* the effective date of SBRA (February 19, 2020), and at a minimum, Debtor (or his counsel) had knowledge of the ability to proceed under Sub-Chapter V when this Bankruptcy Case was originally filed, but declined to proceed thereunder. See Dkt. No. 1.

Second, Debtor voluntarily elected to proceed under Chapter 11 (and not any other chapter of the Bankruptcy Code), and Debtor has been actively participating in this Chapter 11 Case since March 10, 2020 without any circumstances that impeded his ability to re-designate this Bankruptcy Case under Sub-Chapter V *prior to* expiration of all applicable deadlines.

Under these circumstances, the plain reading of section 1189(b) precludes this Court from extending the deadline (June 8, 2020) for Debtor to file and seek confirmation of Sub-Chapter V Plan because there is no legitimate justification for which Debtor should not justly be held accountable for failing to file a Sub-Chapter V Plan (or seeking an extension) before expiration of the deadline. See 11 U.S.C. § 1189(b).

As such, even assuming *argumentum* that Debtor is eligible to proceed under Sub-Chapter V with this Bankruptcy Case, the filing of Debtor's Sub-Chapter V Plan (Dkt. No. 138) on May 13, 2021 was not timely, and Debtor is not entitled to seek confirmation of that plan.

### iv. Prudential Reasons Exist to Decline Sub-Chapter V Designation

As set forth in detail in the Objection, Debtor does not have an absolute right to re-

- 9 -
BK CASE NO. 20-50469-SLJ
REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7; PURSUANT TO 11 U.S.C. § 1112(B)

Case: 20-50469  Doc# 167  Filed: 06/15/21  Entered: 06/15/21 20:15:27  Page 10 of 16

destinate this Bankruptcy Case under Sub-Chapter V, as the Court must consider the bad-faith conduct of Debtor and the corresponding prejudice to creditors and the estate.

In the Opposition, Debtor asserts "[b]y converting this case to a case under Subchapter V, there is no prejudice to creditors […] Debtor has already filed his Subchapter V plan and the plan, as it must, pays general unsecured creditors at least the liquidation value of the non-exempt estate assets." See Dkt. No. 164, 17:7 – 17:9.

However, Debtor's argument misses the point. A cursory review of the proposed Sub-Chapter V Plan demonstrates the lack of feasibility and corresponding bad faith: (1) Debtor is required to earn employment income (which will be unlikely given the pending criminal charges); (2) Debtor is required to obtain a hard-money loan to "cure" the substantial arrears (in excess of $450,000) on the Lafayette Property although Debtor does not have any employment income to qualify for the loan or maintain on-going payments; (3) the liquidation analysis used to justify required payments includes significantly inflated capital gains calculations and cost of sale, and a unreasonable low value for the Lafyette Property, which seeks to lower the amount paid to general unsecured creditors by over $500,000; and (4) Debtor unlawfully renting un-permitted ADUs on the Lafayette Property to his children to generate income. See Dkt. No. 138.

Further, as a "safety valve," Debtor asserts that he will sell the Lafayette Property if he is unable to obtain a loan to refinance and "cure" the substantial arrears. Defiantly, however, at the First Meeting of Creditors, Debtor testified that he had no anticipation of selling the Lafayette Property. See Counsel Decl. ¶ 3, Exh. A, 51:11-13.

Given that the Lafayette Property is Debtor's asserted residence, given the inability of Debtor to sell the Alameda Property, and given that Debtor testified that he has not anticipation of selling the Lafayette Property, this "safety valve" in the proposed Sub-Chapter V Plan is illusory and will not be used to satisfy Debtor's obligations to pay general unsecured creditors.

Finally, for each of the reasons set forth in detail in the Objection, re-designation of the Bankruptcy Case to Sub-Chapter V was done in bad faith to thwart implementation of Creditors' Chapter 11 Plan of Reorganization, and the belated re-designation has and will cause significant prejudice to creditors of the estate. See Dkt. No. 143, § III.A.iv.

BK CASE NO. 20-50469-SLJ - 10 -

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 11 of 16

Based on the foregoing, the Court should deny Debtor's request to amended his Voluntary Petition pursuant to Federal Rule of Bankruptcy Procedure 1009(a) and deny Debtor's designation to proceed under Sub-Chapter V pursuant to Federal Rule of Bankruptcy Procedure 1020(b) because Debtor is not eligible to proceed under Sub-Chapter V pursuant to section 1182(1)(A), because Debtor cannot timely file a Sub-Chapter V Plan as the deadline expired on June 8, 2020 and Debtor cannot extend this deadline pursuant to section 1189(b), and because conversion to Sub-Chapter V more than 14 months after the Petition Date (March 10, 2020) was done in bad-faith and is highly prejudicial to creditors of the estate.

### B. "Cause" Demonstrating Removal of Debtor or Conversion to Chapter 7

Remarkably, although Creditors identified numerous and significant issues related to Debtor's fitness to remain in possession of the estate, in the Opposition, Debtor failed to address any of these concerns, and dedicated a single sentence to the issue asserting that "Debtor has demonstrated good faith throughout this case and has always sought to maximize the value of the estate for creditors [and] [h]e should be left as Debtor in Possession." Dkt. No. 164, 19:23-25.

Debtor's absolute failure to respond to the serious allegations of fraud, gross mismanagement, bad faith in preparation of schedules, and other serious misconduct in the Bankruptcy Case is telling. Further, given that Debtor does not provide any opposition or defense to Creditors' request to remove Debtor from possession of the estate or convert this Bankruptcy Case to Chapter 7 constitutes waiver of all arguments and is a tactic admission that this additional (and alternative relief) requested by Creditors is warranted and appropriate.

Although the standards set forth in section 1185(a) and 1112(b) are not identical, the conduct of Debtor clearly demonstrates that there is ample "cause" to either remove Debtor from possession of the estate and/or convert this case to Chapter 7. Specifically, below is a non-exhaustive list of the fraud, gross mismanagement, bad faith preparation of schedules, and other serious misconduct that has occurred:

- **Fraud**: In operating Green Bay Builders Inc., Debtor personally engaged in tortious misconduct, including fraud and misrepresentation, in order to procure through intimidation and coercion, unlawful deposits in excess of the statutory maximum ($1,000) for



general contractors operating in California, including the following:

- Contractor's State License Board (CSLB): After an investigation, in operating Green Bay Builders Inc., CSLB determined that Debtor violated, among other statutes, California Business & Business Code § 7161(b), which provides that it is a misdemeanor to engage in the following acts: "[m]aking any *substantial misrepresentation* in the procurement of a contract for a home improvement or other work of improvement or making any *false promise* of a character likely to influence, persuade, or induce any person to enter into the contract." Cal. Bus. & Prof. Code § 7161(b) (emphasis added); see also Counsel Decl. ¶ 3, Exh. A.

- Criminal Charges. On April 1, 2021, the Office of the District Attorney for Santa Clara County issued an arrest warrant for Debtor, and charges include, among others, violation of California Penal Code § 484b, which provides "[a]ny person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and *willfully fails to apply* such money for such purpose by either *willfully failing to complete the improvements* for which funds were provided or *willfully failing to pay* for services, labor, materials or equipment provided incident to such construction, and *wrongfully diverts the funds* to a use other than that for which the funds were received, shall be guilty of a public offense and shall be punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year …" Cal. Penal Code § 484b; (emphasis added); see also Counsel Decl. ¶ 4, Exh. B.

Both of these criminal offenses significantly undermine Debtor's ability and credibility to remain in possession as a fiduciary to the estate in this Bankruptcy Case.

- **Undisclosed Bank Accounts and Income**: At the Initial Debtor Interview (IDI) in the Sub-Chapter V, based on questioning by Trustee Hayes, for the very first time, Debtor admitted that he has been receiving unemployment income since approximately the Petition Date (March 10, 2020) and that these funds are deposited in a bank account maintained at Bank of America, N.A. See Counsel Supp. Decl. ¶ 3, Exh. A, 10:24-11:2.

Further, and more troubling, the income that Debtor has received from EDD for unemployment since the Petition Date, and the corresponding bank account at Bank of America,

N.A. where these funds are deposited, are not disclosed in any Monthly Operating Report filed in the Bankruptcy Case. See CM/ECF *generally*.

- **Payment of Non-Retained Administrative Professionals**: In the Monthly Operating Report for April 2021, Debtor paid $838.94 to Campos Tax Services for income tax services, although Debtor has not sought employment of Campos Tax Services as a professional of the estate pursuant to section 327(a), and Debtor has not obtained authority pursuant to section 330(a) from this Court to pay this administrative claim. See CM/ECF *generally*.

- **Bad-Faith Conduct**: Throughout this Bankruptcy Case, Debtor has engaged in bad-faith in preparation of the bankruptcy schedules, including the following:

    o Improper Manufacturer of Venue. As set forth in detail in the *Objection to Homestead Exemption* [Dkt. No. 145] and related Reply, the overwhelming circumstantial evidence strongly suggests that Debtor impermissibly manufactured venue for this Bankruptcy Case in the San Jose Division although such venue is impermissible under 28 U.S.C. § 1408(a).

    o Failure to List Creditors. In order to demonstrate eligibility for Sub-Chapter V, in bad faith, Debtor steadfastly refuses to schedule known creditors of the estate in *Schedule E/F*, including but not limited to, Mai T. Hoang, Miguel Trujillo, and Rahe Haviv.

    o Preparation of False Schedules. In an attempt to demonstrate that venue was proper in the San Jose Division, the *Statement of Financial Affairs* falsely asserts that Debtor moved into the Sunnyvale Property in December 2019 (Dkt. No. 28), and in an attempt to demonstrate that Debtor is eligible for Sub-Chapter V, the most recentl *Amended Schedule E/*F falsely asserts that certain claims are contingent and non-liquidated in contravention of applicable Ninth Circuit precedent directly on point (Dkt. No. 162).

Further, less than 5 months before filing the Bankruptcy Case, on August 13, 2019, Debtor personally received $121,018.74 from Miguel Trujillo, and on November 12, 2019, Debtor personally received $124,974 from Rahe Haviv. See Dkt. No. 162. However, a review of *Schedule A/B: Property* (Dkt. No. 30) and the *Statement of Financial Affairs* (Dkt. No. 27) does not disclose any information related to possession or disposition of these funds, which are in the aggregate and non-trivial amount of $245,992.74.

BK CASE NO. 20-50469-SLJ - 13 -

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 14 of 16

- o <u>Failure to File Accurate Monthly Operating Reports</u>.  As this Court has noted on multiple occasions, Debtor regularly filed inaccurate Monthly Operating Reports, and most recently, Debtor has failed to file amended Monthly Operating Reports to truthfully and accurately report all income received and all post-petition bank accounts, such as unemployment income and the related bank account at Bank of America, N.A.  <u>See</u> CM/ECF *generally*.

- o <u>Improper Designation to Sub-Chapter V</u>.  As set forth in detail in Section II.A. of the Objection and above, Debtor has sought to designate this Bankruptcy Case under Sub-Chapter V (although admittedly ineligible), and the strong circumstantial evidence suggests this was done for no legitimate purpose other than to delay paying creditors and thwart implementation of the Creditors' Chapter 11 Plan of Reorganization.  <u>See</u> Dkt. No. 143.

- **Use of Cash Collateral Without Authority**: Since the Petition Date, Debtor has received rental income from use of the Alameda Property, but Debtor has not sought or obtained approval from this Court for use of this cash collateral.  <u>See</u> CM/ECF *generally*.  Further, although Citibank (West), FSB holds a second position deed of trust on the Alameda Property subject to an assignment of rents provision, since the Petition Date, Debtor has not made any payments to Citibank (West), FSB and Debtor continues to use cash collateral for his own personal enjoyment.  <u>See</u> RJN ¶ 1, Exh. A; Counsel Supp. Decl. ¶ 3, Exh. A, 38:21-24.

- **Diminution in Value of Estate Assets**: Since the Petition Date, Debtor has not made payments to: (i) the holder of the first deed of trust on the Lafyette Property (HSBC Bank USA, N.A.); (ii) the holder of the second deed of trust on the Alameda Property (CitiBank (West), FSB); or (iii) *ad valorem* taxes on either the Lafyette Property or the Alameda Property, which has significantly increased secured claims of the estate.  <u>See</u> CM/ECF *generally*.

- **Gross Mismanagement of the Estate**: Since the Petition Date, there has been significant mismanagement of the estate by Debtor, including but not limited to, failing to sell non-exempt assets to pay claims (including the Alameda Property that has not received any offers although it has been on the market for over 3 months); material breach of the Settlement Agreement entered into with Creditors that resulted in an increase in claims against the estate in excess of $885,000 (<u>see</u> Dkt. No. 92); allowing both of Debtor's adult children to live rent-free

BK CASE NO. 20-50469-SLJ - 14 -

REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PERSUANT TO 11 U.S.C. 1112(B)

Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 15 of 16

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

in ADUs on the Lafayette Property since before the Petition Date although they are gainfully employed and the rental value of the ADUs is approximately $3,500 / month (see Counsel Supp. Decl. ¶ 3, Exh. A, 22:20 – 23:12; 45:17-19); and an overall failure to prosecute the Bankruptcy Case for more than 14 months, including failure to file and prosecute a Chapter 11 Plan or Disclosure Statement, which allowed the exclusivity period under section 1121(c) to expire.

Based on the foregoing, there is ample "cause" under section 1185(a) to remove Debtor from possession of the estate and ample "cause" under section 1112(b) to convert this Bankruptcy Case to Chapter 7 and allow creditors to receive their *pro-rata* share of all non-exempt assets of the estate without any further delay or gamesmanship.

### III.  CONCLUSION

Based on the foregoing, the Court should enter an Order sustaining the Objection in its entirety, deny Debtor's request to amend the voluntary petition pursuant to Federal Rule of Bankruptcy Procedure 1009(a), deny Debtor's attempt to designate the Bankruptcy Case under Sub-Chapter V pursuant to Federal Rule of Bankruptcy Procedure 1020(b) and General Order 37, and allow the Bankruptcy Case to remain in Chapter 11 as originally filed.

Alternatively, assuming *argumentum* that this Court determines Debtor is eligible to proceed under Sub-Chapter V, then Creditors respectfully request that Debtor be removed for cause pursuant to 11 U.S.C. § 1185 and the Sub-Chapter V Trustee (Christopher Hayes) be appointed to take over management and control of the bankruptcy estate.

Finally, assuming *argumentum* that this Court determines Debtor is eligible to proceed under Sub-Chapter V and the Court is not inclined to remove Debtor from possession of the estate, then Creditors request that the Court convert this Bankruptcy Case to Chapter 7 pursuant to the standards set forth in 11 U.S.C. § 1112(b).

Dated: June 15, 2021

**MEYER LAW GROUP LLP**

By:  /s/ BRENT D. MEYER
 Brent D. Meyer
 Attorneys for Plaintiffs
 DALE GARDNER and
 MELISSA GARDNER

BK CASE NO. 20-50469-SLJ - 15 -
REPLY IN SUPPORT OF OBJECTION TO DESIGNATION UNDER SUB-CHAPTER V PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1020(B), AND IN THE ALTERNATIVE, MOTION TO: (1) REMOVE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. § 1185; (2) CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. 1112(B)
Case: 20-50469    Doc# 167    Filed: 06/15/21    Entered: 06/15/21 20:15:27    Page 16 of 16