1  LARS T. FULLER (No. 141270)
   SAM TAHERIAN (No. 170953)
2  JOYCE K. LAU (No. 267839)
   THE FULLER LAW FIRM, PC
3  60 No. Keeble Ave.
   San Jose, CA 95126
4  Telephone: (408)295-5595
   Facsimile: (408) 295-9852
5
6  Attorneys for Debtor

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12  In re                              CASE NO.: 20-50469-SLJ

13  MORDECHAI KOKA                     **RESPONSE TO JEFF AND AMALIA
                                       HANNA'S MOTION FOR
14          Debtor                     APPOINTMENT OF A LIQUIDATING
                                       TRUSTEE**
15
16                                     CHAPTER 11
17
18                                     Date:    Aug. 3, 2021
                                       Time:    2:00 PM
19                                     Ctrm.:   Telephonic or Video Only***
                                       Judge:   Honorable Stephen Johnson
20
21

22

23         Comes now Debtor in possession Mordechai Koka, and responds to Creditors Jeff Hanna

24  and Amalia Hanna ("The Hannas") motion to appoint a liquidating trustee as follows.

25

26
27         / / /
28
                                          1

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

# I.    CASE HISTORY

A.    <u>Green Bay Builders, Inc.</u>

Pre-petition, debtor was the sole owner of Green Bay Builders, Inc. ("Green Bay" hereinafter), a general contractor.  Green Bay designated, as is common and permitted in the construction business, a Responsible Managing Officer (RMO) with a contractor's license to oversee jobs.  In addition to internal sales people, Green Bay contracted with Home Advisors for paid leads. Green Bay grew too fast and the RMO was not sufficiently involved and ran into performance problems with subcontractors.  A multitude of change orders resulted in further disruptions. Some jobs were not completed.  The business failed. Green Bay's license expired on June 30, 2020.  Reactivation of the license will require a new qualifying individual and posting of a contractor's bond and proof of workers compensation insurance.

B.    <u>Debtor's Properties</u>

At the time of the filing of the petition, Debtor was and remains in the business of operating rental properties. Debtor was the owner of the following properties:

<u>1702 Paru St., Alameda, CA ("Alameda Property")</u>

| | | |
|---|---|---|
| Value | | $1,700,000 |
| 1st Deutsche Bank | 824,544 | |
| 2nd-Citibank | 150,000 | |
| Gross Equity | | $725,456 |

The Alameda Property was listed for sale. After price reductions, it went under contract for $1,650,000.  The transaction just fell through, apparently because of the buyer's concerns of the problematic upstairs tenant..  Debtor's agent has two other prospective buyers.  It is anticipated that the Alameda Property may go under contract again within a week.

Response to Jeff and Amalia Hanna's Motion for Appointment of a Liquidating Trustee

Case: 20-50469    Doc# 196    Filed: 07/20/21    Entered: 07/20/21 17:34:18    Page 2 of 9

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

<u>858 Acalanes Rd., Lafayette, CA ("Lafayette Property")</u>

| | | |
|---|---|---|
| Value | | 1,500,000 |
| 1st – Mr. Cooper | <u>965,096</u> | |
| Gross Equity | | $534,904 |

The Lafayette Property consists of a house and two accessory dwelling units (ADU's). The two ADUs are now occupied by Debtor's adult children. Debtor's children have agreed to start paying $3,500/month in rent. Debtor vacated the house a few weeks before the petition date, but has now returned to live in the Lafayette house.

<u>3190 Vicky Lane, Napa, CA ("Napa Property)</u>

| | | |
|---|---|---|
| Value | | $790,000 |
| 1st- FCI Lender Services, Inc. | <u>$528,000</u> | |
| Gross Equity | | $262,000 |

The Napa Property has sold. The net proceeds of sale were $198,502. These sums were reduced by fees to Farsad Law Office, P.C., a payment of $50,000 to the Gardners, and a $30,000 retainer to The Fuller Law Firm, P.C. , all as approved by the Court.

C.    <u>The Gardners' Stipulation</u>

The Gardners signed an agreement with Green Bay Builders for remodeling of their residence at 442 Fulton Court, Santa Clara, CA ("Gardner Residence"). The Gardners terminated Green Bay Builders, Inc. for, among other things, failure to complete the remodel work.

After filing an adversary proceeding, the Gardners and Debtor, through his former counsel, entered into a stipulation which provided for, in the event of default (failure to timely sell the Alameda Property), a $1,335,810.91 allowed claim in the herein case. Debtor did not timely sell the Alameda Property, triggering the default.

3

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

D.    <u>The Hanna and Morgan Claims</u>

Similar to the Gardners, Green Bay performed remodeling services for Jeff and Amalia Hanna ("The Hannas) and Thanh-Tam Morgan and Daniel Morgan ("The Morgans").  However, Debtor did not personally guarantee these contracts nor was the corporate veil ever pierced.  Green Bay contends that the Hanna project was completed.  The Hannas disagree.

E.    <u>The Plans</u>

When Debtor failed to timely sell the Alameda Property, The Gardners filed a Combined Plan and Disclosure Statement dated April 16, 2021.

When The Fuller Law Firm, P.C. substituted into this case, it re-designated the case as a Subchapter V Plan and promptly filed a Plan of Reorganization for Small Business Debtor under Subchapter V dated May 12, 2021. The Court ruled that certain debt that Debtor re-designated as contingent (as of the filing date) was not contingent and therefore Debtor did not qualify for Subchapter V.

Debtor and the Gardners have now corroborated in proposing a Joint Plan. The Joint Plan proposes that the Alameda Property be sold and that the net proceeds of sale of the Alameda Property and the Napa Property be distributed for administrative costs and to general unsecured creditors. As Debtor's Subchapter V Plan, the Joint Plan proposes that Debtor take out a new junior loan on his residence in an amount sufficient to cure the pre-petition and post-petition arrears on the 1st loan on the Lafayette Property.[1]  Debtor is starting work earning $15,000/month. Further, Debtor's children have agreed to commence payment of rent of $3,500/month.  Debtor has some backup financial assistance from family members. Hence, Debtor contends that the Joint

_____

[1] A hearing on Debtor's motion to incur debt is set for Aug. 17, 2021.

Case: 20-50469   Doc# 196   Filed: 07/20/21   Entered: 07/20/21 17:34:18   Page 4 of 9

Plan is feasible. The liquidation analysis demonstrates that Creditors would receive more than in a Chapter 7 liquidation.

## II.     LEGAL ANALYSIS

Section 1104 provides in pertinent part:

> At any time before the confirmation of a plan, on a request of a party in interest or the United States Trustee, after notice and hearing, the court shall order the appointment of a trustee if such appointment is in the interest of creditors or if grounds exist to convert or dismiss under section 1112, but the court determines that the appointment of a trustee is in the best interest of creditors and the estate.

**A.     There is insufficient Cause**

The Hannas cite the following as cause:

1.     <u>Pre-petition settlement of claim for $80,000</u>

The Hannas assert that Debtor has been less than honest in dealing with them because he agreed to settle their dispute pre-petition for $80,000 but later listed the claim as disputed, then changed course and listed the claim at a greater amount. Neither pre-petition attempts to settle nor entering into a stipulation to pay a greater amount constitute dishonesty.  If anything, such stipulation benefitted the Hannas and is a demonstration of good faith.

2.     <u>Manipulating of Schedules</u>

After re-designating of the case to Subchapter V, amended schedules were filed which listed various corporate obligations as contingent. The amendment clearly stated that the schedules were "as of the petition date". The Court ruled that notwithstanding the fact that debtor did not personally guarantee the debts listed as contingent, the debts were in fact not contingent counting

Case: 20-50469     Doc# 196     Filed: 07/20/21     Entered: 07/20/21 17:34:18     Page 5 of 9

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

towards the debt limits. Because the increased Subchapter V debt limits were not effective until just after the petition date, the Court ruled that debtor did not qualify for Subchapter V.

This was not an attempt at manipulating schedules. The rationale behind labelling each category of debt as contingent was clearly explained, not simply re-categorized and swept under the rug.

3.     <u>Delay in Liquidating assets</u>

Debtor agreed to sell the Alameda Property. All of the equity in the Alameda Property belongs to general unsecured creditors. Debtor delayed in the listing of the Alameda Property so that he could make minor repairs and paint the Property so as to maximize the sales price. Further, he listed the Property, relying on the advice of a Realtor, which in hind sight proved to be at too high of a price.[2] How is expending your own time to make repairs and seeking to maximize the proceeds of sale, all to the detriment of one's personal interest, dishonesty? Debtor would have been far better off to simply fire sell the Property, reap the personal benefits of the stipulation with the Gardners, and to move forward to propose a plan knowing the liquidation value of the asset. If anything, these acts are in furtherance of his fiduciary duties.

4.     <u>Delay in proposing a Plan</u>

Admittedly, Debtor did not forthwith propose a plan. Perhaps prior counsel was waiting for the sale of the Alameda Property. But delay in the filing of a plan is not that uncommon. Had the Court been concerned with such delay, it would have set a deadline to file a plan or to confirm a plan. It did not. Whatever the reason for delay by prior counsel, once The Fuller Law Firm, P.C.

---

[2] It appears that the property failed to sell because the rents are below market, Alameda has rent control, the upstairs tenant drives away prospective purchasers and the Property is a "White elephant" in the neighborhood.

Case: 20-50469    Doc# 196    Filed: 07/20/21    Entered: 07/20/21 17:34:18    Page 6 of 9

substituted into the case, a plan was proposed immediately.

5.     <u>Failure to Charge Children Rent</u>

Though Debtor vacated the Lafayette Property shortly before the filing of the petition fearing it would be lost in foreclosure, it was, and again is, his residence. He resides there with his children. It is not uncustomary for parents not to charge rent to their cohabitating adult children.

**B.**     **Allowing the Joint Plan to Proceed is in the Best Interest of Creditors**

The liquidation analysis set forth in the Joint Plan demonstrates that in liquidation, general unsecured creditors would be paid 28.38% of their allowed claim. Yet the Joint Plan proposes to pay general unsecured creditors 40.66% of their allowed claim. Chapter 7 Trustee fees are estimated at $126,705. Further, extensive litigation costs would be expended.

In the Joint Plan, the argument of the general unsecured creditors that Debtor is a "bad guy" not to be trusted becomes moot. The general unsecured creditors will be paid all that they are due on the Effective Date from the proceeds of sale of the Napa Property (which proceeds are now securely held in trust) and from the sale of the Alameda Property. On closing, the proceeds of sale of The Alameda Property would be transferred to Debtor's Attorney's IOLTA account, not Debtor's DIP account, held on behalf of creditors until confirmation or other order of the court.

As Movant points out in their motion, the Court must balance the benefits derived from the appointment of a trustee against the cost of the appointment. <u>In re Euro-American Lodging Corp.</u>, 365 B.R. 421,427 (Bankr. S.D.N.Y. 2007). Here, appointment of a Trustee will result in a needless expenditure of estate funds. The Gardners, who are the primary general unsecured creditors, are to receive 82% of the general unsecured "pot" (The Gardners claim is $1,285,810.91 and the general unsecured pot is $1,567,672.28). The Gardners agree that appointment of a Trustee is not in the best interest of creditors or themselves.

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

7

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

The Hannas, on the other hand, will enjoy only 5.1% of the general unsecured "pot". Even if the Court were to find cause, the Gardners interests far outweigh the Hannas interests, suggesting that the Court should be deferential to the Gardners' perspective.

**C.      The Motion is Ambiguous**

Hanna's motion calls for the appointment of a Chapter 11 "Liquidating Trustee". The term "Liquidating Trustee" is not a defined term under 11 U.S.C. §101. Are the Hannas seeking to appoint a Chapter 11 Trustee and take away the Trustee's discretion to propose a plan that does anything other than liquidate all assets?  Or is the intent to create a liquidating trust as part of a Chapter 11 plan and the "Liquidating Trustee" would only be in charge of liquidating the trust? If the latter is the case, who is to draft the liquidating trust agreement, which presently does not exist, which would dictate the Trustee's authority and responsibility?

**D.      Notice is Improper**

Section 1104 contemplates the Court, if it finds cause and if grounds exist to convert or dismiss, to consider the appointment of a Chapter 11 Trustee.  Rule 2004(a)(4) provides that a hearing on the dismissal or conversion of a case requires notice to all creditors. Here, the Hannas only noticed ECF participants.  All the general unsecured creditors that do not have notice of the Hanna's motion are not even afforded the opportunity to consider whether the appointment of a Chapter 11 liquidating trustee is in their interest. They are prejudiced.


/ / /


/ / /

Response to Jeff and Amalia Hanna's Motion for Appointment of a Liquidating Trustee

Case: 20-50469     Doc# 196     Filed: 07/20/21     Entered: 07/20/21 17:34:18     Page 8 of 9

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

### III. CONCLUSION

Debtor denies that cause exists to appoint a Chapter 11 Trustee, especially a "Liquidating Trustee". Debtor, to his personal detriment, sought to maximize the proceeds of sale of the Alameda Property, all to the benefit of the estate. Mudslinging aside, this demonstrates good faith, not dishonesty. Here, the Gardners, who enjoy the distributions of 82% of the general unsecured "pot" do not want to have a "Liquidating Trustee" appointed. The Gardners are vigilantly and competently represented by counsel that will safeguard not only the Gardners interest but the shared interest of general unsecured creditors in a Joint Plan. The best outcome here is to allow the Joint Plan to proceed towards confirmation.

Dated: July 20, 2021

THE FULLER LAW FIRM, P.C.

/s/ Lars T. Fuller
By: LARS T. FULLER, ESQ.
Attorneys for Mordechai Koka
Debtor

9

Response to Jeff and Amalia Hanna's Motion for Appointment of a Liquidating Trustee