Selwyn D. Whitehead, Esq. (CSB No. 236391)
**LAW OFFICES OF SELWYN D. WHITEHEAD**
4650 Scotia Avenue
Oakland, CA 94605
Tel: (510) 632-7444
Fax: (510) 856-5180
Email: selwynwhitehead@yahoo.com

Julyn M. Park (CSB No. 213429)
Deirdre M. Digrande (CSB No. 199766)
**LOCKHART PARK, LLP**
4655 Old Ironsides Drive, Suite 250
Santa Clara, CA 95054-1854
Tel: (408) 416-2929
Fax: (855) 368-1020
Email: jpark@lockhartpark.com
ddigrande@lockhartpark.com

Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MORDECHAI KOKA,<br><br>    Debtor. | Bk. Case No. 20-50469-SLJ<br><br>Chapter 11<br><br>**REPLY OF CREDITORS JEFF AND AMALIA HANNA TO OPPOSITIONS OF DEBTOR, DALE GARDNER, AND MELISSA GARDNER TO MOTION FOR APPOINTMENT OF A LIQUIDATING CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a) AND FRBP 2007.1(a) AND 9014**<br><br>Date: August 3, 2021<br>Time: 2:00 p.m.<br>Location: Videoconference/Teleconference<br>Judge: The Hon. Stephen L. Johnson |

**TO THE HONORABLE STEPHEN L. JOHNSON, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL INTERESTED PARTIES AND THEIR COUNSEL:**

////

-1-

Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Creditors Jeff Hanna and Amalia Hanna ("the Hannas") hereby reply to the oppositions filed by Debtor [Dkt. No. 196] and Dale and Melissa Gardner [Dkt. No. 197] to their motion for the appointment of a liquidating Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) and Rules 2007.1(a) and 9014 of the Federal Rules of Bankruptcy Procedure.

I. INTRODUCTION

Debtor and the Gardners assert that the Hannas have not met the requirements for appointment of a Chapter 11 trustee, either for "cause" as defined in 11 U.S.C. § 1104(a)(1) or in the interests of creditors and other interests of the estate pursuant to Section 1104(a)(2). However, the Plan Proponents' opposition arguments coupled with their joint proposed plan of re-organization[1] not only undermine their positions, but upend them. They confirm rather than refute the necessity of appointing a disinterested trustee.

II. APPOINTMENT OF LIQUIDATING CHAPTER 11 TRUSTEE IS THE ONLY VIABLE AND EQUITABLE ALTERNATIVE

Debtor and the Gardners' opposition arguments – the apparent all-compassing benefits of the Joint Plan, the additional and unnecessary expense of a Chapter 11 trustee, and the legality and propriety of Debtor remaining in possession – either ignore, gloss over, or just plainly contradict the indisputable facts. The expense of a Chapter 11 trustee can and should be paid from the *actual* anticipated sales proceeds of both the Alameda and Lafayette Properties, the Plan is fair only to Debtor and the Gardners, and Debtor's bad faith acts and omissions exhibited over the 17 months he has been under the protection of this Court clearly disqualify him from being able to propose a serious plan of reorganization, let alone allow him to remain in possession of the estate's valuable assets and act as a fiduciary of his creditors.

A. **The Joint Plan Is Inaccurate, Infeasible, and Made in Bad Faith**

When assessing whether a plan meets the good faith standard articulated in 11 U.S.C. § 1129(A)(3), courts will "determine[], in light of the particular facts and circumstances, whether

---

[1] Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Proposed Combined Plan of Reorganization and Disclosure Statement (July 20, 2021) [Dkt. No. 193], hereinafter "Joint Plan."

-2-

Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 2 of 10

the plan will fairly achieve a result consistent with the Bankruptcy Code."[2] A plan "must be viewed in light of the totality of the circumstances surrounding confection' of the plan [and] . . . [t]he bankruptcy judge is in the best position to assess the good faith of the parties' proposal."[3] The good faith analysis is an open-ended one. Courts have recognized the inquiry is fact specific – enabling, as one court put it, courts to "deal with chicanery."[4]

    1. *The Joint Plan Contemplates Debtor Retaining the Lafayette Property to the Detriment of the Hannas and Other Non-Plan Proponent Unsecured Harmed Homeowner Creditors*[5]

The Lafayette Property is indisputably non-exempt,[6] yet Debtor claims the right to retain it, use and enjoy it while the Hannas have to contend with a barely habitable house and the considerable expense of removing Debtor's shoddy work[7] and paying a competent contractor to finish the project. The other Unsecured Harmed Homeowner Creditors are in a similar predicament. There is absolutely no justification for Debtor to retain ownership of the Lafayette Property. Notably, neither Debtor nor the Gardners offers one. As demonstrated *infra*, proceeds from the sale of the Lafayette Property would go along way towards satisfying the Unsecured Harmed Homeowner Creditors' claims, significantly more than the 40.66 percent offered in the Joint Plan, and paying the costs associated with a Chapter 11 trustee.

    2. *The Plan Proponents' Valuations of Debtor's Real Property Are Not Substantiated by the Evidence*

In the Joint Plan dated July 20, 2021, the Proponents claim that the Alameda and Lafayette Properties each have fair market values of $1,650,000.00 and $1,500,000.00,

---

[2] *In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013), internal citations omitted.
[3] *Id*
[4] *Id.*
[5] This includes only the non-plan proponent unsecured creditors, namely the Hannas, Allan and Nicole Hulgan ("the Hulgans"), Daniel and Thanh-Tam Morgan ("the Morgans") and Mai T. Hoang ("Ms. Hoang"), hereinafter collectively referred to as "Unsecured Harmed Homeowner Creditors"), and specifically excludes the Gardners.
[6] However, this court has yet to rule on the Hannas' outstanding objection to the claimed homestead exemption. See discussion *infra*.
[7] Debtor incredulously claims that with respect to Green Bay Builders' contracts with the Hannas, Hulgans, and Morgans, "the Debtor did not personally guarantee these contracts nor was the corporate veil ever pieced." (Debtor's Opposition at p. 4, lns. 1-6.) Debtor apparently has forgotten that he has admitted that Green Bay Builders was and is his alter ego.

-3-
Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 3 of 10

LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Phone: 510.632.7444

respectively.[8] However, the data available on Zillow.com as of July 26, 2021 belie their contentions.

According to Zillow, the Alameda Property has a present fair market value of $1,899,000.00, not the $1,650,000.00 incorrectly claimed in the Joint Plan. Therefore, its sale has the potential of generating plan-based liquidation net proceeds of $572,456.00 for the estate upon its sale, approximately $200,000.00 more than the $323,456.00 forth in the Joint Plan. Likewise, the "Zestimate" for the present fair market value of the Lafayette Property is $1,653,500.00, in contrast to the $1,500,000.00 claimed in the Joint Plan. The following tables illustrate this dichotomy.

**Table 1**: The Parties' Valuation and Net Proceeds Re Alameda Property

| **Plan Proponents** | | **The Hannas** | |
|---|---|---|---|
| **Claimed Fair Market Value** | $1,650,000.00 | **Zestimate Fair Market Value** | $1,899,000.00 |
| **Liens** | 1st $824,544.00 2nd $153,000.00 | **Liens** | 1st $824,544.00 2nd $153,000.00 |
| **Cost of Sale** | $99,000.00 | **Cost of Sale** | $99,000.00 |
| **Estimated Income Tax** | $250,000.00 | **Estimated Income Tax** | ~$250,000.00 |
| **Exemption Amount** | $0.00 | **Exemption Amount** | $0.00 |
| **Claimed Net Proceeds** | $323,456.00 | **Estimated Net Proceeds** | $572,456.00 |
| | | **Amount Undervalued by Plan Proponents** | $249,000.00 |

**Table 2**: The Parties' Valuations and Net Proceeds Re Lafayette Property

| **Plan Proponents** | | **The Hannas** | |
|---|---|---|---|
| **Claimed Fair Market Value** | $1,500,000.00 | **Zestimate Fair Market Value** | $1,653,500.00 |
| **Liens** | $965,096.00 | **Liens** | $965,096.00 |

---

[8] Joint Plan Exh. 2, p. 16.

-4-

| Plan Proponents | | The Hannas | |
|---|---|---|---|
| Cost of Sale | $90,000.00 | Cost of Sale | $90,000.00 |
| Estimated Income Tax | $100,000.00 | Estimated Income Tax | ~$100,000.00 |
| Exemption Amount | $75,000.00 | Exemption Amount[9] | **$0.00** |
| Claimed Net Proceeds | $269,904.00 | Estimated Net Proceeds | $498,404.00 |
| | | Amount Undervalued by Plan Proponents | $228,500.00 |

Taking into account the aforementioned current fair market values, the total additional net, undisclosed, and nonexempt property liquidation amount available to the unsecured creditors' class is potentially **$1,070,860.00**, not the $593,360.00 claimed by Plan Proponents.

The Joint Plan proposes to pay the non-plan proponent Unsecured Harmed Homeowner Creditors – the Hannas, the Hulgans, the Morgans, and Ms. Hoang – a mere 40.66 percent of their total allowed claims, which amount to only $258,148.86.[10] Their claims could likely be satisfied, at least in an amount greater than 40.66 percent, from the Lafayette and Alameda Property sale proceeds if the fair market values maintain or increase. It is simply inequitable for a plan of reorganization to favor a debtor and pay a paltry percentage of the unsecured creditors' claims when the bankruptcy estate can afford to make them whole or nearly whole. This thinly-veiled attempt to shield $477,500.00 in real property value from the Court and Unsecured Harmed Homeowner Creditors is but another example the overall inequity of the Joint Plan and Debtor's incapacity to act as Debtor in Possession.

3.  *Debtor's Claimed Ability to Generate $15,000.00 Per Month Is Doubtful*

At the Debtor's second 341 Hearing on June 1, 2021, he admitted to being currently unemployed and having been so since he filed the case on March 10, 2020. Yet, Debtor claimed that he will have an income of $15,000.00 per month at some later date as a construction manager

---

[9] The Hannas have not included Debtor and the Gardners' latter-day claimed homestead exemption of $75,000.00 because the Hannas maintain that the exemption is invalid and claimed in bad faith. See Dkt. No. 158, Joinder of Creditors Jeff and Amalia Hanna in Objection to Debtor's Claim of Homestead Exemption or, in the Alternative, Motion to Transfer Venue to Oakland Division filed by Creditors Dale and Melissa Gardner.
[10] Debtor's Opposition, p. 7, ln. 12; Joint Plan at p. 17.

-5-

Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 5 of 10

LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Phone: 510.632.7444

on an undefined project for an individual he could only identify as "Ben."[11] Unless the Debtor can prove his employment status and that said employment generates income of $15,000 per month, the Joint Plan is not feasible. If Debtor does not realize this alleged employment opportunity, his income post sale of the Alameda Property will amount to only $3,500.00 per month, the sum he is purportedly receiving from his two adult children for renting the adjunct dwelling units on the Lafayette Property.[12] However, at the Debtor's second 341 Hearing on June 1, 2021, he admitted that his two adult children were as of that date not paying any rent.[13] If Debtor's gross employment income is $0, which it was on or about June 1, 2021, then subtracting his claimed expenses of $11,287.15, Debtor will have negative cash flow ($7,787.15) from the get-go, even before the purported plan payments of $5,238.29 per month begin. As such, Debtor will not be able to make any of the Effective Date payments nor any plan payments. On these grounds as well, the Joint Plan is infeasible and based upon unsubstantiated calculations, showing the Debtor's lack of scruples making him unfit to remain as debtor in possession.

4. *Debtor Is Not Entitled to the Homestead Exemption of $75,000.00 in the Lafayette Property*

Debtor's claim to a homestead exemption is without merit.[14] Debtor was admittedly not living at the Lafayette Property when he filed for bankrupcy and, as of May 3, 2021 (the date he filed an amended petition to proceed under Subchapter V), he was still living in Sunnyvale.[15] The Hannas call the Court's attention to the fact that the Gardners initially objected to Debtor's homestead exemption claim,[16] which the Hannas joined.[17] Though these facts have not been controverted, the Gardeners have nonetheless done an about-face, aligning themselves with the

---

[11] Transcript from Section 341 Meeting of Creditors ("Creditors Meeting Transcript"), 15:20-17:16.
[12] See Joint Plan Exh. 3, Monthly Income and Expenses.
[13] Creditor Meeting Transcript 21:1-18.
[14] If the Court finds that Debtor is entitled to a homestead exemption because the Lafayette Property is his residence, then Debtor's case must be transferred to the Oakland Division, the correct venue for debtors residing in Contra Costa County.
[15] See Amended Voluntary Petition at p. 2 [Dkt. No. 121], Item 5. "Where you live? A. 1409 Enderby Way Sunnyvale, CA 94087-4014."
[16] Objection to Homestead Exemption, and in the Alternative, Motion to Transfer Venue to Oakland Division, Dkt. No. 145, filed on May 25, 2021.
[17] See Dkt. No. 158, Joinder of Jeff & Amalia Hanna in Dale & Melissa Gardner's Objection to Debtor's Claim of Homestead Exemption or, in the Alternative, Motion to Transfer Venue to Oakland Division filed on June 8, 2021.

LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Phone: 510.632.7444

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 6 of 10

Debtor and agreeing in the Joint Plan to withdraw their objection in its entirety.[18] The Hannas, however, stand by their claims that the obvious falsehood of the Debtor's homestead exemption and venue manipulation bar the Joint Plan's confirmation and submit that this Court cannot confirm a plan that has such flagrant homestead exemption and venue manipulation, again the basis for finding the Debtor to be an unfit bankruptcy estate fiduciary.

### B. The Expense of a Chapter 11 Trustee Is Warranted by the Circumstances and May Be Borne by the Estate Without Prejudicing the Unsecured Harmed Homeowner Creditors

1. Appointment of a Liquidating Chapter 11 Trustee Is a Permissible Alternative to a Debtor's Reorganization Plan or a Chapter 7 Conversion

Although Chapter 11 plans usually provide for the reorganization by a debtor, courts have approved plans that call for liquidation. A Chapter 11 plan of liquidation is not, in and of itself, prohibited by the Bankruptcy Code.[19] *See*, e.*g.*, *In re PC Liquidation Corp*, 383 B.R. 856, 866-67 (EDNY 2008) ("[w]hile the primary purpose of Chapter 11 is reorganization, liquidation is not prohibited. Reorganization encompasses rehabilitation and may include liquidation:; *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 654 (S.D.N.Y. 1995) (citing cases recognizing that Chapter 11 permits liquidation in appropriate cases; *In re Deer Park*, Inc., 136 B.R. 815, 818 (9th Cir. BAP 1992), aff'd, 10 F.3d 1478 (9th Cir. 1993) (holding that Bankruptcy Code Section 1129(a)(11) provides that liquidation may be contemplated in a valid Chapter 11 plan of reorganization).

////
////
////
////
////

---

[18] See Joint Plan Exh. 6, Additional Plan Provisions, Part 8, Means of Executing of Plan, ¶ (e) … "[w]ithin seven (7) [sic] after entry of an order confirming the Plan, the [sic] Dale and Melissa Gardner shall withdraw in its entirety their objection to Debtor's claim of Homestead exemption, an in the Alternative, Motion to Transfer Venue to Oakland Division [Dkt. No. 145]."

[19] Tabb, C. J. (2016). Bloomberg Law: *Bankruptcy Treatise*, Part V: Reorganization, Chapter 178: Bankruptcy Code § 1129 - Confirmation of Plan. Bloomberg BNA (hereinafter referred to as "Bloomberg Treatise").

-7-

Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 7 of 10

LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Phone: 510.632.7444

////

2. The Benefits of Appointing a Chapter 11 Liquidating Trustee Outweigh the Alleged Prohibitive Expense

The Gardners claim that the costs of appointing a trustee will exceed $275,000.00).[20] The Joint Plan provides the following analysis to show just how the Unsecured Homeowner Creditors will suffer if a trustee (in this example a Chapter 7 trustee) is appointed:

| | | |
|---|---|---|
| Chapter 11 Administrative Claims | [SUBTRACT] | $ 69,717.00 |
| Priority Claims | [SUBTRACT] | $  3,268.00 |
| Chapter 7 Trustee Fees | [SUBTRACT] | $126,705.00 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | $155,000.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | $444,871.36 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $ 1,567,572 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 40.66%* |
| Percent Distribution to Unsecured Creditors Under Liquidation | 28.38%^ |

(Joint Plan Exh. 2, p. 24.)

Although the Plan Proponents predict that the Unsecured Harmed Homeowner Creditors' will increase their dividends from 28.38 percent to 40.66 percent, they fail to take into account that the bankruptcy estate can bear the costs of a trustee and pay the Unsecured Harmed Homeowner Creditors' claims almost in full if the Lafayette Property is sold and both the Alameda and Lafayette Properties yield the current fair market values. They also fail to acknowledge the significant benefits associated with the appointment of an independent trustee. A trustee appointed after consultation with parties in interest could immediately take action to move the case forward. The Bankruptcy Code and Rules provide various procedural safeguards that will allow a trustee to maximize recoveries for the unsecured creditors instead of compounding their losses. Furthermore, any trustee authorized by the Court to be appointed by the United States Trustee will be bonded to ensure the faithful performance of his or her duties.

---

[20] Gardners' Opposition p. 2, lns. 13-17: "[O]nce accounting for the administrative expenses of the Trustee's other professionals, including attorneys and accountants, it is anticipated that the costs of appointing a Chapter 11 Trustee will exceed $275,000."

-8-

Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 8 of 10

LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Phone: 510.632.7444

The specific benefits of a Chapter 11 trustee under the present facts are myriad and ample.

- The trustee is a disinterested fiduciary of the bankruptcy estate, unlike the Debtor who has demonstrated his blatant self-interest and untrustworthiness (and been rebuked by this Court for such).

- The trustee is charged with obtaining the greatest benefit to the bankruptcy estate, again in contrast to the Debtor's dilatory tactics.

- The trustee will likely promptly effectuate the sale of the Lafayette Property, which can only benefit the bankruptcy estate and the unsecured creditors. In contrast, the Debtor plans to live at this non-exempt property.

- All unsecured creditors will get a vote and have a say in the administration of the estate rather than have a partisan and inequitable plan foisted upon them.

3. *Debtor Will Justifiably Be Removed From Possession*

In arguing that no cause or creditor interest exist for appointment of a Chapter 11 trustee, Debtor attempts to characterize his administration of the estate as diligent and above-board and his dealings with the Hannas as beneficial to their recovery of their claimed amount. This is blatant manipulation of the facts. In the diligent efforts category, Debtor claims that he took time to paint the Alameda Property's exterior and made serious efforts to sell the property, but as a result of market downturns, rent control, and hostile tenants, he has heretofore been unable to close a deal. However, none of his excuses is substantiated, either by evidence that has been put before the Court or in a supporting declaration.

### III. THE MOTION WAS SERVED IN ACCORDANCE WITH THE RULES GOVERNING SERVICE

Debtor contends that the Hannas' Motion was not properly served on all creditors, incorrectly citing FRBP 2004(a)(4) for authority. (Debtor's Opposition at p. 8, lns. 16-21). FRBP 2002(a)(4) does mandate service of certain submissions to the court on all creditors, but does not apply to a motion to appoint a Chapter 11 trustee. If notice was improper as Debtor urges, then the Hannas respectfully request a continuance of the hearing on this matter to a date by which proper notice may be given to those creditors who are not ECF participants.

////

-9-

Reply of Creditors Jeff & Amalia Hanna to Oppositions to Motion for Appointment of Liquidating Chapter 11 Trustee
Case No. 20-50469

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 9 of 10

## IV. CONCLUSION

The abundant evidence before the Court supports a finding that the appointment of an independent Chapter 11 trustee pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2) is necessary for the competent administration of the bankruptcy estate and fair treatment of *all* unsecured creditors. Accordingly, the Hannas respectfully request the Court to order such relief forthwith and put an end to Debtor's foot-dragging, incompetence, and duplicity that have thus far plagued the administration and resolution of this case.

Respectfully submitted,

Dated: July 27, 2021
LAW OFFICES OF SELWYN D. WHITEHEAD

/s/ *Selwyn D. Whitehead*
Selwyn D. Whitehead
Attorney for Creditors
JEFF HANNA and AMALIA HANNA

Dated: July 27, 2021
LOCKHART PARK, LLP

/s/ *Deirdre M. Digrande*
Deirdre M. Digrande
Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Phone: 510.632.7444

Case: 20-50469    Doc# 198    Filed: 07/27/21    Entered: 07/27/21 23:51:22    Page 10 of 10