LARS T. FULLER (No. 141270)
SAM TAHERIAN (No. 170953)
THE FULLER LAW FIRM, PC
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MORDECHAI KOKA<br><br>Debtor | CASE No. 20-50469-SLJ<br><br>Chapter 11<br>(Subchapter V)<br><br>**OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT CONTAINED IN AMALIA AND JEFF HANNA'S PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED AUGUST 10, 2021**<br><br>Date: Sept. 2, 2021<br>Time: 1:30 PM<br>Court: Telephonic or Video Only |

COMES NOW Debtor Mordechai Koka and respectfully objects to approval of the Disclosure Statement Contained in Creditors Amelia and Jeff Hanna's Combined Plan of Reorganization and Disclosure Statement Dated Aug. 10, 2021.

## I. CASE BACKGROUND

Pre-petition, debtor was the owner of Green Bay Builders, Inc., a general contractor. Green Bay Builders, Inc. designated, as is common and permitted in the construction business, a Responsible Managing Officer (RMO) with a contractor's license to oversee jobs. Green Bay

1
Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Case: 20-50469    Doc# 224    Filed: 08/27/21    Entered: 08/27/21 14:00:57    Page 1 of 9

Builders, Inc. contracted with Home Advisors for paid leads. It also had internal sales people to sign up projects. Debtor contends that Green Bay Builders, Inc. grew too fast and the RMO was not sufficiently involved resulting in performance problems with subcontractors. A multitude of change orders resulted in further disruptions. Some jobs were not completed.

At the time of the filing of the petition, Debtor was and remains in the business of operating rental properties. At the time of the filing of the petition, Debtor was the owner of the following properties:

1702 Paru St., Alameda, CA ("Alameda Property")

```
Value                                    $1,650,000[1]
1st Deutsche Bank          824,544
2nd-Citibank               150,000
Gross Equity                             $675,456
```

858 Acalanes Rd., Lafayette, CA ("Lafayette Property")

```
Value                                    1,475,332[2]
1st – Mr. Cooper           965,096
Gross Equity                             $510,236
```

3190 Vicky Lane, Napa, CA ("Napa Property)

```
Value                                    $790,000
1st- FCI Lender Services, Inc. $528,000
Gross Equity                             $262,000
```

The Lafayette Property consists of a house and two accessory dwelling units (ADU's). Debtor resides in the Lafayette house with his adult children occupying the two ADUs.

---

[1] Value based on pending offer.

[2] Debtor's valuation. Debtor disagrees with the Hanna plan valuation.

2
Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Debtor, represented by Farsad Law Office, P.C. filed the herein case on March 10, 2020 to stay the non-judicial foreclosure sale of the Lafayette Property. After the petition was filed, Debtor and Dale and Melissa Gardner (hereinafter "the Gardners") proceeded to mediation through the BDRP program to resolve the Gardeners' claims, including claims pending in an adversary proceeding. In the BDRP, the parties agreed that the Gardners' claim would be allowed in the amount of $1,335,810.91, but that upon payment of the sum of $450,000 by April 15, 2020 (*sic*)[3] the Gardners' proof of claim would be reduced to $450,000. Debtor was unable to pay the sum of $450,000 and hence the claim was allowed as $1,355,810.91.[4]

Debtor sold one of his properties for $790,000 resulting in net sale proceeds of $198,502.31 which were remitted to Farsad Law Office, P.C. to be held in trust. As set forth below, the amount held in trust is now far less, all as approved by the Court.

On April 20, 2021, The Fuller Law Firm, PC's substituted into this case and re-designated it as a Subchapter V case. Amended Schedule C was filed to assert a homestead. Debtor filed his own plan under Subchapter V of Chapter 11 on May 13, 2021. After hearing, the Court denied the re-designation and the case was re-designated as a Chapter 11. Thereafter, Debtor and the Gardners filed a joint plan which is set concurrent with this hearing.

## II.     ARGUMENT

A. GERRYMANDERING AND UNFAIR DISCRIMINATON -THE PLAN IMPERMISSIBLY SEPARATELTY CLASSIFIES THE RIGHTS OF A GENERAL UNSECURED CREDITOR WHOSE LEGAL AND EQUITABLE RIGHTS ARE THE SAME

---

[3] The parties clearly intended that the date be April 15, 2021.

[4] The Gardners received a $50,000 payment so their current claim is $1,285,810.91.

3
Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Case: 20-50469    Doc# 224    Filed: 08/27/21    Entered: 08/27/21 14:00:57    Page 3 of 9

The proposed plan classifies the Gardners as a Class 2(c) creditor and provides for the Gardners to receive "40.66 percent of their agreed-to claim of $522,842.82 to be paid from the sale of Debtor's Lafayette property within 90 days of the Effective Date." It lists the claim as unimpaired.

On the other hand, the Hanna Combined Plan provides for the remaining general unsecured creditor which are scheduled in the plan as $281,168.86 to be paid the pro-rata share of a "pot" of $255,000.[5]

The problems with such treatment are as follows:

1. The legal and equitable rights are the same

The claims of the Hannas, the Gardners and Hulgan all arise from allegations of unfinished construction. The causes of action giving rise to the claims are similar. There is no business reason to separately classify the claims. The only reason to separately classify the Gardners is to isolate the rejecting vote of a large creditor whose vote will control the plan and to pay the Gardnes a smaller percentage dividend and not allow them to share in the "pot". Perhaps the Fifth Circuit said it best: "…thou shall not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan" In re Greystone III Joint Venture, 995 F.2d 1274, 1278 (5th Cir. 1991). The 9th Cir. does not permit classification for the sole purpose of obtaining an accepting impaired class. In re Barakat, 99F.3d 1520, 1523 (9th Cir. 1996).

2. Unfair discrimination

To confirm a plan, the plan cannot discriminate unfairly as to each class of claims or interests that are impaired. Here the Plan discriminates against the Class 2(c) claimant by paying it

---

[5] The Hanna plan also has a convenience class which classification is not disputed.

4

Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Case: 20-50469    Doc# 224    Filed: 08/27/21    Entered: 08/27/21 14:00:57    Page 4 of 9

a lower percent of its allowed claim relative to the other non-convenience class general unsecured claimants. Unless the Gardners vote in favor of the Plan, or are left unimpaired, such a plan cannot be confirmed. 11 U.S.C. 1129(b)(1). Though this may be a confirmation issue, here the Gardners have unequivocally stated that they will not support the proposed Hanna Plan. Hence it should be dealt with at this time.

### B. THE PLAN IMPERMISSIBLY DESIGNATES THE CLASS 3(C) CLASS AS UNIMPAIRED

The Hanna Plan provides that the Class 2(b) claimants are impaired, presumably because they are not paid in full on the Effective Date. Yet, as to the Class 2(c) claimant, which is paid a much smaller percentage of its allowed claim, the Hanna Plan provides that it is unimpaired. How is a general unsecured creditor that is not paid in full on the Effective Date unimpaired?

### C. ARITHMETICAL ERROR

As to the treatment of the Class 2(c) creditor, the Hanna Proposed Plan provides for a 40.66% dividend of their allowed claim of $1,285,810.91. But

$$0.4066 * \$1,285,810.91 = \$522,810.72$$ and the plan states $522,842.82. This is not a significant difference but should be corrected if other corrections are made.

### D. CONFUSING LANGUAGE

As to the treatment of the Class (c) creditor, the plan provides "Creditors will receive 40.66 percent of their agreed-to claim of $522,842.82 created by…" This clearly suggests that the agreed-to claim was $522,842.82 rather than $1,285,810.91. It should be re-drafted to avoid ambiguity.

### E. THE PLAN MIS-STATES THE NET PROCEEDS ON HAND FROM THE SALE OF THE NAPA PROPERTY

Debtor sold the Napa Property for $790,000 resulting in net sale proceeds of $198,502.31 which were remitted to Farsad Law Office, P.C. to be held in trust. From said funds, pursuant to an order on Farsad Law Offices, P.C. Interim Application for Compensation, $18,670 in fees and $100.00 in expenses were withdrawn. Further, per the settlement agreement with the Gardners, $50,000 was paid to them on or about Dec. 1, 2020 leaving a balance of $129,832.31.

Further, at the hearing on June 9, 2021, this Court authorized The Fuller Law Firm, P.C. to receive a $30,000 retainer from the amount held in the Farsad Law Offices IOLTA account. Hence the current balance on hand is $99,832.31.

Yet the Hanna Plan's liquidation analysis uses $172,478.36.

### F. THE PLAN DICTATES THAT DEBTOR SHALL MOVE TO THE ALAMEDA PROPERTY

The plan dictates that Debtor shall move from the Lafayette Property to the Alameda Property. The plan fails to cite any authority for compelling debtor to move to Alameda and does not provide for any moving expenses.

### G. THE PROPOSED PLAN DENIES DEBTOR THE HOMESTEAD EXEMPTION

The property at 858 Acalanes Rd. Lafayette, CA ("Lafayette Property") consists of a single family residence and two ADU's. Debtor's 2017-2020 tax returns reflects that Debtor resided in the Lafayette Property. At all times relevant to the present, Debtor's adult children reside in the ADUs at the Lafayette Property.[6] At the Subchapter V IDI Debtor stated that he moved out of the

---

[6] Though the adult children did not pay rent, Debtor's proposed Subchapter V plan projects $3,500 in future rental income from the ADUs.

6
Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Case: 20-50469    Doc# 224    Filed: 08/27/21    Entered: 08/27/21 14:00:57    Page 6 of 9

Lafayette Property just before the filing of the petition to stay with a friend because of stress and the fear of foreclosure, but always intended to return to the Lafayette Property if it could be saved.

California courts have long held that a lack of physical occupancy does not preclude a party from establishing actual residency and claiming the homestead, if the claimant intends to return. See, e.g., Michelman v. Frye, 238 Cal.App.2d 698, 703–04, 48 Cal.Rptr. 142 (1965) Under California law, the relevant factors for determining if a debtor resides in a property are the physical fact of the occupancy of the property and the debtor's intention to live there. Kelley v. Locke, 300 B.R. 11, 21 (9th Cir. BAP 2003) (citing Ellsworth v. Marshall, 196 Cal.App.2d 471, 474, 16 Cal.Rptr. 588 (1961) ). California courts have long held that a lack of physical occupancy does not preclude a party from establishing actual residency and claiming the homestead, if the claimant intends to return. See, e.g., Michelman v. Frye, 238 Cal.App.2d 698, 703–04, 48 Cal.Rptr. 142 (1965). The 9th Circuit has adopted the In re Kelley approach. Diaz v. Kosmala (In re Diaz), 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016).

The Court has not yet ruled on the homestead exemption issue. The plan should provide for the alternative.

H.  THE PLAN PROVIDES FOR FULLER LAW FIRM, P.C. TO BE THE DISBURSING AGENT WITHOUT ANY PROVISION FOR COMPENSATION

The Fuller Law Firm, P.C. did not agree to be the disbursing agent under the Hanna Plan. Its retainer with the Debtor is through confirmation. No provision is made for post-confirmation services.

7
Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Case: 20-50469    Doc# 224    Filed: 08/27/21    Entered: 08/27/21 14:00:57    Page 7 of 9

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

I. THE PLAN GROSSLY UNDER-ESTIMATES THE TAX CONSEQUENCES OF SALE

Debtor paid $850,000 for the Lafayette Property. Assuming, without conceding that the Lafayette Property could be sold for $2,184,000, the tax calculation, assuming no change in the tax laws, is as follows

| | | |
|---|---:|---:|
| Sales Price | | $2,184,000 |
| Costs of sale | $131,040 | |
| Basis | $850,000 | |
| | | 981,040 |
| Gain | $1,202,960 | |
| Exclusion | $250,000 | |
| Taxable gain | | 952,960 |
| Fed tax (20%) | | 190,592 |
| State tax 13.3% | | 126,743 |
| Total tax | | $317,335 |

The Hanna Plan provides for income tax liability of $135,000.

### III. CONCLUSION

When the instant case was re-designated as a non Sub-chapter V case, Debtor was quick to recognize that absent infusion of "new value" he cannot confirm a plan over the Gardners' objection. The Absolute Priority Rule reigns to Debtor's detriment. But it also reigns to any creditor plan's detriment. Debtor was quick to negotiate a resolution that is deferential to the Gardners desires but within the requirements of 1129(a).

The Gardners have made it very clear that they will not support the Hanna Plan. The Hannas would be far better served to negotiate a compromise than to expend fees without a realistic probability of success.

The disclosure statement aspects of the Hanna Plan should not be approved.

8
Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021

Case: 20-50469    Doc# 224    Filed: 08/27/21    Entered: 08/27/21 14:00:57    Page 8 of 9

Respectfully submitted,

Dated: August 26, 2021

                              THE FULLER LAW FIRM, P.C.

                              By:  /s/ Lars T. Fuller
                                    LARS T. FULLER
                                    Attorneys for Debtor

9

Objection to Approval of Disclosure Statement Contained in Amalia and Jeff Hannas' Proposed Combined Plan of Reorganization and Disclosure Statement Dated August 10, 2021