SELWYN D. WHITEHEAD, ESQ. (CSB No. 236391)
LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Tel: (510) 632-7444
Fax: (510) 856-5180
Email: selwynwhitehead@yahoo.com

JULYN M. PARK (CSB No. 213429)
DEIRDRE M. DIGRANDE (CSB No. 199766)
LOCKHART PARK, LLP
5201 Great America Parkway, Suite 320
Santa Clara, CA 95054
Tel: (408) 416-2929
Fax: (855) 368-1020
Email: jpark@lockhartpark.com
ddigrande@lockhartpark.com

Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MORDECHAI KOKA,<br><br>    Debtor-in-Possession. | Case No. 20-50469-SLJ<br><br>Chapter 11<br><br>**CREDITORS JEFF AND AMALIA HANNAS' OBJECTION TO MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY ON 1702 PARU STREET, ALAMEDA, CA AND MOTION FOR ORDER CONTINUING HEARING TO COINCIDE WITH DEBTOR'S MOTION TO ENCUMBER REAL PROPERTY**<br><br>Date: September 7, 2021<br>Time: 2:00 p.m.<br>Location: Telephonic/Videoconference<br>Judge: Hon. Stephen L. Johnson |

    Creditors Jeff Hanna and Amalia Hanna ("the Hannas") hereby object to Debtor's Motion for Order Authorizing the Sale of Real Property on 1702 Paru Street, Alameda, California ("Sale Motion") [Dkt. No. 202] and move the Court to deny the Motion outright. In the alternative, the Hannas request that the Court continue the hearing on this matter to coincide with the hearing on

- 1 -

The Hannas' Objection to Motion for Order Authorizing Sale of Alameda Property & Motion to Continue Hearing
Case No. 20-50469-SLJ

Case: 20-50469    Doc# 226    Filed: 08/31/21    Entered: 08/31/21 23:45:22    Page 1 of 8

the Motion for Order Authorizing Debtor to Encumber Real Property (*i.e.*, the Lafayette Property[1]) [Dkt. No. 173], which is currently scheduled for September 21, 2021.

I.

PRELIMINARY STATEMENT

The proposed plans submitted by the Hannas ("the Hannas' Proposed Plan") [Dkt. No. 212] and jointly by Debtor and the Gardners ("the Joint Proposed Plan") [Dkt. No. 193] call for dramatically different treatments for the Alameda Property: the Hannas' Plan, on one hand, proposes retaining the Alameda Property (so that Debtor may reside there and continue to use two of its units to collect rental income) and selling the more valuable Lafayette Property instead; on the other hand, the Joint Proposed Plan seeks to liquidate the less valuable Alameda Property and permit Debtor to retain and encumber the Lafayette Property such that it will be free and clear from the claims of pre-petition creditors. The Hannas contend that authorizing the sale of the Alameda Property before considering the Motion for Order Authorizing Debtor to Encumber Real Property ("Encumbrance Motion") [Dkt. No. 173] would deny the independent unsecured creditors the opportunity to vote for the plan that will provide them with the best (or only) chance of receiving a dividend distribution. Accordingly, the Hannas urge this Court either to deny the Sale Motion outright or place it in abeyance, to be reexamined as part of the plan confirmation process and in conjunction with the Encumbrance Motion.

II.

**THE SALE MOTION SHOULD BE DENIED BECAUSE DEBTOR HAS NOT ESTABLISHED SUFFICIENT JUSTIFICATION FOR THE SALE OF THE ALAMEDA PROPERTY**

**A.     Governing Law**

Bankruptcy Code section 363(b)(1) permits a debtor-in-possession, "after notice and a hearing, [to] use, sell, or lease . . . property of the estate" outside "the ordinary course of business." *11 U.S.C § 363(b)(1)*. In order to satisfy his fiduciary duty to the creditors, among

---

[1] The three-unit residential dwelling that is the subject of the Sale Motion (1702 Paru Street, Alameda, California) is hereinafter referred to as "the Alameda Property." The single-family dwelling located at 858 Acalanes Road, Lafayette, California that Debtor seeks to retain as his residence and also to encumber in order to satisfy debts to the senior lender is hereinafter referred to as "the Lafayette Property."

- 2 -

The Hannas' Objection to Motion for Order Authorizing Sale of Alameda Property & Motion to Continue Hearing
Case No. 20-50469-SLJ
Case: 20-50469    Doc# 226    Filed: 08/31/21    Entered: 08/31/21 23:45:22    Page 2 of 8

others, the debtor-in-possession must also provide "some articulated business justification" for the proposed transaction. *See Walter v. Sunwest Bank* (*In re Walter*), 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988); *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983). Whether the proffered business justification is sufficient depends upon the facts of the particular case. *In re Walter* at pp. 19-20.

Citing the decision of the Fifth Circuit in *In re Continental Air Lines, Inc.,* 780 F.2d 1223 (5th Cir. 1986), the Bankruptcy Appellate Panel agreed that a court "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike" and cited the following non-exclusive examples of factors articulated in *Lionel* (722 F.2d at p. 1271) as worthy of consideration:

- "the proportionate value of the asset to the estate as a whole,
- the amount of elapsed time since the filing,
- the likelihood that a plan of reorganization will be proposed and confirmed in the near future,
- the effect of the proposed disposition on future plans of reorganization,
- the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property,
- which of the alternatives of use, sale or lease the proposal envisions, and …
- whether the asset is increasing or decreasing in value."

*In re Walter* at p. 20, citing *In re Continental Airlines* at p. 1226.

As discussed below, Debtor fails to provide any reasonable business justification for the sale of the Alameda Property instead of the more valuable and easily liquidatable Lafayette Property: sale proceeds from the Lafayette Property would increase the amount to be distributed to the unsecured creditors and the sale could be consummated without having to evict or use estate funds to buy out tenants. Sale of the Alameda Property, in contrast, is beset with impediments. If its anticipated sale ever closes, it will cost more, but yield demonstrably less for the bankruptcy estate.

////

////

////

- 3 -

The Hannas' Objection to Motion for Order Authorizing Sale of Alameda Property & Motion to Continue Hearing

Case: 20-50469    Doc# 226    Filed: 08/31/21    Entered: 08/31/21 23:45:22    Page 3 of 8

Case No. 20-50469-SLJ

B. **The Proposed Sale of the Alameda Property Is Not Supported by Sufficient Indicia of Business Judgment**

1. <u>The Residential Purchase Agreement's Vacancy Requirement and "Cash for Keys" Buyout Provision Will Unreasonably Delay and Possibly Prevent Dividend Distributions of the Bankruptcy Estate's Assets to Unsecured Creditors</u>

According to residential purchase agreement attached to the Sales Motion ("RPA"),[2] the closing of the sale is contingent upon Debtor delivering the Alameda Property to the buyer vacant. In order to lawfully evict the two remaining tenants (one tenant moved voluntarily), Debtor has agreed to a "cash for keys" arrangement wherein he will pay the amount necessary to buy out the two remaining tenants,[3] which he asserts will be a total of $15,000.00.[4] After closing, Debtor intends to seek reimbursement of the funds from the cash proceeds of the sale, which are assets of the bankruptcy estate.[5]

When assessed in conjunction with the City of Alameda's Municipal Code Article XV, which pertains to tenant rights, what appears to be a workable arrangement for effectuating the closing is actually riddled with roadblocks that will delay or even prevent sale of the Alameda Property. Article XV, titled "Rent Control, Limitations on Evictions, and Relocation Payments to Certain Displaced Tenants Ordinance," provides the current Alameda Property tenants with substantial rights, including the right to refuse a buyout offer.[6] Thus, if the tenants are not amenable to moving, they could prevent the sale altogether until Debtor has grounds to evict them for cause.[7] If Debtor is forced to evict the tenants, then the state-wide Covid-19 eviction moratorium could throw another wrench into the proceedings. It is currently set to expire on September 30, 2021, but given the current threat to public health caused by the rapid spread of the Delta variant, the eviction moratorium will likely be extended. Notably, Debtor has not provided what is essential information for evaluating whether there is sufficient business justification for

---

[2] Exh. 1 to the Sale Motion [Dkt. No. 202-1] includes the Residential Income Purchase Agreement and Joint Escrow Instructions, assorted disclosures, and Addendum Nos. 1 and 2.
[3] See Dkt. No. 202-1, Addendum No. 2 to the RPA.
[4] Dkt. No. 202, Sale Motion at p. 4, ¶ 21.
[5] Dkt. No. 202, Sale Motion at p. 4, ¶ 15; Dkt. No. 209, Debtor's Declaration at p. 2, ¶ 8.
[6] City of Alameda Municipal Code § 6-58.115. § 6-58.115 also allows a tenant to rescind a buyout agreement within 30 days of signing.
[7] City of Alameda Municipal Code § 6-58.80. Cause includes failure to pay rent, give access, nuisance, owner move-in, capital improvements, etc.

- 4 -

The Hannas' Objection to Motion for Order Authorizing Sale of Alameda Property & Motion to Continue Hearing
Case No. 20-50469-SLJ

Case: 20-50469   Doc# 226   Filed: 08/31/21   Entered: 08/31/21 23:45:22   Page 4 of 8

selling the Alameda Property, namely the current tenants' willingness to move at all,[8] the status of negotiations with the tenants, whether any agreements regarding the tenants' relocation are in place, and so forth.

   2. <u>Sale of the Alameda Property Will Yield a Smaller Return and Further Deplete Estate Assets Unnecessarily</u>

According to the Hannas' real estate appraisal expert, the estimated sale value of the Lafayette Property (calculated using the median sale price of comparable properties) exceeds that of the Alameda Property by $557,713.00.[9] Thus, the Lafayette Property's sale would indisputably generate more funds to satisfy the amounts claimed by the unsecured creditors.[10]

As for depleting estate assets, even if the tenants are agreeable to relocating, they may demand a price far in excess of $15,000.00,[11] a contingency that Debtor apparently has not anticipated in budgeting $15,000.00 to buy out both tenants. Since Debtor will be seeking reimbursement for any buyout sum he advances, the bankruptcy estate will pick up the tab.

   3. <u>Sale of the Alameda Property Will Foreclose the Unsecured Creditors From Any Opportunity to Participate in Any Payout From the Income and/or Potential Sale Proceeds of the Lafayette Property</u>

If the Debtor is successful in selling the Alameda Property, but the proceeds are *de minimis*, creditors will have no rights to pursue any of the income or sales proceeds of the Lafayette Property because the Joint Proposed Plan allows the Debtor to retain it as his residence.[12] Therefore, Debtor will be able to retain the Lafayette Property free and clear of pre-petition creditor claims; if the Court so allows, Debtor can encumber it with new debt, thereby leaving the unsecured creditors without recourse.

////

---

[8] Under the City of Alameda Municipal Code § 6-58.115, tenants have the right to refuse to enter a buyout agreement and may rescind any agreement entered into within 30 days of execution.

[9] Dkt. No. 213, Decl. of Emaia, ¶¶ 6-7. The amount of $557,713.00 is calculated by subtracting $1,626,429.00 (the median sales price of properties comparable to the Alameda Property) from $2,184,000.00 (the median sales price of properties comparable to the Lafayette Property).

[10] Debtor asserts that the net proceeds from sale of the Alameda Property will be $655,031.00 [Dkt. No. 202, ¶ 21] while in the Joint Proposed Plan, the projected amount is $323,456.00 [Dkt. No. 193, p. 16]. Whether the Joint Proposed Plan projected amount takes into account the cost of the proposed tenant buyouts or any other sale expenses that will be charged to the bankruptcy estate is ambiguous.

[11] The City of Alameda Municipal Code does not include a buyout agreement cost cap.

[12] Dkt. No. 193, Joint Proposed Plan.

The Hannas' Objection to Motion for Order Authorizing Sale of Alameda Property & Motion to Continue Hearing

4. <u>Sale of the Alameda Property Will Deprive Debtor of His Only Verifiable Source of Income to Pay Ongoing Expenses</u>

According the most recent Operating Report [Dkt. No. 201 dated July 30, 2021], the Alameda Property provides Debtor with his only verifiable source of income – the rents collected from tenants – with which to pay his ongoing expenses.[13] Thus, its sale could render Debtor virtually penniless and unable to meet his ongoing living expenses and required plan payments, if any, under a yet-to-be confirmed Chapter 11 plan of reorganization.

**C.  There Is Sound Business Justification for Sale of the Lafayette Property**

With the aforementioned potential obstacles to overcome, the unsecured creditors will certainly not receive distributions from the sale of the Alameda Property this year. Adding possibly uncooperative tenants to this mix, it could be many months, if not years, before they receive any estate distribution, if there are any estate funds left to distribute. A better option by far is selling of the Lafayette Property. Its greater market value will yield a substantially higher sales price.[14] With the exception of Debtor and his two adult children, it is already vacant and there are no other apparent impediments to its prompt placement on the market.[15] Furthermore, Debtor and his family would not be rendered homeless because the Alameda Property's five-bedroom two-bathroom middle unit is currently vacant and presumably available for occupancy.[16]

**III.**

**CONTINUANCE OF THE HEARING ON THIS MATTER IS WARRANTED**

The Hannas respectfully submit that the Sale Motion should not be decided until Debtor provides further information regarding the current status of the "cash for keys" negotiations with the Alameda Property's two tenants, the agreed-upon amount, and when or if the tenants are willing to vacate. Ruling on the Sale Motion should also be postponed because granting it now

---

[13] At the § 341(a) Meeting of Creditors held on June 1, 2021, Debtor could not provide his potential employer's last name, the location of the construction project that he would be employed to supervise, whether a building permit had been issued so work could commence, etc. He also indicated that his adult children had been living rent free in the two accessory dwelling units on the Lafayette Property and would not be paying any rent until a plan was confirmed. See transcript from § 341(a) Meeting of Creditors at 9:17-18, 21:3-4, 15:20-17:16.

[14] Dkt. No. 213, Decl. of Emaia, ¶¶ 6-7.

[15] Debtor testified at the § 341(a) Meeting that the Lafayette Property was being maintained and its condition was "good." Transcript at 29:22-25.

[16] Dkt. No. 213, Decl. of Emaia, ¶ 10.

would render the cornerstone of the Hannas' Plan – retention of the Alameda Property for Debtor's use and income in favor of selling the Lafayette Property – moot. Furthermore, the proper time to consider the Sale Motion is concurrently with the Encumbrance Motion [Dkt. No. 173]. If both the Hannas' and the Joint Disclosure Statements are approved, then the unsecured creditors will need sufficient time to decide whether they support the Hannas' Proposed Plan or the Joint Proposed Plan.[17] Finally, since the Court previously continued the hearing on the Encumbrance Motion, [Dkt. No. 173], the interests of judicial economy will also be served by considering these motions at the same time.

## IV.
## RESERVATION OF RIGHTS

The Hannas reserve the right to supplement and/or amend this objection to include subsequently discovered facts and to raise any pertinent issues at the hearing on the Sale Motion.

## V.
## CONCLUSION

Based upon the forgoing, the Hannas respectfully request that the Court deny the Sale Motion or, in the alternative, continue the hearing on the Motion so that it may be considered concurrently with the Encumbrance Motion.

Dated: August 31, 2021              LAW OFFICES OF SELWYN D.
                                    WHITEHEAD


                                    /s/ *Selwyn D. Whitehead*
                                    Selwyn D. Whitehead
                                    Attorney for Creditors
                                    JEFF HANNA and AMALIA HANNA

---

[17] If the Court approves the Hannas' Disclosure Statement [Dkt. No. 212], then Debtor and the Gardners may not have a sufficient number of votes for approval of their Joint Proposed Plan. [Dkt. No. 193].

- 7 -

The Hannas' Objection to Motion for Order Authorizing Sale of Alameda Property & Motion to Continue Hearing
Case No. 20-50469-SLJ

Case: 20-50469   Doc# 226   Filed: 08/31/21   Entered: 08/31/21 23:45:22   Page 7 of 8

| | | |
|---|---|---|
| 1 | Dated: August 31, 2021 | LOCKHART PARK, LLP |
| 2 | | |
| 3 | | /s/ *Deirdre M. Digrande* |
| 4 | | Deirdre M. Digrande<br>Attorneys for Creditors<br>JEFF HANNA and AMALIA HANNA |