**MEYER LAW GROUP LLP**
 A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone: (415) 765-1588
Facsimile: (415) 762-5277
Email: brent@meyerllp.com

Attorneys for Plan Proponent
DALE GARDNER and
MELISSA GARDNER

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re | BK Case No.: 20-50469-SLJ |
| MORDECHAI KOKA, | Chapter 11 |
| Debtor in Possession. | **NOTICE OF TECHNICAL MODIFICATIONS TO THE JOINT PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT (JULY 20, 2021)** |
| | Date: |
| | Time: |
| | Location: Telephonic / Videoconference[1] |
| | Judge: Hon. Stephen L. Johnson |

---

[1] Paragraph 10 of General Order 38 (Seventh Amended) provides that "[u]nless otherwise ordered by the presiding judge, all notices of any motion or application filed with the court and served on any party which sets a hearing date for the motion or application must state that the hearing will not be conducted in the presiding judge's courtroom but instead will be conducted by telephone or video, and include the following language: 'All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.'" See *https://www.canb.uscourts.gov/sites/default/files/generalorders/Seventh GO38.pdf.*

- 1 -

BK CASE NO. 20-50469-SLJ

NOTICE OF TECHNICAL MODIFICATIONS TO THE JOINT PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT (JULY 20, 2021)



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

**TO: THE HONORABLE STEPHEN L. JOHNSON, ALL PARTIES IN INTEREST, AND COUNSEL OF RECORD (IF ANY):**

**PLEASE TAKE NOTICE** that attached as **Exhibit A** are proposed technical corrections to the *Joint Proposed Combined Plan of Reorganization and Disclosure Statement* (July 20, 2021) [Dkt. No. 193] (the "Proposed Plan"), which are consistent with the recent amendments to the Bankruptcy Petition, Schedules, and Statement of Financial Affairs [Dkt. No. 229] recently filed by Debtor in the above-captioned matter.

In the event that the Court approves the Disclosure Statement set forth in the Proposed Plan at the hearing on September 2, 2021, then the Plan Proponents anticipate incorporating each of those technical corrections set forth in **Exhibit A**, along with all other amendments (if any) that this Court may require at the hearing, in the final version of the Proposed Plan that would be filed and served for purposes of confirmation.

Dated: September 1, 2021

**MEYER LAW GROUP, LLP**

By: /s/ BRENT D. MEYER
_____
Brent D. Meyer
Attorneys for Plan Proponent
DALE GARDNER and
MELISSA GARDNER

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

BK CASE NO. 20-50469-SLJ
NOTICE OF TECHNICAL MODIFICATIONS TO THE JOINT PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT (JULY 20, 2021)

Case: 20-50469   Doc# 231   Filed: 09/01/21   Entered: 09/01/21 16:07:09   Page 2 of 26

# EXHIBIT A

**United States Bankruptcy Court**
**Northern District of California**

In re:                          Case No. 20-50469-SLJ

MORDECHAI KOKA                  Chapter 11

_____/

**MORDECHAI KOKA, DALE GARDNER AND MELISSA GARDNER'S**
**JOINT PROPOSED COMBINED PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT**
(September 1, 2021)

Deleted: July

Deleted: 20

**INTRODUCTION**

This is debtor Mordechai Koka ("Debtor") and creditors Dale Gardner and Melissa Gardner's (collectively, the "Plan Proponent") Joint Combined Chapter 11 Plan of Reorganization and Disclosure Statement ("Plan"). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by the Plan Proponent's counsel, and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time].

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows monthly income and expenses for the estate. Exhibit 4 describes how much the Debtor is required to pay on the effective date of the plan. Exhibit 5

Deleted: July 20

shows the monthly income and expenses related to each investment property.  Exhibit 6 provides additional terms governing the Plan and the means of effectuating the Plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace Debtor's pre-confirmation debts.  Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan.  If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights.  Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments.  Enforcement of the Plan, discharge of Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Property to be Sold.**

| Class | 1(A) |
|---|---|
| Name of Creditor | Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A |
| Collateral | 1702 Paru Street (1st DOT) Alameda, California 94501 |
| Amount Due | $824,534.99 |
| Monthly Payment | $4,662.02 |
| Value of Collateral | $1,750,000 (estimate) |

**Deleted:** 650

| Class | 1(B) |
|---|---|
| Name of Creditor | Citibank West, FSB |
| Collateral | 1702 Paru Street (2nd DOT) Alameda, California 94501 |
| Amount Due | $153,000.00 |
| Monthly Payment | $0.00 |
| Value of Collateral | $1,750,000 (estimate) |

**Deleted:** 650

**Deleted:** July 20

Debtor will sell the above collateral within 90 days of the Effective Date, paying secured creditors from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days notice to lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2.

Debtor will make the above monthly payments pending the closing of the sale, due the 15th day of the month, starting in the month following the Effective Date.

On April 27, 2020, Debtor and Class 1(A) Claimant Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A ("Deutsche Bank") entered into a *Stipulation for Plan Treatment on First Lien Secured by Real Property Located at 1702 Paru Street, Alameda, CA 94501* (the "Deutsche Bank Stipulation") [Dkt. No. 38], with respect to the treatment of the Class 1(A) claim of Deutsche Bank, which is incorporated herein by reference. Further, the terms and conditions of the Deutsche Bank Stipulation shall govern, supersede, and replace any inconsistent or contrary provision set forth in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

| Class | 1(C) |
|---|---|
| Name of Creditor | HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-AF1 |
| Collateral | 858 Acalanes Road (1st DOT) Lafayette, California 94549 |
| Regular Monthly Payment | $5,238.29 |
| Estimated Arrears | $428,325.78 |
| Interest Rate of Arrears | 0.00% |
| Monthly Payment on Arrears | Single lump-sum payment due on or before 180 days after the Effective Date from a new loan commitment or sale of the property. |

Deleted: July 20

Debtor will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorneys fees and late charges) with interest in one (1) payment, due 180 days after the Effective Date on the above secured claims. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the amount. Creditors in these classes shall retain their interest in the collateral until paid in full.

To the extent that Debtor is unable to obtain a loan commitment or other funds sufficient to pay all the outstanding arrears in full within 90 days after the Effective Date, then Debtor shall promptly list, market, and sell the real property commonly known as 858 Acalanes Road, Lafayette, California 94549 to pay the creditors in this class in full, and escrow for such sale shall close no later than 180 days after the Effective Date. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a). Small Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|------------------|-----------------|-------------------|
| CBA Collection Bureau | $ 2,530.00 | $ 1,000.00 |
| Citi Visa (Costco) | $ 4,490.00 | $ 1,000.00 |
| Credit Collection | $ 193.00 | $ 193.00 |
| Franchise Tax Board | $ 399.51 | $ 399.51 |
| Houzz | $ 2,000.00 | $ 1,000.00 |
| Sales Force | $ 7,000.00 | $ 1,000.00 |
| United Site Services | $ 7,000.00 | $ 1,000.00 |
| **TOTAL** | **$ 23,612.51** | **$ 5,592.51** |

This class includes any creditor whose allowed claim is $7,000.00 or less, and any creditor in Class 2(b) whose allowed claim is larger than $7,000.00 but agrees to reduce its claim to $7,000.00. Each creditor will receive on the Effective Date of

Deleted: July 20

the Plan a single payment equal to the lesser of 100.00% of its allowed claim or $1,000.00.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

**Class 2(b). General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Effective Date Payment | Estimated Total Amount to be Paid |
|---|---|---|---|---|
| Jeff Hanna Amalia Hanna | $ 84,941.50 | N | $ 1,477.85 | $ 34,539.33 |
| Allan Hulgan Nicole Hulgan | $ 54,400.00 | N | $ 946.47 | $ 22,120.40 |
| Daniel Morgan Thanh-Tam Morgan | $ 100,682.36 | N | $ 1,751.71 | $ 40,939.96 |
| Mai T. Hoang | $ 18,125.00 | N | $ 315.35 | $ 7,370.08 |
| Dale Gardner Melissa Gardner | $ 1,285,810.91 | N | $ 22,371.06 | $ 522,842.82 |
| **TOTAL** | **$ 1,543,959.77** | **–** | **$ 26,862.44** | **$ 627,812.59** |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** All creditors in this class will receive a *pro-rata* distribution, based on the allowed amount of their claim, of all proceeds of sale from real property commonly known as: (a) 3190 Vichy Avenue, Napa, California 94558 and (b) 1702 Paru Street, Alameda, California 94501, after payment in full of: (i) all secured claims provided for in Part 1; (ii) all reasonable and customary costs, fees, and other charges incurred by Debtor from liquidating property under this Plan or from property previously liquidated by Debtor (not including capital gains taxes); (iii) all claims provided for in Class 2(a); (iv) all administrative claims provided for in Part 3(a)-(c); and (v) any withdrawals or distributions previously ordered by the Court from the net proceeds of sale from the Vichey Property.

**Deleted:** July 20

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **This class is impaired and is entitled to vote on confirmation of the Plan.**  Debtor has indicated above whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a)  Professional Fees.  Debtor will pay the following professional fees in full on the Effective Date or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Farsad Law Office, P.C. (Former Counsel for Debtor) | $ 5,000.00 |
| The Fuller Law Firm, P.C. (Counsel for Debtor) | $ 30,000.00 |
| Christopher Hayes (Former Sub-Chapter V Trustee) | $ 9,717.00 |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date or upon approval by the court, whichever is later; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| Meyer Law Group, LLP (Counsel for Plan Proponent)[1] | $ 25,000.00 |

---

[1] In conjunction with confirmation of the Plan, Meyer Law Group, LLP will file a motion for a substantial contribution pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) prior to receiving any funds from Debtor.

**Deleted:** July 20

Case: 20-50469   Doc# 231   Filed: 09/01/21   Entered: 09/01/21 16:07:09   Page 9 of 26

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full on the Effective Date, with interest (at the non-bankruptcy statutory interest rate). To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the amount of the Effective Date payment.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | $ 1,670.00 | 3.00% | $ 1,670.00 | 1[2] |
| Franchise Tax Board | $ 1,598.05 | 3.00% | $ 1,598.05 | 1[2] |

(d) <u>Priority Security Deposits</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(7) after the creditor surrenders possession of their leasehold interest to Debtor consistent with applicable California law.

To the extent that Debtor sells any property identified in Part 1 subject to a leasehold interest in which the creditor has an allowed claim entitled to priority under section 507(a)(7), Debtor shall have the option to: (a) transfer to the buyer at close of escrow the full amount of the security deposit set forth below in full satisfaction of the allowed claim of the creditor; or (b) provide the buyer with a credit at close of escrow in the aggregate amount of the security deposits set forth below in full satisfaction of the allowed claim of the creditor.

| Name of Creditor | Property for Security Deposit | Amount of Deposit |
|---|---|---|
| Alexander Beuscher Scott Beuscher | Residential Lease for 1702 Paru Street Alameda, California 94501 | $ 1,895.00 |
| Julia Mackenzie Lauren Mackenzie Tammy Le Elliot Allan | Residential Lease for 1702 Paru Street Alameda, California 94501 | $ 2,750.00 |

---

[2] Debtor shall make these payments on the Effective Date.

Deleted: July 20

Case: 20-50469   Doc# 231   Filed: 09/01/21   Entered: 09/01/21 16:07:09   Page 10 of 26

| Manolo Penaranda<br>Erlina Penaranda<br>Arnaldo Catolos<br>Tate Aaron Catolos | Residential Lease for<br>1702 Paru Street<br>Alameda, California 94501 | $ 3,000.00 |

Priority security deposit creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority security deposit claimants are not entitled to vote on confirmation of the Plan.**

**PART 4:   EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) Executory Contracts/Unexpired Leases Assumed.  Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears will be paid in full on the Effective Date.

| Name of Counter-Party | Description of Contract/Lease |
| --- | --- |
| Alexander Beuscher<br>Scott Beuscher | Residential Lease for<br>1702 Paru Street<br>Alameda, California 94501 |
| Julia Mackenzie<br>Lauren Mackenzie<br>Tammy Le<br>Elliot Allan | Residential Lease for<br>1702 Paru Street<br>Alameda, California 94501 |
| Manolo Penaranda<br>Erlina Penaranda<br>Arnaldo Catolos<br>Tate Aaron Catolos | Residential Lease for<br>1702 Paru Street<br>Alameda, California 94501 |

(b) Executory Contracts/Unexpired Leases Rejected.  Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court.  Claims arising from rejection of executory contracts have been included in Class 2(b) (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
| --- | --- |
| [None] | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed rejected.

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
September 2, 2021                    –8–

Deleted: July 20

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**
(a)  Discharge.  Debtor shall not receive a discharge of debts
until Debtor makes all payments due under the Plan or the court
grants a hardship discharge.

(b)  Vesting of Property.  On the Effective Date, all property of
the estate and interests of the Debtor will vest in the
bankruptcy estate pursuant free and clear of all claims and
interests except as provided in this Plan, subject to revesting
upon conversion to Chapter 7 as provided in Part 6(f) below.

(c)  Plan Creates New Obligations.  Except as provided in
Part 6(d) and (e), the obligations to creditors that Debtor
undertakes in the confirmed Plan replace those obligations to
creditors that existed prior to the Effective Date of the Plan.
Debtor's obligations under the confirmed Plan constitute binding
contractual promises that, if not satisfied through performance
of the Plan, create a basis for an action for breach of contract
under California law.  To the extent a creditor retains a lien
under the Plan, that creditor retains all rights provided by such
lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**
(a)  Creditor Action Restrained.  The confirmed Plan is binding
on every creditor whose claims are provided for in the Plan.
Therefore, even though the automatic stay terminates on the
Effective Date with respect to secured claims, no creditor may
take any action to enforce either the pre-confirmation obligation
or the obligation due under the Plan, so long as Debtor is not in
material default under the Plan, except as provided in Part 6(e)
below.

(b)  Obligations to Each Class Separate.  Debtor's obligations
under the Plan are separate with respect to each class of
creditors.  Default in performance of an obligation due to
members of one class shall not by itself constitute a default
with respect to members of other classes.  For purposes of this
Part 6, the holders of all administrative claims shall be
considered to be a single class, the holders of all priority
claims shall be considered to be a single class, and each non-
debtor party to an assumed executory contract or lease shall be
considered to be a separate class.

(c)  Material Default Defined.  If Debtor fails to make any
payment, or to perform any other obligation required under the
Plan, for more than 10 days after the time specified in the Plan
for such payment or other performance, any member of a class

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
September 2, 2021                    –9–

Deleted: July 20

affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d)  Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e)  Claims not Affected by Plan.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f)  Effect of Conversion to Chapter 7.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g)  Retention of Jurisdiction.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**
(a)  Effective Date of Plan.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been

Deleted: July 20

filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b)  Disputed Claim Reserve.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be distributed pro-rata among allowed claims in this class.

(c)  Cramdown.  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan Proponent reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d)  Severability.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e)  Governing Law.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f)  Lawsuits.

The Plan Proponent believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| [NONE] | | | | |

Debtor shall have the right, post-confirmation, to pursue any and all causes of action, whether or not set forth in

**Deleted:** July 20

Section 7(f) of the Plan or otherwise listed in any of the bankruptcy schedules filed by Debtor in this case.

(g) <u>Notices</u>. Any notice to Debtor or the Plan Proponent shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

<table>
<tr><td><b><u>Debtor</u></b></td><td><b><u>Debtor's Counsel</u></b></td></tr>
<tr><td>Mordechai Koka<br>858 Acalanes Road<br>Lafayette, CA 94549</td><td>The Fuller Law Firm, P.C.<br>Attn: Lars T. Fuller, Esq.<br>60 N. Keeble Avenue<br>San Jose, CA 95126<br><u>lars@fullerlawfirm.net</u></td></tr>
<tr><td><b><u>Plan Proponent</u></b></td><td><b><u>Plan Proponent's Counsel</u></b></td></tr>
<tr><td>Dale Gardner<br>Melissa Gardner<br>442 Fulton Court<br>San Jose, CA 95051</td><td>Meyer Law Group, LLP<br>Attn: Brent D. Meyer, Esq.<br>268 Bush Street #3639<br>San Francisco, CA 94104<br><u>brent@meyerllp.com</u></td></tr>
</table>

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, the Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) <u>Cash Collateral Vests in Debtor</u>. On the Effective Date, all cash collateral generated since the Petition Date (March 10, 2020) from use of property set forth in Part 1 of the Plan and in the possession, custody, or control of Debtor, shall vest in Debtor free and clear of all liens, claims, interests, and encumbrances.

(k) <u>Returned Payments</u>. After the date of confirmation of the Plan, all funds disbursed Debtor that are returned or otherwise not duly negotiated by the claimant (*e.g.*, because the claimant could not be located or refused to accept the funds) and are not claimed within 90 days after the initial disbursement, shall be

Individual Chapter 11
Combined Plan & Disclosure Statement          (Version: 7/30/12)
September 2, 2021                    -12-

**Deleted:** July 20

retained by Debtor.  Unless and until the claimant provides
written notice to Debtor at the address set forth in Section 7(g)
of the Plan, Debtor shall have no further obligation to make any
additional distributions to the claimant pursuant to the Plan.

Dated: September 2, 2021          /s/ MORDECHAI KOKA
                                  Mordechai Koka, Debtor

Dated: September 2, 2021          /s/ LARS T. FULLER
                                  Attorney for Plan Proponent
                                  Mordechai Koka

Dated: September 2, 2021          /s/ BRENT D. MEYER
                                  Attorney for Plan Proponent
                                  Dale and Melissa Gardner

**Deleted:** July 20
**Deleted:** ·
**Deleted:** July 20
**Deleted:** ·
**Deleted:** July 20
**Deleted:** ·

**Deleted:** July 20

**Attorney Certification**

     I, Lars T. Fuller and Brent D. Meyer, are legal counsel for the respective Plan Proponent in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

     The following provisions of the Standard-Form Plan have been altered or otherwise modified.

- **Exhibit A** filed concurrently herewith is a redline copy identifying all alternations and modifications to any provision of the Standard-Form Plan.

     I declare that the foregoing is true and correct. Executed this 20th day of July, 2021.

Dated: September 2, 2021          /s/ LARS T. FULLER
                        Attorney for Plan Proponent
                        Mordechai Koka

Dated: September 2, 2021          /s/ BRENT D. MEYER
                        Attorney for Plan Proponent
                        Dale and Melissa Gardner

| | Deleted: July 20 |
| | Deleted: |
| | Deleted: July 20 |
| | Deleted: ٭ |
| | Deleted: July 20 |

**Exhibit 1 - Events That Led To Bankruptcy**

Pursuant to the *Status Conference Statement* filed by Debtor on April 27, 2020, "[t]his case was commenced with the filing of a petition under Chapter 11 on March 10, 2020" and "[t]he Debtor filed the instant case to stop the non-judicial foreclosure of his real property located at 858 Acalanes Road, Lafayette, CA 94549. <u>See</u> Dkt. No. 39.

As many of the creditors of this case are well aware, Debtor was the sole shareholder of Green Bay Builders, Inc. ("<u>GBBI</u>"), which operated a business as a general contraction under California Contractors State License Board ("<u>CSLB</u>") License No. 1015144. Though Debtor represents that he holds a general contractor license, rather than use his license, he utilized the license of another general contractor (as RMO) to conduct business.

As a result of at least two complaints filed against GBBI and Debtor for its unlawful business practices, on August 19, 2020, CSLB issued a citation against GBBI for: (1) violation of California Business & Professions Code § 7159 and issued a civil penalty of $500 for this violation; (2) violation of California Business & Professions Code § 7159.5 and issued a civil penalty of $750 for this violation; and (3) violation of California Business & Professions Code § 7161(b) and issued a civil penalty of $750 for this violation. <u>See</u> CSLB Citation No. 2 2020 1159 (the "<u>CSLB Citation</u>"). Debtor has remitted payment in full to the CSLB for each of these fines.

Further, on April 1, 2021, the Office of the District Attorney for the County of Santa Clara issued an arrest warrant of Debtor based on the investigation conducted by the CSLB. In particular, the pending charges against Debtor are: (1) violation of California Insurance Code § 11880(a) for willfully misrepresenting facts to obtain state compensation insurance fund; (2) violation of California Penal Code § 484(b) for unlawful diversion of funds; (3) violation of California Business & Professions Code § 7159.5(a)(5) for accepting payment exceeding work performed; and (4) violation of California Business & Professions Code § 7159.3(a)(3) for receiving an excessive down payment. <u>See</u> Case No. RF-2010-28024 (the "<u>Criminal Case</u>").

Debtor does not believe the CSLB Citation or the Criminal Case will have any material impact on his ability to perform each of those obligations and duties required by the Plan.

Deleted: July 20

**Exhibit 2 – What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 1702 Paru Street, Alameda, CA 94501

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 1,750,000 | 1ˢᵗ $ 824,544 | $ 105,000 | $ 283,500 | $ 0.00 | $383,956.00 |
| | 2ⁿᵈ $ 153,000 | | | | |

Real Property #2: 858 Acalanes Road, Lafayette, CA, 94549

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 1,621,500 | 1ˢᵗ $ 1,054,146 | $ 97,290 | $ 140,702 | $75,000.00 | $254,362.00 |

Real Property #3: 3190 Vichy Avenue, Napa, CA 94558*

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ – | 1ˢᵗ – | $ – | $ 26,023.95 | $ – | $172,478.36 |

> \* The Vichy Property sold on August 24, 2020, and the Net Proceeds represent the amount deposited in the IOLTA Trust Account for Farsad Law Office, P.C. at close of escrow, less the estimated capital gains tax of $26,023.95.

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $ 11,198.00 | $ 0.00 | $ 0.00 | $ 11,198.00 |
| Automobile #1 | $ 17,000.00 | $ 0.00 | $ 3,325.00 | $ 13,675.00 |
| Automobile #2 | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 3,000.00 |
| Automobile #3 | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 3,000.00 |
| Household Furnishings | $ 5,300.00 | $ 0.00 | $ 5,300.00 | $ 0.00 |
| Jewelry | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Stocks / Investments | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Other Personal Property | $ 2,850.00 | $ 0.00 | $ 0.00 | $ 2,850.00 |
| TOTAL | | | | $ 33,723.00 |

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | $844,519.36 |
| Recovery from Preferences / Fraudulent Conveyances | [ADD] | $ 0.00 |
| Chapter 7 Administrative Claims | [SUBTRACT] | $ 0.00 |

Case: 20-50469   Doc# 231   Filed: 09/01/21   Entered: 09/01/21 16:07:09   Page 19 of 26

| | | |
|---|---|---|
| Chapter 11 Administrative Claims | [SUBTRACT] | $ 69,717.00 |
| Priority Claims | [SUBTRACT] | $ 3,268.00 |
| Chapter 7 Trustee Fees | [SUBTRACT] | $123,157.00 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | $155,000.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | $493,377.36 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $ 1,567,572 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 44.49%* |
| Percent Distribution to Unsecured Creditors Under Liquidation | 31.47%^ |

\* The estimated dividend to general unsecured creditors is based on an anticipated sale price of $1,750,000 for the Paru Property, and to the extent that the property is sold in excess of this amount, then the actual dividend that general unsecured creditors in Class 2(B) will receive under this Plan may be greater than the estimated dividend (44.49%) set forth in this analysis.

^ At the time of drafting this Plan, the actual amount of taxes due and owing to the Internal Revenue Service and the Franchise Tax Board resultant from the sale of estate property, and in particular, the Paru Property, the Acalanes Property, and the Vichy Property is unknown. As such, the actual dividend that general unsecured creditors would receive under a liquidation in Chapter 7 may be lower than the estimated dividend (31.47%) set forth in the analysis, which also could affect the actual dividend that general unsecured creditors in Class 2(b) will receive under this Plan.

**Deleted:** 126

**Deleted:** 705

**Deleted:** 444,871.36

**Deleted:** 40

**Deleted:** 66

**Deleted:** 28

**Deleted:** 38

**Deleted:** 650

**Deleted:** 40

**Deleted:** 66

**Deleted:** 28.38

**Deleted:** July 20

Case: 20-50469    Doc# 231    Filed: 09/01/21    Entered: 09/01/21 16:07:09    Page 20 of 26

**Exhibit 3 - Monthly Income and Expenses**
(Prior to Sale of 1702 Paru Street, Alameda, California 94501)

| Income | Amount |
|---|---|
| Gross Employment Income | $15,000.00 |
| Gross Business Income | $ 0.00 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | $11,145.00 |
| **A. Total Monthly Income** | $26,145.00 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | $ 3,000.00 |
| Retirement Contributions (401k, IRA, PSP) | $ 0.00 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities)<br>(Total Arrearages on Principal Residence are UNKNOWN) | $ 704.00 |
| Household Expenses (food) | $ 700.00 |
| Transportation Expenses (car payments, insurance, fuel) | $ 924.00 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $ 500.00 |
| Rental Expenses and Maintenance | $ 1,000.00 |
| Other Expenses | $ 59.00 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $ 0.00 |
| **B. Total Monthly Expenses** | $ 6,887.00 |

| **C. Disposable Income** (Line A - Line B) | $19,258.00 |
|---|---|

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Class 1(A) (Deutsche Bank) | $ 4,662.02 |
| Class 1(B) (Citibank West, FSB) | $ 0.00 |
| Class 1(C) (HSBC Bank, N.A) | $ 5,238.29 |
| **D. Total Plan Payments** | $ 9,900.31 |

| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | $ 9,357.69 |
|---|---|

**Deleted:** July 20

**Exhibit 3 - Monthly Income and Expenses**
(After Sale of 1702 Paru Street, Alameda, California 94501)

| Income | Amount |
|---|---|
| Gross Employment Income | $15,000.00 |
| Gross Business Income | $     0.00 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | $ 3,500.00 |
| **A. Total Monthly Income** | $18,500.00 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | $ 3,000.00 |
| Retirement Contributions (401k, IRA, PSP) | $     0.00 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities)<br>(Total Arrearages on Principal Residence are UNKNOWN) | $   704.00 |
| Household Expenses (food) | $   700.00 |
| Transportation Expenses (car payments, insurance, fuel) | $   924.00 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $   500.00 |
| Rental Expenses and Maintenance | $     0.00 |
| Second Mortgage of Acalanes Property | $ 5,400.15 |
| Other Expenses | $    59.00 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $     0.00 |
| **B. Total Monthly Expenses** | $11,287.15 |

| | Amount |
|---|---|
| **C. Disposable Income** (Line A - Line B) | $ 7,212.85 |

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Class 1(C) (HSBC Bank, N.A) | $ 5,238.29 |
| **D. Total Plan Payments** | $ 5,238.29 |

| | Amount |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | $ 1,974.56 |

**Deleted:** July 20

**Exhibit 4 – Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $106,090.00 |
| Payments on Effective Date | | |
| Administrative Expense Claims | $ 69,717.00 | |
| Priority Claims | $ 3,268.05 | |
| Small Claims (Class 2(a)) | $ 5,592.51 | |
| Unsecured Claims (Class 2(b)) | $ 26,862.44 | |
| U.S. Trustee Fees | $ 650.00 | |
| B. Total Payments on Effective Date | | $ 79,227.56 |
| **C. Net Cash on Effective Date** (Line A – Line B) (Not feasible if less than zero) | | $ 0.00 |

**Deleted:** July 20

**Exhibit 5 - Investment Property Analysis**

**Properties with Positive Monthly Cash-Flow:**

Real Property #1 Income: 1702 Paru Street, Alameda, CA 94501

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $ 7,645.00 | 1ˢᵗ   N/A* | $    N/A* | $    N/A* | $    N/A* | $ 7,645.00 |

   * The expenses for the Paru Property are included in the expenses set forth in Exhibit 4 above.  Further, pursuant to Part 1 of the Plan, Debtor will sell this property for the benefit of creditors, and as such, it not anticipated that rental income generated by this property will have any material impact on distributions to creditors under this Plan.

Real Property #2 Income: 858 Acalanes Road, Lafayette, CA, 94549

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $ 3,500.00 | 1ˢᵗ   N/A^ | $    N/A^ | $    N/A^ | $    N/A^ | $ 3,500.00 |

   ^ Debtor resides in the Acalanes Property and all corresponding expenses are included in the expenses set forth in Exhibit 3 above.

| A. Total Positive Cash Flow | $11,145.00 |
|---|---|

**Properties with Negative Monthly Cash-Flow:**

| B. Total Negative Cash Flow | $    0.00 |
|---|---|

Deleted: July 20

**Exhibit 6 – Additional Plan Provisions**

**PART 8.  MEANS OF EXECUTION OF PLAN**

(a)  <u>Transfer Net Proceed of Sale from Vichy Property</u>.
Immediately after entry of an order confirming the Plan, Farsad
Law Offices P.C. shall turn over to The Fuller Law Firm, P.C.
all funds (approximately $99,732.31) held in its IOLTA attorney-
client trust account from the sale of real property commonly
known as 3190 Vichy Avenue, Napa, California 94501 as authorized
by Paragraph (15) of the *Order Authorizing Sale of Real Property*
[Dkt. No. 76], and The Fuller Law Firm, P.C. shall deposit these
funds in its IOLTA attorney-client trust account.  The Fuller Law
Firm P.C. shall hold these funds in trust for the benefit of
creditors provided for by the terms of the Plan.

(b)  <u>Deposit of Net Proceeds of Sale from the Paru Property</u>.
All net proceeds of sale from real property commonly known as
1702 Paru Street, Alameda, California shall be deposited
directly into the IOLTA attorney-client trust account for the
Fuller Law Firm, P.C. and <u>shall not</u> be transferred directly to
Debtor or deposited into any account maintained by Debtor.  The
Fuller Law Firm P.C. shall hold these funds in trust for the
benefit of creditors provided for by the terms of the Plan.

(c)  <u>The Fuller Law Firm P.C. as Sole Disbursing Agent</u>.  The
Fuller Law Firm P.C. shall act as the sole disbursing agent for
purposes of remitting all payments due and owing to creditors
provided for by the terms and conditions of the Plan.

(d)  <u>Payment of Class 2(B) Claims</u>.  The Fuller Law Firm P.C.
shall make *pro-rata* distributions to creditors in Class 2(B)
based on the allowed amount of their claim as follows:

    (i)  <u>Effective Date Payment</u>.  On the Effective Date, The
        Fuller Law Firm P.C. shall disburse to each creditor in
        Class 2(B) a single *pro-rata* distribution based on the
        allowed amount of their claim the remaining balance of
        the net proceeds of sale from real property commonly
        known as 3190 Vichey Avenue, Napa, California 94558
        after payment of the claims provided for in Class 2(a),
        Part 3(a), Part 3(b), and Part 3(c) of the Plan
        (estimated at $26,862.44).

    (ii)  <u>Sale of Paru Property</u>.  Within thirty (30) days after
        receipt of the net proceeds of sale from real property
        commonly known as 1702 Paru Street, Alameda, California

Deleted: July 20

94501 (estimated at $ 667,456), The Fuller Law Firm P.C. shall disburse to each creditor in Class 2(B) a single *pro-rata* distribution based on the allowed amount of their claim.

Deleted: 573,456

(e)   Withdrawal of Homestead Exemption.  Within seven (7) after entry of an order confirming the Plan, the Dale and Melissa Gardner shall withdraw in its entirety their *Objection to Debtor's Claim of Homestead Exemption, and in the Alternative, Motion to Transfer Venue to Oakland Division* [Dkt. No. 145].

(f)   Capital Gains Taxes.  Debtor shall be solely responsible for any and all post-petition tax obligations, including but not limited to, capital gains taxes due and owing to the Internal Revenue Service (IRS) and California Franchise Tax Board (FTB) resultant from the sale of any real property and personal property after the petition date (March 10, 2020).

For clarification and avoidance of all doubt, Debtor shall not reduce or otherwise deduct any taxes due and owing to any applicable taxing authority (including capital gains) incurred from the sale of 3190 Vichy Avenue, Napa, California 94558 or 1702 Paru Street, Alameda, California 94501 in calculating the net proceeds of sale that shall be remitted to creditors provided for in Class 2(B) of the Plan.

(g)   Encumbrances on Lafayette Property.  Except to obtain a loan in an amount sufficient to satisfy the full amount of the arrearage claim (approximately $428,325.78) provided for in Class 1(C) of the Plan, until entry of discharge, Debtor shall not sell, transfer, lease, or otherwise encumber real property commonly known as 858 Acalanes Road, Lafayette, California 94549 without obtaining: (i) written approval from Dale and Melissa Gardner; and (ii) entry of an order from the court approving the proposed transaction.

Deleted: July 20