

The following constitutes the order of the Court.
Signed: September 3, 2021

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

MORDECHAI KOKA,

        Debtor.

Case No.: 20-50469 SLJ

Chapter 11

Date: September 2, 2021
Time: 1:30 p.m.
Ctrm: 9 (Remote)

**ORDER AFTER HEARING ON APPROVAL OF DISCLOSURE STATEMENT (HANNAS PLAN)**

The court held a hearing on approval of the disclosure statement portion of the Combined Plan of Reorganization and Disclosure Statement proposed by Amalia and Jeff Hanna ("Plan") at the above-referenced date and time. Appearances were noted on the record. For reasons stated on the record, the court indicated it would issue an order detailing the disclosure defects with the Plan. The court found the following errors and/or issues in the Plan:

1. Class 1(A): This is the senior secured claim of Deutsche Bank which has a lien on the Alameda Property. Although the Plan incorporates the stipulation between Deutsche Bank and Debtor, it also proposes terms that are contradictory to the stipulation, as well as contradictory within the provision. In the last row of the table titled Monthly Payment on Arrears, the Plan

provides for Debtor to make a single lump-sum payment within 90 days after Effective Date to cure all arrears. In the very next paragraph, the Plan provides for Debtor to pay all arrears on the 15th of the month after the Effective Date, which is far fewer than 90 days. In the paragraph after that, it states that the stipulation, which requires that all arrears must be cured within 30 days of the Effective Date, controls and supersedes any contrary provisions in the Plan. In sum, the treatment provides three different deadlines for Debtor to cure the arrears. It is unclear what is the Hannas' intention here because they admit that the stipulation is controlling.

2. Class 1(B): This is Citibank's secured claim, which is junior to Deutsche Bank. However, in the third row of the table describing this claim titled "Collateral," it indicates Citibank has a "1st DOT." The text describing the treatment of Citibank is confusing and contradictory. The first paragraph requires Debtor to pay the entire amount due by making all post-confirmation regular monthly payments and to cure all arrears in one lump-sum payment within 180 days of the Effective Date. The very next paragraph states that pending payment in full to Citibank, Debtor shall make adequate protection payments of $643. It appears Debtor will be required to make the regular contractual monthly payments plus $643 for the duration of the loan. No reason is given why adequate protection is necessary if the Plan is already requiring Debtor to make regular monthly payments. In the third paragraph, Debtor is required to sell the Alameda Property if he cannot show he has the funds or loan commitment to pay all arrears within 120 days and to close such a sale within 220 days of the Effective Date. Thus, compliance with this last paragraph to close a sale within 220 days will still render Debtor in default of the first paragraph which requires curing of all arrears within 180 days. Moreover, Citibank has a junior lien and the Plan does not require the sale to generate sufficient proceeds to pay off Citibank, such as in a short sale. This entire section should be redrafted.

3. Class 2(a) Small Claims: FTB is listed with a general unsecured claim of $399.51, but FTB filed an amended claim on June 17, 2021, for $0.

4. Class 2(c) the Gardners Claim: The Plan provides that this class is unimpaired, to which the Gardners have objected. Although this is not a disclosure issue, the court notes that if

this is incorrect and inconsistent with § 1124, the Plan may be unconfirmable and the court would not permit it to be balloted.

5. Part 3(c) Tax Claims: The Plan lists IRS with a priority claim of $1,670 and FTB with a priority claim of $1,598. But both IRS and FTB filed amended claims for $0 priority claims. The same should be removed from Exhibit 4 Effective Date Feasibility.

6. Part 4(c): This section requires the plan proponent to choose whether executory contracts not specifically listed will be deemed assumed or rejected. No selection was made. The Hannas need to delete "[select one]" and elect either "assumed" or "rejected."

7. Part 7(b) Disputed Claim Reserve: Similar to above, this section requires the plan proponent to select whether any funds no longer needed in reserve should be "returned to Debtor" or "distributed pro-rata…" No selection was made. The Hannas need to delete "[select one]" and make an election.

8. Part 7(g) Notice: This section refers to "notice to Debtor" shall be given at the address indicated, but the Plan has only the addresses of the Hannas and their counsel. If the Hannas do not intend for notices to be given to Debtor, they must revise the language of this section. Alternatively, the Hannas must provide an address for Debtor.

9. Part 6(c) and Part 7(g): The Hannas made these two sections incompatible. Part 6(c) is Material Default and requires creditors affected by a default to "serve upon Debtor and Debtor's attorney a written notice of Debtor's default." It requires Debtor to respond within 30 days after service of default notice. However, in Part 7(g), instead of providing an address for Debtor, it only has addresses for the Hannas and their counsel. It is unclear if the Hannas intend for notices, including default notices, to be served on Debtor, the Hannas, or both. These two sections should be consistent as to which parties receive notices and respond to default.

10. Exhibit 3 Feasibility Analysis: There is no information or evidence to support the $15,000 in gross employment income. The Hannas objected to the Joint Plan filed by Debtor and the Gardners on this point, but this Plan suffers from the same defect.[1]

---

[1] By objecting to the Joint Plan, the Hannas are seemingly conceding that their Plan also does not provide adequate disclosure.

ORDER ON DISCLOSURE STATEMENT

11. Exhibits 3 and 5: The Plan is double-counting the rental income from Debtor's children for living on the Lafayette Property and all the mortgage expenses. In Exhibit 3, the rental income of $3,500 from the Lafayette Property is listed under Income and the mortgage payment of $5,238 for the Lafayette Property is listed under Plan Payments for Class 1(C). However, those same amounts are also used in Exhibit 5 to calculate the cash flow of the Lafayette Property, which has a negative $1,738 cash flow. This negative number is then carried over to Exhibit 3 as an expense, even though both the rental income and the mortgage are already accounted for in Exhibit 3. A similar problem exists for the Alameda Property on the expense side. The monthly payments of the two mortgages on the Alameda Property are in Exhibit 3 as Plan Payments to Classes 1(A) and 1(B), but they are also used in Exhibit 5 to create a net negative cash flow of $415 for the Alameda Property, which is then added to Exhibit 3 as an expense.

12. Exhibit 6 is a newly created exhibit that is titled "Part 8. Means of Execution of Plan." This section contains substantive and material provisions that should be added to the Plan itself, not as an exhibit. There are also numerous typographical errors in Part 8. The first sentence of the second paragraph refers to net proceeds from the sale of the Alameda Property, even though the Plan calls for sale of the Lafayette Property. Although Part 8(d) is titled "Payment of Class 2(B) Claims" and the first sentence begins with "distributions to creditors in Class 2(B)," this section actually discusses disbursements to Classes 2(B) and 2(C). Part 8(d)(i) refers to disbursement "to each creditor in Class 2(C)…" but the Gardners are the only creditors in Class 2(C). It is also inconsistent with the treatment of Class 2(C), which proposes to pay the Gardners an Effective Date payment of $22,842.82 and another $500,000 upon the sale of the Lafayette Property. Part 8(d)(i), on the other hand, provides for a "single pro-rata distribution based on the allowed amount of their claim" to the Gardners on the Effective Date, which is estimated at $22,842.82. This amount is not the allowed amount of the Gardners' claim but rather is only a portion of it.

As indicated at the hearing, the Hannas shall make the changes noted above by October 1, 2021. Any objections shall be filed by October 23, 2021. The hearing on approval of the disclosure statement portion of the Plan is continued to November 4, 2021, at 1:30 p.m.

IT IS SO ORDERED.

*** END OF ORDER***

ORDER ON DISCLOSURE STATEMENT

-5-

**COURT SERVICE LIST**

**[ECF Recipients]**