SELWYN D. WHITEHEAD, ESQ. (CSB No. 236391)
LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Tel: (510) 632-7444
Fax: (510) 856-5180
Email: selwynwhitehead@yahoo.com

JULYN M. PARK (CSB No. 213429)
DEIRDRE M. DIGRANDE (CSB No. 199766)
LOCKHART PARK, LLP
5201 Great America Parkway, Suite 320
Santa Clara, CA 95054
Tel: (408) 416-2929
Fax: (855) 368-1020
Email: jpark@lockhartpark.com
       ddigrande@lockhartpark.com

Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>MORDECHAI KOKA,<br><br>    Debtor-in-Possession. | Case No. 20-50469-SLJ<br><br>Chapter 11<br><br>**CREDITORS JEFF AND AMALIA HANNAS' OBJECTION TO MOTION FOR ORDER AUTHORIZING DEBTOR TO ENCUMBER REAL PROPERTY**<br><br>Date: September 21, 2021<br>Time: 2:00 p.m.<br>Location: Telephonic/Videoconference<br>Judge: Hon. Stephen L. Johnson |

    Creditors Jeff Hanna and Amalia Hanna ("the Hannas") hereby object to Debtor's motion for an order authorizing him to encumber the real property ("Encumbrance Motion") [Dkt. Nos. 172 and 238] and on the grounds stated below.

////

////

- 1 -

**I.**

**PRELIMINARY STATEMENT**

Debtor asks this Court to approve a another loan ("Second Loan") on the real property located at 858 Acalanes Road, Lafayette, California ("Lafayette Property") in order to satisfy his debts to the senior lender. The Encumbrance Motion is yet another surreptitious attempt to undermine the Chapter 11 plan submitted by the Hannas[1] (which advocates the sale of the Lafayette Property, among other things) before the adequacy of disclosure aspects of the Hannas' Proposed Plan is even considered by the Court.[2] This type of maneuver should not be tolerated. Moreover, to allow Debtor to incur debt at the inflated interest rate of 11.782 percent that would require interest-only servicing payments of $5,400.00 per month will do nothing to retire any of either the new debt or the existing debt. Instead, it will sap up to $550,000.00 in equity that could, under the Hannas' Proposed Plan, be used to pay the unsecured creditors. Further encumbering the Lafayette Property is not the best use of the Lafayette Property's equity and certainly not in the best interests of the independent unsecured creditors.

**II.**

**DEBTOR'S ATTEMPT TO FURTHER ENCUMBER THE LAFAYETTE PROPERTY IS ILL-CONCEIVED, IMPRUDENT, AND DETRIMENTAL TO THE INTERESTS OF THE UNSECURED CREDITORS**

Debtor's questionable acts and omissions, including inflating his ability to satisfy his debts, imprudent business decisions, unfounded and contradictory statements, and dilatory tactics, undermine the prudence, feasibility, and fairness of incurring additional post-petition debt. Instead, it is but another example of his inability to fulfill his primary duty as a debtor in possession – acting as the sound fiduciary of his creditors while putting forth a plan of reorganization that can give him a reasonable chance at a fresh start.

---

[1] The Proposed Combined Plan of Reorganization and Disclosure Statement (August 10, 2021) [Dkt. No. 212], hereinafter ("Hannas' Proposed Plan").

[2] At the September 2, 2021 hearing on the Disclosure Statement aspects of the Hannas' Proposed Plan [Dkt. No. 212] and the Joint Proposed Combined Plan of Reorganization and Disclosure Statement submitted by Debtor and the Gardners ("Joint Proposed Plan") [Dkt. No. 193], the Court ordered the parties to resubmit revised proposed plans and set the hearing on the disclosure aspects of the respective plans for November 4, 2021.

**A.   The Terms of the Proposed Second Loan Are Unreasonable**

In his Supplemental Declaration, Debtor describes his currently indebtedness on the Lafayette Property:

> The Lafayette Property is encumbered by a first deed of trust serviced by Mr. Cooper. Pursuant to Proof of Claim No. 4 filed in the herein case on June 19, 2020, the balance of the 1st loan was $965,095.64 inclusive of arrears in the amount of $428,325.78. I am approximately $95,000 post-petition delinquent in payments. [Dkt. No. 238-1, p. 2, ¶ 4.]

Under the terms of the Second Loan, Debtor proposes to select the three-year option loan in an amount not to exceed $550,000.00,

> payable in interest-only payments of $5,400.15/month representing monthly interest-only payments at 11.782%. The cost of the loan is 3.98% of the loan amount." [Dkt. No. 238-1 p. 3, ¶ 7.]

These loan terms will simply put Debtor on a new hamster wheel, where he is borrowing money to catch up on payments on his defaulted senior loan while making steep interest-only payments on the Second Loan.

**B.   Debtor Has Not Demonstrated His Ability to Make Monthly Plan Payments in Addition to Monthly, Interest-Only Payments on the Second Loan**

The Joint Proposed Plan put forth by Debtor and the Gardners [Dkt. No. 193] calls for Debtor to distribute to his unsecured creditors on a pro rata basis approximately 40.66 percent of their claims from a pot of funds created by the Alameda Property sale proceeds and the residual from the already liquidated located in Napa, California. However, as the Court has already noted, the Plan is lacking in that Debtor has yet to establish his ability to the pot plan payments. The proceeds from the Alameda Property are speculative in that there is no contractual cap on the amount the bankruptcy estate must pay to remove the existing tenants. There is no back-up mechanism to pay the unsecured creditors from the Debtor's ongoing income, let alone meet the debt service for the senior loan and Second Loan, because the Debtor has no verifiable ongoing monthly income.[3]

Once source of income previously identified by Debtor is the sum that he will purportedly

---

[3] As discussed in below, Debtor has not provided any documentation to support his claim of obtaining employment.

Case: 20-50469   Doc# 244   Filed: 09/16/21   Entered: 09/16/21 23:52:58   Page 3 of 7

receive from his adult children for renting the two ancillary units on the Lafayette Property.[4]
However, for unknown reasons, Debtor has deferred payment of rent until a plan is confirmed; n
the meantime, Debtor is expecting his children to set aside their monthly rental payments and
supposedly pay him a lump sum when the time comes.[5] Debtor has not presented any written
agreement with his children supporting this arrangement nor explained why they are continuing to
live rent free on the Lafayette Property.

In sum, Debtor simply cannot afford to incur additional debt without demonstrating *now* his ability to make pot payments. Furthermore, incurring additional debt will make the Joint Proposed Plan infeasible, in violation of § 11 U.S.C. § 1325(a)(6).

**C.  Further Encumbering the Lafayette Property Undermines the Hannas' Proposed Plan and the Likelihood of the Independent Unsecured Creditors Receiving Any Pay-Out From Its Sale Proceeds**

Debtor asserts that the Second Loan "will not adversely impact creditors…." [Dkt. No. 238-1, p. 3, ¶ 9.] This is far from the truth. The Hannas' Proposed Plan calls for sale of the Lafayette Property instead of the less-valuable Alameda Property. Permitting Debtor to obtain the Second Loan will sap the equity that the Hannas propose to use to pay the unsecured creditors and render their plan moot before they are able to establish to the Court's satisfaction that is feasible and fair. Furthermore, the independent unsecured creditors will be deprived of the opportunity to weigh-in on which of the competing plans they believe best serves their interests.

**D.  Debtor's Has Repeatedly Demonstrated His Inability and/or Unwillingness to Make Sound Business Decisions and Act in the Best Interests of the Independent Unsecured Creditors**

As pointed in the Hannas' Objection [Dkt. No. 226] to Debtor's Motion for Order Authorizing Sale of Real Property on 1702 Paru Street, Alameda, CA ("Alameda Property") [Dkt. No. 202], Debtor has agreed to sell the Alameda Property on unfavorable terms – less than market price[6] under onerous terms, namely funding the removal of the existing tenants at the bankruptcy

---

[4] Debtor estimates the fair market rental value totals $4,500.00. See transcript from § 341(a) Meeting of Creditors held on June 1, 2021 ("June 1 Transcript") at 23:1-12.
[5] See June 1 transcript at 9:17-18, 21:20-24.
[6] The appraiser engaged by the Hannas estimates the Alameda Property to be worth at least $1,899,000. [See Dkt. 213 at p. 3.]

- 4 -

The Hannas' Objection to Motion for Order Authorizing Debtor to Encumber Real Property
Case No. 20-50469-SLJ

Case: 20-50469    Doc# 244    Filed: 09/16/21    Entered: 09/16/21 23:52:58    Page 4 of 7

estate's expense. [See Dkt. No. 209 at p. 2, ¶ 8.]

E. **Debtor's Contradictory Statements Undermine His Credibility and Competence As Debtor in Possession and, Thus, the Propriety of Further Encumbering the Lafayette Property**

Debtor averred in his initial declaration supporting the Encumbrance Motion that he had secured employment "commencing in late June 2021 with a salary of $15,000/month." [See Dkt. No. 172-1 at p. 2.]. However, in his Supplemental Declaration [Dkt. No. 238-1], he claims to be currently employed, earning $12,000.00 per month, and expecting his first paycheck on September 17, 2021. [See Dkt. No. 238-1 at p. 3, ¶ 6.] Debtor's claim of gainful employment lacks credibility when considered along with his history of less-than-candid judicial admissions and statements.[7] His declaration notably does not include an employment contract as an exhibit or any statement as to the amount of his net income.

Another example of Debtor's inconsistency with regard to facts is his present assertion that the Lafayette Property is in poor condition – the foundation is sinking, the 35 year-old roof is leaking, etc [see Dkt. No. 238-1, pp. 1, ¶ 2]. This directly belies his statements made under oath at the June 1, 2021 § 341(a) Meeting of Creditors:

> Q. Just was hoping to get a status on, Mr. Koka, are you living in Lafayette now?
>
> A. Yes, sir….
>
> Q. Okay. And is the property being maintained?
>
> A. Yes.
>
> Q. Okay. It's being properly maintained, I should say, being kept up to maintain its value?
>
> A. Yes.[8]
>
> ¶¶
>
> Q. Earlier you said that the Lafayette property's currently being maintained. How would you describe the current condition of the Lafayette property?
>
> A. Good.

---

[7] See the Court's remarks in the transcript from the June 22, 2021 hearing on the Hannas' and Gardners' Objections to Subchapter V designation at 20:2-4: "In this case, the Debtor has taken completely inconsistent and contradictory positions under oath in an attempt to qualify for Sub Chapter V."

[8] June 1 Transcript at 8:15-24.

- 5 -

The Hannas' Objection to Motion for Order Authorizing Debtor to Encumber Real Property
Case No. 20-50469-SLJ
Case: 20-50469    Doc# 244    Filed: 09/16/21    Entered: 09/16/21 23:52:58    Page 5 of 7

Q. Are any major repairs needed for right now?

A. No.

Q. Have you — have you recently made any major repairs to the Lafayette property?

A. Yes. I did some remodeling, bathroom remodeling, and painting, yes.[9]

## III.

## CONTINUANCE OF THE HEARING ON THIS MATTER IS WARRANTED

The Hannas respectfully submit that even if the Court is inclined to grant it, the Encumbrance Motion should be placed in abeyance and ruled on at the same time as the hearing on the competing Proposed Plans (the Joint Proposed Plan [Dkt. No. 193] and the Hannas' Proposed Plan [Dkt. No. 212] because a decision now would render the cornerstone of the Hannas' Proposed Plan – retention of the Alameda Property for Debtor's use and income in favor of selling the Lafayette Property to fund the general unsecured creditors' dividend – unworkable.

## IV.

## RESERVATION OF RIGHTS

The Hannas reserve the right to supplement and/or amend this objection to address any new facts or arguments raised by Debtor or other pertinent issues at the hearing.

## V.

## CONCLUSION

The Hannas respectfully request that the Court deny the Encumbrance Motion outright or, in the alternative, continue the hearing on this Motion until it can be heard concurrently with their Proposed Plan.

////

////

////

////

////

---

[9] June 1 Transcript at 29:22 – 30:1-6.

- 6 -

The Hannas' Objection to Motion for Order Authorizing Debtor to Encumber Real Property

Case: 20-50469    Doc# 244    Filed: 09/16/21    Entered: 09/16/21 23:52:58    Page 6 of 7

Case No. 20-50469-SLJ

| | | |
|---|---|---|
| Dated: September 16, 2021 | | LAW OFFICES OF SELWYN D. WHITEHEAD |

/s/ *Selwyn D. Whitehead*
Selwyn D. Whitehead
Attorney for Creditors
JEFF HANNA and AMALIA HANNA

Dated: September 16, 2021      LOCKHART PARK, LLP

/s/ *Deirdre M. Digrande*
Deirdre M. Digrande
Attorneys for Creditors
JEFF HANNA and AMALIA HANNA