**United States Bankruptcy Court**
**Northern District of California**

In re:                                    Case No. 20-50469-SLJ
**MORDECHAI KOKA**
                                          Chapter 11

_____/

### CREDITORS AMALIA AND JEFF HANNA'S[PROPOSED] COMBINED PLAN OF REORGANIZATION

### AND[TENTATIVELY APPROVED] DISCLOSURE STATEMENT (August 10, 2021), *As Amended* (October 8, 2021)

**INTRODUCTION**

This is Amalia and Jeff Hanna's (the Plan Proponent") Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the "Plan"). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by the Plan Proponent's counsel, the Law Offices of Selwyn D. Whitehead and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time]. However, the court will first determine if the disclosure aspects of this Plan provide sufficient information to the parties in interest at a hearing currently scheduled for November 4, 2021 at 1:30 P.M.

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case.

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                    (Version : 7/30/12
October 8, 2021

-1-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 1 of 26

Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  Exhibit 3 shows Debtor's monthly income and expenses.  Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.  Exhibit 5 shows Debtor's monthly income and expenses related to each investment property.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts.  Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan.  If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights.  Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments.  Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.


**PART 1: TREATMENT OF SECURED CREDITORS**

**Property to be Sold.**
1702 Paru Street, Alameda, California 94501

| Class | 1(A) | | |
|---|---|---|---|
| Name of Creditor | Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A | | |
| Collateral | 1702 Paru Street (1st DOT)<br>Alameda, California 94501 | | |
| Amount Due | $829,197.01 | | |
| Monthly Payment | $0.00 | | |
| Estimated Value | $1,625,833 | | |

Debtor has not filed any Monthly Operating Reports ("MOR")

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)          (Version : 7/30/12
October 8, 2021
-2-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 2 of 26

since he filed his June 30,2021 MOR on July 30, 2021, See Dkt. No. 201]. As such, Debtor is unable to substantiate that his current monthly income is $12,000, or any other amount for that matter. As a result, this Plan Proponent has come to the conclusion that neither the Joint Debtor-Gardners nor the Hanna Plan Proponents can put forth a feasible plan that calls for the Debtor to make any ongoing payments to any class of creditors. Under these facts and circumstances, the Hannas cannot in good faith, put forth anything other than a liquidating plan for this court's and the creditors' consideration.

The Disbursing Agent will sell 1702 Paru Street, Alameda, California 94501 (the "Alameda Property") within 90 days of the Effective Date, paying secured creditor, Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A, ("Deutsche Bank") from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days notice to lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2.

Neither the Disbursing Agent nor Debtor will make any monthly payment to this creditor pending the sale of the collateral.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

1702 Paru Street, Alameda, California 94501

| Class | 1(B) | | |
|---|---|---|---|
| Name of Creditor | Citibank West, FSB | | |
| Interest | 1702 Paru Street<br>Alameda, California 94501 | | |
| Amount Due | $153,000.00 | | |
| Monthly Payments | $0.00 | | |
| Estimated Value | $1,625,833 | | |

As stated above, the Disbursing Agent will sell the Alameda Property within 90 days of the Effective Date, also paying

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                    (Version : 7/30/12
October 8, 2021

-3-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 3 of 26

Citibank West, FSB ("Citibank") from the proceeds of the sale.

Neither the Disbursing Agent nor Debtor will make any monthly payment to this creditor pending the sale of the collateral.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**Property to be Sold.**
858 Acalanes Road, Lafayette, CA 94549

| Class1(C) | | | |
|---|---|---|---|
| Name of Creditor | HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-AF1 | | |
| Collateral | 858 Acalanes Ro$^{ad}$ (1st DOT), Lafayette, California 94549 | | |
| Amount Due | $965,095.64 | | |
| Monthly Payments | $0.00 | | |
| Value of Collateral | $2,168,000.00 | | |

The Disbursing Agent will sell 858 Acalanes Road, Lafayette, CA 94549 (the "Lafayette Property") within 90 days of the Effective Date, paying secured creditor, HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-AF1 ("HSBC Bank")from the proceeds of the sale.  The Disbursing Agent will file a motion for approval of any such sale on 28 days notice to lien holders.  Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale.  Any deficiency claim is a general unsecured claim treated in Part 2.

Neither the Disbursing Agent nor Debtor will make any monthly payment to this creditor pending the sale of the collateral.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **These secured claims are**

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                    (Version : 7/30/12
October 8, 2021
-4-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 4 of 26

**impaired and are entitled to vote on confirmation of the Plan.**

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(b). [Other] General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Effective Date Payment | Estimated Total Amount to be Paid |
|---|---|---|---|---|
| Allan and Nicole Hulgan | $ 54,400.00 | N | | **$ 35,425.00** |
| CBA Collection Bureau | $ 2,530.00 | N | | **$ 1,644.50** |
| Citi Visa (Costco) | $ 4,490.00 | N | | **$ 2,918.50** |
| Credit Collection | $ 193.00 | N | | **$ 125.45** |
| Daniel and Thanh-Tam Morgan | $100,682.36 | N | | **$ 65,443.53** |
| Dale and Mellissa Gardner | 1,285,810.90 | N | | **$835,777.90** |
| Houzz | $ 2,000.00 | N | | **# 1,300.00** |
| Jeff and Amalia Hanna | $ 84,941.50 | N | | **$ 55,211.98** |
| Mai T. Hoang | $ 18,125.00 | N | | **$ 11,781.25** |
| Sales Force | $ 7,000.00 | N | | **$ 4,550.00** |
| United Site Services | $ 7,000.00 | N | | **$ 4,550.00** |
| **Total** | **$1,567,172.76** | | | **$1,018,661.80** |

Allowed claims of general unsecured creditors(including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** Creditors as a class will receive a pro-rata share of a fund projected to total approximately $1,018,661.80, for an approximately 65% dividend, **except** that Creditors Dale and Mellissa Gardner agree to make a gift of $200,000.00 to fund an initial cash reserve. That means that the Gardners payout will be reduced to $635,777.90. The pot plan fund is created by the sales proceeds from the sale of Debtor's real property commonly known as and located at:

1. 3190 Vichy Avenue, Napa California 94558 (the Napa Property);
2. 858 Acalanes Road, Lafayette, California 94549, as identified above and throughout this Plan as the Lafayette Property; and,
3. 1702 Paru Street, Alameda, California 94501, as identified above and throughout this Plan as the Alameda

Case: 20-50469    Doc# 260    Filed: 10/08/21    Entered: 10/08/21 23:50:14    Page 5 of 26

Property.

With the exception of the Napa Property, which has already been sold, the two remaining properties, The Lafayette Property and the Alameda Property, will be sold within 90 days of the Effective Date. The fund proceeds available to this class of unsecured creditors will be that residue derived after the payment in full of:

| | |
|---|---|
| (i) | the secured claims provided for in Part 1 attached to the Alameda Property (Class 1A) and 1B) and the Lafayette Property (Class 1C); |
| (ii) | (ii) all reasonable and customary costs, fees, and other charges incurred by the Debtor's Estate from liquidating the Alameda Property and Lafayette Property under this Plan and from the Napa Property previously liquidated by Debtor (not including capital gains taxes); |
| (iii) | (iii) all claims provided for in Class 2(a), if any; |
| (iv) | iv) all administrative claims provided for in Part 3(a)-(c); and, |
| (v) | (v) any withdrawals or distributions previously ordered by the Court from the net proceeds of sale from the  Property. |

Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class, except the gifts of $200,000.00 from the Gardners to fund an initial cash reserve of the Plan.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a)   <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Farsad Law Offices, P.C.[Former Counsel for Debtor] | $   5,000.00 |

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)            (Version : 7/30/12
October 8, 2021
-6-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 6 of 26

| The Fuller Law Firm, P.C. [Counsel for Debtor] | $ 25,000.00 |
|---|---|
| Christopher Hayes [Former Sub-Chapter V Trustee] | $  9,717.00 |

(b)  Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor[1] | Estimated Amount of Claim |
|---|---|
| Law Offices of Selwyn D. Whitehead [Counsel for Plan Proponents, The Hanna's -- $25,000] and Sales Proceeds Disbursing Agent[2] -- TBD] | $25,000.00[3] |
| Meyer Law Group, LLP [Counsel for The Gardners] | $25,000.00 |

(c)  Tax Claims.  Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made [monthly/quarterly], due on the [number] day of the [month/quarter], starting [month & year].  To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Priority tax claimants are not**

---

[1] In conjunction with confirmation of the Plan, the Law Offices of Selwyn D. Whitehead and the Meyer Law Group, LLP shall file a motion for a substantial contribution pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) prior to receiving any funds from Debtor's estate.

[2] In conjunction with confirmation of the Plan, the Law Offices of Selwyn D. Whitehead shall file an application to be employed and appointed as a fiduciary of the Debtor's estate pursuant to 11 U.S.C. §§ 104 and 327.

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)          (Version : 7/30/12
October 8, 2021

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 7 of 26

**entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| **NONE** | | | | |

(d) Priority Security Deposits. The Disbursing Agent and/or Debtor will pay allowed claims entitled to priority under section 507(a)(7) after the creditor surrenders possession of their leasehold interest to Debtor consistent with applicable California law.

| Name of Creditor | Property with the Security Deposit Interest | Amount of Deposit |
|---|---|---|
| Alexander Beuscher Scott Beuscher | Residential Lease for 1702 Paru Street Alameda, CA 94501 | $1,895.00 |
| Manol Penaranda Erlina Penaranda Arnaldo Catolos Tate Arron Catolos | Residential Lease for 1702 Paru Street Alameda, CA 94501 | $3,000.00 |

Priority security deposit creditors may not take any collection action against the Disbursing Agent and/or Debtor so long as the Disbursing Agent and/or Debtor is not in material default under the Plan (defined in Part 6(c)). Priority security deposit claimants are not entitled to vote on confirmation of the Plan.

**PART 4:   EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) Executory Contracts/Unexpired Leases Assumed.  The Disbursing Agent and/or Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears will be paid in full on the Effective Date. Debtor will assign the following executory contracts and/or unexpired leases to the purchaser of the Alameda Property upon the close of escrow.
///
///
///

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)          (Version : 7/30/12
October 8, 2021
-8-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 8 of 26

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| Alexander Beuscher<br>Scott Beuscher | Residential Lease for 1702 Paru Street<br>Alameda, CA 94501 |
| Manol Penarada<br>Erlina Penaranda<br>Arnaldo Catolos<br>Tate Arron Catolos | Residential Lease for 1702 Paru Street<br>Alameda, CA 94501 |

(b) Executory Contracts/Unexpired Leases Rejected. Executory contracts not specifically listed will be deemed rejected. This includes unexpired leases, and Debtor surrenders any interest in such affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejected executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| **[NONE]** | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed rejected.


**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) Discharge. Debtor shall not receive a discharge of debts until the Disbursing Agent and the Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) Vesting of Property. Except as otherwise specifically provided for in Part 8 of the Plan, On the Effective Date, all property of the estate of the Debtor will re-vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan.

(c) Plan Creates New Obligations. Except as provided in Part 6(d) and (e), the obligations to creditors that the Disbursing Agent and/or Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. The Disbursing Agent and/or Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance

of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.


**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a)  <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Disbursing Agent and/or Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b)  <u>Obligations to Each Class Separate</u>.  The Disbursing Agent and/or Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c)  <u>Material Default Defined</u>.  If the Disbursing Agent and/or Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon the Disbursing Agent and/or Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If the Disbursing Agent and/or Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then the Disbursing Agent and/or Debtor is in Material Default under the Plan to all the members of the affected class.

(d)  <u>Remedies Upon Material Default</u>.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 10 of 26

enforce and collect Debtor's pre-confirmation obligations.

(e)  <u>Claims not Affected by Plan</u>.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan are subject to the Stay.  In the absence of stay, may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f)  <u>Effect of Conversion to Chapter 7</u>.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g)  <u>Retention of Jurisdiction</u>.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.


**PART 7: GENERAL PROVISIONS**

(a)  <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, the Disbursing Agent and/or Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b)  <u>Disputed Claim Reserve</u>.  The Disbursing Agent will create a reserve for disputed claims, if any.  Each time the Disbursing Agent and/or Debtor makes a distribution to the holders of allowed claims, the Disbursing Agent and/or Debtor will place into a reserve the amount that would have been distributed to the

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                    (Version : 7/30/12
October 8, 2021

-11-

holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, the Disbursing Agent and/or Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be distributed pro-rata among allowed claims in this class.

(c)     Cramdown.  Pursuant to section 1129(b) of the Bankruptcy Code, Plan Proponent reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d)     Severability.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e)     Governing Law.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f)     Lawsuits.

     The Plan Proponent believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| **[NONE]** | | | | |

     Debtor shall have the right, post-confirmation, to pursue any and all causes of action, whether or not set forth in Section 7(f) of the Plan or otherwise listed in any of the bankruptcy schedules filed by Debtor in this case.

(g)     Notices.  Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:
///
///

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)          (Version : 7/30/12
October 8, 2021

| **Debtor** | **Debtor's Counsel** |
|---|---|
| Mordechai Koka | The Fuller Law Firm, P.C. |
| 858 Acalanes Road | Attn: Lars T. Fuller, Esq. |
| Lafayette, CA 94549 | 60 N. Keebler Avenue |
| | San Jose, CA 95126 |
| | lars@fullerlawfirm.net |

| **Plan Proponent Plan** | **Proponent's Counsel** |
|---|---|
| Amalia Hanna | Law Offices of Selwyn D. Whitehead |
| Jeff Hanna | Attn: Selwyn D. Whitehead, Esq. |
| 161 Cherry Avenue | 4650 Scotia Avenue |
| Campbell, CA 95008 | Oakland, CA 94605 |
| | selwynwhitehead@yahoo.com |

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, the Disbursing Agent shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as the Disbursing Agent is required to make these payments, the Disbursing Agent shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) Cash Collateral Vests in Disbursing Agent. On the Effective Date, all cash collateral generated since the Petition Date (March 10, 2020) from use of property set forth in Part 1 of the Plan and in the possession, custody, or control of Debtor, shall vest in the Disbursing Agent free and clear of all liens, claims, interests, and encumbrances.

**PART 8. MEANS OF EXECUTION OF PLAN**

(a) Post-Confirmation and Appointment of Disbursing Agent.

(i) Termination of Debtor. Immediately upon entry of an order confirming this Plan, the services of Mordechai Koka acting as debtor-in-possession of the bankruptcy estate shall be terminated in their entirety, and Mordechai Koka shall not have any management, control, or other authority over the post confirmation estate or property of the post-confirmation estate.

(ii) Appointment of Disbursing Agent. Immediately upon entry of an order confirming this Plan, attorney Selwyn D. Whitehead, Esq. of the Law Offices of Selwyn D. Whitehead shall

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                    (Version : 7/30/12
October 8, 2021

−13−

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 13 of
26

be designated and appointed as the post-confirmation disbursing agent (the "Disbursing Agent").

The Disbursing Agent is appointed to effectuate an orderly administration, liquidation, and disposition of certain property of the bankruptcy estate, as provided in this Plan, and to distribute and pay to creditors of this case the proceeds of these assets in accordance with the terms of this Plan. The Disbursing Agent shall have exclusive management, control, and authority over the entire post-confirmation estate and all assets of bankruptcy estate that remain vested in the estate.

(iii) Post-Confirmation Estate. Immediately upon entry of an order confirming this Plan, the following property shall vest in the bankruptcy estate subject to exclusive administration by the Disbursing Agent free and clear of all claims, liens, and interests except as otherwise provided in this Plan, and Debtor and his bankruptcy estate shall be deemed to automatically and irrevocably transfer all rights, title, and interest in the following property to Disbursing Agent:

**(a)** The net proceeds of sale from real property commonly known as Vichy Avenue, Napa, California 94558 currently held in the IOLTA attorney-client trust account of Farsad Law Office, P.C. in the approximate amount of $99,732.31;

**(b)** 858 Acalanes, Lafayette, California, 94549;

**(c)** 1702 Paru Street, Alameda, California 94501; and

(d) All cash collateral and rental income generated from 1702 Paru Street, Alameda, California 94501.

Upon transfer of property identified above, the Disbursing Agent shall succeed to all of Debtor's interest in this property, provided however, that the Disbursing Agent is not a successor of Debtor for purposes of incurring his liabilities.

All other property, claims, or interests of the estate not specifically identified above, shall vest in Debtor immediately upon entry of an order confirming this Plan consistent with Part 5(b) of the Plan.

The Disbursing Agent may serve without a bond. Immediately upon entry of a Final Decree by the Court, the Disbursing Agent shall be deemed discharged of all duties under this Plan.

Case: 20-50469    Doc# 260    Filed: 10/08/21    Entered: 10/08/21 23:50:14    Page 14 of 26

In the event that Selwyn D. Whitehead is unable or unwilling to serve as the Disbursing Agent, then the Plan Proponent, in their sole discretion, shall nominate an alternate or successor Disbursing Agent subject to approval by the Court.

(iv) Post-Confirmation Property. The Disbursing Agent may in her business judgment use, sell, lease, abandon, dispose, compromise, or otherwise settle any property or claims that vested subject to control of the Disbursing Agent consistent with the terms of this Plan, provided however, that all transactions outside of the ordinary course of business shall require approval from the Court.

(v) Retention of Professionals. The Disbursing Agent may employ any professionals necessary to carry out those duties required by the terms of this Plan, including but not limited to, a real estate brokerage firm to swiftly, efficiently and prudentially market and sell the Alameda and Lafayette Properties to one or more ready, willing and able purchasers at the highest price, and an accounting firm to account for all inflows and outflows of cash into and out of the post-confirmation estate. The Disbursing Agent while not required to obtain approval by the Court to retain a professional for post-confirmation services, is ready willing and able to do so if the court requests that she do so.

(vi) Effectuating Documents. The Disbursing Agent, or such other persons as the Disbursing Agent may approve, shall have full and complete authority to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary and appropriate to effectuate and implement the terms and provisions of this Plan. The Disbursing Agent or such other persons designated by the Disbursing Agent shall be authorized to certify or attest to any of the foregoing actions.

(vii) Ad Valorem Property Taxes. The Disbursing Agent shall have sole discretion to pay any ad valorem property taxes due and payable on account of real property provided for in Part 1 of this Plan, and to the extent that there are insufficient funds to pay any ad valorem property tax obligation, the Disbursing Agent shall have sole discretion to defer payment of these obligations until there are sufficient funds in the estate.

(b) Transfer Net Proceed of Sale from Vichy Property. Immediately after entry of an order confirming the Plan, Farsad Law Offices P.C. shall turn over to the Disbursing Agent all funds

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                (Version : 7/30/12
October 8, 2021

-15-

(approximately $99,732.31) held in its IOLTA attorney-client trust account from the sale of real property commonly known as 3190 Vichy Avenue, Napa, California 94558 as authorized by Paragraph (15) of the Order Authorizing Sale of Real Property [Dkt. No. 76], to be held in trust for the benefit of creditors provided for by the terms of the Plan.

(c) Cooperation in Implementation of Plan. The Fuller Law Firm, P.C. and Debtor shall cooperate in good faith with the Disbursing Agent and her attorneys, professionals, and agents with respect to implementation and performance of the terms of this Plan.

(d) Sale of Real Property. The Disbursing Agent shall market and sell real property located at
    (i)  858 Acalanes, Lafayette, California, 94549 and,
    (ii) 1702 Paru Street, Alameda, California 94501. From the net proceeds of sales, the Disbursing Agent shall make distributions to Class 2 claimants in the aggregate amount of 1,018,661.80, and all remaining net proceeds of sales shall be returned to Debtor.

(e) Post-Confirmation Management. Upon entry of an order confirming this Plan, the Disbursing Agent shall:
    • Take any and all action reasonably necessary to take possession of and liquidate property of the post petition estate provided for in the Plan;
    • Have the right to use funds of the estate to pay reasonable and necessary expenses or maintain any encumbrance against any property pending liquidation or abandonment of such property;
    • Sell in a commercially reasonable manner all real property identified in Part 1 of the Plan;
    • Fulfill those duties specified in section 704 as expeditiously as possible;
    • Possess each of the powers authorized of a trustee appointed in a case under Title 11, Chapter 11 of the United States Code, including without limitation, asserting any and all causes of action held by the estate under Chapter 3 and Chapter 5 of the United States Code;
    • Have the right and standing to pursue, defend, settle, or abandon any litigation claims;
    • Have the right and obligation to analyze all filed proofs of claims, and if warranted, object to such claims;
    • Monitor and supervise implementation of this Plan;
    • Have the right to take any and all reasonable actions necessary to enforce the terms of this Plan.

(f) Compensation for the Disbursing Agent and Professionals.

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 16 of 26

The Disbursing Agent and her professionals shall receive reasonable compensation at their customarily rate consistent with the standards set forth in sections 329 and 330 and reimbursement of actual costs expended performing their duties under this Plan.

No more frequently than on a quarterly basis, the Disbursing Agent and her professionals shall file requests for approval of compensation with the Court, and attach as exhibits, time records for professional fees incurred and an itemization of costs advanced. The Disbursing Agent shall provide at least ten (10) days written notice for all requests for compensation to parties entitled to receive notice pursuant to Part 7(j), and if no timely opposition is filed, the Disbursing Agent may lodge orders with the Court approving the requests for compensation.

As of the date of this Plan, the standard hourly rate of Selwyn D. Whitehead for bankruptcy-related work is $650.00 per hour. But she is willing to reduce her hourly rate for this assignment as Disbursing Agent professional services related to implementation of the terms and conditions of this Plan to $450.00 per hour.

In order to successfully implement this Plan, the Disbursing Agent and her professionals may, in their sole discretion, voluntarily reduce compensation due and payable for their services rendered.

(g) Disbursements Made Pursuant to Plan. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent may, in her sole discretion, make interim or final disbursements to creditors earlier than those deadlines set forth in the Plan. All disbursements shall be made by the Disbursing Agent by check drawn on a domestic bank, unless under the circumstances, the Disbursing Agent determines that disbursement by a bank wire is warranted and appropriate.

(h) Exculpations and Releases. To the maximum extent permitted by applicable law, neither the Plan Proponent, the Disbursing Agent, the bankruptcy estate, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not approved by the Court (each, an "Indemnified Person"), shall have or incur any liability whatsoever to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of this Plan, formulation of the Disclosure Statement, or a contract, instrument, confirmation of this Plan, or the consummation and implementation of this Plan and

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                (Version : 7/30/12
October 8, 2021

-17-

transactions contemplated therein.

Each Indemnified Person shall in all respects be entitled to reasonably rely upon the advice of counsel in discharging its duties and responsibilities under this Plan.

However, notwithstanding the foregoing, an Indemnified Person shall not be entitled to any exculpation or release for acts of fraud, embezzlement, willful and malicious conduct, or gross negligence.

(i) Notice Requirements. For any action that requires notice under this Plan, the Disbursing Agent shall provide notice to:
   (i)     all parties identified in Part 7(g) of this Plan;
   (ii)    (ii) all parties that have consented to receive Notice of Electronic Filing (NEF) pursuant to the Court's CM/ECF system and have appeared in the Bankruptcy Case;
   (iii)   (iii) all lien holders (if any) affected by the notice; and,
   (iv)    (iv) all parties that have filed a request to receive notice pursuant to this Plan, which shall be docketed on the Court's CM/ECF system in the Bankruptcy Case.

(j) Turnover of Estate Property.

(i) Funds Held in IOLTA Trust Account. Within three (3) days after entry of an order confirming this Plan, Farsad Law Office, P.C. shall turn over to the Disbursing Agent all funds (approximately $99,732.31) held in its IOLTA attorney-client trust account from the sale of the 3190 Vichy Avenue, Napa, California 94558 as authorized by Paragraph (15) of the Order Authorizing Sale of Real Property [Dkt. No. 76]. Upon receipt, the Disbursing Agent shall deposit these funds into her IOLTA attorney-client trust account where she shall hold these funds in trust for the benefit of creditors provided for by the terms of the Plan.

ii) Insurance Policies. Within seven (7) days after entry of an order confirming this Plan, The Fuller Law Firm, P.C. and Debtor shall turn over to the Disbursing Agent copies of the current declaration page for each insurance policy bound for property of the estate, including but not limited to, each of those real properties provided for in Part 1 of the Plan, in its possession, custody, and control.

(iii) Real Property. Within seven (7) days after entry of an order confirming this Plan, The Fuller Law Firm, P.C. and

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 18 of 26

Debtor shall turn over to the Disbursing Agent all of the following for each parcel of real property identified in Part 1 of the Plan:

    1) copies of the current operative lease for each tenant;
    (2) the current amount of rent paid by each tenant;
    (3) all keys, garage door openers, and other instruments used to access the property;
    (4) all gate codes, access codes, passwords, and combination used to access any area of the property; and
    (5) the current contact information (name, address, phone number, and email address) for each tenant.

(v) Utilities. Within seven (7) days after entry of an order confirming this Plan, The Fuller Law Firm, P.C. and Debtor shall turn over to the Disbursing Agent a list (name, service, payment amount, address for payment) for all utilities and expenses paid by Debtor for each parcel of real property identified in Part 1 of the Plan, including but not limited to, water, garbage, sewer, trash, gardener, and electrical.

(vi) Possession of Acalanes Property. Within fifteen (15) days after entry of an order confirming this Plan, Debtor and all relatives shall vacate, surrender, and turn over to the Disbursing Agent possession of real property located at 858 Acalanes, Lafayette, California, 94549.

(vii) Deposit of Net Proceeds of Sale from the Lafayette Property and Alameda Property. All net proceeds of sale from real property commonly known as and located at 858 Acalanes Road, Lafayette, CA 94549 and 1702 Paru Street, Alameda, California 94501 shall be deposited directly into the IOLTA attorney-client trust account of the Disbursing Agent and shall not be transferred directly to Debtor or deposited into any account maintained by Debtor. The Disbursing Agent shall hold these funds in trust for the benefit of creditors provided for by the terms of the Plan.

(viii) The Law Offices of Selwyn D. Whitehead as Sole Disbursing Agent. The Law Offices of Selwyn D. Whitehead shall act as the sole disbursing agent for purposes of remitting all payments due and owing to creditors provided for by the terms and conditions of the Plan.

(k) Payment of Class 2(B) Claims.
The Disbursing Agent shall make pro-rata distributions to

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)    (Version : 7/30/12
October 8, 2021

-19-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 19 of 26

creditors in Class 2(B) based on the allowed amount of their claim as follows:

(i) Effective Date Payment. On the Effective Date, The Law Offices of Selwyn D. Whitehead shall make no disbursements to any creditor in Class 2(B) on the effective date. However, a single distribution based on the allowed amount of their claim the remaining balance of the net proceeds of sale from real property commonly known as and located at 3190 Vichey Avenue, Napa, California 94558 shall be used to make payment of the claims provided for in Class 2(a), if any  Part 3(a), Part 3(b), and Part 3(c) of the Plan (estimated at $89,000).

(ii) Sale of Lafayette Property and the Alameda Property. Within thirty (30) days after receipt of the net proceeds of sale from real property commonly known as and located at 858 Acalanes Road, Lafayette, California 94549, (estimated to be $952,891.00), and the real property commonly known as and located at 1702 Paru Street, Alameda, California 94501, (estimated to be $299,289.00), the Disbursing Agent shall disburse to each creditor in Classes 2(B)a single pro-rata distribution based on the allowed amount of their claim.

(l) Capital Gains Taxes.
Debtor shall be solely responsible for any and all post petition tax obligations, including but not limited to, capital gains taxes due and owing to the Internal Revenue Service (IRS) and California Franchise Tax Board (FTB) resultant from the sale of any real property and personal property after the petition date (March 10, 2020).

For clarification and avoidance of all doubt, Debtor shall not reduce or otherwise deduct any taxes due and owing to any applicable taxing authority (including capital gains) incurred from the sale of 3190 Vichy Avenue, Napa, California 94558 or 858 Acalanes Road, Lafayette, California 94549 or the 1702 Paru Street, Alameda, California 94501 in calculating the net proceeds of sale that shall be remitted to creditors provided for in Class 2(B) of the Plan.


Dated: October 8, 2021        /s/**Selwyn D. Whitehead**
                              SELWYN D. WHITEHEAD
                              Attorney for Plan Proponent
                              Amalia and Jeff Hanna

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)          (Version : 7/30/12
October 8, 2021

-20-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 20 of 26

**Attorney Certification**

I, <u>Selwyn D. Whitehead</u>, am legal counsel for the Plan Proponents, Amalia and Jeff Hanna in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

The redlined version of this Plan containing the alternations and changes to the Standard-Form Plan was accidentally deleted when transferred between editors. The attorney for Plan Proponents shall reconstruct the redlined version and file it as soon as possible.

I declare that the foregoing is true and correct. Executed this <u>8th</u> day of <u>October</u>, 20<u>21</u>.

/s/***Selwyn D. Whitehead***
SELWYN D, WHITEHEAD, ESQ.
Attorney for Plan Proponents,
Amalia and Jeff Hanna

**Exhibit 1 – What Follows Are the Events That Led To Bankruptcy, As Alleged by the Debtor in His Plan Dated July 20, 2021.**

"*Pursuant to the Status Conference Statement filed by Debtor on April 27, 2020, "[t]his case was commenced with the filing of a petition under Chapter 11 on March 10, 2020" and "[t]he Debtor filed the instant case to stop the non-judicial foreclosure of his real property located at 858 Acalanes Road, Lafayette, CA 94549. See Dkt. No. 39.*

*As many of the creditors of this case are well aware, Debtor was the sole shareholder of Green Bay Builders, Inc. ("GBBI"), which operated a business as a general contraction under California Contractors State License Board ("CSLB") License No. 1015144. Though Debtor represents that he holds a general contractor license, rather than use his license, he utilized the license of another general contractor (as RMO) to conduct business.*

*As a result of at least two complaints filed against GBBI and Debtor for its unlawful business practices, on August 19, 2020, CSLB issued a citation against GBBI for: (1) violation of California Business & Professions Code § 7159 and issued a civil penalty of $500 for this violation; (2) violation of California Business & Professions Code § 7159.5 and issued a civil penalty of $750 for this violation; and (3) violation of California Business & Professions Code § 7161(b) and issued a civil penalty of $750 for this violation. See CSLB Citation No. 2 2020 1159 (the "CSLB Citation"). Debtor has remitted payment in full to the CSLB for each of these fines.*

*Further, on April 1, 2021, the Office of the District Attorney for the County of Santa Clara issued an arrest warrant of Debtor based on the investigation conducted by the CSLB. In particular, the pending charges against Debtor are: (1) violation of California Insurance Code § 11880(a) for willfully misrepresenting facts to obtain state compensation insurance fund; (2) violation of California Penal Code § 484(b) for unlawful diversion of funds; (3) violation of California Business & Professions Code § 7159.5(a)(5) for accepting payment exceeding work performed; and (4) violation of California Business & Professions Code § 7159.3(a)(3) for receiving an excessive down payment. See Case No. RF-2010-28024 (the "Criminal Case").*

*Debtor does not believe the CSLB Citation or the Criminal Case will have any material impact on his ability to perform each of those obligations and duties required by the Plan.*"

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)                    (Version : 7/30/12
October 8, 2021

-22-

Case: 20-50469    Doc# 260    Filed: 10/08/21    Entered: 10/08/21 23:50:14    Page 22 of 26

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 1702 Paru Street, Alameda, CA 94501

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| ~$1,625,833 | 1st $824,544 | $99,000 | $250,000 | $ 0.00 | $299,289.00 |
| | 2nd $153,000 | | | | |

    The Alameda Property is listed at **$1,899,000** and is likely worth more. However, the Creditors' real estate agent needs to review each unit's layout and characteristics before she can determine the valuation.

Real Property #2: 858 Acalanes Road, Lafayette, CA 94549

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $2,184,000 | 1st $965,096 | $131,040 | $135,000 | $0.00 | $952,864.00 |

Real Property #1: 3190 Vichy Avenue, Napa, CA 94558*

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| | 1st | | $26,023.95 | | $99,832.31[4] |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $ 11,198.00 | $ 0.00 | $ 0.00 | $11,198.00 |
| Automobile #1 | $ 17,000.00 | $ 0.00 | $3,325.00 | $13,675.00 |
| Automobile #2 | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 3,000.00 |

---

[4] The Napa Property sold on August 24, 2020, and the Net Proceeds represent the amount deposited in the IOLTA Trust Account for Farsad Law Office, P.C. at close of escrow, less the estimated capital gains tax of $26,023.95, totaling $172,478.36. There was an Interim Application for Compensation, $18,670 in fees and $100.00 in expenses that were withdrawn. Pursuant to the settlement agreement with the Gardners, $50,000 was paid to them on or about Dec. 1, 2020 leaving a balance of $129,832.31. At the hearing on June 9, 2021, this Court authorized The Fuller Law Firm, P.C. to receive a $30,000 retainer from the amount held in the Farsad Law Offices IOLTA account. Hence the current balance on hand is $99,832.31.

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement) (Version : 7/30/12
October 8, 2021

-23-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 23 of 26

| | | | |
|---|---|---|---|
| Automobile #3 | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 3,000.00 |
| Household Furnishings | $ 5,300.00 | $ 0.00 | $5,300.00 | $ 0.00 |
| Jewelry | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Stocks / Investments | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Other Personal Property | $ 2,850.00 | $ 0.00 | $ 0.00 | $ 2,850.00 |
| TOTAL | | | $33,723.00 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $1,351,985.31 |
| Recovery from Preferences / Fraudulent Conveyances [ADD] | $ 0.00 |
| Chapter 7 Administrative Claim [SUBTRAC] | $ 0.00 |
| Chapter 11 Administrative Claims [SUBTRACT] | $ 89,717.00 |
| Priority Claims [SUBTRACT] | $ 0.00 |
| Chapter 7 Trustee Fees [SUBTRACT] | $ 126,705.00 |
| Chapter 7 Trustee's Professionals [SUBTRACT] | $ 155,000.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $ 980,563.31 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $1,567,572.00 |
| Percent Distribution to Class 2B Unsecured Creditors Under Proposed Plan (~**$1,018,661.80** ). | 64.9% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 62.55% |

In re: Koka Individual Chapter 11, Case No.: 20-50469
Combined Plan & Disclosure Statement)          (Version : 7/30/12
October 8, 2021

-24-

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 24 of 26

**Exhibit 3 - Monthly Income and Expenses**
Prior to the Sale of the Lafayette and Alameda Properties

| Income | Amount |
|---|---|
| Gross Employment Income | $    0.00 |
| Gross Rental Income from the Alameda Property of $4,895.00 to the Estate | $    0.00 |
| **A. Total Monthly Income** | $    0.00 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | $    0.00 |
| Retirement Contributions (401k, IRA, PSP) | $    0.00 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) (Total Arrearages on New Principal Residence, $UNKNOWND) | $  704.00 |
| Household Expenses (food) | $  250.00 |
| Transportation Expenses (car payments, insurance, fuel) | $  924.00 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $  500.00 |
| Building Maintenance | $  500.00 |
| Other Expenses | $   59.00 |
| **B. Total Monthly Expenses** | $2,937.00 |

| **C. Disposable Income** (Line A - Line B) | -$2,937.00 |
|---|---|

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Class 1(A), Deutsche Bank | $    0.00 |
| Class 1(B), Citibank West | $    0.00 |
| Class 1(C), HSBC Bank USA, NA | $    0.00 |
| **D. Total Plan Payments** | $    0.00 |

| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | -$2,937.00 |
|---|---|

Case: 20-50469   Doc# 260   Filed: 10/08/21   Entered: 10/08/21 23:50:14   Page 25 of 26

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $ 99,732.31 |
| Payments on Effective Date | | |
| Administrative Expense Claims | $ 89,717.00 | |
| Priority Claims | $ 0.00 | |
| Unsecured Small Claims (Class 2(a) | $ 0.00 | |
| (Class 2(B) | $ 0.00 | |
| U.S. Trustee Fees | $ 650.00 | |
| B. Total Payments on Effective Date | | $ 90,367.00 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | $ 9,365.31 |