SELWYN D. WHITEHEAD, ESQ. (CSB No. 236391)
LAW OFFICES OF SELWYN D. WHITEHEAD
4650 Scotia Avenue
Oakland, CA 94605
Tel: (510) 632-7444
Fax: (510) 856-5180
Email: selwynwhitehead@yahoo.com

JULYN M. PARK (CSB No. 213429)
DEIRDRE M. DIGRANDE (CSB No. 199766)
LOCKHART PARK, LLP
5201 Great America Parkway, Suite 320
Santa Clara, CA 95054
Tel: (408) 416-2929
Fax: (855) 368-1020
Email: jpark@lockhartpark.com
ddigrande@lockhartpark.com

Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>MORDECHAI KOKA,<br><br>       Debtor-in-Possession. | Case No. 20-50469-SLJ<br><br>Chapter 11<br><br>**CREDITORS JEFF AND AMALIA HANNAS' OBJECTION TO DISCLOSURE STATEMENT ASPECTS OF DEBTOR AND THE GARDNERS' JOINT PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT (December 2, 2021)**<br><br>Date: January 13, 2022<br>Time: 1:30 p.m.<br>Location: Telephonic/Videoconference<br>Judge: Hon. Stephen L. Johnson |

Creditors Jeff Hanna and Amalia Hanna (hereinafter "the Hannas") object to the

disclosure statement aspects of Debtor and creditors Dale and Melissa Gardner's[1] **third** Joint

---

[1] Dale and Melissa are hereinafter referred to as "the Gardners" and, together with Debtor, hereinafter referred to as "Plan Proponents."

- 1 -

The Hannas' Objection to Disclosure Statement Aspects of Joint Proposed Combined Plan of Reorganization
Case No. 20-50469-SLJ

Case: 20-50469   Doc# 280   Filed: 12/30/21   Entered: 12/30/21 23:57:41   Page 1 of 7

Proposed Combined Plan of Reorganization and Disclosure Statement (December 2, 2021) [Dkt. No. 275] (hereinafter "Third Joint Proposed Plan") on the grounds that, like their previous proposed plans [see Dkt. Nos. 193 ad 257[2]], it lacks adequate and accurate information essential to the impaired creditors' decision to vote for or against it.

## I.

## DEBTOR HAS NOT DISCLOSED ACCURATE FINANCIAL INFORMATION, DATA, VALUATIONS, OR PROJECTIONS NECESSARY TO CREDITORS' DECISION TO ACCEPT OR REJECT THE THIRD PROPOSED JOINT PLAN

**A.     Governing Law**

Pursuant to 11 U.S.C. Section 1125, a proponent of a plan of reorganization soliciting acceptance of its plan is required to provide "adequate information" to holders of claims and interests.  Section 1125 (a)(1) of the code defines "adequate information" as:

> *information of a kind, and in sufficient detail*, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan… ¶
>
> [I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1) (2013) (emphasis added).  Essentially, adequate information means all material information that creditors and interest holders affected by a proposed plan need in order to make an informed decision whether to vote for or against a Chapter 11 plan.

Information required in a disclosure statement varies with each case.  Case law addressing what constitutes adequate information under Bankruptcy Code Section 1125(a)(1) has identified a

---

[2] Dkt. No. 193 - Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Proposed Combined Plan of Reorganization and Disclosure Statement (July 20, 2021), hereinafter referred to as "the First Joint Proposed Plan"; Dkt No. 257 - Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Proposed Combined Plan of Reorganization and Disclosure Statement (October 1, 2021), hereinafter referred to as "the Second Joint Proposed Plan."

- 2 -

The Hannas' Objection to Disclosure Statement Aspects of Joint Proposed Combined Plan of Reorganization
Case No. 20-50469-SLJ

Case: 20-50469    Doc# 280    Filed: 12/30/21    Entered: 12/30/21 23:57:41    Page 2 of 7

pertinent, but non-exhaustive list of factors that constitute adequate information. *See, e.g., In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N. D. Ga. 1984). Additionally, the Region 17 U.S. Trustee has published guidelines (hereinafter "Trustee Guidelines") respecting the contents of disclosure statements, which is similar, but not identical, to those in *Metrocraft*. The following list is not exclusive, but includes items generally recommended for inclusion in a plan disclosure statement:

1. Purpose of the disclosure statement;
2. Description of business;
3. Reasons for financial difficulties and corrections made;
4. Historical and current financial information;
5. Material post-petition events;
6. Legal proceedings;
7. Assets;
8. Liabilities;
9. Description of the Plan;
10. Means of effectuating the Plan;
11. Cash requirements and administrative expenses;
12. Liquidation analysis;
13. Projections;
14. Management compensation;
15. Insider claims;
16. Stock issued for debt;
17. Voting; and
18. Signature

**B.  Debtor Once Again Fails to Disclose How His Personal Income Will Fund the Unsecured Creditors' Dividends**

As the Hannas have already objected to the real property valuations set forth in the Plan Proponents' first and second proposed plans [Dkt. Nos. 223 and 264], they will dispense with repeating them here[3] in order to focus on Debtor's inadequate and contradictory personal financial disclosures set forth in his monthly operating reports from inception of this case up through November 30, 2021.[4]

---

[3] The Hannas incorporate by these following references to the arguments contained in their previous objections: Dkt. No. 223, Creditors Jeff and Amalia Hannas' Objection to Disclosure Statement Aspects of Mordechai Koka, Dale and Melissa Gardners' Joint Proposed Combined Plan of Reorganization and Disclosure Statement (July 20, 2021) at pp. 4:14-6:17 and Dkt. No. 264, Creditors Jeff and Amalia Hannas' Objection to Disclosure Statement Aspects of Debtor and The Gardners' Joint Proposed Combined Plan of Reorganization and Disclosure Statement (October 1, 2021) at pp. 3:17-4:20.

[4] Debtor's operating reports for October and November 2021 ([Dkt. Nos. 277 and 278, respectively] were just filed until December 29, 2021.

- 3 -

The Hannas' Objection to Disclosure Statement Aspects of Joint Proposed Combined Plan of Reorganization
Case No. 20-50469-SLJ

Case: 20-50469    Doc# 280    Filed: 12/30/21    Entered: 12/30/21 23:57:41    Page 3 of 7

1. Debtor's Present and Projected Future Income Is Unverifiable

Exhibit Three to the Third Proposed Joint Plan – Debtor's income and expenses – is *identical* to that set forth in the Second Proposed Plan. The key difference is that Debtor's purported ability to make payments under the Third Proposed Joint Plan rests on even shakier grounds than before.

Under both Plans, Debtor contended and currently contends that his gross monthly income is and will continue to be $16,895.00, from which he can supposedly make monthly Plan payments in the amount of $6,089.59 with $3,918.41 remaining.[5] In support, Debtor claimed under oath $12,000.00 in monthly income from employment as a construction manager as his primary source of income, stating that he would receive his first paycheck starting in July 2021. He later revised the start date to September 17, 2021.[6] The monthly operating reports, however, contradict Debtor's sworn statements: only one "deposit from odd jobs" in the amount of $14,200.00 has ever been disclosed in Debtor's Statement of Cash Receipts and Disbursement and substantiated by bank deposits for any reporting period and that was for the month ending September 30, 2021 [Dkt. No. 271]. The $14,200.00 amount is the only such deposit categorized as gross monthly income from any type of employment that is equal to or greater than $12,000.00 per month gross monthly income from employment that the Debtor has produced since inception of this case. Although these facts were known to the Plan Proponents prior to filing the Third Joint Proposed Plan, the Plan does not address this substantial and ongoing income shortfall that is detrimental to its confirmation.

Even if Debtor could explain why his purported monthly employment income has not materialized, his ability to make Plan payments of $6,089.59 is impossible. According to the Third Joint Proposed Plan, Debtor is not working presently due to a reported work-related injury

---

[5] See Exh. 3 to Dkt. No. 257 at p. 24 and Exh. 3 to Dkt. No. 275 at p. 24.
[6] In his declaration in support of the Motion to Encumber Real Property dated June 21, 2021, Debtor claims that he has obtained gainful employment "commencing in late June 2021 with a salary of $15,000/month." [See Dkt. No. 172-1 at p. 2]. In his supplemental declaration dated September 13, 2021 [Dkt. No. 238-1], Debtor admits that he is actually earning $12,000.00 per month and states that he is expecting his first paycheck on September 17, 2021. [See Dkt. No. 238-1 at p. 3, 6.]

- 2 -

The Hannas' Objection to Disclosure Statement Aspects of Joint Proposed Combined Plan of Reorganization
Case No. 20-50469-SLJ

Case: 20-50469    Doc# 280    Filed: 12/30/21    Entered: 12/30/21 23:57:41    Page 4 of 7

resulting in an undisclosed decrease in the $12,000.00 monthly income.[7] The Plan Proponents curiously disclose this material information in a footnote to Exhibit 3. This fact alone throws into serious doubt Debtor's ability to earn *any* income from relatively high-paying (at least on paper) construction management jobs in the future. A construction manager is not a laborer. Therefore, it is reasonable to assume that any injury that Debtor sustained in this capacity must be sufficiently severe to prevent him from carrying out a construction manager's duties, namely walking the job site and overseeing construction.

Debtor's claim that his children will contribute money towards any income shortfall is equally dubious. [See Dkt. No. 275 at p. 25, fn.5]. There is no evidence in the 20 Operating Reports (of which the Court is requested to take judicial notice) that Debtor's children have ever made any financial contributions of any kind in any amount. There *is* evidence, however, that as of at least June 2021, neither child was in a position to pay monthly rent to Debtor. When questioned about why he had not been charging his children rent for occupying two ancillary units on the Lafayette Property[8] at the June 2021 meeting of creditors, Debtor stated "[i]t's my kids. They finish college, and I needed to help them, so that's what I did," implying that as of six months ago, the children needed Debtor's financial help in the form of rent forgiveness.[9] $4,500.00 per month.[10] The Plan Proponents offer no evidence that the children are presently employed, have sufficient funds to lend Debtor, and/or even willing to contribute to Plan funds.[11]

Since all the Debtor's monthly operating reports have been produced, it is patently clear that he lacks the means to verify his averments regarding his salary. Even if his stated positive cash flow from his Alameda investment property is correct and remains stable, he still lacks sufficient income to support the Joint Plan.

---

[7] See Dkt No. 275 at p. 25, fn.5, which contains the following claim: "Debtor was recently injured and anticipates a partial reduction of employment income in December 2021, and perhaps in subsequent months thereafter. However, Debtor will receive contributions from his children for shortfalls in income (if any) that would be required to make all required payments under the Plan while Debtor is injured."

[8] The real property presently owned and occupied by Debtor located at 858 Acalanes Road, Lafayette, California

[9] See transcript from § 341(a) Meeting of Creditors held on June 1, 2021 ("June 1 Transcript") at 21:10-13.

[10] Debtor estimated the fair market rental value of the two ancillary units combined to be $4,500.00. See June 1 transcript at 23:1-12.

[11] The Court is requested to take judicial notice that for the more the 20 months the Debtor has been in bankruptcy, there is no evidence of Debtor's children making any financial contributions of any kind or amount.

## 2. Debtor Claimed Amount of Accumulated Income Is Demonstrably Inaccurate

According to Debtor's Operating Reports from the date of the Order of Relief through November 2021, his accumulated income from jobs is $44,255.00, which, if accurate, generated an average of $2,212.75 per month for the 20 reporting periods. This sum would be inadequate income to finance Plan payments even if correct. As shown the table below, it is only in the May 2020 and 2021 Operating Reports for August, September, and November that Debtor shows *any* job-related income. In these months, Debtor actually generated a total of only $24,900.00 (a difference of $19,355.00) from the date of the Order of Relief through November 2021, which averages out to the paltry sum of $1,245.00 per month.

| Operating Report Period | Debtor's Claimed Cumulative Income[12] | Reported Income Re Jobs | Actual Cumulative Income |
|---|---|---|---|
| March 2020 | $0.00 | $0.00 | $0.00 |
| April 2020 | $0.00 | $0.00 | $0.00 |
| May 2020 | $12,910.00 | $1,200.00 | $1,200.00 |
| June 2020 | $12,910.00 | $0.00 | $1,200.00 |
| July 2020 | $12,910.00 | $0.00 | $1,200.00 |
| August 2020 | $12,910.00 | $0.00 | $1,200.00 |
| September 2020 | $12,910.00 | $0.00 | $1,200.00 |
| October 2020 | $12,910.00 | $0.00 | $1,200.00 |
| November 2020 | $12,910.00 | $0.00 | $1,200.00 |
| December 2020 | $12,910.00 | $0.00 | $1,200.00 |
| January 2021 | $12,910.00 | $0.00 | $1,200.00 |
| February 2021 | $12,910.00 | $0.00 | $1,200.00 |
| March 2021 | $20,555.00 | $0.00 | $1,200.00 |
| April 2021 | $20,555.00 | $0.00 | $1,200.00 |
| May 2021 | $20,555.00 | $0.00 | $1,200.00 |
| June 2021 | $20,555.00 | $0.00 | $1,200.00 |
| July 2021 | $20,555.00 | $0.00 | $1,200.00 |
| August 2021 | $25,055.00 | $4,500.00 | $5,700.00 |
| September 2021 | $39,255.00 | $14,200.00 | $19,900.00 |

---

[12] Columns 2 and 4 are running balances.

Case: 20-50469    Doc# 280    Filed: 12/30/21    Entered: 12/30/21 23:57:41    Page 6 of 7

| | | | |
|---|---:|---:|---:|
| October 2021 | $39,255.00 | $0.00 | $19,900.00 |
| November 2021 | $44,255.00 | $5,000.00 | $24,900.00 |
| **Totals:** | $44,255.00 | $24,900.00 | $24,900.00 |

## II.

## CONCLUSION

Once again, the Plan Proponents have failed to provide complete and accurate financial information essential to confirmation of Third Joint Proposed Plan, leading to the only reasonable conclusion that said information does not exist. Under these circumstances, there is no fourth bite of the apple. Accordingly, the Hannas request that the Court, in addition to denying approval of Disclosure Statement aspects of the Third Joint Proposed Plan, dismiss the case in its entirety.

Dated: December 30, 2021    LAW OFFICES OF SELWYN D. WHITEHEAD

/s/ *Selwyn D. Whitehead*
Selwyn D. Whitehead
Attorney for Creditors
JEFF HANNA and AMALIA HANNA

Dated: December 30, 2021    LOCKHART PARK, LLP

/s/ *Deirdre M. Digrande*
Deirdre M. Digrande
Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

- 5 -

The Hannas' Objection to Disclosure Statement Aspects of Joint Proposed Combined Plan of Reorganization
Case No. 20-50469-SLJ

Case: 20-50469    Doc# 280    Filed: 12/30/21    Entered: 12/30/21 23:57:41    Page 7 of 7