# United States Bankruptcy Court
## Northern District of California

In re:                                    Case No. 20-50469-SLJ

MORDECHAI KOKA                            Chapter 11

_____/

### MORDECHAI KOKA, DALE GARDNER AND MELISSA GARDNER'S JOINT PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT
### (January 24, 2022)

**INTRODUCTION**

This is debtor Mordechai Koka and creditors Dale Gardner and Melissa Gardner's (the "Plan Proponent") Joint Combined Chapter 11 Plan of Reorganization and Disclosure Statement ("Plan"). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by the Plan Proponent's counsel, and objections to confirmation must be filed and served, no later than March 31, 2022. The court will hold a hearing on confirmation of the Plan on April 7, 2022 at 1:30 p.m.

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows monthly income and expenses for the estate. Exhibit 4 describes how much the Disbursing Agent and/or Debtor is required to pay on the effective date of the plan. Exhibit 5 shows the monthly income

Case: 20-50469    Doc# 294    Filed: 02/01/22    Entered: 02/01/22 14:07:51    Page 1 of 28

and expenses related to each investment property.  Exhibit 6 provides for additional plan provisions.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace Debtor's pre-confirmation debts.  Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan.  If the Disbursing Agent and/or Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if the Disbursing Agent and/or Debtor makes all Plan payments.  Enforcement of the Plan, discharge of Debtor, and creditors' remedies if the Disbursing Agent and/or Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

## PART 1: TREATMENT OF SECURED CREDITORS
**Property to be Sold.**

| Class | 1(A) |
|---|---|
| Name of Creditor | HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-AF1 |
| Collateral | 858 Acalanes Road  (1st DOT) Lafayette, California 94549 |
| Amount Due | $1,054,146 |
| Monthly Payments | $0.00 |
| Value of Collateral | $1,700,000 (estimated "as-is" value)[1] |

The Disbursing Agent will sell the above collateral within three (3) months of the Effective Date, paying creditor in full from the proceeds of the sale.  The Disbursing Agent will file a motion for approval of any such sale on 28 days notice to lien holders.  Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale.

---

[1] Debtor's realtor has opined that the value of the Acalanes Property is approximately $1,650,000, but could sell for $1,700,000 in an "as-is" condition because of significant repairs to property, including foundation issues and deferred maintenance.

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 2 of 28

The Disbursing Agent will not make monthly payments to creditor in this class pending the sale of the collateral.

Creditors in these classes may not repossess or dispose of their collateral so long as the Disbursing Agent is not in material default under the Plan (defined in Part 6(c)). **This creditor is impaired and are entitled to vote on confirmation of the Plan.**

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

| Class | 1(B) |
|---|---|
| Name of Creditor | Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A |
| Collateral | 1702 Paru Street (1st DOT) Alameda, California 94501 |
| Regular Monthly Payment | $5,519.60 |
| Estimated Arrears | $4,662.02 |
| Interest Rate of Arrears | 0.00% |
| Monthly Payment on Arrears | $4,662.02 |
| Value of Collateral | $1,750,000 (estimate) |

On September 20, 2021, Debtor and Class 1(B) Claimant Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series 2007-A ("Deutsche Bank") entered into an *Amended Stipulation for Plan Treatment on First Lien Secured by Real Property Located at 1702 Paru Street, Alameda, CA 94501* (the "Deutsche Bank Stipulation") [Dkt. No. 248], with respect to the treatment of the Class 1(B) claim of Deutsche Bank, which is incorporated herein by reference. Further, the terms and conditions of the Deutsche Bank Stipulation shall govern, supersede, and replace any inconsistent or contrary provision set forth in the Plan.

The Disbursing Agent and/or Debtor will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorneys fees and late charges) with interest in 1 equal monthly payment, due thirty (30) days after the Effective Date on the above secured claims. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the number of payments. Creditors in these classes shall retain their interest in the collateral until paid in full.

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 3 of 28

Creditors in these classes may not repossess or dispose of their collateral so long as the Disbursing Agent and/or Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**

| Class | 1(C) |
|---|---|
| Name of Creditor | Citibank West, FSB |
| Collateral | 1702 Paru Street (2nd DOT) Alameda, California 94501 |
| Amount Due | $153,000.00 |
| Interest Rate | 3.25% |
| Monthly Payment | $569.99 |
| Value of Collateral | $1,750,000 (estimate)[2] |

The Disbursing Agent and/or Debtor will pay the entire amount contractually due with interest through 480 equal monthly payments, due the 15th day of the month, starting six (6) months after the Effective Date on the above secured claims. Creditors in these classes shall retain their interest in the collateral until the Disbursing Agent and/or Debtor makes all payments on the allowed secured claim specified in the Plan.

The entire amount contractually due includes any cash collateral of Citibank West, FSB (estimated at $41,569.05) that Debtor may have used during the Bankruptcy Court without prior court approval for maintenance and repairs to the property, refunding security deposits, and personal expenditures.

Creditors in these classes may not repossess or dispose of their collateral so long as the Disbursing Agent and/or Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

///

---

[2] Debtor has received an offer to purchase the Paru Property for $1,750,000. However, cost of repairs are estimated at $160,000 and the property must be delivered vacant, which will result in relocation costs charged against the proceeds of sale.

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**
**Class 2.General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Effective Date Payment | Estimated Total Amount to be Paid |
|---|---|---|---|---|
| Allan Hulgan Nicole Hulgan | $    54,400.00 | N | $      347.12 | $   19,225.49 |
| CBA Collection Bureau | $     2,530.00 | N | $       16.14 | $      894.13 |
| Citi Visa (Costco) | $     4,490.00 | N | $       28.65 | $    1,586.81 |
| Credit Collection | $       193.00 | N | $        1.23 | $       68.21 |
| Daniel Morgan Thanh-Tam Morgan | $   100,682.36 | N | $      642.45 | $   35,582.12 |
| Dale Gardner Melissa Gardner | $ 1,285,810.91 | N | $    8,204.65 | $  454,418.00 |
| Houzz | $     2,000.00 | N | $       12.76 | $      706.82 |
| Jeff Hanna Amalia Hanna | $    84,941.50 | N | $      542.00 | $   30,019.15 |
| Mai T. Hoang | $    18,125.00 | N | $      115.65 | $    6,405.55 |
| Sales Force | $     7,000.00 | N | $       44.67 | $    2,473.87 |
| United Site Services | $     7,000.00 | N | $       44.67 | $    2,473.87 |
| **TOTAL** | **$ 1,567,172.77** | **-** | **$ 10,000.00** | **$  553,854.00** |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** All creditors in this class will receive a *pro-rata* distribution, based on the allowed amount of their claim, of all proceeds of sale from real property commonly known as: (a) 3190 Vichy Avenue, Napa, California 94558, (b) 858 Acalanes Road, Lafayette, California 94549, and (c)1702 Paru Street, Alameda, California 94501 (if required as set forth in Part 8 of the Plan), after payment in full of: (i) all secured claims provided for in Part 1; (ii) all reasonable and customary costs, fees, and other charges as may be approved by the Court incurred by Debtor (if sale is pre-confirmation) or the Disbursing Agent (if sale is post-confirmation) from liquidating property under this Plan or from property previously liquidated by Debtor (not including capital gains taxes); and (iii) all administrative claims provided for in Part 3(a)-(c).

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 5 of 28

The Disbursing Agent shall make *pro-rata* distributions to creditors in Class 2 based on the allowed amount of their claim as follows:

(i) <u>Effective Date Payment</u>.  On the Effective Date, the Disbursing Agent shall disburse to each creditor in Class 2 a single *pro-rata* distribution based on the allowed amount of their claim from a pot consisting of $10,000 from the net proceeds of sale from real property commonly known as 3190 Vichey Avenue, Napa, California 94558 after payment of the claims provided for in Part 3(a), Part 3(b), and Part 3(c) of the Plan.

(ii) <u>Sale of Acalanes Property</u>.  Within thirty (30) days after receipt of the net proceeds of sale from real property commonly known as 858 Acalanes, Lafayette, California, 94549 (estimated at $543,854), the Disbursing Agent shall disburse to each creditor in Class 2 a single *pro-rata* distribution based on the allowed amount of their claim from the net proceeds of sale (as defined above).

(iii) <u>Sale of Paru Property</u>.  If the Disbursing Agent is required to sell real property located at 1702 Paru Street, Alameda, California 94501 as required by Part 8 of the Plan, then within thirty (30) days after receipt of the net proceeds of sale, the Disbursing Agent shall disburse to each creditor in Class 2 a single *pro-rata* distribution in such amount that the aggregate amount of all payments to Class 2 claimants equal $525,000 from the net proceeds of sale (as defined above).

(iv) <u>Final Distribution</u>.  After payment of all claims provided for by the Plan and duly allowed by the Court, the Disbursing Agent shall disburse to each creditor in Class 2 a final *pro-rata* distribution based on the allowed amount of their claim from the residue of estate property (if any) prior to closing of the case.

Creditors in this class may not take any collection action against the Disbursing Agent so long as the Disbursing Agent is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.**  Debtor has indicated above whether a particular claim is disputed.

///

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a) <u>Professional Fees</u>.  Debtor will pay the following professional fees in full on the Effective Date or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Farsad Law Office, P.C. (Former Counsel for Debtor) | $ 5,000.00 |
| The Fuller Law Firm, P.C. (Counsel for Debtor) | $ 30,000.00 |
| Christopher Hayes (Former Sub-Chapter V Trustee) | $ 9,717.00 |

Professionals may not take collection action against the Disbursing Agent so long as the Disbursing Agent is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) <u>Other Administrative Claims</u>.  The Disbursing Agent will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date or upon approval by the court, whichever is later; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against the Disbursing Agent so long as the Disbursing Agent is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| Meyer Law Group, LLP (Counsel for Plan Proponent)[3] | $ 25,000.00 |

(c) <u>Tax Claims</u>.  The Disbursing Agent will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the

---

[3] In conjunction with confirmation of the Plan, Meyer Law Group, LLP  will file a motion for a substantial contribution pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) prior to receiving any funds from Debtor.

Bankruptcy Code.  Payments will be made monthly, due on the 15th day of the month, starting in the month after the Effective Date. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against the Disbursing Agent so long as the Disbursing Agent is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| [None] | | | | |

(d) <u>Priority Security Deposits</u>.  The Disbursing Agent and/or Debtor will pay allowed claims entitled to priority under section 507(a)(7) after the creditor surrenders possession of their leasehold interest to the Disbursing Agent and/or Debtor consistent with applicable California law.

To the extent that the Disbursing Agent and/or Debtor sells any property identified in Part 1 subject to a leasehold interest in which the creditor has an allowed claim entitled to priority under section 507(a)(7), the Disbursing Agent and/or Debtor shall have the option to: (a) transfer to the buyer at close of escrow the full amount of the security deposit set forth below in full satisfaction of the allowed claim of the creditor; or (b) provide the buyer with a credit at close of escrow in the aggregate amount of the security deposits set forth below in full satisfaction of the allowed claim of the creditor.

| Name of Creditor | Property for Security Deposit | Amount of Deposit |
|---|---|---|
| Alexander Beuscher Scott Beuscher | Residential Lease for 1702 Paru Street Alameda, California 94501 | $ 1,895.00 |
| Manolo Penaranda Erlina Penaranda Arnaldo Catolos Tate Aaron Catolos | Residential Lease for 1702 Paru Street Alameda, California 94501 | $ 3,000.00 |

Priority security deposit creditors may not take any collection action against the Disbursing Agent and/or Debtor so long as the Disbursing Agent and/or Debtor is not in material

default under the Plan (defined in Part 6(c)). **Priority security deposit claimants are not entitled to vote on confirmation of the Plan.**

**PART 4:    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) Executory Contracts/Unexpired Leases Assumed.  Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears will be paid in full on the Effective Date.

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| Alexander Beuscher<br>Scott Beuscher | Residential Lease for<br>1702 Paru Street<br>Alameda, California 94501 |
| Manolo Penaranda<br>Erlina Penaranda<br>Arnaldo Catolos<br>Tate Aaron Catolos | Residential Lease for<br>1702 Paru Street<br>Alameda, California 94501 |

(b) Executory Contracts/Unexpired Leases Rejected.  Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court.  Claims arising from rejection of executory contracts have been included in Class 2(b) (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| [NONE] | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed rejected.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a)  Discharge.  Debtor shall not receive a discharge of debts until the Disbursing Agent and Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b)  Vesting of Property.  Except as otherwise specifically provided for in Part 8 of the Plan as the "Post-Confirmation Estate," all other property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c)  Plan Creates New Obligations.  Except as provided in Part 6(d) and (e), the obligations to creditors that the Disbursing Agent and/or Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.  The Disbursing Agent and/or Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a)  Creditor Action Restrained.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as the Disbursing Agent and/or Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b)  Obligations to Each Class Separate.  The Disbursing Agent and/or Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c)  Material Default Defined.  If the Disbursing Agent and/or Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon the Disbursing Agent, Debtor, and Debtor's attorney (if any) a written notice of Debtor's default.  If the Disbursing Agent and/or Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then the Disbursing Agent and/or Debtor is in Material Default under the Plan to all the members of the affected class.

(d)  Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e)  Claims not Affected by Plan.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f)  Effect of Conversion to Chapter 7.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g)  Retention of Jurisdiction.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**
(a)  Effective Date of Plan.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, the Disbursing Agent and/or Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b)  Disputed Claim Reserve.  The Disbursing Agent will create a

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 11 of 28

reserve for disputed claims. Each time the Disbursing Agent makes a distribution to the holders of allowed claims, the Disbursing Agent will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Disbursing Agent shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be distributed pro-rata among allowed claims in this class.

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, the Plan Proponent reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

The Plan Proponent believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| [NONE] | | | | |

Disbursing Agent shall have the right, post-confirmation, to pursue any and all causes of action, whether or not set forth in Section 7(f) of the Plan or otherwise listed in any of the bankruptcy schedules filed by Debtor in this case.

(g) <u>Notices</u>. Any notice to Debtor or the Plan Proponent shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and

addressed as follows:

| | |
|---|---|
| **Debtor** | **Debtor's Counsel** |
| Mordechai Koka | The Fuller Law Firm, P.C. |
| 858 Acalanes Road | Attn: Lars T. Fuller, Esq. |
| Lafayette, CA 94549 | 60 N. Keeble Avenue |
| | San Jose, CA 95126 |
| | lars@fullerlawfirm.net |
| | |
| **Plan Proponent** | **Plan Proponent's Counsel** |
| Dale Gardner | Meyer Law Group, LLP |
| Melissa Gardner | Attn: Brent D. Meyer, Esq. |
| 442 Fulton Court | 268 Bush Street #3639 |
| San Jose, CA 95051 | San Francisco, CA 94104 |
| | brent@meyerllp.com |

**Disbursing Agent**
Janina Hoskins
P.O. Box 158
Middletown, CA 94561
jmelder7@aol.com

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, the Disbursing Agent shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as the Disbursing Agent is required to make these payments, the Disbursing Agent shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

**PART 8: MEANS OF EXECUTION OF PLAN**

(a) <u>Post Confirmation Estate</u>. Immediately upon entry of an order confirming this Plan, the following property shall vest in the bankruptcy estate subject to exclusive administration by the Disbursing Agent free and clear of all claims, liens, and interests except as otherwise provided in this Plan, and Debtor and his bankruptcy estate shall have no authority, management, or control over the following:

  (i)   The net proceeds of sale from real property commonly known as Vichy Avenue, Napa, California 94558 currently held in the IOLTA attorney-client trust account of

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 13 of 28

Farsad Law Office, P.C. in the approximate amount of
                    $99,732.31;
   (ii)     858 Acalanes, Lafayette, California, 94549;
  (iii)     1702 Paru Street, Alameda, California 94501;
   (iv)     All cash collateral and rental income generated from
            1702 Paru Street, Alameda, California 94501;
    (v)     Any and all claims and causes of action held by the
            estate with authority to purse, defend, settle, or
            abandon any claims or causes of action.

(collectively, hereinafter the "Post-Confirmation Estate").

     Notwithstanding vesting of certain property in the Post-
Confirmation Estate, record title to all real property provided
for in the Plan shall not be impacted by this vesting.  Any
secured creditor seeking to enforce its lien rights in real
property that is part of the Post-Confirmation Estate, after
compliance with the default requirements provided for in Section
6 of the Plan, shall not be required to serve the Disbursing
Agent with any foreclosure-related documents.

     Disbursing Agent is **not** a successor of Debtor for purposes
of incurring Debtor's liabilities.

     All other property, claims, or interests of the estate not
specifically identified above and transferred to the Post-
Confirmation Estate, shall vest in Debtor immediately upon entry
of an order confirming this Plan consistent with Part 5(b) of the
Plan.

(b)  Post-Confirmation and Appointment of Disbursing Agent.

     (i)  Termination of Debtor.  Immediately upon entry of an
order confirming this Plan, the services of Mordechai Koka acting
as debtor-in-possession of the bankruptcy estate shall be
terminated in their entirety, and Mordechai Koka shall not have
any management, control, or other authority over the Post-
Confirmation Estate or property of the Post-Confirmation Estate.

     (ii) Appointment of Disbursing Agent.  Immediately upon
entry of an order confirming this Plan, attorney Janina M.
Hoskins of the Law Offices of Janina M. Hoskins shall be
designated and appointed as the post-confirmation disbursing
agent (the "Disbursing Agent").

     The Disbursing Agent is appointed to effectuate an orderly
administration, liquidation, and disposition of certain property

of the bankruptcy estate, as provided in this Plan, and to distribute and pay to creditors of this case the proceeds of these assets in accordance with the terms of this Plan. The Disbursing Agent shall have exclusive management, control, and authority over the entire Post-Confirmation Estate and all assets of bankruptcy estate that remain vested in the estate.

(iii) <u>Bond Requirements and Successor Disbursing Agent</u>. The Disbursing Agent may serve without a bond. Immediately upon entry of a Final Decree by the Court, the Disbursing Agent shall be deemed discharged of all duties under this Plan.

In the event that Janina M. Hoskins is unable or unwilling to serve as the Disbursing Agent, then the Plan Proponent, in their sole discretion, shall nominate an alternate or successor Disbursing Agent subject to approval by the Court.

(iv) <u>Post-Confirmation Property</u>. The Disbursing Agent may in her business judgment use, sell, lease, abandon, dispose, compromise, or otherwise settle any property or claims of the Post-Confirmation Estate that vested subject to control of the Disbursing Agent consistent with the terms of this Plan, provided however, that all transactions outside of the ordinary course of business shall require approval from the Court.

(v) <u>Retention of Professionals</u>. The Disbursing Agent may employ any professionals necessary to carry out those duties required by the terms of this Plan, including but not limited to, counsel for the Plan Proponent, and the Disbursing Agent is not required to obtain approval by the Court to retain a professional for post-confirmation services.

(vi) <u>Effectuating Documents</u>. The Disbursing Agent, or such other persons as the Disbursing Agent may approve, shall have full and complete authority to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary and appropriate to effectuate and implement the terms and provisions of this Plan. The Disbursing Agent or such other persons designated by the Disbursing Agent shall be authorized to certify or attest to any of the foregoing actions.

(vii) *Ad Valorem* <u>Property Taxes</u>. The Disbursing Agent shall have sole discretion to pay any *ad valorem* property taxes due and payable on account of real property that is part of the Post-Confirmation Estate, and to the extent that there are insufficient funds to pay any *ad valorem* property tax obligation,

the Disbursing Agent shall have sole discretion to defer payment of these obligations until there are sufficient funds in the estate.

(c) <u>Transfer Net Proceed of Sale from Vichy Property</u>. Immediately after entry of an order confirming the Plan, Farsad Law Offices P.C. shall turn over to the Disbursing Agent all funds (approximately $99,732.31) held in its IOLTA attorney-client trust account from the sale of real property commonly known as 3190 Vichy Avenue, Napa, California 94558 as authorized by Paragraph (15) of the *Order Authorizing Sale of Real Property* [Dkt. No. 76], to be held in trust for the benefit of creditors provided for by the terms of the Plan.

(d) <u>Cooperation in Implementation of Plan</u>. The Fuller Law Firm, P.C. and Debtor shall cooperate in good faith with the Disbursing Agent and her attorneys, professionals, and agents with respect to implementation and performance of the terms of this Plan.

(e) <u>Sale of Real Property</u>. The Disbursing Agent shall initially only market and sell real property located at 858 Acalanes, Lafayette, California, 94549.

(i) In the event that distributions to Class 2 claimants from the sale of real property located at 858 Acalanes, Lafayette, California, 94549 are equal to or greater than $525,000, then upon close of escrow for the sale of the property, all remaining property of the Post-Confirmation Estate, including real property located at 1702 Paru Street, Alameda, California 94501, shall immediately and automatically revest in Debtor consistent with Part 5(b) of the Plan, and shall no longer constitute property of the estate subject to administration and control of the Disbursing Agent.

(ii) In the event that distributions to Class 2 claimants from the sale of real property located at 858 Acalanes, Lafayette, California, 94549 are less than $525,000, then, unless Debtor is able to cure the deficiency from non-estate funds within fifteen (15) days of receipt of a notice of deficiency from the Disbursing Agent, the Disbursing Agent shall market and sell real property located at 1702 Paru Street, Alameda, California 94501. From the net proceeds of sale, the Disbursing Agent shall retain sufficient proceeds in order to make distributions to Class 2 claimants in the aggregate amount of $525,000, and all remaining net proceeds of sale shall be returned to Debtor. Upon close of escrow for the sale of the property, all remaining property of the Post-Confirmation Estate

shall immediately and automatically revest in Debtor consistent with Part 5(b) of the Plan, and shall no longer constitute property of the estate subject to administration and control of the Disbursing Agent.

(f) Post-Confirmation Management. Upon entry of an order confirming this Plan, the Disbursing Agent shall:

- Take any and all action reasonably necessary to take possession of and liquidate property of the Post-Confirmation Estate provided for in the Plan;
- Have the right to use funds of the Post-Confirmation Estate to pay reasonable and necessary expenses or maintain any encumbrance against any property pending liquidation or abandonment of such property;
- Sell in a commercially reasonable manner all real property of the Post-Confirmation Estate;
- Fulfill those duties specified in section 704 as expeditiously as possible;
- Possess each of the powers authorized of a trustee appointed in a case under Title 11, Chapter 11 of the United States Code, including without limitation, asserting any and all causes of action held by the estate under Chapter 3 and Chapter 5 of the United States Code;
- Have the right and standing to pursue, defend, settle, or abandon any litigation claims;
- Have the right and obligation to analyze all filed proofs of claims, and if warranted, object to such claims;
- Monitor and supervise implementation of this Plan;
- Have the right to take any and all reasonable actions necessary to enforce the terms of this Plan.

(g) Compensation for the Disbursing Agent and Professionals. The Disbursing Agent and her professionals shall receive reasonable compensation at their customarily rate consistent with the standards set forth in sections 329 and 330 and reimbursement of actual costs expended performing their duties under this Plan.

No more frequently than on a quarterly basis, the Disbursing Agent and her professionals shall file requests for approval of compensation with the Court, and attach as exhibits, time records for professional fees incurred and an itemization of costs advanced.  The Disbursing Agent shall provide at least ten (10) days written notice for all requests for compensation to parties

entitled to receive notice pursuant to Part 8(j), and if no timely opposition is filed, the Disbursing Agent may lodge orders with the Court approving the requests for compensation.

As of the date of this Plan, the hourly rate charged by the Disbursing Agent for professional services related to implementation of the terms and conditions of this Plan is $475.00 per hour.

In order to successfully implement this Plan, the Disbursing Agent and her professionals may, in their sole discretion, voluntarily reduce compensation due and payable for their services rendered.

(h) <u>Disbursements Made Pursuant to Plan</u>. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent may, in her sole discretion, make interim or final disbursements to creditors earlier than those deadlines set forth in the Plan. All disbursements shall be made by the Disbursing Agent by check drawn on a domestic bank, unless under the circumstances, the Disbursing Agent determines that disbursement by a bank wire is warranted and appropriate.

(i) <u>Exculpations and Releases</u>. To the maximum extent permitted by applicable law, neither the Plan Proponent, the Disbursing Agent, the bankruptcy estate, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not approved by the Court (each, an "<u>Indemnified Person</u>"), shall have any liability to any person or entity for acts or omissions made in good faith to consummate and implement the terms and conditions of the Plan.

Each Indemnified Person shall in all respects be entitled to reasonably rely upon the advice of counsel in discharging its duties and responsibilities under this Plan.

However, notwithstanding the foregoing, an Indemnified Person shall not be entitled to any exculpation or release for acts of fraud, embezzlement, willful and malicious conduct, or gross negligence.

(j) <u>Notice Requirements</u>. For any action that requires notice under this Plan, the Disbursing Agent shall provide notice to: (i) all parties identified in Part 7(g) of this Plan; (ii) all parties that have consented to receive *Notice of Electronic Filing* (NEF) pursuant to the Court's CM/ECF system and have

appeared in the Bankruptcy Case; (iii) all lien holders (if any) affected by the notice; and (iv) all parties that have filed a request to receive notice pursuant to this Plan, which shall be docketed on the Court's CM/ECF system in the Bankruptcy Case.

(k) Turnover of Estate Property.

(i) Funds Held in IOLTA Trust Account. Immediately upon entry of an order confirming this Plan, Farsad Law Office, P.C. shall turn over to the Disbursing Agent all funds (approximately $99,732.31) held in its IOLTA attorney-client trust account from the sale of the 3190 Vichy Avenue, Napa, California 94558 as authorized by Paragraph (15) of the *Order Authorizing Sale of Real Property* [Dkt. No. 76].

(ii) Insurance Policies. Within seven (7) days after entry of an order confirming this Plan, The Fuller Law Firm, P.C. and Debtor shall turn over to the Disbursing Agent copies of the current declaration page for each insurance policy bound for property of the estate, including but not limited to, each of those real properties provided for in Part 1 of the Plan, in its possession, custody, and control.

(iii) Real Property. Within seven (7) days after entry of an order confirming this Plan, The Fuller Law Firm, P.C. and Debtor shall turn over to the Disbursing Agent all of the following for each parcel of real property identified in Part 1 of the Plan: (1) copies of the current operative lease for each tenant; (2) the current amount of rent paid by each tenant; (3) all keys, garage door openers, and other instruments used to access the property; (4) all gate codes, access codes, passwords, and combination used to access any area of the property; and (5) the current contact information (name, address, phone number, and email address) for each tenant.

(iv) Utilities. Within fifteen (15) days after entry of an order confirming this Plan, The Fuller Law Firm, P.C. and Debtor shall turn over to the Disbursing Agent a list (name, service, payment amount, address for payment) for all utilities and expenses paid by Debtor for each parcel of real property identified in Part 1 of the Plan, including but not limited to, water, garbage, sewer, trash, gardener, and electrical.

(v) Possession of Acalanes Property. Within fifteen (15) days after entry of an order confirming this Plan, Debtor and all relatives shall vacate, surrender, and turn over to the Disbursing Agent possession of real property located at 858

Acalanes, Lafayette, California, 94549.

Dated: January 24, 2022          /s/ MORDECHAI KOKA
                                  Mordechai Koka, Debtor

Dated: January 24, 2022          /s/ LARS FULLER
                                  Attorney for Debtor

Dated: January 24, 2022          /s/ BRENT D. MEYER
                                  Attorney for Plan Proponent

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 20 of
28

**Attorney Certification**

I, Lars T. Fuller and Brent D. Meyer, are legal counsel for the respective Plan Proponent in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

- **Exhibit A** filed concurrently herewith is a redline copy identifying all alternations and modifications to any provision of the Standard-Form Plan.

I declare that the foregoing is true and correct. Executed this 24th day of January, 2022.


Dated: <u>January 24, 2022</u>          <u>/s/ LARS FULLER</u>
                                        Attorney for Plan Proponent
                                        Mordechai Koka


Dated: <u>January 24, 2022</u>          <u>/s/ BRENT D. MEYER</u>
                                        Attorney for Plan Proponent
                                        Dale and Melissa Gardner

**Exhibit 1 - Events That Led To Bankruptcy**

Pursuant to the *Status Conference Statement* filed by Debtor on April 27, 2020, "[t]his case was commenced with the filing of a petition under Chapter 11 on March 10, 2020" and "[t]he Debtor filed the instant case to stop the non-judicial foreclosure of his real property located at 858 Acalanes Road, Lafayette, CA 94549. See Dkt. No. 39.

As many of the creditors of this case are well aware, Debtor was the sole shareholder of Green Bay Builders, Inc. ("GBBI"), which operated a business as a general contraction under California Contractors State License Board ("CSLB") License No. 1015144. Debtor utilized the license of another general contractor (as RMO) to conduct business.

As a result of at least two complaints filed against GBBI and Debtor for its unlawful business practices, on August 19, 2020, CSLB issued a citation against GBBI for: (1) violation of California Business & Professions Code § 7159 and issued a civil penalty of $500 for this violation; (2) violation of California Business & Professions Code § 7159.5 and issued a civil penalty of $750 for this violation; and (3) violation of California Business & Professions Code § 7161(b) and issued a civil penalty of $750 for this violation. See CSLB Citation No. 2 2020 1159 (the "CSLB Citation"). Debtor has remitted payment in full to the CSLB for each of these fines.

Further, on April 1, 2021, the Office of the District Attorney for the County of Santa Clara issued an arrest warrant of Debtor based on the investigation conducted by the CSLB. In particular, the pending charges against Debtor are: (1) violation of California Insurance Code § 11880(a) for willfully misrepresenting facts to obtain state compensation insurance fund; (2) violation of California Penal Code § 484(b) for unlawful diversion of funds; (3) violation of California Business & Professions Code § 7159.5(a)(5) for accepting payment exceeding work performed; and (4) violation of California Business & Professions Code § 7159.3(a)(3) for receiving an excessive down payment. See Case No. RF-2010-28024 (the "Criminal Case").

Debtor does not believe the CSLB Citation or the Criminal Case will have any material impact on his ability to perform each of those obligations and duties required by the Plan.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 1702 Paru Street, Alameda, CA 94501

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 1,650,000[4] | 1st $ 824,544 | $ 99,000 | $ 385,127 | $ 0.00 | $ 188,329 |
| | 2nd $ 153,000 | | | | |

Real Property #2: 858 Acalanes Road, Lafayette, CA, 94549

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 1,700,000 | 1st $ 1,054,146 | $ 102,000 | $ 156,921 | $ 75,000 | $ 311,933 |

Real Property #3: 3190 Vichy Avenue, Napa, CA 94558*

| Fair Market Value | Liens | Cost of Sale | Estimated Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ - | 1st - | $ - | $ 26,023.95 | $ - | $ 73,708.36 |

* The Vichy Property sold on August 24, 2020, and the Net Proceeds represent the current amount ($99,732.31) deposited in the IOLTA Trust Account for Farsad Law Office, P.C. at close of escrow, less the estimated capital gains tax of $26,023.95.

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $ 11,198.00 | $ 0.00 | $ 0.00 | $ 11,198.00 |
| Automobile #1 | $ 17,000.00 | $ 0.00 | $ 3,325.00 | $ 13,675.00 |
| Automobile #2 | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 3,000.00 |
| Automobile #3 | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 3,000.00 |
| Household Furnishings | $ 5,300.00 | $ 0.00 | $ 5,300.00 | $ 0.00 |
| Jewelry | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Stocks / Investments | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Other Personal Property | $ 2,850.00 | $ 0.00 | $ 0.00 | $ 2,850.00 |
| TOTAL | | | | $ 33,723.00 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $607,693.36 |
| Recovery from Preferences / Fraudulent Conveyances        [ADD] | $ 0.00 |

---

[4] Assumes sales price of $1,750,000, less credit of $100,000 towards $160,000 structural pest control repairs, and no credit for tenant relocation expenses.

Individual Chapter 11
Combined Plan & Disclosure Statement                                    (Version: 7/30/12)
January 24, 2022

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 23 of 28

| | | |
|---|---|---|
| Chapter 7 Administrative Claims | [SUBTRACT] | $ 0.00 |
| Chapter 11 Administrative Claims | [SUBTRACT] | $ 69,717.00 |
| Priority Claims | [SUBTRACT] | $ 0.00 |
| Chapter 7 Trustee Fees | [SUBTRACT] | $128,503.65 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | $155,000.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | $254,472.71 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $ 1,567,173 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 35.34%* |
| Percent Distribution to Unsecured Creditors Under Liquidation | 16.28%^ |

    * The estimated dividend to general unsecured creditors is based on an anticipated sale price of $1,700,000 for the Acalanes Property, and to the extent that the property is sold in excess of this amount, then the actual dividend that general unsecured creditors in Class 2 will receive under this Plan may be greater than the estimated dividend (35.34%) set forth in this analysis.

    ^ At the time of drafting this Plan, the actual amount of taxes due and owing to the Internal Revenue Service and the Franchise Tax Board resultant from the sale of estate property, and in particular, the Paru Property, the Acalanes Property, and the Vichy Property is unknown. As such, the actual dividend that general unsecured creditors would receive under a liquidation Chapter 7 may be lower than the estimated dividend (16.28%) set forth in the analysis, which also could affect the actual dividend that general unsecured creditors in Class 2 will receive under this Plan.

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 24 of
28

**Exhibit 3 - Monthly Income and Expenses**

| Income | Amount |
|---|---|
| Gross Employment Income | $12,000.00[5] |
| Gross Business Income | $     0.00 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | $ 4,895.00 |
| **A. Total Monthly Income** | $16,895.00 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | $ 3,000.00 |
| Retirement Contributions (401k, IRA, PSP) | $     0.00 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities)<br>(Total Arrearages on Principal Residence are UNKNOWN) | $   704.00 |
| Household Expenses (food) | $   700.00 |
| Transportation Expenses (car payments, insurance, fuel) | $   924.00 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $   500.00 |
| Rental Expenses and Maintenance | $ 1,000.00 |
| Other Expenses | $    59.00 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $     0.00 |
| **B. Total Monthly Expenses** | $ 6,887.00 |

| | |
|---|---|
| **C. Disposable Income** (Line A - Line B) | $ 10,008.00 |

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Class 1(A) (HSBC Bank, N.A) | $     0.00 |
| Class 1(B) (Deutsche Bank) | $ 5,519.60 |
| Class 1(C) (Citibank West, FSB) (6 Months from Effective Date) | $   569.99 |
| **D. Total Plan Payments** | $ 6,089.59 |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | $ 3,918.41 |

---

[5] Debtor was recently injured and anticipates a partial reduction of employment income in December 2021, and perhaps in subsequent months thereafter. However, Debtor will receive contributions from his children for shortfalls in income (if any) that would be required to make all required payments under the Plan while Debtor is injured.

Individual Chapter 11
Combined Plan & Disclosure Statement <span style="float:right">(Version: 7/30/12)</span>
January 24, 2022

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 25 of 28

**Exhibit 4 – Effective Date Feasibility**

Can the Disbursing Agent Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $ 99,732.31 |
|    Payments on Effective Date | | |
|      Administrative Expense Claims | $ 69,717.00 | |
|      Priority Claims | $     0.00 | |
|      Class 1(B) (Arrearage) | $  4,662.02 | |
|      Unsecured Claims (Class 2) | $ 10,000.00 | |
|      U.S. Trustee Fees | $   650.00 | |
| B. Total Payments on Effective Date | | $ 85,029.02 |
| **C. Net Cash on Effective Date** (Line A – Line B) (Not feasible if less than zero) | | $ 14,703.29 |

Individual Chapter 11
Combined Plan & Disclosure Statement      (Version: 7/30/12)
January 24, 2022     –26–

Case: 20-50469   Doc# 294   Filed: 02/01/22   Entered: 02/01/22 14:07:51   Page 26 of 28

**Exhibit 5 - Investment Property Analysis**

**Properties with Positive Monthly Cash-Flow:**

Real Property #1 Income: 1702 Paru Street, Alameda, CA 94501

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $ 4,895.00 | 1st   N/A* | $    N/A* | $    N/A* | $    N/A* | $ 4,895.00 |

    * The expenses for the Paru Property are included in the expenses set forth in Exhibit 4 above. Further, pursuant to Part 1 of the Plan, Debtor will sell this property for the benefit of creditors, and as such, it not anticipated that rental income generated by this property will have any material impact on distributions to creditors under this Plan.

| A. Total Positive Cash Flow | $4,895.00 |
|---|---|

**Properties with Negative Monthly Cash-Flow:**

| B. Total Negative Cash Flow | $    0.00 |
|---|---|

**Exhibit 6 – Additional Plan Provisions**

(a)  Withdrawal of Homestead Exemption.  Within seven (7) after entry of an order confirming the Plan, Dale and Melissa Gardner shall withdraw in its entirety their *Objection to Debtor's Claim of Homestead Exemption, and in the Alternative, Motion to Transfer Venue to Oakland Division* [Dkt. No. 145], which is *without* prejudice to Jeff Hanna and Amalia Hanna prosecuting objections to any homestead exemption claimed by Debtor.

(b)  Capital Gains Taxes.  Debtor shall be solely responsible for any and all post-petition tax obligations, including but not limited to, capital gains taxes due and owing to the Internal Revenue Service (IRS) and California Franchise Tax Board (FTB) resultant from the sale of any real property and personal property after the petition date (March 10, 2020).

For clarification and avoidance of all doubt, the Disbursing Agent shall not reduce or otherwise deduct any taxes due and owing to any applicable taxing authority (including capital gains) incurred from the sale of 3190 Vichy Avenue, Napa, California 94558, 858 Acalanes, Lafayette, California, 94549, or 1702 Paru Street, Alameda, CA 94501 (if required to sell) in calculating the net proceeds of sale that shall be remitted to creditors provided for in Class 2 of the Plan.