**MEYER LAW GROUP LLP**
  A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone: (415) 765-1588
Facsimile: (415) 762-5277
Email: brent@meyerllp.com

Attorney for Plan Proponent
DALE GARDNER and
MELISSA GARDNER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MORDECHAI KOKA,<br><br>    Debtor. | BK Case No.: 20-50469-SLJ<br><br>Chapter 11<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF CONFIRMATION OF JOINT COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT (JANUARY 24, 2022)**<br><br>Date: May 5, 2022<br>Time: 1:30 p.m.<br>Location: Telephonic / Videoconference[1]<br>Judge: Hon. Stephen L. Johnson |

---

[1] Paragraph 10 of General Order 38 (Seventh Amended) provides that "[u]nless otherwise ordered by the presiding judge, all notices of any motion or application filed with the court and served on any party which sets a hearing date for the motion or application must state that the hearing will not be conducted in the presiding judge's courtroom but instead will be conducted by telephone or video, and include the following language: 'All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.'" See *https://www.canb.uscourts.gov/sites/default/files/ generalorders/SeventhAmendedGO38.pdf*.

Debtor Mordechai Koka ("Debtor") and plan proponents Dale Gardner and Melissa Gardener (the "Gardners") (collectively, the "Plan Proponents") hereby submit this supplemental brief in support of confirmation of the *Joint Combined Plan of Reorganization and Disclosure Statement (January 24, 2022)* [Dkt. No. 294] (the "Plan") in the above-captioned matter (the "Bankruptcy Case").

This supplemental brief is based upon the supporting memorandum of points and authorities set forth below, the supporting supplemental declarations of Mordechai Koka, Richard Dahnken, and attorney Lars Fuller and all exhibits attached thereto, all other pleadings on file herein, and such other and further arguments and authority as may be presented at the hearing on confirmation.

## I. Statutory Requirements for Confirmation of the Plan – 11 U.S.C. § 1129(a)(11)

At the hearing on April 7, 2022, the Court continued the original confirmation hearing to allow the Plan Proponents to provide additional evidence to demonstrate feasibility of the Plan pursuant to section 1129(a)(11). As such, this supplemental brief will only address: (1) feasibility of the Plan on the Effective Date and plans payments due contemporaneous therewith; (2) feasibility of monthly plan payments to Class 1(B) and Class 1(C) secured creditors under the Plan; and (3) feasibility of payment of capital gains taxes resultant from sale of the Acalanes Property.

### A. Legal Standard for Plan Feasibility

Section 1129(a)(11) sets forth the feasibility requirements, which provides that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

"To satisfy this section, known as the 'feasibility requirement,' the debtor must demonstrate that the plan '*has a reasonable probability of success*.'" First Southern Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous. Ltd. P'ship), 859 F.3d 637, 646-47 (9th Cir. 2017) (*en banc*) (*quoting* In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986)) (emphasis added); see also In re Hamilton, 803 F. App'x 123, 125 (9th Cir. 2020). Further, "[a] bankruptcy court's finding of feasibility is reviewed for abuse of discretion." Id. at 647.

However, while a reviewing court "must examine 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of § 1129(a)(11)," S & P, Inc. v. Pfeifer, 189 B.R.

173, 183 (N.D. Ind. 1995) (*quoting* In re Mulberry Phosphates, Inc., 149 B.R. 702, 708 (Bankr. M.D. Fla. 1993)), only "*a relatively low threshold of proof [is] necessary to satisfy the feasibility requirement*." In re Sea Garden Motel and Apartments, 195 B.R. 294, 305 (D. N.J. 1996) (emphasis added). The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan of reorganization can be performed. See In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992).

Finally, "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." Matter of Pizza of Hawaii, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985) (*citing* 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11] at 1129-34 (15th ed. 1984)).

**B.  Plan Feasibility for Effective Date Payment**

Contemporaneous with the Effective Date of the Plan (15th day following the date of the entry of the order of confirmation), there are certain payments required by the Plan, each of which are summarized in detail below:

| Date | Amount | Balance | Notes |
|---|---|---|---|
| 06/10/2021 | $ 99,732.31 | $ 99,732.31 | Net Proceeds of Sale for Vichey Property (Held by Farsad Law P.C.) (See Dkt. No. 105) |
| 06/10/2021 | $ 30,000.00 | $ 129,732.31 | Post-Petition Retainer (Held by The Fuller Law Firm P.C.) (See Dkt. No. 134) |
| 02/28/2022 | $ 29,904.00 | $ 159,636.31 | Cash Balance in DIP Account as of February 28, 2022 (See Dkt. No. 301) |
| **Anticipated Sale of Acalanes Property** | | | |
| 05/18/2022 | $ 538,112.53[2] | $ 697,748.84 | Estimated Net Proceeds of Sale for Acalanes Property (Held by the Disbursing Agent) (See Dkt. No. 315, Exh. 1) |
| **Effective Date Payments** | | | |
| 05/19/2022 | $ (9,717.00) | $ 688,031.84 | Class 3(a) Administrative Claim of Christopher Hayes (Former Sub-Chapter V Trustee) (See Dkt. No. 203) |
| 05/19/2022 | $ (10,000.00) | $ 678,031.84 | Class 2 General Unsecured Claims (Initial Payment) (See Dkt. No. 294, p. 5) |

---

[2] Pursuant to the revised *Estimated Seller Statement* provided by Fidelity National Title Company on April 13, 2022, through April 28, 2022, it is anticipated that sale of the Acalanes Property will generate net proceeds of sale of $538,112.53 for the benefit of Class 2 claimants. See Dkt. No. 315, Exh. 1. However, on or about April 5, 2022, counsel for HSBC Bank, N.A. sent an email to counsel for the Plan Proponents advising the actual payoff demand was closer to $1,050,671 based on recent escrow advances, which if correct, would result in a reduction of net proceeds by $6,395.28 ($1,050,671.00 - $1,044,275.72) for an aggregate distribution to Class 2 claimants in the approximate amount of $531,717.25.

| | | | |
|---|---|---|---|
| **30 Days After Close of Escrow for Acalanes Property** | | | |
| 06/17/2022 | $ (538,112.53) | $ 139,919.31 | Estimated Payment to Class 2 Claimants from Net Proceeds of Acalanes Property (See Dkt. No. 294, p. 5) |
| **30 Days After Effective Date** | | | |
| 06/18/2022 | $ (4,662.02)[3] | $ 135,257.29 | Class 1(B) Arrearage Payment to Deutsche Bank, N.A. (See Dkt. No. 294, p. 3) |
| **Outstanding Administrative Claims** | | | |
| 06/30/2022 | $ (45,000.00) | $ 90,257.29 | Estimated Class 3(a) Administrative Claim for The Fuller Law Firm P.C. (See Dkt. No. 294, p. 7) |
| 06/30/2022 | $ (5,000.00) | $ 85,257.29 | Estimated Class 3(a) Administrative Claim for Farsad Law P.C. (See Dkt. No. 294, p. 7) |
| 06/30/2022 | $ (35,000.00) | $ 50,257.29 | Estimated Class 3(b) Administrative Claim for Meyer Law Group, LLP (See Dkt. No. 294, p. 7) |
| **United States Trustee's Fees** | | | |
| 07/21/2022 | $ (25,699.66) | $ 24,557.63 | Estimated U.S. Trustee's Fees for Q2 2022 Distributions |
| 10/21/2022 | $ (250.00) | $ 24,307.63 | Estimated U.S. Trustee's Fees for Q3 2022 Distributions |
| **Fees and Costs of Disbursing Agent** | | | |
| 10/31/2022 | $ (10,000.00) | $ 14,307.63 | Estimated Post-Confirmation Fees of Disbursing Agent (See Dkt. No. 294, pp. 17-18) |
| | | $ 14,307.63 | **ESTIMATED RESIDUE OF THE ESTATE** |

First, to the extent that this Court approves the sale of the Acalanes Property pursuant to section 363(b) and the current offer ($1,690,000) by the prospective buyer remains the highest and best offer for the Acalanes Property, then it is anticipated that the net proceeds of sale for the Acalanes Property will generate at least $531,717.25 (see footnote 2) for the benefit of Class 2 claimants, which is greater than the minimum amount ($525,000) required by the terms of the Plan. See Dkt. No. 294, p. 5. As such, it is not anticipated that the Disbursing Agent will be required to liquidate the Paru Property to satisfy the minimum payment requirement for Class 2 claimants. Id.

Second, as set forth in detail in the chart above, and based on realistic estimates for the administrative claims of all professionals and the anticipated fees due to the Office of the U.S. Trustee, it is anticipated that the residue of the estate will be approximately $14,307.63. As such, it is anticipated that the Disbursing Agent will have more than sufficient funds to make *all* distributions required by the terms and conditions of the Plan.

Based on the foregoing, there exists a reasonable probability that the provisions of the plan of

---

[3] Pursuant to the Declaration of Mordechai Koka filed in Support of Confirmation, the estimated arrearage due and owing to Deutsche Bank, N.A. (Class 1(B)) is approximately $5,519.60 more than set forth in the Plan ($4,662.02), as Debtor recently confirmed that there is only one (1) outstanding arrearage payment, not two (2), but this slight increase in the overall arrearage claim will not materially affect plan feasibility. See Dkt. No. 310, ¶ 10.

reorganization can be performed with respect to payments due and owing contemporaneous with the Effective Date of the Plan.

### C. Plan Feasibility for Monthly Plan Payments to Secured Claimants

In the Plan, there are only two reoccurring monthly payments that will be made after the Effective Date, which are: (1) $5,519.60 to Class 1(B) claimant Deutsche Bank, N.A.; and (2) $569.99 to Class 1(C) claimant Citibank West FSB. See Dkt. No. 294, pp. 3-4. Both of these payments are to secured creditors on account of their respective deeds of trust encumbering the Paru Property. Id.

Previously, the Court and the Hannas have raised concerns regarding the amount and duration of monthly employment income generated by Debtor throughout this Bankruptcy Case. However, even without consideration of employment income, Debtor will have sufficient monthly income to satisfy all monthly obligations required by the Plan and all personal living expenses.

First, as set forth in the Supplemental Declaration of Mordechai Koka, Debtor has earned employment income in the aggregate amount of $31,500 over the last 5 ½ months in his capacity as a consultant. See Supp. Koka Decl. ¶¶ 3-7. After reduction for applicable taxes (estimated at 25.00%), Debtor's historical net employment income is approximately $4,295.45 on a monthly basis. Id.

Second, after close of escrow for the Acalanes Property, Debtor anticipates temporarily moving in with his son in his rental property located in Walnut Creek, and Debtor will not pay any related expenses for this property. See Supp. Koka Decl. ¶ 11. Further, Debtor anticipates leasing the vacant unit in the Paru Property (Unit B), which is the largest unit in the property, and conservative estimates for monthly rental income is $3,850 for the unit. See Supp. Dahnken Decl. ¶¶ 5-6.

Based on these circumstances, Debtor anticipates the following monthly disposable income without reference to any monthly employment income:

| Source | Amount | Notes |
|---|---|---|
| **Monthly Income (Non-Employment)** | | |
| Rental Income (Unit A) | $ 3,000.00 | Current Rental Income for Paru Property, Unit A (See Dkt. No. 301) |
| Rental Income (Unit C) | $ 1,895.00 | Current Rental Income for Paru Property, Unit C (See Dkt. No. 301) |
| Rental Income (Unit B) | $ 3,850.00 | Anticipated Rental Income for Paru Property, Unit B (See Supp. Dahnken Decl. ¶¶ 5-6) |
| Contribution from Son | $ 1,000.00 | Monthly Contributions from Debtor's Son (See Dkt. No. 309) |
| **TOTAL** | **$ 9,745.00** | |

| Monthly Expenses (Paru Property) | | |
|---|---:|---|
| Class 1(B) Mortgage Payment | $ (5,519.60) | See Dkt. No. 294, p. 3 |
| Class 1(C) Mortgage Payment | $ (569.99) | See Dkt. No. 294, p. 4 |
| Rental Expenses and Maintenance | $ (1,000.00) | See Dkt. No. 294, p. 25 |
| **TOTAL** | **$ (7,089.59)** | |
| **Monthly Expenses (Personal Expenses)** | | |
| Food and Household Supplies | $ (700.00) | See Dkt. No. 294, p. 25 |
| Utilities Expenses | $ (100.00)[4] | See Dkt. No. 294, p. 25 |
| Transportation Expenses | $ (924.00) | See Dkt. No. 294, p. 25 |
| Personal Expenses | $ (500.00) | See Dkt. No. 294, p. 25 |
| Other Expenses | $ (59.00) | See Dkt. No. 294, p. 25 |
| **TOTAL** | **$ (2,283.00)** | |
| **Monthly Disposable Income** | **$ 372.41** | |

Based on the foregoing, Debtor anticipates that monthly rental income from the Paru Property along with monthly contributions from his son (Brandon Koka) will be sufficient to satisfy all plan obligations on a monthly basis, without the necessity of employment income.

Third, as a result of a recent illness, after sale of the Acalanes Property and later this year, it is anticipated that Debtor will move to Israel to care for his ailing mother. See Supp. Koka Delc. ¶¶ 10-12. Under these circumstances, Debtor would live with his mother and would not be required to pay any expenses for the property or other living expenses. Id. at ¶ 12.

Further, it is anticipated that Debtor's personal expenses would decrease and his transportation expenses would also decrease as a result of registering the vehicles as non-operational, no gasoline or maintenance expense, and reduced insurance required for non-operational status. Id. at ¶ 12. As such, it is anticipated that the monthly expenses set forth in the chart above and in Exhibit 3 of the Plan would be reduced by at least $1,524 ($700 for food/household supplies + $824 for transportation) on a monthly basis, and result in disposable income of at least $1,896.41 ($372.41 + $1,524.00). Id. at ¶ 12.

As such, upon Debtor's relocation to Israel, monthly assistance ($1,000) from his son will not be necessary to satisfy all monthly plan obligations and Debtor's monthly living expenses. Id. at ¶ 16.

Fourth, as set forth in detail in Section I.D. below, the Paru Property will automatically revest in

---

[4] On Exhibit 3 of the Plan, there was a "Shelter Expense" in the amount of $704.00, which utilized the amounts set forth on *Schedule J: Your Expenses* [Dkt. No. 27, p. 30, ll. 6a, 6b, 6c] and comprised of the amount of $350 for Electricity, heat, and natural gas; $150 for water, sewer, and garbage; and $204 for Telephone, cell phone, internet, and cable services. However, other than approximately $100 for cell phone service, Debtor will not have any of the additional expenses once his residence (the Acalanes Property) is sold. See Supp. Koka Decl. ¶¶ 10-12.

the reorganized Debtor immediately upon sale of the Acalanes Property in which the net proceeds of sale available to Class 2 claimants exceeds $525,000.  See Dkt. No. 294, p. 16.  As such, to the extent that Debtor encounters a situation in which he anticipates that monthly income may not be sufficient to pay all required monthly plan payments, then Debtor would elect to sell the Paru Property, which would satisfy the entire debt due and owing to Class 1(B) and Class 1(C) claimants and negate the need for monthly employment income.  See Dkt. No. 294, Exh. 2; Dkt. No. 307, ¶ 20.

Fifth, as drafted, the Plan unequivocally does not provide that Class 2 claimants (including the Hannas) will receive *any* amounts on account of disposable income generated by Debtor on a monthly basis.  See Dkt. No. 294, pp. 5-6.  Rather, payment to Class 2 claimants is limited *solely* to net proceeds of sale from the Vichey Property, Acalanes Property, and Paru Property (if necessary).  Id.

As such, except for animus towards Debtor, it is perplexing that the Hannas would object to confirmation of the Plan (but not vote to reject the Plan) based on feasibility of monthly plan payments. Further, in the unlikely event that Debtor defaults on monthly plan payments, such a default would be irrelevant and immaterial as to the Hannas because the Plan specifically prohibits Class 2 claimants from invoking default remedies for failure to satisfy plan obligations to Class 1(B) or Class 1(C) claimants. See Dkt. No. 294, p. 10 ("obligations under the Plan are separate with respect to each class of creditors … [d]efault in performance of an obligation due to members of one class *shall not by itself constitute a default with respect to members of other classes*") (emphasis added).

Sixth, as is typical with a vast majority of reorganization cases for individual debtors (such as Chapter 13 cases) courts routinely adopt a "proof is in the pudding" approach to the feasibility analysis for monthly plan payments, at least in instances where financial projections demonstrate a reasonable probability that debtor can satisfy the monthly obligations.

Here, this approach appears to be in the best interest of all parties and the estate (and consistent with the requirements of section 1129(a)(11)), because since the Petition Date (March 10, 2020), and over the prior 2 years, Debtor has demonstrated a consistent ability to make on-going payments due and owing to Class 1(B) claimant (Deutsche Bank, N.A.) (see *Monthly Operating Reports*), because monthly plan payments to Class 1(B) and Class 1(C) claimants have absolutely no relevance (or bearing) on payments to Class 2 claimants (including the objecting creditor) under the Plan, because Class 1(B)

claimant (Deutsche Bank, N.A.) has affirmatively voted to accept the Plan and clearly does not share the same feasibility concerns asserted by the Hannas (see Dkt. No. 304), because, as set forth above, Debtor has provided reasonable projections demonstrating a reasonable probability that he will have sufficient income to satisfy all monthly plan payments provided for in the Plan, and because there is a significant equity cushion (approximately $672,456) in the Paru Property to adequately protect the security interests of Class 1(B) and Class 1(C) claimants in the extremely unlikely event of a default and subsequent non-judicial foreclosure sale (see Dkt. No. 294, Exh. 2, p. 23).

Based on the foregoing, there exists a reasonable probability that the provisions of the plan of reorganization can be performed with respect to monthly payments due and owing to Class 1(B) and Class 1(C) secured creditors.

**D.  Plan Feasibility for Post-Confirmation Capital Gains Taxes**

In the Plan, there are no required payments by the Disbursing Agent for post-petition capital gains taxes due and owing to the Internal Revenue Service and the Franchise Tax Board from the sale of property of the Post-Confirmation Estate. Rather, Exhibit 6, Paragraph B provides that "Debtor shall be solely responsible for any and all post-petition tax obligations, including but not limited to, capital gains taxes due and owing to the Internal Revenue Service (IRS) and California Franchise Tax Board (FTB) resultant from the sale of any real property and personal property after the petition date (March 10, 2020)." See Dkt. No. 294, p. 28.

Assuming *argumentum* that capital gains taxes due and owing from sale of the Acalanes Property are construed as "plan payments" for purposes of section 1129(a)(11), which would not be due and payable to the applicable taxing authorities until April 15, 2023 (assuming a sale of the Acalanes Property in tax year ending 2022), Debtor anticipates making payments for these taxes from one of the following sources.

First, as set forth in the Declaration of Mordechai Koka filed in support of confirmation, Debtor anticipates capital gains taxes due and owing to the IRS and FTB in the aggregate amount of $167,514. See Dkt. No. 310, ¶¶ 21-23. Assuming that the Acalanes Property generates net proceeds of sale of $525,000 for payment of Class 2 claimants as set forth in Section I.B above, then Section 8(e)(i) of the Plan provides that "upon close of escrow for the sale of the property, all remaining property of the Post-

Confirmation Estate, including real property located at <u>1702 Paru Street, Alameda, California 94501, shall immediately and automatically revest in Debtor consistent with Part 5(b) of the Plan</u>, and shall no longer constitute property of the estate subject to administration and control of the Disbursing Agent." <u>See</u> Dkt. No. 294, p. 16 (emphasis added).

The Paru Property would revest in the reorganized Debtor pursuant to section 1141(b) on or about May 18, 2022, and would no longer constitute property of the Post-Confirmation Estate subject to administration by the Disbursing Agent. <u>Id.</u> As such, Debtor would utilize the equity in the Paru Property to obtain a third priority deed of trust encumbering the Paru Property in the aggregate amount not exceeding $200,000, in order to timely and promptly make all payments due and owing to the IRS and FTB for applicable capital gains taxes. <u>See</u> Dkt. No. 308, Exh. 1.

<u>Second</u>, and alternatively, in order to satisfy the estimated capital gains taxes ($167,514) due and owing to the IRS and FTB, Debtor could elect to sell the Paru Property, and as set forth in Exhibit 2 to the Plan, the estimated net proceeds of sale for the Paru Property ($188,329) are more than sufficient to satisfy the estimated capital gain taxes ($167,514). <u>See</u> Dkt. No. 294, p. 23.

Based on the foregoing, there exists a reasonable probability that the provisions of the plan of reorganization can be performed with respect to payments due and owing to the IRS and FTB on account of post-petition capital gains taxes.

### E. The Plan Satisfies All Feasibility Requirements of 11 U.S.C. § 1129(a)(11)

As the Ninth Circuit has recognized, "[t]he purpose of section 1129(a)(11) is to prevent confirmation of <u>visionary schemes</u> which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." <u>Matter of Pizza of Hawaii, Inc.</u>, 761 F.2d at 1382 (citations omitted) (emphasis added).

Here, the Plan does not provide "visionary schemes" that promise creditors more under a plan than Debtor can provide after confirmation of the Plan. Rather, as set forth in detail in Sections I.B.-I.D. above, all claimants (including Class 2 claimants) will receive <u>exactly</u> what they are promised under the Plan, and the Plan Proponents have provided ample evidence to support feasibility of the Plan consistent with the requirements of section 1129(a)(11). <u>See</u> <u>In re Mulberry Phosphates, Inc.</u>, 149 B.R. at 708 ("a relatively low threshold of proof [is] necessary to satisfy the feasibility requirement").

Simply stated, the Plan is not a "visionary scheme," but rather a unique collaboration between Debtor and the largest creditor of the estate (the Gardners) to provide significant and meaningful distributions to general unsecured creditors (Class 2 claimants), in relatively short order, and without the unnecessary and burdensome administrative expenses of a Chapter 7 liquidation.

Finally, and rather significantly, all creditors that voted on the Plan *unanimously* accepted the Plan and concur that the Plan (as drafted) is feasible, not a "visionary scheme," and is in the best interest of all creditors and the estate. Under these circumstances, and for the reasons set forth above, the Court should afford significant deference to the wishes and desires of all creditors that voluntarily *elected* to exercise their voting rights under section 1126(a) and accept the Plan.

## II. CONCLUSION

Based on the foregoing, Debtor and the Gardners respectfully request that the Court enter an order confirming the Plan, overruling the Objection filed by the Hannas in its entirety, and for such other and further relief that is just and proper under the circumstances of this case.

Respectfully submitted

Dated: April 15, 2022      **MEYER LAW GROUP LLP**

By: /s/ BRENT D. MEYER
Brent D. Meyer, Esq.
Attorneys for Plan Proponents
DALE GARDNER and
MELISSA GARDNER

Dated: April 15, 2022      **THE FULLER LAW FIRM, PC**

By: /s/ LARS FULLER
Lars Fuller, Esq.
Attorneys for Debtor
MORDECHAI KOKA