SELWYN D. WHITEHEAD, ESQ. (CSB No. 236391)
**LAW OFFICES OF SELWYN D. WHITEHEAD**
4650 Scotia Avenue
Oakland, CA 94605
Tel: (510) 632-7444
Fax: (510) 856-5180
Email: selwynwhitehead@yahoo.com

JULYN M. PARK (CSB No. 213429)
DEIRDRE M. DIGRANDE (CSB No. 199766)
**LOCKHART PARK, LLP**
4655 Old Ironsides Drive, Suite 250
Santa Clara, CA 95054-1854
Tel: (408) 416-2929
Fax: (855) 368-1020
Email: jpark@lockhartpark.com
       ddigrande@lockhartpark.com

Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re: | Bk. Case No. 20-50469-SLJ |
| MORDECHAI KOKA, | Chapter 11 |
| Debtor. | **CREDITORS JEFF AND AMALIA HANNA'S SUPPLEMENTAL OBJECTION TO ADDITIONAL EVIDENCE OFFERED BY PLAN PROPONENTS IN SUPPORT OF CONFIRMATION OF THEIR AMENDED JOINT PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT** (January 24, 2022) <br><br> **Continued Confirmation Hearing:** <br> Date: May 5, 2022 <br> Time: 1:30 p.m. <br> Location: Remote Tele/Videoconference <br> Judge: Hon. Stephen L. Johnson |

Creditors Jeff Hanna and Amalia Hanna ("the Hannas") submit this supplemental objection to the additional evidence [Dkt. Nos. 316-318] that Plan Proponents offer in support of confirmation their Joint Proposed Combined Plan of Reorganization and Disclosure Statement (January 24, 2022) (Dkt. No. 294, hereinafter "Plan"). Although the Court allowed Plan Proponents[1] additional time to produce evidence to support feasibility, specifically verifiable evidence of Debtor's employment, wages, and other available financial sources that will fund the Plan payments, Debtor's supplemental declaration and exhibits (Dkt No. 317) actually support the Hannas' argument that the Plan is fatally inadequate and cannot be confirmed.

## I.

## DEBTOR HAS NOT SATISFIED THE REQUIREMENTS OF CONFIRMATION

The law concerning feasibility of a chapter 11 plan is found in 11 U.S.C. Section 1129(a)(11), which states in part:

> § 1129. Confirmation of plan
>
> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> ¶¶
>
> (11) Confirmation … is not likely to be followed by the liquidation or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

The rational behind the feasibility requirement of § 1129(a)(11) is to guard against "visionary or speculative plans." *In re Indianapolis Downs*, L.L.C., 486 B.R. 286, 298 (Bankr. D. Del. 2013).

Among the other confirmation requirements enumerated in § 1129 is indicia of good faith. Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law."[2] "Good faith" is not defined in the Bankruptcy Code. While the Code requires good faith in different contexts – *e.g.*, sale of the debtor's assets under Section 363, confirmation of a plan under Section 1129, and confirmation of a plan under Section 1325 – it

---

[1] Debtor Mordechai Koka and unsecured creditors Dale and Melissa Gardner.
[2] 11 U.S.C. § 1129(a)(3) (2014).

does not mean the same thing in each of those contexts.[3]  A debtor bears the burden of showing good faith.[4]

"To meet the 'good faith' requirement of section 1129(a)(3), many courts have held that a reorganization plan must bear some relation to the statutory objective of resuscitating a financially troubled corporation."[5]  Good faith means that there "exists 'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'"[6]  The inquiry allows the court to consider whether the plan "constitutes an abuse of the provisions, purpose or spirit of the Code."[7]  Some courts have stated that a plan that is proposed with a "legitimate and honest purpose" to reorganize and "has a reasonable hope of success" meets the good faith standard of Section 1129(a)(3).[8]  Nonetheless, the good faith analysis is an open-ended one.  Courts have recognized the inquiry is fact specific – enabling them, as one court put it, to "deal with chicanery."[9]

At the April 7 hearing, the Court ordered Debtor to produce hard evidence of his income and employment, and referenced the types of documents that would authenticate his claims, among them IRS Form 1099 or W-2.[10]  None such documents accompanies his declaration.  His sworn statements and documentary evidence that he does include are inadequate, contradictory, and misleading at best; at worst, they indicate the kind of bad-faith chicanery that is fatal to confirmation.

**A.     Debtor Admits That He Will Not Have Employment Income in the Foreseeable Future**

Debtor states that he will be moving to Israel for at least a year.  There is no mention of obtaining gainful employment while he is there.  His sworn statement alone proves that <u>he will</u>

---

[3] *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986).
[4] *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211 (3d Cir. 2003).
[5] *In re Coastal Cable T.V., Inc.*, 709 F.2d 762, 765 (1st Cir. 1983); *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990).
[6] *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984); *see also In re W.R. Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).
[7] *In re J&J Oilfield Servs., Inc.*, 2015 BL 186903, at *12 (Bankr. D.N.D. June 12, 2015).
[8] *In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013).
[9] *Id.*
[10] Dkt. No. 311, audio recording of April 7, 2022 hearing.

not have income to contribute to the Plan payments in the foreseeable future. Removing his alleged income from the pot of anticipated funds to pay creditors is fatal to Plan feasibility.

**B.      Debtor Has Not Produced Evidence Backing His Income or Continued Employment Claims**

If the Court is still inclined to consider Debtor's claims of continued employment and steady income, they are easily be proven false.

1. <u>Alleged employment as a consultant on his brother's remodeling project</u>

Debtor claims that his brother employs him as a "consultant," but does not elaborate on what his duties entail, how long the job will last, or whether it will generate steady income. The most that can be gleaned from the documentary evidence in Exhibit 1 to his supplemental declaration (photographs of the interior and exterior of the property and building inspection cards) is that a remodel of a dwelling owned by Sam and Michelle Koka is in progress. Nothing even hints at Debtor serving as a consultant on the project or even that he is being paid for his services. Though the canceled checks show that money changed hands, they do not provide reliable evidence of Debtor's employment by his brother. The amounts transferred to Debtor's checking account could be loans for all we know.[11] The tax deadline has already passed so if Debtor is actually employed as a consultant, he should have been able to produce a 1099 or W-2. Other evidence that he could have procured, but did not, is a declaration from his brother and/or sister-in-law, communications between them discussing the project, photos with him on the project site, and so forth.

2. <u>Alleged employment as a consultant on a San Francisco remodeling project</u>

Contrary to the Court's directive, Debtor does not reveal the identity of his employer, his job title, the address of the project, or his job duties. Furthermore, he makes the following statements under oath, one of which adds up to perjury.

////

////

---

[11] Two of the checks included are from the account of Michelle Koka, but curiously, the third is a cashier's check with no indication of where the funds came from or the payor.

| *April 4 Declaration (Dkt. No. 310)* |

> Net Disposable Income
>
> 14. I am currently employed on a San Francisco construction project as a project manager. My earnings from that project have been as follows:
>
> | Month | Amount |
> |---|---|
> | Oct. 2021 | 0 |
> | Nov. 2021 | 5,000 |
> | Dec. 2021 | 5,000 |
> | Jan. 2022 | 10,000 |
> | Feb. 2022 | 11,500 |
> | Projected | $8,000-12,000 |

| *April 15 Declaration (Dkt. No. 317)* |

> 7. I also am consulting on a remodel job in San Francisco. However, because the owner was delayed in obtaining his permits and is indecisive as to the extent of his project and selection of materials, I have not yet been paid for services. However, I anticipate that I will be able to secure future revenue from this project if I continue to reside in the area.[2]

**C.     Verifiable Evidence Indicates That Debtor Has No Plans or Means to Reorganize**

As he will be living in Israel for the foreseeable future, Debtor obviously has no plans to reorganize. According to the Secretary of State, Debtor's general contracting business, Green Bay Builders, Inc. ("GBB"), was suspended on October 27, 2021 after a period of more than a year's delinquency. Debtor's general contractor license (or the license issued to GBB under Debtor's name) has expired and there have been at least three separate claims made on GBB's contractor's bond by unsecured creditors in this case.[12] Furthermore, obtaining a contractor's bond would be almost impossible given the determinations made by the California State Contractors License Board (CSLB) of unfair and criminal business practices. Thus, even if

---

[12] Among them are the Hannas, Daniel Morgan, and possibly the Gardners. Debtor produced the CSLB's investigative report Mr. Morgan's claim following the 341(a) creditors meeting. The CSLB referred the matter to the Santa Clara County District Attorney with the recommendation that charged be charged with violation of Penal Code § 487b (grand theft) for accepting payment of $60,000 for building materials that were never delivered. Debtor was charged but the disposition of his case is unknown.

Debtor wanted to reorganize and do general contracting work again, it would be difficult to say the least to attract business with his record of, *inter alia*, shady dealings and a criminal charge for grand theft in connection with a project for unsecured creditor Daniel Morgan.

## II. CONCLUSION

Plan Proponents have proposed a plan of reorganization and not one of liquidation; as such the Debtor is required to prove the Plan's feasibility for the foreseeable future and not just on the date of confirmation. Here, Debtor proposes to make a "down payment" of only $10,000 to the unsecured creditors, two of which are also Plan Proponents (the Gardners) will get the lions' share or $8,204.65. The remaining creditors will have to share a pittance of $1,795.35. This is but another example of Debtor's cavalier attitude towards the creditors that he has demonstrably harmed. These acts render the Plan untenable and unrealistic.

Debtor's petition was filed in bad faith, as have been many of his actions, inactions, and false statements as to his sources of income during the pendency of this case. His lack of income makes him ineligible to meet his burden of proving the Plan is confirmable. His longstanding inability to put forth provable variable income virtually mandates that he will have to further encumber the Alameda Property to make Plan payments. This madness, for want of a better term, must end now as the only way the Plan can be logically implemented is through liquidation, *i.e.*, the forced sale of Alameda Property, which will give the non-plan-proponent unsecured and nearly homeless creditors some modicum of relief.

As such, the confirmation of the Plan of should be denied.

Respectfully submitted,

Dated: April 22, 2022

LAW OFFICES OF SELWYN D. WHITEHEAD

/s/ *Selwyn D. Whitehead*
Selwyn D. Whitehead
Attorney for Creditors
JEFF HANNA and AMALIA HANNA

| | |
|---|---|
| Dated: April 22, 2022 | LOCKHART PARK, LLP |
| | /s/ *Deirdre M. Digrande*<br>Deirdre M. Digrande<br>Attorneys for Creditors<br>JEFF HANNA and AMALIA HANNA |

# CERTIFICATION

I, Deirdre M. Digrande, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with Local Rule 5005-2(c), I hereby attest that Selwyn D. Whitehead has concurred in this filing.

Dated: April 22, 2022

LAW OFFICES OF SELWYN D. WHITEHEAD

/s/ *Deirdre M. Digrande*
Deirdre M. Digrande
Attorney for Creditors
JEFF HANNA and AMALIA HANNA