Selwyn D. Whitehead, Esq. (CSB No. 236391)
**LAW OFFICES OF SELWYN D. WHITEHEAD**
4650 Scotia Avenue
Oakland, CA 94605
Tel: (510) 632-7444
Fax: (510) 856-5180
Email: selwynwhitehead@yahoo.com

Julyn M. Park (CSB No. 213429)
Deirdre M. Digrande (CSB No. 199766)
**LOCKHART PARK, LLP**
5201 Great America Parkway, Suite 320
Santa Clara, CA 95054
Tel: (408) 416-2929
Fax: (855) 368-1020
Email: jpark@lockhartpark.com
ddigrande@lockhartpark.com

Attorneys for Creditors
JEFF HANNA and AMALIA HANNA

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**MORDECHAI KOKA,**<br><br>Debtor-in-Possession. | ) Case No.: **20-50469-SLJ**<br>) Chapter: 11<br>)<br>) **CREDITORS JEFF AND AMALIA**<br>) **HANNA'S PRE-CONFIRMATION**<br>) **HEARING STATEMENT IN THE**<br>) **FURTHERANCE AND**<br>) **SUBSTANTIATION OF THEIR**<br>) **CONTINUING OBJECTION TO THE**<br>) **CONFIRMATION OF MORDECHAI**<br>) **KOKA, DALE GARDNER AND**<br>) **MELISSA GARDNER'S JOINT PLAN**<br>) **OF REORGANIZATION (JANUARY 24,**<br>) **2022, [DKT. NO. 294]; CERTIFICATE OF**<br>) **SERVICE**<br>)<br>) **[11 USCA §1129 et seq.]**<br>)<br>) **CONFIRMATION HEARING:**<br>) Date: June 14, 2022<br>) Time: 1:30 p.m.<br>) Location: Telephonic/Videoconference<br>) Judge: Hon. Stephen L. Johnson<br>) |

Creditors Jeff and Amalia Hanna's Pre-Confirmation Hearing Statement in the Furtherance and Substantiation of their Continuing Objection to the Confirmation of Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Plan of Reorganization (January 24, 2022), Dkt. No. 294; Certificate of Service
KOKA///CASE NO.: 20-50469-SLJ
Page 1

**TO THE HONORABLE STEPHEN L. JOHNSON, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, CREDITORS, AND ALL OTHER INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

## I. INTRODUCTION

**COMES NOW** Creditors Jeff Hanna and Amalia Hanna (hereinafter, "the Hannas"), by and through their below-signed counsel of record, to lodge their *Pre-Confirmation Hearing Statement in the Furtherance and Substantiation of their Continuing Objection to Joint Plan of Reorganization Submitted by Mordechai Koka, Dales Gardner and Melissa Gardner (January 24, 2022), [Dkt. No. 294]*, (hereinafter, "the Amended Joint Plan"), (hereinafter, the Hanna's Statement").

The relief requested by the Hannas is based on the record of this matter, this, the Hannas' Statement, the Amended Joint Plan, and whatever additional evidence this Court deems fit to entertain.

## II. THE REQUIREMENTS FOR APPROVAL OF THE AMENDED JOINT PLAN HAVE NOT BEEN MET.

Section 1129(a), divided into 16 subparagraphs, sets forth the threshold requirements necessary for confirmation of a plan. With one exception (section 1129(a)(8)[1], …, if a proposed plan does not comply with the requirements of section 1129(a), the plan may not be confirmed.[2] As such, for the Amended Joint Plan to obtain a confirmation order from this court, it must comply with each of the provisions of section1129 of the Code (including section 1129(a)(10), which requires that any plan with an impaired class be approved by at least one class of claims that is impaired under the plan, without giving effect to the votes of insiders). Second, it must satisfy the "cramdown" requirements of section 1129(b). As articulated below, the Amended Joint Plan as currently configured cannot be confirmed.

*///*

---

[1] Section 1129(a)(8) requires that each class of claims or interests under the plan either accept the plan or be unimpaired. 11 U.S.C. 1129(a)(8)
[2] Bloomberg Law Bankruptcy Treatise, Part V: Reorganization, Chapter 178: Bankruptcy Code § 1129 - Confirmation of Plan.

**A. The Debtor Has Not and Cannot Meet the Requirement of Section 1129(a)(15)(B) and therefor must comply with Section 1129(a)(15)(A). Otherwise, the Amended Joint Plan Cannot be Confirmed**

Section 1129(a)(15) states as follows:

In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2))[3] to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

**11 U.S.C. § 1129(a)(15) (2014)**

Section 1129(a)(15) of the Bankruptcy Code mandates that where, as here, (a) the debtor is an individual, and (b) the holder of an allowed unsecured claim objects to the plan; in order for the court of confirm that plan over the claimant(s)' objection(s), the claimants, here the Hannas, must either (1) be paid in full or (2) the Debtor must be able to prove with admissible and relevant, and then determined by the court to be reliable, evidence that he can produce the gross

---

[3] Section 1325(b)(2) states:

For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than payments made under Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID–19), child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended*—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*(The phrase "payments made under Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID–19)," which was added by PL 116-136 on 3/27/20, will sunset on 3/27/21.)

monthly income from which ALL his net disposable income as stated in the plan can be paid to his creditors for no less than five years.

Here, in the version of Amended Joint Plan currently before this court, the Debtor has claimed that he can generate $12,000 per month in self-employment income.[4] However, and to the contrary, the sworn, and therefore admissible and relevant evidence provided by the Debtor in is Monthly Operating Reports shows that he has only been able to generate at least $12,000 **once** during the 26 full months this case has been active. And although the Debtor has stated that he was injured in December 2021 and anticipated that as a result, he would have a partial reduction in his job-related income; nonetheless, he claimed that he would receive contributions from his children to fill the shortfalls, if any, in his income during his recovery. However, according to the Debtor's filed Monthly Operating Reports for December 2021 through April 2022, his most recently filed Report, the Debtor made $5,000 in December 2021, Dkt. No. 293, $10,000 in January 2022, Dkt. No. 296, $11,500 in February 2022, Dkt. No. 302, $5000 in March 2022, Dkt. No. 322 and $5,909 in April 2022, Dkt. No. 322, respectively. As such, even if his children did make contributions, those contributions were insufficient in amount to get the Debtor to the $12,000 threshold he established. Furthermore, and again as reported in the Debtor's Monthly Reports, which were presented to this court under the penalty of perjury, the cumulative, or case to date, amount of the Debtor's self-employment income was only $75,775 through March 31, 2022, see Dkt. No. 322, p. 5 of 13, with an additional amount of $5,909 reported for April 31, 2022, see Dkt. No. 322, p. 9 of 12, for a total cumulative amount of $81,684. And no matter how thick or then you spread that amount over either the full 26 months or as of the months encompassing the date of the Amended Joint Plan going forward January 24, 2022 through April 30, 2022, four months since the date of the Debtor' Amended Joint Plan, since December 2021($32,409), the average amount of gross monthly income is either [$81,684/26 = $3,141.69] or [$32,409/4 = $8,102.25], either amount woefully inadequate to meet either the Debtor's stated amount needed to meet his reasonable living expenses of $6,887 and therefore generate the $10,008 needed to satisfy the Debtors stated plan payments. [See Dkt. No. 294, p. 25 of 28.

Inasmuch as there is nothing on this record showing how the Debtor will meet the requirements of section 1129(a)(15)(B), and the court has already recognized of the record that the fact Debtor has no reliable income and is preparing to leave the court's jurisdiction;[5] the only way section 1129(a)(15) can be satisfied here is via section 1129(a)(15)(A), and the Amended Joint Plan is further amended to state that the Hannas SHALL receive the FULL VALUE of their allowed claim in the amount of $84,941.50.[6]

As such, unless the Amended Joint plan is further amended to be in the confirmation of with the Bankruptcy Code and the facts as stated above, its confirmation must be denied.

**B.** **And even if the Amended Joint Plan, as filed, had Satisfied the Requirements of Section 1129(a)(15), *and it does not,* the Debtor Has Not Fully Complied with The Requirement of Section 1129(b)(1).**

1. Section 1129(a)(10) states as follows:

If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

**11 U.S.C. § 1129(a)(10)**

2. Section 1129(b)(1) provides:

Notwithstanding section 510 (a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph **if the plan *does not discriminate unfairly*,** and **is fair and equitable**, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Emphasis Added**

///
///

---

[4] See Dkt. No. 294 p. 25 of 28.
[5] See the Order of this Honorable Court, entitled, *Order Continuing Confirmation Hearing*, dated April 29, 2022, p.2, l:15-17, at Dkt. No. 323.
[6] See the *Joint Stipulation to Claim Amount and Removal of Hearing on Debtor's Objection to Proof of Claim No. 9 [Dkt. No. 73] from Calendar*, dated October 21, 2020, at Dkt No. 90 and this court's *Order Approving Joint Stipulation to Claim Amount and Removing Hearing on Debtor's Objection to Proof of Claim No. 9 From Calendar*, dated October 22, 2020, at Dkt. No. 91.

3. Section 1129(b)(2) provides:

For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
….

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under **section 1115**, subject to the requirements of subsection(a)(14) of this section.

**11 U.S.C. § 1129(b)(2)**

4. Section 1115 provides:

(a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in **section 541**—

(1) all property of the kind specified in **section541** that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

(b) Except as provided in **section 1104** or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

**11 U.S.C. § 1115)**

The combined requirements of Sections 1129(a)(10) and 1129(b)(1) mandates that: (1) at least one impaired class of creditors accepts the Plan; and (2) that the Plan does not discriminate unfairly and is fair and equitable to each class of impaired claims that does not accept the Plan.

**Section 1129(b)(1)** articulates two independent tests that a plan proponent must satisfy to confirm a plan over the dissent of rejecting creditors. First, the plan must not "discriminate unfairly." Second, the plan must be "fair and equitable." Courts have recognized that the tests are distinct tests. A plan proponent's satisfaction of one test but not the other is insufficient to overcome the hurdle imposed under **section 1129(b)**.[7]

Regarding the requirement that at least one impaired class of creditors accept the Plan; according to the Ballot Tabulation and Voting Results for the Joint Combined Plan of Reorganization and Disclosure Statement (January 24, 2022), dated April 4, 2022,[8] the plan proponents obtained the acceptance of Classes 1(A), 1(B) and 2. Accordingly, it appears that the plan proponents have met the requirement of having at least one consenting impaired class accept the Amended Joint Plan.

However, regarding the requirement that the Amended Joint Plan not discriminate unfairly, section 1129(b)(2) states "**the two ways** that the requirements for the "fair and equitable" determination can be satisfied as to a class of unsecured claims. First, the test can be satisfied if the plan provides for full payment or satisfaction of the claims in that class as of the effective date. Second, if unsecured creditors in an objecting class are not being paid in full on the effective date of the plan, then the "fair and equitable" test can be satisfied if the "holder of any claim or interest that is junior to the claims of such class **will not receive or retain under the plan on account of such junior claim or interest any property [the "absolute priority" rule]**, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115[2], subject to the requirements of subsection (a)(14) of this section* [the exception to the absolute priority rule]." Emphasis and internal comments added.

The absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a

---

[7] Bloomberg Law Bankruptcy Treatise, Part V: Reorganization, Chapter 178: Bankruptcy Code § 1129 - Confirmation of Plan.
[8] See Dkt. No. 304.

Creditors Jeff and Amalia Hanna's Pre-Confirmation Hearing Statement in the Furtherance and Substantiation of their Continuing Objection to the Confirmation of Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Plan of Reorganization (January 24, 2022), Dkt. No. 294; Certificate of Service

reorganization plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988), citing *In re Ahlers*, 794 F.2d 388, 401 (1986). The equity or ownership interest of a debtor has a lower priority than that of an unsecured claim. 11 U.S.C. §726(a).[9]

Here, while the Hannas must admit that five of their peers in Class 2 voted to accept the Amended Joint Plan, four of which, along with all the other members being swamped by the vote of Dale Gardner and Melissa Gardner (hereinafter, "the Gardners"), who during the course of this case switched from plan opponents to plan proponents, which leads the Hannas to suspect that the four small value unsecured creditors were likely not fully apprised of nor understood the ramifications of their vote accepting the Amended Joint Plan *viz a viz* filing an objection its confirmation.

However, there are serious implications to the four small unsecured creditors actions and/or inactions as related the Amended Joint Plan, which is spelled out at Part 8: Means of Execution of the Plan on page 16 or 28, at para. 8(e)(i) or 8(e)(ii), specifically:

Part 8(e)(i) states:

In the event that distributions to Class 2 claimants from the sale of real property located at 858 Acalanes, Lafayette, California, 94549 are equal to or greater than $525,000, then upon close of escrow for the sale of the property, all remaining property of the Post-Confirmation Estate, including real property located at 1702 Paru Street, Alameda, California 94501, shall immediately and automatically revest in Debtor consistent with Part 5(b) of the Plan, and shall no longer constitute property of the estate subject to administration and control of the Disbursing Agent.

Or

Part 8 (e)(ii) states:

In the event that distributions to Class 2 claimants from the sale of real property located at 858 Acalanes, Lafayette, California, 94549 are less than $525,000, then, unless Debtor is able to cure the deficiency from non-estate fund within

---

[9] See *The Absolute Priority Rule Applies to Individual Chapter 11 Cases in the Ninth Circuit*, by Geoff Grashong, posted at https://www.groshonglaw.com/blog/news/news/the-absolute-priority-rule-applies-to-individual-chapter-11-cases-in-the-ninth-circuit

fifteen (15) days of receipt of a notice of deficiency from the Disbursing Agent, the Disbursing Agent shall market and sell real property located at 1702 Paru Street, Alameda, California 94501. From the net proceeds of sale, the Disbursing Agent shall retain sufficient proceeds in order to make distributions to Class 2 claimants in the aggregate amount of $525,000, and all remaining net proceeds of sale shall be returned to Debtor. Upon close of escrow for the sale of the property, all remaining property of the Post-Confirmation Estate shall immediately and automatically revest in Debtor consistent with Part 5(b) of the Plan, and shall no longer constitute property of the estate subject to administration and control of the Disbursing Agent.[10]

The ramifications to the nonobjecting creditors appear to be that the Debtor will keep his real property commonly known as 1702 Paru Street, Alameda California 94501, based on the fact that the sales price obtained for the real property commonly known as 858 Acalanes, Lafayette, California 94549 as stated by the Debtor appears to be greater than $525,000,[11] while the unsecured creditors take only 35.34% of their allowed unsecured claims.[12] This has resulted in is clearly less favorable treatment for the superior class, the Class 2 creditors, than for the inferior class, here, the Debtor.

### III.  CONCLUSION

All the requirements for approval of the Amended Joint Plan have not been met, specifically, the Amended Joint Plan does not provide for the Hannas to receive the FULL VALUE of their allowed claim in the amount of $84,941.50 as required by section 1129(a)(15). Also, the Amended Joint Plan, allows the Debtor to retain pre-petition assets while the remaining unsecured creditors in Class 2, take less than the amount of their allowed claims, which appears to violate the Absolute Priority Rule.  At any rate, whether or not the Absolute Priority Rule is applicable here, until all the requirements mandated by the Code as to the Hannas' Objection is adequately addressed, the Amended Joint Plan cannot be confirmed by this court.

///

---

[10] See Dkt. No. 294, p. 16 of 28, para. 8(e)(i) and (ii).
[11] See Dkt. Nos. 340, 341 and 342, dated June 10, 2022.
[12] See Dkt. No. 294, p.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46

Therefore, the Hanna request that this Court deny the confirmation of the Amended Joint Plan until the plan proponents provide the necessary remedies to the above-stated deficiencies.

DATED: June 13, 2022                    Respectfully Submitted by:
                                        LAW OFFICES OF SELWYN D. WHITEHEAD

                                        By: /s/ Selwyn D. Whitehead, Esq.
                                        SELWYN D. WHITEHEAD, Esq.
                                        Attorneys for Creditors
                                        JEFF and AMALIA HANNA

Creditors Jeff and Amalia Hanna's Pre-Confirmation Hearing Statement in the Furtherance and Substantiation of their Continuing Objection to the Confirmation of Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Plan of Reorganization (January 24, 2022), Dkt. No. 294; Certificate of Service
KOKA///CASE NO.: 20-50469-SLJ
Page 10

Case: 20-50469    Doc# 344    Filed: 06/13/22    Entered: 06/13/22 18:51:14    Page 10 of 12

# CERTIFICATE OF SERVICE

I, Selwyn D. Whitehead the undersigned, declare:

      I am employed in the City of Oakland, County of <u>Alameda</u>, California. I am over the age of 18 years and not a party to this action. My business address is 4650 Scotia Avenue Oakland, CA 94605. On the date stated below, I served the following document(s):

    1.  **CREDITORS JEFF AND AMALIA HANNA'S PRE-CONFIRMATION HEARING STATEMENT IN THE FURTHEANCE OF THEIR CONTINUING OBJECTION TO THE CONFIRMATION OF MORDECHAI KOKA, DALE GARDNER AND MELISSA GARDNER'S JOINT PLAN OF REORGANIZATION (JANUARY 24, 2022, [DKT. NO. 294]; CERTIFICATE OF SERVICE**

on each party listed below requesting or requiring special notice in the manner or manners described below:

***VIA THE COURT'S ECF SYSTEM ONLY:***

Jared A. Day on behalf of U.S. Trustee Office of the U.S. Trustee / SJjared.a.day@usdoj.gov

Deirdre M. Digrande on behalf of Creditor Amalia Hannaddigrande@lockhartpark.com, ddigrande@yahoo.com

Arasto Farsad on behalf of Defendant Mordechai Kokafarsadecf@gmail.com, farsadecf@ecf.courtdrive.com

Lars T. Fuller on behalf of Debtor Mordechai KokaFullerlawfirmecf@aol.com, Larsfullerecf@aol.com

Christopher Hayes on behalf of Trustee Christopher Hayeschayestrustee@gmail.com, ecf.alert+Hayes@titlexi.com

David S. Hoffman on behalf of Requestor Allan Hulgandshoffmanesq@aol.com

Kelly Marie Kaufmann on behalf of Creditor Deutsche Bank National Trust Company, as Indenture Trustee for the Impac CMB Trust Series2007-Abknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com

Christopher M. McDermott on behalf of Creditor HSBC Bank USA, National Associationecfcanb@aldridgepite.com, CMM@ecf.inforuptcy.com

Creditors Jeff and Amalia Hanna's Pre-Confirmation Hearing Statement in the Furtherance and Substantiation of their Continuing Objection to the Confirmation of Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Plan of Reorganization (January 24, 2022), Dkt. No. 294; Certificate of Service
KOKA///CASE NO.: 20-50469-SLJ
Page 11

1  Brent D. Meyer on behalf of Creditor Dale Gardnerbrent@meyerllp.com

2

3  Office of the U.S. Trustee / SJUSTPRegion17.SJ.ECF@usdoj.gov

4

5  Edward A. Treder on behalf of Creditor HSBC Bank USA, National

6  Associationndcaecf@BDFGroup.com

7

8  Nancy Weng on behalf of Defendant Mordechai Kokanancy@farsadlaw.com

9

10  Selwyn D. Whitehead on behalf of Creditor Amalia Hannaselwynwhitehead@yahoo.com

11  Craig V Winslow on behalf of Plaintiff Dale Gardnercraig@cvwlaw.com

12

13  Jennifer C. Wong on behalf of Creditor Deutsche Bank National Trust Company, as Indenture

14  Trustee for the Impac CMB Trust Series 2007-Abknotice@mccarthyholthus.com,

15  jwong@ecf.courtdrive.com

16

17      I am readily familiar with the business practices of the Law Offices of Selwyn D.

18  Whitehead, for the collection and processing of correspondence for mailing with the United

19  States Postal Service and that correspondence is deposited with the United States Postal Service

20  that same day in the ordinary course of business by placing a true copy thereof enclosed in a

21  sealed envelope via postage pre-paid, regular first class mail and/or electronic service via

22  personal or business email and/or via the Court's ECF System, as indicated above.

23

24      I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th

25  day of June 2022 at Oakland, Alameda County, California.

26                                      /s/ Selwyn D. Whitehead, Esq.

27                                      SELWYN D. WHITEHAD, ESQ.

28

29

30

31

32

33

34

35

36

37

38

39

40

41

42

43

44

45

46

Creditors Jeff and Amalia Hanna's Pre-Confirmation Hearing Statement in the Furtherance and Substantiation of
their Continuing Objection to the Confirmation of Mordechai Koka, Dale Gardner and Melissa Gardner's Joint Plan
of Reorganization (January 24, 2022), Dkt. No. 294; Certificate of Service
KOKA///CASE NO.: 20-50469-SLJ
Page 12