**MEYER LAW GROUP LLP**
  A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone: (415) 765-1588
Facsimile: (415) 762-5277
Email: brent@meyerllp.com

Attorney for Plan Proponent
DALE GARDNER and
MELISSA GARDNER

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MORDECHAI KOKA,<br><br>        Debtor. | BK Case No.: 20-50469-SLJ<br><br>Chapter 11<br><br>**SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF CONFIRMATION OF JOINT COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT (JANUARY 24, 2022)**<br><br>Date:     September 1, 2022<br>Time:     1:30 p.m.<br>Location: Telephonic / Videoconference[1]<br>Judge:    Hon. Stephen L. Johnson |

---

[1] Paragraph 10 of General Order 38 (Seventh Amended) provides that "[u]nless otherwise ordered by the presiding judge, all notices of any motion or application filed with the court and served on any party which sets a hearing date for the motion or application must state that the hearing will not be conducted in the presiding judge's courtroom but instead will be conducted by telephone or video, and include the following language: 'All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.'" See *https://www.canb.uscourts.gov/sites/default/files/ generalorders/SeventhAmendedGO38.pdf*.

Debtor Mordechai Koka ("Debtor") and plan proponents Dale Gardner and Melissa Gardener (the "Gardners") (collectively, the "Plan Proponents") hereby submit this second supplemental brief in support of confirmation of the *Joint Combined Plan of Reorganization and Disclosure Statement (January 24, 2022)* [Dkt. No. 294] (the "Plan") in the above-captioned matter (the "Bankruptcy Case").

As required by the *Order (1) on Motion for Reconsideration; (2) Setting Briefing Schedule; and (3) Continuing Confirmation Hearing* [Dkt. No. 351] (the "Order"), this supplemental brief is limited solely to a discussion of section 1129(a)(15), and in particular, how the Joint Plan complies therewith.

## I. LEGAL ARGUMENT

As set forth in the Order, there are essentially two questions which must be answered with respect to section 1129(a)(15) in this Bankruptcy Case.

<u>First</u>, was section 1129(a)(15) automatically triggered when the Hannas filed the Timely Objection to Confirmation [Dkt. No. 302] without specifically objecting under this sub-section?

<u>Second</u>, assuming that section 1129(a)(15) was automatically triggered, does the Joint Plan satisfy the requirements of section 1129(a)(15)(B)?

### A. What Triggers Application for Section 1129(a)(15)?

Section 1129(a)(15) provides that "[i]n a case in which the <u>*debtor is an individual*</u> and in which the holder of an <u>*allowed unsecured claim objects to the confirmation*</u> of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer." 11 U.S.C. § 1129(a)(15) (emphasis added).

The Plan Proponents have performed significant legal research and cannot locate any opinion (published or unpublished) that specifically addresses the legal question of what triggers application of section 1129(a)(15) — a specific objection to section 1129(a)(15) or simply any other objection to confirmation filed by a general unsecured creditor. Further, as the Court addressed in the Order, there are several opinions in which section 1129(a)(15) was triggered when a general unsecured creditor objected to

confirmation on other grounds. See In re Villalobos, 2014 WL 930495, at *13 (B.A.P. 9th Cir. 2014); see also In re Stigliano, 483 B.R. 303, 305 (Bankr. W.D. Pa. 2012) (noting the ambiguity of section 1129(a)(15) and that the legislative history "does not shed light on the proper construction").

As such, given the fairly unambiguous text of the statute and the lack of authority stating otherwise, it appears that section 1129(a)(15) may be triggered simply by the filing of an objection to confirmation by a general unsecured creditor on any ground.

            **B.**        **The Plan Proponents Satisfy the Requirement of Section 1129(a)(15)**

Assuming *argumentum* that section 1129(a)(15) is applicable based on the filing of the Timely Objection to Confirmation [Dkt. No. 302] by the Hannas, as set forth in detail below, the Plan Proponents undoubtedly satisfy the requirements of section 1129(a)(15)(B).

There is Ninth Circuit *dicta* suggesting that section 1129(a)(15)(B) requires debtors to "dedicate at least five years' disposable income to the payment of unsecured creditors[.]" See Zachary v. California Bank & Tr., 811 F.3d 1191, 1199 (9th Cir. 2016) (*quoting* Ice House Am., LLC v. Cardin, 751 F.3d 734, 740 (6th Cir. 2014)). However, the United States Supreme Court has made clear that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992).

As such, a plain reading of section 1129(a)(15)(B) only requires that the "value of the property" to be distributed "under the plan" be not less than the "projected disposable income" that is to be received by the debtors during the 5-year period beginning on the date plan payments begin, or during the term of the plan, whichever is longer. See 11 U.S.C. § 1129(a)(15)(B) (emphasis added).

"In other words, a plain language reading of section 1129(a)(15)(B): (1) does not require that debtors contribute all of their projected disposable income to the plan, but rather requires that the total 'value of the property' to be distributed be at least equal to the debtor's projected disposable income; and (2) requires that courts compare the debtor's projected disposable income to the value of all property that is to be distributed 'under the plan,' not just the value of the property to be distributed to general unsecured creditors." In re Crowe, 2021 WL 2212005, at *10 (Bankr. D. Ariz. 2021).

Had Congress intended that section 1129(a)(15)(B) require debtors to contribute the value of their projected disposable income to the payment of unsecured creditors, Congress could have so provided.

Section 1129(a)(15)(B) refers explicitly to and incorporates by reference a portion of section 1325(b)(2). Section 1325(b)(2)'s counterpart, section 1325(b)(1), specifically provides that in chapter 13 cases in which the provision applies, the plan must "provide[ ] that all of the debtor's *projected disposable income* to be received *in the applicable commitment period* beginning on the date that the first payment is due under the plan *will be applied* to make payments *to unsecured creditors under the plan*." 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

Section 1129(a)(15)(B), by contrast, requires only that "*the value of the property* to be distributed *under the plan*" be not less than the *projected disposable income* received by the debtor during the *applicable time period*. 11 U.S.C. § 1129(b)(2)(B) (emphasis added). Congress clearly knew how to require a debtor to commit his or her projected disposable monthly income to the payment of unsecured creditors for an applicable commitment period, and Congress opted not to impose such requirement in individual chapter 11 cases. See In re Crowe, 2021 WL 2212005, at *10-11.

Here, in order to determine compliance with section 1129(a)(15)(B), as a threshold matter, there are several calculations that must be performed.

### 1. Calculation of "Current Monthly Income"

Section 101(10A) provides that "current monthly income" is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and … includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent). 11 U.S.C. § 101(10A).

Further, pursuant to section 101(10A), there are 5 enumerated categories of income which are specifically excluded from the definition of "current monthly income," including income earned under the Social Security Act, such as benefits for unemployment compensation. Id.

Here, on March 27, 2020, Debtor filed the *Chapter 11 Statement of Your Current Monthly Income*, and in the six-month period preceding the Petition Date (March 10, 2020), disclosed that his "current monthly income" was $7,645 comprised of rental income from the Paru Property. See Dkt. No. 29. This calculation of "current monthly income" ($7,645) is the starting point for section 1129(a)(15).

However, as the Supreme Court recognized, if there are changes in circumstances in which the calculation of "current monthly income" under the mechanical approach does not accurately account for post-petition changes in income, the court may take into consideration changes in income (or expenses) that are "known" or "virtually certain" as of the date of confirmation. See Hamilton v. Lanning, 560 U.S. 505 (2010) ("Consistent with the text of §1325 and pre-BAPCPA practice, … when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.").

Since the Petition Date, Debtor has filed *Monthly Operating Reports* in the Bankruptcy Case demonstrating that he received aggregate income of $249,626, which on a monthly basis, equates to $9,245.41. See Attachment A. However, of this amount, Debtor received $7,650 from the Employment Development Department (EDD) on account of unemployment compensation, which pursuant to section 101(10A) is generally excluded from the calculation of "current monthly income." Id.; see also In re Adinolfi, 543 B.R. 612 (B.A.P. 9th Cir. 2016). As such, to the extent that Lanning is applicable to section 1129(a)(15), then Debtor's "current monthly income" calculation would be reduced by $7,650 (to $241,976), and on a monthly basis, equates to $8,962.07. See Attachment A.

### 2. Calculation of Reasonable and Necessary Expenses

For above median-income debtors, such as Debtor (see RJN ¶ 1, Exh. A), pursuant to section 1325(b)(3), "amounts reasonably necessary to be expended," which are deduced from the calculation of "current monthly income" to determine "projected disposable income," shall be determined pursuant to section 707(b)(2)(A)-(B). See 11 U.S.C. § 1325(b)(3).

Pursuant to the UST Guidelines, calculation of reasonable and necessary expenses under section 707(b)(2)(A)-(B) provides for the following allowances:

| | |
|---|---|
| Food and Household Expenses: | $ 727.00 |
| Healthcare (Out of Pocket) | $ 55.00 |
| Operating Costs (2 Cars) | $ 424.00 |
| Rental Expense | $ 2,383.00 |

| | | |
|---|---|---|
| Utility Expense | | $ 500.00 |
| **TOTAL** | | **$ 4,089.00** |

See RJN ¶¶ 2(A)-(D), Exhs. B-E.

In addition to these national standards, Debtor is also entitled deductions for the actual costs associated with maintenance of contractually due payments for secured debt, such as the Paru Property. See 11 U.S.C. § 707(b)(2)(A)(iii). Here, as of the Petition Date, the amount contractually due to Deutsche Bank National Trust Company (1st Deed of Trust) was $4,662.02. See Claim No. 5-1. However, pursuant to the *Amended Stipulation for Plan Treatment*, the amount actually increased to $5,519.60, which is consistent with the amount set forth in the Joint Plan. See Dkt. No. 248. Further, in the Joint Plan, Debtor will also pay $569.99 on a monthly basis to Citibank West, FSB (2nd Deed of Trust) for the Paru Property. See Dkt. No. 294.

As such, when taking into account the allowed deductions for the national standards ($4,089) in addition to the actual payment of secured debt to Deutsche Bank National Trust Company (1st Deed of Trust) of $5,519.60 and Citibank West, FSB (2nd Deed of Trust) of $569.99 for the Paru Property, Debtor is entitled to take deductions for reasonable and necessary expenses of at least $10,178.59.

Further, these expenses do not account for other expenses that Debtor would also be entitled to claim under section 707(b)(2)(A)-(B), including but not limited to, applicable income taxes (to Internal Revenue Service and Franchise Tax Board), secured debt payments on the Layfette Property, actual health insurances costs, and administrative costs for Chapter 13 Trustee's fees. See 11 U.S.C. § 1325(b)(2).

### 3. Calculation of "Projected Disposable Income"

Pursuant to section 1325(b)(2), the calculation of "'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2).

Here, as set forth in detail in Section I.B.1., Debtor has "currently monthly income" of $8,962.07, and as set forth in detail in Section I.B.2. above, Debtor is entitled to deductions for expenses reasonably necessary to be expended in the aggregate amount of not less than $10,178.59, which produces negative

"projected disposable income" of $1,216.52. As such, for purposes of section 1325(b)(2), made applicable in the Bankruptcy Case pursuant to section 1129(a)(15), Debtor does not have any "projected disposable income" that must be paid to general unsecured creditors.

### 4. Distributions to General Unsecured Creditors

In order to satisfy the requirements of section 1129(a)(15)(B), the <u>value of the property</u> to be <u>distributed under the plan</u> must be <u>greater than</u> the "<u>projected disposable income</u>" of Debtor for a 5-year period (or during the plan payment period, if longer). See 11 U.S.C. § 1129(a)(15)(B).

Pursuant to the terms of the Joint Plan, Class 2 claimants will receive at least $525,000 from the net proceeds of sale from the Layfette Property. See Dkt. No. 294, pp. 5-6. However, as of the date this brief, counsel for Debtor (The Fuller Law Firm, P.C.) is holding net proceeds of sale of $530,083.63, which in addition to $10,000 (from sale of the Napa Property) and the residue of the estate, and will be payable to Class 2 claimants. See Dkt. No. 341. As such, it is anticipated that Class 2 claimants will receive at least $540,083.63 pursuant to the Joint Plan, and likely more. See Dkt. No. 294, pp. 5-6.

Here, the Plan Proponents clearly satisfy the requirements of section 1129(a)(15)(B), as the Joint Plan proposes to pay Class 2 claimants at least $540,083.63, which is significantly more than Debtor's "projected disposable income" ($0.00) over a 60-month period, which is still $0.00.

"Where § 1129(a)(15) is applicable, 'Congress made clear that a chapter 11 plan of any length may be confirmed as long as the value of the property to be distributed is not less than the projected disposable income of the debtor to be received over five years (or the length of the plan, whichever is longer).'" <u>In re Zimont</u>, 2020 WL 2373591, at *4 (Bankr. D. Ariz. 2020) (*citing* <u>Baud v. Carroll</u>, 634 F.3d 327, 340 (6th Cir. 2011); <u>see</u> also Randolph J. Haines, *Chapter 11 May Resolve Some Chapter 13 Issues*, 8 Norton Bankr. L. Adviser 1 (August 2007).

Further, and although not necessary, the plain language of section 1129(a)(15)(2) also authorizes the Plan Proponents to include other amounts distributed under the Joint Plan, including but not limited to, payment to the claim of the 1st Deed of Trust for the Lafyette Property ($1,057,229.26), payment of all administrative claims ($104,717), and payment of all capital gains tax ($167,514). See <u>In re Crowe</u>, 2021 WL 2212005, at *10 (the Court is required to "compare the debtor's projected disposable income to the value of all property that is to be distributed 'under the plan,' not just the value of the property to be

distributed to general unsecured creditors.").

Based on the foregoing, in the Joint Plan, the Plan Proponents propose to distribute at least $1,869,543.89 to all creditors, which is significantly more than Debtor's "projected disposable income" ($0.00) over a 60-month period ($0.00), and as such, the Plan Proponents clearly satisfy the requirements of section 1129(a)(15)(B). The preponderance of all evidence proffered by the Plan Proponents demonstrates this conclusion, and since the Hannas did not specifically object to confirmation of the Joint Plan pursuant to section 1129(a)(15) raising a contested matter, the Court need not engage in a protracted evidentiary hearing to determine compliance with section 1129(a)(15)(B) in this matter.

## II. CONCLUSION

Based on the foregoing, Debtor and the Gardners respectfully request that the Court enter an order confirming the Joint Plan, overruling the Objection filed by the Hannas in its entirety, finding that the Joint Plan satisfies the requirements of 11 U.S.C. § 1129(a)(15)(B), and for such other and further relief that is just and proper under the circumstances of this case.

Respectfully submitted

Dated: August 18, 2022      **MEYER LAW GROUP LLP**

By: /s/ BRENT D. MEYER
    Brent D. Meyer, Esq.
    Attorneys for Plan Proponents
    DALE GARDNER and
    MELISSA GARDNER

Dated: August 18, 2022      **THE FULLER LAW FIRM, PC**

By: /s/ LARS FULLER
    Lars Fuller, Esq.
    Attorneys for Debtor
    MORDECHAI KOKA

**Attachment A**
(Debtor's Income Earned Since Petition Date)

| Month | Amount | Docket No. |
|---|---|---|
| March 2020 | $1,692.00 | Docket No. 52 |
| April 2020 | $7,645.00 | Docket No. 53 |
| May 2020 | $10,345.00 | Docket No. 55 |
| June 2020 | $7,645.00 | Docket No. 68 |
| July 2020 | $10,395.00 | Docket No. 78 |
| August 2020 | $4,895.00 | Docket No. 102 |
| September 2020 | $7,645.00 | Docket No. 103 |
| October 2020 | $7,645.00 | Docket No. 104 |
| November 2020 | $7,645.00 | Docket No. 106 |
| December 2020 | $7,645.00 | Docket No. 109 |
| January 2021 | $7,645.00 | Docket No. 110 |
| February 2021 | $7,645.00 | Docket No. 113 |
| March 2021 | $9,045.00 | Docket No. 117 |
| April 2021 | $7,645.00 | Docket No. 141 |
| May 2021 | $8,995.00 ($1,350 from EDD) | Docket No. 267 |
| June 2021 | $6,695.00 ($1,350 from EDD) | Docket No. 268 |
| July 2021 | $7,595.00 ($2,700 from EDD) | Docket No. 269 |
| August 2021 | $11,195.00 ($1,800 from EDD) | Docket No. 270 |
| September 2021 | $19,545.00 ($450 from EDD) | Docket No. 271 |
| October 2021 | $4,895.00 | Docket No. 277 |
| November 2021 | $9,895.00 | Docket No. 278 |
| December 2021 | $9,895.00 | Docket No. 293 |
| January 2022 | $14,895.00 | Docket No. 296 |
| February 2022 | $16,395.00 | Docket No. 301 |
| March 2022 | $9,895.00 | Docket No. 322 |
| April 2022 | $10,804.00 | Docket No. 332 |
| May 2022 | $13,750.00 | Docket No. 347 |
| **TOTAL** | **$249,626.00** | |
| **MONTHLY AVERAGE** | **$9,245.41** | |