LARS T. FULLER (No. 141270)
JOYCE K. LAU (No. 267839)
THE FULLER LAW FIRM, P.C.
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MORDECHAI KOKA<br><br>Debtor | CASE NO.: 20-50469-SLJ<br><br>**FINAL APPLICATION FOR COMPENSATION**<br><br>CHAPTER 11<br><br>Date: Feb. 7, 2023<br>Time: 1:30 PM<br>Court: 9 |

Comes now The Fuller Law Firm, P.C., attorneys for Reorganized Debtor Mordechai Koka and respectfully submits the herein application for compensation under Rule 2002 of the Bankruptcy Rules and B.L.R. 9029-1.

**I.   HISTORY AND PRESENT POSTURE OF CASE**

Debtor, represented by Farsad Law, filed the herein petition under Chapter 11 on March 10, 2020 to stop the non-judicial foreclosure of his real property located at 858 Acalanes Road, Lafayette, CA 94549 ["Lafayette" Property].

Debtor was the sole shareholder of Green Bay Builders, Inc. ("GBBI"), which operated a

1
Final Application for Compensation

business as a general contractor. Though Mr. Koka had his own license, he utilized the license of another general contractor (as RMO) to conduct business. The CSLB filed complaints against GBBI, the ROM and Debtor for various violations of California Business & Professions Code §7159 and a criminal complaint was filed against Debtor. Though these actions are now favorably resolved, they precipitated the filing of the herein case.

While being represented by Farsad Law Offices, P.C., Debtor and the Gardners proceeded to BDRP. The Farsad Law Offices, P.C. was able to negotiate a resolution and the parties entered into a stipulation which provided, among other things, that the Gardners' claim be allowed in the sum of $1,335,810.91 but upon payment of the sum of $450,000 by April 15, 2021 shall constitute payment in full. Debtor contemplated selling his real property at 102 Paru St. Alameda, CA ("Alameda Property") and 3190 Vicky Ave. Napa ("Napa Property") to raise the funds to satisfy the settlement. The Vicky Ave. property was sold and the funds held in the Farsad Law Offices trust account. Though there was a lot of time to sell the Alameda Property, it did not sell and hence the claim stood at $1,335,810.91.

Jeff and Amalia Hanna filed a late claim. Debtor graciously entered into a stipulation re claim amount in the amount of $84,941.50 and allowed the claim though late.

On or about April 20, 2021, at the request of Farsad Law Offices and Debtor, The Fuller Law Firm, P.C. substituted into the case. Recognizing that the case was not confirmable over any plan rejection that may be filed by the now liquidated Gardner claim in the amount of $1,335,810.91, Debtor re-designated the case to a Subchapter V, asserted a homestead exemption to which Debtor contends he was entitled and opposed a motion to dismiss or convert. The case became more contentious. The Court, after briefing, re-designated the case as a non-Subchapter V case.

Recognizing that the only way to confirm a plan was to get the consent of the Gardners, the undersigned reached out to Mr. Meyer and suggested that the party's goals were not so diverse that a joint plan could not be proposed. Mr. Meyer consented and deserves significant credit in bringing this case to confirmation.

This case was rather straight-forward: liquidate the Lafayette Property and Napa Property holding the proceeds of sale pending confirmation, cure a one month arrears payments on the Alameda Property and pay general unsecured creditors more than in liquidation. However, because of relentless opposition to every step towards confirmation, because of the difficulty of selling a unique property and other privileged issues, the case was protracted and regrettably expensive.

## II. TERMS OF REPRESENTATION

The Fuller Law Firm, P.C. agreed to represent the Debtor at the firm's ordinary and customary hourly rates existing at the time of retention for the attorneys in the office. These rates are as follows:

| | |
|---|---|
| Lars T. Fuller | $505.00 |
| Sam Taherian | $485.00 |
| Joyce K. Lau | $395.00 |
| Rodrigo Franco (Certified Paralegal) | $125.00[1] |

Debtor and counsel have agreed that counsel would seek reimbursement for actual costs expended. The costs have not been marked up by any amount. No money has been charged for

---

[1] Mr. Franco obtained his certification after The Fuller Law Firm, P.C. substituted into this case. However, the timesheets only reflect billings after his certification was received.

facsimile transmissions, long distance phone calls or photocopies.

Pursuant to an order of this Court, Farsad Law Offices, P.C. transferred $30,000 to The Fuller Law Firm, P.C. Trust account as an for a retainer. These funds remain in The Fuller Law Firm, P.C. Trust account.

### III. FEES AND COSTS REQUESTED AND CONCESSIONS

Through Jan. 14, 2022, your applicant has expended 231.3 hours of time on this case, but bills for only 213.10 hours and requests approval of compensation of $105,891.50 variously categorized as follows:

A. <u>Summary By Attorney</u>

| PROFESSINOAL | HOURS (Billed) | RATE | AMOUNT (Billed) |
|---|---|---|---|
| Lars T. Fuller | 207.9 | 505 | 104,989.50 |
| Joyce K. Lau | 0 | 395 | 0 |
| Sam Taherian | 0.7 | 485 | 339.50 |
| Rodrigo Franco (Certified Paralegal) | 4.5 | 125 | 562.50 |
| **Total** | **213.10** | | **105,891.50** |

B. <u>Summary By Project:</u>

| CASE | HOURS (Billed) | AMOUNT (Billed) |
|---|---|---|
| 341 Meeting | 3.4 | 1,717.00 |
| Application for Compensation | 6.5 | 3,282.50 |
| Ballots | 4.1 | 2,070.00 |
| Claims | 0.2 | 101.00 |

4
Final Application for Compensation

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

| | | |
|---|---|---|
| Confirmation | 35.6 | 17,978.00 |
| Conversion | 0.5 | 252.50 |
| Employment Application-Danhken | 2.2 | 1,111.00 |
| Employment Application-Farsad Law Offices | 2.3 | 1,161.50 |
| Employment Application- The Fuller Law Firm, P.C. | 3.0 | 1,515.00 |
| Homestead Exemption | 6.4 | 3,232.00 |
| IDI | 3.1 | 1,565.50 |
| Incur Debt | 8.8 | 4,444.00 |
| Main Case | 17.8 | 8,989.00 |
| MOR | 2.9 | 1,274.50 |
| Motion to Appoint Trustee | 5.7 | 2,878.50 |
| Motion for Discharge | 2.9 | 1,264.50 |
| Motion for Retainer | 4.8 | 2,424.00 |
| Plan | 28.0 | 14,140.00 |
| Post confirmation | 0.2 | 101.00 |
| Re-designation | 29.7 | 14,988.50 |
| Stipulations re Properties | 1.9 | 959.50 |
| Sale Lafayette | 14.0 | 6,690.00 |
| Sale Alameda | 10.1 | 5,096.50 |
| Trial | 5.8 | 2,929.00 |
| Trial Preparation | 13.2 | 5,526.00 |
| **Total** | **213.10** | **$105,891.50** |

Hence, your counsel voluntarily makes 18.2 hours of time concessions. Further, the undersigned counsel and Mr. Meyer had an estimated 50 phone calls related to the joint plan, the motions and oppositions filed by the Hannas and in preparation for trial. Invariably these were initiated or received by the undersigned's mobile phone often when the undersigned was

not before a computer. Hence, these calls went mostly unlogged and contemporaneous records were not retained. These could be re-constructed from phone records but were not. These calls represent and estimated $3,500 in billable time which is waived.

These waived fees and the fee concessions set forth in the time sheets constitute over $ 12,000 in concessions or well over 10% of the time expended.

C.     Costs [$196.00]

The Fuller Law Firm, P.C. advanced $132.00 in postage, paid $64.00 in filing fees.

D.     Description of Significant Projects

1.     Ballot [4.1 hours; $2,070.00]

The ballot was drafted and sent out by Mr. Meyer. Billings in this category included solicitation of votes after the disclosure statement was approved and coordination of ballot receipts for preparing the ballot tabulation. After approval of the disclosure statement, undersigned contacted, the Collection Bureau of San Jose, United Site Services, Houzz and Salesforce to solicit votes to support the joint plan.

2.     Confirmation [35.6 hours; $17,979.00]

This case was set for confirmation numerous times. This category included the drafting of declarations in support of confirmation. Such declarations were necessary from Mr. Danhken, Debtor's realtor, Mr. Shaw, who proposed to extend debtor a line of credit if called upon, Mr. Brandon Koka who offered to assist his father financially to the extent necessary and from Mr. Koka himself. These declarations necessarily required discussion with the declarants and explanations of their necessity. In particular, Brandon Koka was cautious and apprehensive as to the consequences of signing such a declaration. As to Mr. Koka a supplemental declaration was

necessary at a subsequent confirmation hearing. Tax consequences of sales had to be calculated, explained to Mr. Koka before signature of the declaration. Mr. Danhken's declaration explained the challenges of selling the properties.

This category further included extensive discussion and collaboration with Mr. Meyer regarding the joint plan, obstacles to achieving confirmation and review of joint pleadings mostly drafted by Mr. Meyer. It also included conference calls with Hanna's counsels in what proved to be futile attempts at settlement or narrowing the issues and reviewing of Ms. Whitehead's opposition to confirmation. Finally this category included appearing at the oral ruling on confirmation.

3. Employment Application

This category included the drafting of three employment applications:

a. Application to Employ The Fuller Law Firm P.C. [3.0 hours; $1,515.00]

The Fuller Law Firm, P.C. substituted into this case. In its employment application The Fuller Law Firm, P.C. requested a post-petition retainer from funds held by Farsad Law Offices, P.C. Ultimately a separate motion for approval of such request was required and separately classified.

b. Application to Employ Farsad Law Offices, P.C. [2.3 hours; $1,161.50]

Farsad Law Offices was employed in the main case but withdrew. It however continued to represent Debtor in a criminal case. Representation in the criminal case was, in the undersigned's judgment, beneficial to the estate because potential incarceration would adversely affect Debtor's ability to fund any monthly payments proposed by the plan. In retrospect, the plan was predominantly funded by the sale of assets and debtor was not sentenced to any time or even any

7
Final Application for Compensation

work program. Regardless, the Court denied the confirmation order.

    c.   Application to Employ Rick Danhken [2.2 hours; $1,111.00]

Rick Danhken listed both the Lafayette Property and the Alameda Property. This required his employment. He also served as a key witness at trial through which various critical facts were introduced into evidence.

    4.    Homestead Exemption [6.4 hours; $3,232.00]

At the time of filing of the petition, Debtor did not assert a homestead in his residence. Though the subject of much contention[2], Debtor asserts that he moved out of his residence thinking foreclosure was imminent but intended to return if the house was saved. In fact he was residing in the Lafayette house during this firm's representation of Debtor. The undersigned contends that intention to return as evidenced by leaving the house unoccupied but with personal property left inside makes debtor eligible for the homestead. The eligibility for a homestead was never decided by this Court because Debtor's plan paid out more to creditors than they would have received without the homestead, ultimately rendering the question moot.

    5.    Motion for Retainer [4.8 hours; $2,424.00]

The undersigned substituted into the case and hence needed court approval for any retainer. The Farsad Law Offices was holding the proceeds of sale from the Napa Property in trust. The undersigned requested a $30,000 retainer in its fee application which was opposed and denied by the Court. Hence a separate motion was required and brought. Both

---

[2] Opposing counsel contended that this was done for venue shopping or alternatively to cram the Lafayette Property, but no such cram was ever proposed.

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

the Gardner's and Hanna's objected requiring a response and hearing. Ultimately the Court granted the request for a retainer and the retainer remains in The Fuller Law Firm, P.C.'s trust account

6. <u>Plan [28.0 hours; $14,140]</u>

This category included the initial drafting and later the review of numerous joint disclosure statements and plans. The joint disclosure statements and plans were primarily drafted by Mr. Meyer though reviewed and interlineated by the undersigned. The undersigned of course had to confer with Debtor to obtain critical facts for the joint disclosure statement and plan. The category included attention to the relentless objections filed by the Hannas to the joint plans.

This category further included opposing Hanna's Disclosure Statement and Plan, attention to the Declaration of Hanna's valuation experts ostensibly supporting the Hanna Plan.

This category did not include the drafting of any Subchapter V Plan which never progressed because the case was re-designated back to a non-Subchapter V Chapter 11.

7. <u>Re-designation.[29.7 hours; $14,988.50]</u>

The Fuller Law Firm, P.C. substituted into this contentious case after the deadline to pay the Gardners $450,000 in satisfaction of their claim already lapsed. The Gardners controlled the unsecured class which was critical to achieve confirmation. Debtor re-designated the case in part to overcome the risk of having confirmation of any plan denied because of the inability to meet the Absolute Priority Rule. Though Debtor was no longer operating Green Bay Builders, he was working in construction and more importantly was engaged in the rental business-operating the Alameda triplex. Ultimately the Court denied

9

Final Application for Compensation

the re-designation.

8. <u>Stipulations [1.9 hours; $959.50]</u>

This category involved negotiating stipulations with Ms. Kaufmann and later Jennifer Wong representing SPS, the 1st position lienholder on the Alameda Property. Debtor defaulted repeatedly requiring follow-up with Debtor and attention to Notices of Default and the renegotiation of the stipulation.

The category also involved the negotiation of a stipulation with Mr. McDermott representing the first position lender on Lafayette Property.

9. <u>Sale – Lafayette [14.0 hours;$6,690]</u>

The Plan provided for the sale of the Lafayette Property. Rick Dankhen was employed to market and sell the Property. There were three verbal offers and 4 written offers. When a ready and willing buyer made an offer for 1.68 million, a motion to authorize sale was drafted and filed. Because of delay s in financing, the Court requested numerous reports of sale. In order to prepare reports of sale, updated estimated closings statements were requested from escrow including updated demands by the 1st position lender. The sale closed with the proceeds transferred to the The Fuller Law Firm, P.C.'s trust account consistent with the proposed plan.

10. <u>Sale- Alameda [10.1 hours; $5,096.50]</u>

Mr. Danhken was employed to market and sell the Alameda Property. The Alameda Property proved challenging to sell. It is a unique Property (a "White Elephant") with deferred maintenance, problem tenants and subject to rent control. Numerous "low-ball" offers were received. Two reasonable offers were accepted and motions to authorize

sale were filed. Neither closed and the motions were withdrawn.

11.    <u>Trial Preparation</u>[13.2 hours; $5,526.00]

This case was contentious and proceeded to trial because the objections from the Hanna's were not otherwise resolvable. Because the Hannas refused to stipulate to narrowing the issues for trial and refused to stipulate that some of the factors needing to be proven for confirmation, counsel had to prepare evidence for all applicable points of Section 1129(A). To meet the requirements of 1129 (A)(15) six months of pre-petition bank statements were analyzed for applicable income. Given that Debtor moved to Israel, his going forward living expenses had to be ascertained and documented. Witnesses were prepared for trial and Mr. Koka was counseled as to trial demeanor and truthfulness and presented with mock questions.

## IV.    OTHER PROVISIONS

The Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees provides that the fees for preparation of a fee application may not exceed five percent of the total amount of fees and costs requested in the Application. In the herein case, the time for preparation of this fee application represents less than 3.1 percent of the total fees incurred. Though the guideline provide for project billing where a given category exceeds $10,000, here work on the categories designated as Confirmation, Re-designation and Plan exceeded $10,000 but it seemed impractical to subcategorize these further.

Taking into consideration the time and labor required, the novelty and difficulty of the questions, the skills required to perform the legal services properly, the preclusion of other employment by the attorney due to the acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or other circumstances, the amount

11
Final Application for Compensation

involved and the results obtained, the experience, reputation and ability of the attorney, the nature and extent of the professional relationship with the client, and awards in similar cases, the reasonable value of services rendered by your applicant for legal services calculated at attorney's ordinary rate is as follows:

| | |
|---|---:|
| Legal service (billed) to date (after fee concessions) | $ 105,891.50 |
| Costs | $      196.00 |
| Total Fees and Costs | $ 106,087.50 |
| Held in Trust | $   30,000.00 |
| Unpaid Fees and Costs requested | $   76,087.50 |

Your applicant has not shared and has not agreed to share fees with anyone. This is your Applicant's first and final application for compensation in the herein case.

WHEREFORE, your applicant prays that this court

1. Allow total attorney fees and costs as set forth herein;

2. Authorize your applicant to withdraw the $30,000 held in trust;

3. Direct that Ms. Haskins, the Private Trustee disburse to The Fuller Law Firm, P.C., if sufficient funds are on hand, the remaining fees and costs due or if insufficient funds are on hand that Ms. Haskins be directed to disburse available funds as follows:

   a. First her estimated fees for work on this case as well as the approved fees of the Subchapter V Trustee;

   b. Then to all other administrative claims for professional fees, a pro-rata share of the remaining funds held by her (disbursed in the same ratio as each professional's approved fees after any retention bears to the total approved professional fees).

4. That the Court authorizes The Fuller Law Firm, P.C. to record a copy of the Order Approving Compensation in Alameda County such that it operates as a lien on real property of the Debtor.

Dated: Jan. 15, 2023                    THE FULLER LAW FIRM, P.C.

                                        By: /s/ *Lars T. Fuller*
                                            LARS T. FULLER
                                            Attorney for Debtor