1  **MEYER LAW GROUP LLP**
   A Limited Liability Partnership
2  BRENT D. MEYER, Cal. Bar No. 266152
   268 Bush Street #3639
3  San Francisco, California 94104
   Telephone:  (415) 765-1588
4  Facsimile:   (415) 762-5277
   Email:       brent@meyerllp.com
5
6  Attorneys for Plan Proponents
   DALE GARDNER and
7  MELISSA GARDNER

8

9                    UNITED STATES BANKRUPTCY COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                            SAN JOSE DIVISION

12

13

14  In re                                  BK Case No.: 20-50469-SLJ

15  MORDECHAI KOKA,                        Chapter 11

16                                         **MOTION FOR ALLOWANCE OF**
                                           **SUBSTANTIAL CONTRIBUTION CLAIM**
17          Debtor.                        **PURSUANT TO 11 U.S.C. § 503(b)(4)**
                                           **FILED BY MEYER LAW GROUP, LLP**
18

19                                         Date:      February 7, 2023
                                           Time:      1:30 p.m.
20                                         Location:  Telephonic / Videoconference[1]
                                           Judge:     Honorable Stephen L. Johnson
21

22

23

---

24      [1] Paragraph 10 of General Order 38 (Seventh Amended) provides that "[u]nless otherwise ordered by the presiding judge, all notices of any motion or application filed with the court and served on any party which sets a
25  hearing date for the motion or application must state that the hearing will not be conducted in the presiding judge's courtroom but instead will be conducted by telephone or video, and include the following language: 'All interested
26  parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how
27  to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the
28  Bankruptcy Court's website.'" See *https://www.canb.uscourts.gov/sites/default/files/generalorders/Seventh AmendedGO38.pdf*

- 1 -

BK CASE NO. 20-50469-SLJ

MOTION FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIM PURSUANT TO 11 U.S.C. § 503(b)(4) FILED BY MEYER LAW GROUP, LLP

Meyer Law Group, LLP ("MLG"), counsel for creditors and plan proponents Dale Gardner and Melissa Gardner (the "Gardners") hereby moves (the "Motion") this Court for allowance and payment of certain fees and costs in the above-referenced pursuant to section 503(b)(4)(D) of the Bankruptcy Code based on the substantial contribution provided the estate and creditors of the estate in the Bankruptcy Case.

The Motion is based upon the Notice of Motion, the supporting Memorandum of Points and Authorities set forth herein, the supporting Declaration of Counsel Brent D. Meyer ("Counsel Decl.") and all exhibits attached thereto, all other pleadings on file herein, and such other and further arguments and authority as may be presented at the hearing on the Motion.

## I. SUMMARY OF FEES AND COSTS REQUESTED

This is the first and only request filed by MLG in the Bankruptcy Case for allowance of fees and costs pursuant to 11 U.S.C. § 503(b)(4). See CM/ECF *generally*.

MLG has not received any payments for services rendered or costs advanced in this matter from Debtor or the estate. See Counsel Decl. at ¶ 8. Further, at no time did MLG double bill for professional services performed by more than one attorney when two or more attorneys were present or working on the same matter. See Counsel Decl. at ¶ 7.

This Motion is submitted consistent with Paragraph 9 of the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* promulgated by the United States Bankruptcy Court for the Northern District of California. Further, below is a summary of the Motion as required by the Local Rules of the Bankruptcy Court for the Northern District of California:

| | | |
|---|---|---|
| 1. | Date of Petition: | March 10, 2020 |
| 2. | Date Plan Confirmed: | December 5, 2022 |
| 3. | Amount of Fees Approved at Confirmation: | $ N/A |
| 4. | Subsequent Fee Application Filed: | No |
| 5. | Amount of Fees Received to Date from Debtor: | $ 0.00 |
| 6. | Time Period of Motion: | April 10, 2021 to January 17, 2023 |
| 7. | Hourly Rate of Professional: | |
| | a. Michael H. Meyer: | $ 550.00 |
| | b. Brent D. Meyer | $ 400.00 |
| 8. | Total Hours in this Motion: | |

BK CASE NO. 20-50469-SLJ
- 2 -
MOTION FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIM PURSUANT TO 11 U.S.C. § 503(b)(4) FILED BY MEYER LAW GROUP, LLP

Case: 20-50469    Doc# 383    Filed: 01/17/23    Entered: 01/17/23 20:47:32    Page 2 of 12



|   |   |   |
|---|---|---|
| a. | Michael H. Meyer | 0.00 |
| b. | Brent D. Meyer | 205.50 |
| 9. | Total Fees Requested: | $ 82,200.00 |
| 10. | Amount Included for Appearance on this Motion: | $ 0.00 (Waived) |
| 11. | Total Costs Requested this Motion: | $ 681.03 |
| 12. | Total Fees and Costs Requested: | $ 82,881.03 |

A detailed chronological billing statement including costs is attached as **Exhibit A** and a detailed project billing statement including costs is attached as **Exhibit B** to the Declaration of Counsel Brent D. Meyer filed concurrently herewith.

Pursuant to the *Guidelines for Reviewing Applications for Compensation* promulgated by the United States Trustee Program, below is a summary of the hours and amount of fees incurred by MLG, segregated by billing codes that were utilized for projected billing purposes. Further, the chronological billing statements detailing each of the services within these specific billing codes is set forth in **Exhibit A** and **Exhibit B** to the Declaration of Counsel Brent D. Meyer filed concurrently herewith.

| SUMMARY OF FEES AND COSTS BY UNITED STATES TRUSTEE BILLING CODES ||||
|---|---|---|---|
| Code | Description | Hours | Amount |
| A001 | Conversion of Bankruptcy Case to Sub-Chapter V | 47.9 | $ 19,160.00 |
| A002 | Homestead Exemption in Layfette Property | 20.9 | $ 8,360.00 |
| A003 | Employment Applications | 17.1 | $ 6,840.00 |
| A004 | Joint Chapter 11 Plan, Disclosure Statement, Confirmation | 101.8 | $ 40,720.00 |
| A005 | Chapter 11 Plan filed by the Hannas | 8.4 | $ 3,360.00 |
| A006 | Motion for Allowance of Fees and Costs | 9.4 | $ 3,760.00 |

## II. SERVICES RENDERED IN PROVIDING SUBSTANTIAL CONTRIBUTION

As this Court is well aware, since April 2021, the Gardners have undertaken significant steps to protect the estate and creditors of the estate, ensure that unnecessary and costly administrative claims are avoided, and obtain confirmation of a Joint Plan to provide a significant dividend to unsecured creditors (compared to Chapter 7) in this Bankruptcy Case. Below are six (6) categories of activities that Gardners undertook that conferred a material benefit and substantial contribution to the estate, which MLG submits that it is entitled to recovery of fees and costs for pursuant to section 503(b)(3)(D).

### A001 – Conversion of Bankruptcy Case to Sub-Chapter V

Initially, once Debtor defaulted on the terms of the approved *Settlement Agreement* with the Gardners, which required payment of $450,000 on or before April 15, 2021, the Gardners sought to prosecute a creditor's plan of reorganization. However, once this plan was filed, Debtor sought to thwart confirmation by changing counsel and attempting to convert the case to Sub-Chapter V, despite significant legal impediments.

In order to avoid the Bankruptcy Case being re-designated under Sub-Chapter V, the Gardners initially sought to obtain relief on an *ex parte* basis, which was denied, and subsequently were required to file and prosecute a noticed motion to re-designate the Bankruptcy Case to Chapter 11, which required considerable briefing on the relevant issues.

Ultimately, the Gardners were successful in obtaining relief to re-designate the Bankruptcy Case to Chapter 11, remove the Sub-Chapter V Trustee, and seek confirmation of a creditor-friendly plan of reorganization. As a result, there was a substantial and direct benefit to the estate, including but not limited to, removal of the Sub-Chapter V Trustee (which reduced administrative claims of the estate), avoidance of confirmation of a plan by Debtor that would have only provide a dividend to general unsecured by the bare minimum amount (approximately $255,000) required by 11 U.S.C. § 1129(a)(7), and confirmation of a creditor-friendly Joint Chapter 11 Plan that provided general unsecured creditors with a dividend in excess of $540,000.

**Total Hours: 47.9 Hours         Total Amount: $19,160.00**

### A002 – Homestead Exemption in Layfette Property

Concurrent with Debtor seeking to redesignate the Bankruptcy Case to Sub-Chapter V, Debtor also sought to reclassify his residence and claim a homestead exemption in the Layfette Property, which if successful, would have reduced the amount of non-exempt equity in property for purposes of 11 U.S.C. § 1129(a)(7) by approximately $75,000.

The Gardners timely objected to allowance of Debtor's newly asserted homestead exemption, and although the Court never actually ruled on this Objection, the Gardners were able to utilize the merits of the Objection to negotiate a Joint Chapter 11 Plan in which Debtor agreed to "waive" his asserted homestead exemption. As a result, there was a substantial and



direct benefit to the estate, as the dividend to general unsecured creditors was increased by at least $75,000 based on disallowance of the asserted exemption.

**Total Hours: 20.9 Hours**      **Total Amount: $8,360.00**

**A003 – Employment Applications**

There was one minor and one major issue related to employment application filed in the Bankruptcy Case. <u>First</u>, Debtor's prior counsel (Farsad Law Offices P.C.) sought employment and payment of $10,000 from the estate to represent Debtor in a pending criminal case. MLG successfully objected to this application, and employment was denied by the Court.

<u>Second</u>, Debtor's current counsel (The Fuller Law Firm, P.C.) sought a post-petition retainer ($30,000) from net proceeds of sale for the Napa Property, which the Gardners asserted could be traced to funds diverted from Green Bay Builders, Inc., and should remain as estate property for the benefit of creditors. Ultimately, the Court determined that the requested post-petition retainer was appropriate and warranted.

As a result, there was a substantial and direct benefit to the estate, as the estate was not obligated to pay professional fees ($10,000) for representation of Debtor in criminal proceedings, and this Court became familiar with the factual record related to potential improprieties of Debtor that could materially impact the Bankruptcy Case and related proceedings.

**Total Hours: 17.1 Hours**      **Total Amount: $6,840.00**

**A004 – Joint Chapter 11 Plan, Disclosure Statement, Confirmation**

Promptly after this Court redesignated this Bankruptcy Case from Sub-Chapter V to Chapter 11, Debtor and the Gardners negotiated the terms of a consensual Joint Plan, which sought to maximize the dividend to general unsecured claims, reduce administrative costs, and ensure prompt payment to all creditors of the estate.

To this end, Debtor and the Gardners drafted and sought confirmation of the Joint Plan, which for unknown reasons, was met with considerable objection from the Hannas. However, after significant delays, briefings, hearings, and a full day contested confirmation hearing, this Court ultimately confirmed the Joint Plan (dated January 24, 2022) on December 5, 2022. Further, as this Court is aware, MLG took the laboring oar in drafting (and redrafting) the Joint

Plan, all supporting briefs, and all opposition briefs (when required), which resulted in a significant reduction in costs to Debtor and ultimately reduced the potential administrative claims of Debtor's counsel (The Fuller Law Firm P.C.) that certainly would be recoverable for such professional services pursuant to 11 U.S.C. § 330.

As a result, there was a substantial and direct benefit to the estate, as the Joint Chapter 11 Plan provided general unsecured creditors with a dividend in excess of $540,000, which was substantially higher than the amount (approximately $255,000) that the Court found Debtor would be required to pay to general unsecured creditors pursuant to 11 U.S.C. § 1129(a)(7).

**Total Hours: 101.8 Hours**          **Total Amount: $40,720.00**

### A005 – Chapter 11 Plan filed by the Hannas

Although the original plan filed by the Gardners and the Joint Plan filed by the Gardners and Debtor provided significantly greater benefits to all creditors (including the Hannas), inexplicitly, the Hannas refused to endorse (or accept) either plan, but rather, elected to prosecute their own Chapter 11 Plan, which provided materially worse treatment to all creditors of the estate. As such, the Gardners were required to object to approval of the Disclosure Statement and seek denial of confirmation of this plan, which was successful.

As a result, there was a substantial and direct benefit to the estate, as all creditors were only presented with a single, creditor-friendly, Joint Chapter 11 Plan that provided general unsecured creditors with a dividend in excess of $540,000, which was significantly more than what they would have been received under the plan proposed by the Hannas.

**Total Hours: 8.4 Hours**          **Total Amount: $3,360.00**

### A006 – Motion for Allowance of Fees and Costs

This Motion is akin to seeking allowance of fees and costs pursuant to section 330 of the Bankruptcy Code, which are recoverable (capped at 5.00% by local practice), and as set forth in detail in Section III below, MLG is also entitled to recover fees and costs for preparation and prosecution of this Motion, which was necessary to seek allowance of a substantial contribution claim in the Bankruptcy Case. See In re Wind N' Wave, 509 F.3d 938, 943-44 (9th Cir. 2007).

At this time, MLG anticipates that this Motion will be the only request for allowance of

fees and costs pursuant to section 503(b)(4), and as a professional courtesy, has waived all fees and costs that will be incurred appearing at the hearing on this Motion.

          **Total Hours: 9.4 Hours**          **Total Amount: $3,760.00**

**III.    BASIS FOR RELIEF**

Section 503(b) of the Bankruptcy Code provides for certain "administrative expenses" to be paid out of the Debtor's estate. This includes granting an administrative expense claim to parties who make "a substantial contribution in a case ... Chapter 11," including fees and expenses of an attorney for a creditor. See 11 U.S.C. §§ 503(b)(3)(D), (b)(4). In particular, the Bankruptcy Code provides for allowance of an administrative expense claim for "reasonable compensation for professional services rendered by an attorney" for a creditor, in the course of providing a substantial contribution. 11 U.S.C. § 503(b)(4).

Allowance of compensation of an attorney under section 503(b)(4) of the Bankruptcy Code is applicable when the attorney was engaged by a creditor or other party who would be eligible to seek allowance of its expenses as an administrative claim. Section 503(b)(4) provides the claim is to be allowed for services rendered by an attorney "of an entity whose expense is allowable under" certain parts of Section 503(b)(3), including 503(b)(3)(D). Section 503(b)(3)(D), in turn, provides for allowance of an administrative expense claim for expenses of "a creditor ... in making a substantial contribution in a case."

In other words, where the work of an attorney for a creditor results in a substantial contribution to the estate, the reasonable compensation of that attorney is allowable as an administrative expense, in much the same fashion as if the attorney were employed by the estate. In order for an attorney's services to be compensable by the estate, Section 503(b)(4) "simply requires that the attorney whose fees and expenses form the basis for the administrative claim represent the creditor who made a substantial contribution." In re W. Asbestos Co., 318 B.R. 527, 530 (Bankr. N.D. Cal. 2004).

However, the Bankruptcy Code does not define "substantial contribution." Rather, whether a substantial contribution has been made is generally a question of fact to be determined by the Court. The Ninth Circuit has held that the principal factor is the extent of benefit to the



estate. See In re Cellular 101, Inc., 377 F.3d 1092, 1096 (9th Cir. 2004). What constitutes a "substantial contribution" appears to be case dependent.

Specifically, in Cellular 101, the contribution was furthering a plan of reorganization. Id. at 1096-1097. At the same time, in enacting section 503(b)(3), Congress recognized that in some cases a creditor might make a substantial contribution in objecting to a plan. See id. at 1097 (*quoting* Senate. Report. No. 95-598, at 66-67 (1978)). Courts have also granted substantial contribution claims to creditors in connection with objecting to an unfavorable transaction. See In re McLean Industries, Inc., 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1988).

Further, the granting of the administrative expense claim appears mandatory once the Court has determined that a substantial contribution was made, as section 503(b) specifically provides that "there *shall* be allowed, administrative expenses ... including" the reasonable compensation of a creditor's attorney in connection with a substantial contribution to the case. 11 U.S.C. § 503(b) (emphasis added).

The measure of the administrative expense claim is based on "the time, the nature, the extent, and the value of such services, and the cost of comparable services other than" in a bankruptcy case. 11 U.S.C. § 503(b)(4). This standard is much the same as applied to a fee application for a professional employed by the estate, under section 330 of the Bankruptcy Code. See 11 U.S.C. § 330(a)(3); In re Wind N' Wave, 509 F.3d 938, 942 (9th Cir. 2007) (stating that the "compensation standards [under 503(b)(4)] mirror those governing fee awards for debtors' attorneys under Section 330(a)").

MLG's work in this case, as counsel for the Gardners (creditors and plan proponents), unequivocally provided a direct and substantial benefit to the estate, and in particular, to general unsecured creditors. This work and the resulting benefit to the estate are described in detail in Section II above. In short, as counsel for the Gardners, MLG contributed directly in: (1) blocking conversion of the Bankruptcy Case to Sub-Chapter V, which would have resulted in a substantially smaller dividend payment to general unsecured claimants; (2) blocking Debtor in obtaining a homestead exemption ($75,000) in the Layfette Property; (3) denying Debtor from using estate assets for retention and payment of criminal counsel; (4) ensuring that the

Bankruptcy Case was not converted to Chapter 7 or authorizing appointment of a Chapter 11 Trustee, which would have significantly increased administrative claims of the estate; (5) blocking approval of the disclosure statement set forth in a competing Chapter 11 Plan proposed by the Hannas; (6) negotiating, drafting, and obtaining confirmation of Joint Chapter 11 Plan, which among other things, provided a dividend payment in excess of $285,000 to general unsecured creditors of the estate; and (7) drafting and prosecuting all necessary litigation required to obtain confirmation of the Joint Chapter 11 Plan.

MLG respectfully submits that there should be no question that the results described above qualify as a substantial contribution to this Bankruptcy Case, pursuant to section 503(b)(3)(D). As such, there is a clear basis for allowing as an administrative claim "reasonable compensation" for MLG's services. See 11 U.S.C. § 503(b)(4); In re W. Asbestos Co., 318 B.R. at 530. For the reasons set forth above, MLG believes its standard hourly rate ($400) for the time incurred, as set forth herein, amounts to reasonable compensation, especially in comparison to the other hourly rate of professional in this matter. See 11 U.S.C. § 503(b)(4) (setting forth the factors for reasonable compensation).

This Motion includes only time incurred by MLG in work that it believes directly benefited the estate and its creditors generally. MLG also incurred significant time in the Bankruptcy Case litigating other matters, participating in BDRP, negotiating a settlement agreement, and prosecuting a non-dischargeability action against Debtor. However, the substantial contribution claim subject to this Motion *does not* include any of this time that was incurred in advancing the rights of the Gardners as an individual creditor.

The Ninth Circuit has held that time incurred in preparing, and if necessary litigating, a request under section 503(b)(4) is therefore compensable on the same basis as a fee application under Section 330. In re Wind N' Wave, 509 F.3d at 943-44. MLG has therefore included in its time in preparing this Motion. MLG submits that this time is reasonable and consistent with the Court's guidelines. MLG further submits that such time was "necessary" under the standards set forth by the Ninth Circuit, because preparation of the Motion was necessary to seek allowance of the substantial contribution claim.

As counsel for the Gardners, MLG spent considerable time ensuring that the rights of all creditors, and in particular general unsecured creditors, were protected in the Bankruptcy Case. This work substantially benefited the estate, and this is precisely the circumstance for which section 503(b)(4) is designed. Given the benefit provided to the bankruptcy estate and its creditors, it is appropriate that the estate bear the costs of the work, which to a large extent, would have been performed by counsel for Debtor (The Fuller Law Firm, P.C.) and clearly compensable under section 330 of the Bankruptcy Code, but was performed by MLG based on a division of labor agreed to between counsel.

Further, detailed statement of professional services rendered and time expended by MLG from April 10, 2021 through January 17, 2023 is attached as **Exhibit A** and **Exhibit B** to the Declaration of Counsel Brent D. Meyer. The reasonable value of services rendered by MLG from April 10, 2021 through January 17, 2023 was $82,200.00, and MLG has incurred out-of-pocket expenses in the amount of $681.03, which are detailed in **Exhibit B** and **Exhibit C** to the Declaration of Counsel Brent D. Meyer.

Finally, to the extent applicable, MLG mailed billing statements concerning the fees and costs requested in this Motion to Debtor and counsel (Lars Fuller), and MLG has provided Debtor and counsel (Lars Fuller) with a copy of the transmittal letter required by paragraph (7) nof this District's *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, a true and correct of which is attached as **Exhibit C** to the Declaration of Counsel Brent D. Meyer. See Counsel Decl. ¶¶ 10-11.

## IV. DISTRIBUTION OF REMAINING FUNDS

MLG has been in communication with the Disbursing Agent (Janina M. Hoskins), and as of the date of this Motion, after payment of all claims provided for in the confirmed Joint Plan, it is anticipated that, prior to payment of the allowed administrative claims of MLG and The Fuller Law Firm P.C., there will be available cash on hand of approximately $75,353.31.

Of this amount, the Disbursing Agent estimates that her fees and costs will be $4,750 and that quarterly fees due to the Office of the U.S. Trustee will be $2,457.85, leaving available funds of approximately $68,145.46 for payment of the allowed administrative claims of MLG

BK CASE NO. 20-50469-SLJ - 10 -
MOTION FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIM PURSUANT TO 11 U.S.C. § 503(b)(4) FILED BY MEYER LAW GROUP, LLP

Case: 20-50469    Doc# 383    Filed: 01/17/23    Entered: 01/17/23 20:47:32    Page 10 of 12

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

and The Fuller Law Firm P.C. However, since there are insufficient estate funds available to pay the anticipated allowed administrative claims of MLG and The Fuller Law Firm P.C., Mr. Fuller and Mr. Meyer have discussed this issue at length, and have agreed as follows:

<u>First</u>, The Fuller Law Firm P.C. shall apply the post-petition retainer ($30,000) currently held in its IOLTA trust account to the allowed amount of fees and costs approved by this Court.

<u>Second</u>, of the remaining amount due to The Fuller Law Firm P.C. (approximately $76,087.50) and the allowed amount (if any) of the award to MLG (approximately $82,881.03), the Disbursing Agent shall be authorized to make a *pro-rata* distribution from the available funds on hand, less any required holdbacks, in the approximate amount of $68,145.46, which would result in a distribution to The Fuller Law Firm P.C. of approximately $32,616.63 and a distribution to MLG of approximately $35,528.83.

<u>Third</u>, with respect to the remaining balance for the respective administrative claims, it is requested that the Court authorize MLG to record a copy of the order approving this Motion and for the Fuller Law Group, P.C. to record a copy of the order approving its *Application for Compensation* [Dkt. No. 381] in the Office of the County Recorder for Alameda County as an encumbrance of record against the Paru Property, which revested in Debtor on the Effective Date (December 20, 2022), to secure payment of the balance of these allowed administrative claims.[2] Under the circumstances, and given the significant concessions by these professionals and the work performed to confirm the Joint Plan, this is a reasonable and acceptable solution to ensure payment of all allowed administrative claims.

## V. CONCLUSION

Based on the foregoing, MLG respectfully request that the Court grant the Motion in its entirety, authorize the allowance of professional fees in the amount of $82,200.00 and reimbursement of costs in the amount of $681.03 for the period of April 10, 2021 to Janunary 17, 2023 on an interim and final basis, authorize the Disbursing Agent to remit payment for the fees

---

[2] To the extent necessary, The Fuller Law Firm, P.C. and MLG would request that the Court also issue an appropriate writ in aid of collection of the allowed administrative claims (such as a writ of attachment) pursuant to applicable California law, as provided for in Federal Rule of Civil Procedure 69.

and costs from the balance of estate funds after appropriate holdbacks, authorize MLG to record a copy of the Order approving this Motion in the Office of the County Recorder for Alameda County for the balance of allowed fees and costs, and for such other and further relief that is just and proper under the circumstances of this case.

Dated: January 17, 2023

              **MEYER LAW GROUP LLP**

              By: /s/ BRENT D. MEYER
                  Brent D. Meyer
                  Attorneys for Plan Proponent
                  DALE GARDNER and
                  MELISSA GARDNER